**THE ROSEN LAW FIRM, P.A.**
Philip Kim, Esq.
Laurence Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIERO CRIVELLARO, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIAOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, and LEI NIE,<br><br>     Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Piero Crivellaro ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press

releases published by and regarding Singularity Future Technology Ltd. f/k/a Sino-Global Shipping America Ltd.[1] ("Singularity" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Singularity securities between February 12, 2021 and November 17, 2022, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Singularity represented itself during the Class Period as global logistics company that pivoted to develop a presence in the blockchain supply management area and distribute, sell and market crypto mining equipment.

3.      During the Class Period, Singularity and the Individual Defendants, as defined below, failed to disclose to investors (a) the CEO's true adverse background; (b) related party transactions; and (3) inadequate internal controls which resulted in United States Attorney's Office for the Southern District of New York and SEC investigations as well as a potential delisting by NASDAQ.

4.      As a result of this adverse information, Plaintiffs and the Class were damaged.

---

[1] On January 3, 2022, the Company changed its name from Sino-Global Shipping America, Ltd. ("Sino-Global") to **Singularity**.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

8.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Singularity securities during the Class Period and was economically damaged thereby.

10.     Defendant Singularity is incorporated in Virginia and its head office is located in Great Neck Plaza, New York. Singularity securities trade on NASDAQ under the ticker symbol "SGLY."

11.     Defendant Yang Jie ("Jie") served as Vice President of Singularity beginning on January 1, 2021 and on November 1, 2021 was appointed as the Company's Chief Executive

Officer ("CEO"), President, and Executive Chairman. On August 9, 2022, Jie tendered his resignation from his positions as CEO and Director of Singularity.

12.     Defendant Lei Cao ("Cao") served as CEO since 2001 until he resigned on November 1, 2021.

13.     Defendant Zhikang Huang ("Zhikang") served as Vice President – Operations since January 28, 2021, a Class I director starting in 2015 and Chief Operating Officer since 2010 until he resigned on November 1, 2021.

14.     Defendant Tuo Pan ("Pan") served as Chief Financial Officer ("CFO") from October 2015 to August 31, 2022 when she was terminated as an employee, CFO and Chief Financial Officer of Singularity.

15.     Defendant Xiaohuan Huang ("Xiahuan"), the wife of Jie, started in 2020 as a member of the Board of Singularity and Chairperson of the Nominating/Corporate Governance Committee, a member of the Audit Committee, and a member of the Compensation Committee. On November 1, 2021, Xiaohuan  resigned from these positions.

16.     Defendant Lei Nie ("Nie"), the husband of Pan, was Chief Operating Officer ("COO") from January 28, 2021 until August 5, 2021 when he was promoted to serve as Vice President. In connection with this appointment, Nie resigned from his position as COO.

17.     Defendant Jing Shan  ("Shan") served as COO starting on August 5, 2021.

18.     Defendant Tieling Liu ("Liu") served as a Director since 2013.

19.     Defendant Jing Wang (Wang") served as a Director since 2007.

20.     Defendants Jie, Cao, Zkang, Pan, Xiaohuan, Nie, Shan, Liu, and Wang are collectively referred to herein as the "Individual Defendants."

21.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

22.     Singularity is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

23.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Singularity under *respondeat superior* and agency principles.

24.     Defendant Singularity and the Individual Defendants are collectively referred to herein as "Defendants."

5

**SUBSTANTIVE ALLEGATIONS**
**Materially False and Misleading**
**Statements Issued During the Class Period**

25.     On February 12, 2021, the Company filed its Form 10-Q for the quarter ended

December 31, 2020 with the SEC. The Form 10-Q was signed and separately certified by both

Cao and Pan pursuant to the Sarbanes-Oxley Act of 2002 attesting to the accuracy and

truthfulness of the information contained therein.

26.     The February 12, 2021 Form 10-Q downplayed the serious issues with the

Company's internal controls by stating the following, in pertinent part:

Item 4. Controls and Procedures

Evaluation of Disclosure Controls and Procedures

We maintain controls and procedures designed to ensure that information required
to be disclosed by the issuer in the reports that it files or submits under the Act (15
U.S.C. 78a et seq.) is recorded, processed, summarized and reported, within the
time periods specified in the Securities and Exchange Commission's rules and
forms. Disclosure controls and procedures include, without limitation, controls and
procedures designed to ensure that information required to be disclosed by an issuer
in the reports that it files or submits under the Act is accumulated and
communicated to the issuer's management, including its principal executive and
principal financial officers, or persons performing similar functions, as appropriate
to allow timely decisions regarding required disclosure.

As of December 31, 2020, we carried out an evaluation, under the supervision of
and with the participation of its management, including our Chief Executive Officer
and Acting Chief Financial Officer, of the effectiveness of the design and operation
of our disclosure controls and procedures. Based on the foregoing evaluation, Chief
Executive Officer and Acting Chief Financial Officer concluded that our disclosure
controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the
Securities Exchange Act of 1934, as amended (the "Exchange Act")) were not
effective and adequately designed to ensure that the information required to be
disclosed by us in the reports it files or submits under the Exchange Act is recorded,
processed, summarized and reported within the time periods specified in the
applicable rules and forms, and that such information was accumulated and
communicated to the management, including Chief Executive Officer and Acting
Chief Financial Officer, in a manner that allowed for timely decisions regarding
required disclosure. The assessment stemmed from the following material
weaknesses –

- Lack of segregation of duties for accounting personnel who prepared and reviewed the journal entries; and

- Lack of a full time U.S. GAAP personnel in the accounting department to monitor the recording of the transactions.

Changes in Internal Control over Financial Reporting.

There were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) during the three months ended December 31, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

27.     On May 13, 2021, the Company filed its Form 10-Q for the quarter ended March 31, 2021 with the SEC. The Form 10-Q was signed and separately certified by both Cao and Pan pursuant to the Sarbanes-Oxley Act of 2002 attesting to the accuracy and truthfulness of the information contained therein.

28.     The May 13, 2021 Form 10-Q downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part:

Item 4. Controls and Procedures

Evaluation of Disclosure Controls and Procedures

We maintain controls and procedures designed to ensure that information required to be disclosed by the issuer in the reports that it files or submits under the Act (15 U.S.C. 78a et seq.) is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include, without limitation, controls and procedures designed to ensure that information required to be disclosed by an issuer in the reports that it files or submits under the Act is accumulated and communicated to the issuer's management, including its principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.

As of March 31, 2021, we carried out an evaluation, under the supervision of and with the participation of its management, including our Chief Executive Officer and Acting Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures. Based on the foregoing evaluation, Chief Executive Officer and Acting Chief Financial Officer concluded that our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended

7

(the "Exchange Act")) were not effective and adequately designed to ensure that the information required to be disclosed by us in the reports it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the applicable rules and forms, and that such information was accumulated and communicated to the management, including Chief Executive Officer and Acting Chief Financial Officer, in a manner that allowed for timely decisions regarding required disclosure. The assessment stemmed from the following material weaknesses –

- Lack of segregation of duties for accounting personnel who prepared and reviewed the journal entries; and

- Lack of a full time U.S. GAAP personnel in the accounting department to monitor the recording of the transactions.

Changes in Internal Control over Financial Reporting.

There were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) during the three months ended March 31, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

29.     On September 29, 2021, the Company filed with the SEC its Form 10-K for the fiscal year ended June 30, 2021 (the "2021 Annual Report") which was signed and separately certified by both Cao and Pan pursuant to the Sarbanes-Oxley Act of 2002—attesting to the accuracy and truthfulness of the information contained therein. The 2021 Annual Report was also signed by Cao, Pan, Shan, Wang, Xiaohuan, Liu, and Zhikang attesting to the accuracy and truthfulness of the information contained therein.

30.     The 2021 Annual Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part:

**Item 9A. Controls and Procedures**

**Management's Annual Report on Internal Control over Financial Reporting**

The Company's management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934, as amended. The Company's internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial

reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. The Company's internal control over financial reporting includes those policies and procedures that:

- pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets;

- provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP, and that the Company's receipts and expenditures are being made only in accordance with the authorization of its management and directors; and

- provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

As of June 30, 2021, the Company carried out an evaluation, under the supervision of and with the participation of its management, including the Company's Chief Executive Officer and Acting Chief Financial Officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based on the foregoing evaluation, Chief Executive Officer and Acting Chief Financial Officer concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act were not effective to ensure that the information required to be disclosed by the Company in the reports it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the applicable rules and forms due to ineffective internal controls over financial reporting that stemmed from the following material weaknesses for the year ended and as of June 30, 2021:

- Lack of segregation of duties for accounting personnel who prepared and reviewed the journal entries in some of the subsidiaries within the consolidation, lack of supervision, coordination and communication of financial information between different entities within the Group;

- Lack of a full time U.S. GAAP personnel in the accounting department to monitor the recording of the transactions;

- Lack of resources with technical competency to address, review and record non-routine or complex transactions under U.S. GAA

- Lack of management control reviews of the budget against actual with analysis of the variance with a precision that can be explained through the analysis of the accounts.

A material weakness is a deficiency, or a combination of deficiencies, within the meaning of PCAOB Auditing Standard AS 2201, in internal control over financial reporting, such

that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

In order to remediate the material weaknesses stated above, we intend to explore implementing additional policies and procedures, which may include:

- Hiring additional accounting staff to report the internal financial timely;

- Reporting other material and non-routine transactions to the Board and obtain proper approval;

- Recruiting additional qualified professionals with appropriate levels of U.S. GAAP knowledge and experience to assist in resolving accounting issues in non-routine or complex transactions;

- Improving internal audit function, internal control policies and monitoring controls including but not limit to the review and supervision of common stock issuance procedures;

- Developing and conducting U.S. GAAP knowledge, SEC reporting and internal control training to senior executives, management personnel, accounting departments and the IT staff, so that management and key personnel understand the requirements and elements of internal control over financial reporting mandated by the U.S. securities laws; and

- Setting up budgets and developing expectations based on understanding of the business operations, compare the actual results with the expectations periodically and document the reasons of the fluctuations with further analysis. This should be done by CFO and reviewed by CEO, communicated with the Board.

**Changes in Internal Control over Financial Reporting**

There has been no change in our internal control over financial reporting that occurred during the year ended June 30, 2021 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

31.    On November 1, 2021, the Company filed with the SEC its Form 8-K signed by Jie.

32.    The November 1, 2021 Form 8-K failed to disclose, among other things, Jie's true educational background, that he had an outstanding arrest warrant in China, committed forgery, became the largest shareholder and VP of Finance for a Nasdaq-listed lending company, China

Commercial Credit ("CCC") which failed after reporting massive losses, by stating the

following, in pertinent part:

> **Item 5.02 Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**
>
> (c) On November 1, 2021, the Nominating/Corporate Governance Committee of the Board nominated and the Board appointed Mr. Yang Jie as the Registrant's new CEO. Mr. Yang Jie, 37 years old, is presently serving as the Vice President of the Registrant. Mr. Yang Jie started his work with the Registrant from January 2021. From November 2016 to June 2021, Mr. Yang Jie served as the General Manager of China Commercial Credit, Inc. Mr. Yang Jie holds a Bachelor's degree in Business Management from Beijing Finance and Trade Technology College.The Compensation Committee approved the terms of the employee agreement between the Registrant and Mr. Yang Jie in substantially the form attached hereto as Exhibit 10.1. The employment agreement between the Registrant and Mr. Yang Jie provides for a five-year term that extends automatically in the absence of notice of non-renewal provided at least 30 days prior to the anniversary of the agreement. Mr. Yang Jie's salary is $500,000 per year. Mr. Yang Jie has no family relationship with any director or executive officer of the Registrant or any person nominated or chosen by the Registrant to become a director or executive officer, but Mr. Yang Jie's wife, Ms. Xiaohuan Huang, was the former independent director of the Registrant. Mr. Yang Jie has had (i) no direct or indirect material interest in any transaction or series of similar transactions contemplated by Item 404(a) of Regulation S-K and, (ii) as of the date of this current report on Form 8-K (this "Report"), Mr. Yang Jie holds no direct ownership in the Registrant's stock or rights to acquire the Registrant's stock, but Mr. Yang Jie's wife, Ms. Xiaohuan Huang, the former independent director of the Registrant, holds 20,000 shares of the Registrant's stock.

33.      On November 12, 2021, the Company filed with the SEC its periodic report on

Form 10-Q for the quarter ended September 30, 2021. The Form 10-Qwas signed and separately

certified by both Cao and Pan pursuant to the Sarbanes-Oxley Act of 2002—attesting to the

accuracy and truthfulness of the information contained therein.

34.      The November 12, 2021 10-Q downplayed the serious issues with the Company's

internal control by stating the following, in pertinent part:

.

**Item 4.  Controls  and  Procedures  Evaluation  of  Disclosure  Controls  and**

**Procedures**

We maintain controls and procedures designed to ensure that information required to be disclosed by the issuer in the reports that it files or submits under the Act (15 U.S.C. 78a et seq.) is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include, without limitation, controls and procedures designed to ensure that information required to be disclosed by an issuer in the reports that it files or submits under the Act is accumulated and communicated to the issuer's management, including its principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. As of September 30, 2021, we carried out an evaluation, under the supervision of and with the participation of its management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures. Based on the foregoing evaluation, Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act")) were not effective and adequately designed to ensure that the information required to be disclosed by us in the reports it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the applicable rules and forms, and that such information was accumulated and communicated to the management, including Chief Executive Officer and Chief Financial Officer, in a manner that allowed for timely decisions regarding required disclosure. The assessment stemmed from the following material weaknesses –

- Lack of segregation of duties for accounting personnel who prepared and reviewed the journal entries; and

- Lack of a full time U.S. GAAP personnel in the accounting department to monitor the recording of the transactions.

Changes in Internal Control over Financial Reporting. There were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) during the three months ended September 30, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

35.     On November 19, 2021, the Company filed with the SEC its Form 8-K signed by

Jie.

36.     The November 19, 2021 Form 8-K failed to disclose Singularity's newly-elected

Director John Levy's prior tenure from January 2013 through December 2016 as a director of CCC

12

which failed amidst detailed allegations that Jie, when he was an executive and shareholder in

CCC, misappropriated assets, by stating the following, in pertinent part:

> **Item 5.02 Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**
>
> (d) On November 18, 2021, the Registrant elected Mr. John F. Levy as an Independent Director, Chairperson of the Compensation Committee, a member of Nominating/Corporate Governance Committee, and a member of the Audit Committee, effective from November 18, 2021 until the Registrant's annual meeting of the shareholders in 2022, and a successor has been duly elected and qualified or until his earlier resignation, removal from office, death or incapacity.
>
> Mr. Levy, 66 years old, is the Chief Executive Officer, board advisory of Westfield, NJ, a consulting firm. From September 2019 to April 2020, he served as the Chief Executive Officer of Sticky Fingers Restaurants, LLC. Mr. Levy currently serves on the board of directors of two other public companies: Applied Minerals, Inc., New York, NY(AMNL.OB); and Happiness Biotech Group Ltd., which is a company listed on Nasdaq Capital Market(NASDAQ: HAPP). From June 2016 to October 2021, Mr. Levy served as board member and Chair of Audit Committee of Washington Prime Group, Inc.(NYSE: WPG), which filed for protection under Chapter 11 of the United States Bankruptcy Code on June 13, 2021 and emerged from bankruptcy protection on October 21, 2021. He also served as board member and Chair of Governance Committee of Takung Art Co., Ltd.(OTCQB:TKAT), from March 2016 to June 2019. Mr. Levy is a Certified Public Accountant, and Mr. Levy is a graduate of the Wharton School of Business at the University of Pennsylvania, he received his MBA from St. Joseph's University in Philadelphia, Pennsylvania.
>
> The Board has determined Mr. John F. Levy is deemed to be independent under the definition provided by NASDAQ Listing Rule 5605(a)(2).
>
> Mr. Levy has (i) no arrangements or understandings with any other person pursuant to which he was appointed as a director, and (ii) no family relationship with any director or executive officer of the Registrant or any person nominated or chosen by the Registrant to become a director or executive officer.

37.     On January 11, 2022, the Company filed with the SEC its Form 8-K signed by Jie.

38.     The January 11, 2022 Form 8-K failed to disclose that the Company's purchase and sale with SOS Information Technology New York Inc. ("SOS") (where Jie's wife was Vice President) was a material related party transaction by stating the following, in pertinent part:

**New sales agreement**

On January 10, 2022, the Company's joint venture, Thor Miner Inc ("Thor"), entered into a Purchase and Sale Agreement with SOS Information Technology New York Inc. (the "Buyer"). Pursuant to the Purchase and Sale Agreement, Thor agreed to sell and the Buyer agreed to purchase certain cryptocurrency mining hardware and other equipment. The total amount of the Purchase and Sale Agreement is $200,000,000. Thor and the Buyer agreed that the Buyer shall make payment equal to 50% of the total purchase price within 5 days after the execution of the Purchase and Sale Agreement, and the remaining 50% for each order shall be paid at least seven (7) calendar days before the shipment.

39.     On February 14, 2022, Singularity filed its Form 10-Q results for the quarter ended December 31, 2021. The Form 10-Q was signed and separately certified by Jie and Pan pursuant to the Sarbanes-Oxley Act of 2002—attesting to the accuracy and truthfulness of the information contained therein.

40.     The February 14, 2022 Form 10-Q downplayed the serious issues with the Company's internal controls, by stating the following, in pertinent part:

**Item 4. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

We maintain controls and procedures designed to ensure that information required to be disclosed by the issuer in the reports that it files or submits under the Act (15 U.S.C. 78a et seq.) is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include, without limitation, controls and procedures designed to ensure that information required to be disclosed by an issuer in the reports that it files or submits under the Act is accumulated and communicated to the issuer's management, including its principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.

As of December 31, 2021, we carried out an evaluation, under the supervision of and with the participation of its management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures. Based on the foregoing evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act")) were not effective and adequately designed to ensure that the information required to be disclosed by us in the reports we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the applicable rules and forms, and that such information was accumulated and communicated to the management, including Chief Executive Officer and Chief Financial Officer, in a manner that allowed for timely decisions regarding required disclosure. The assessment stemmed from the following material weaknesses –

- Lack of segregation of duties for accounting personnel who prepared and reviewed the journal entries; and

- Lack of a full time U.S. GAAP personnel in the accounting department to monitor the recording of the transactions.

We have taken certain actions to remediate the material weakness related to our lack of U.S. GAAP experience. We have engaged an outside CPA firm with U.S. GAAP knowledge and SEC reporting experience to supplement our current internal accounting personnel and assist us in the preparation of our financial statements to ensure that our financial statements are prepared in accordance with U.S. GAAP.

**Changes in Internal Control over Financial Reporting.**

There were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) during the three months ended December 31, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

41.     The February 14, 2022 Form 10-Q also failed to disclose a material related party transaction with Rich Trading, whose CEO was Nie and whose wife Pan was Singularity's CFO, by stating the following, in pertinent part:

**Note 5. OTHER RECEIVABLES, NET**

The Company's other receivables are as follows:
…

15

**As of December 31, 2021, the Company entered into a project cooperation agreement with Rich Trading Co. Ltd USA ("Rich Trading") for trading of computer equipment. According to the agreement, the Company is to invest $4.5 million in the trading business operated by Rich Trading and the Company will be entitled to 90% of profit generated by the trading business. As of December 31, 2021, the Company has advanced $3,299,815 for this project.

42.     The statements contained in ¶¶ 25-41 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose, among other things: (1) Jie's true educational background, that he had an outstanding arrest warrant in China, committed forgery, and was the largest shareholder and VP of Finance for a Nasdaq-listed lending company, CCC, which failed after reporting massive losses; (2) material related party transactions with SOS and Rich Trading; (3) Director John Levy's prior tenure from January 2013 through December 2016 as a director of CCC which failed amidst detailed allegations that Jie, when he was an executive and shareholder in CCC, misappropriated assets; and (4) the Company lacked adequate internal controls and as a result had a heightened risk of scrutiny and ultimately was subject to a United States Attorney's Office for the Southern District of New York and SEC investigation and action as well as a potential delisting by NASDAQ.

## THE TRUTH BEGINS TO EMERGE

43.     On May 5, 2022, Hindenburg Research issued its Report about Singularity entitled "Singularity Future Technology: This Nasdaq-Listed Company's CEO Is A Fugitive, On The Run For Allegedly Operating A Massive Ponzi Scheme". The Report disclosed that Defendants made false and/or misleading statements and/or failed to disclose, among other things:

(a)  Jie's true educational background, that he had an outstanding arrest warrant in China, committed forgery, was the largest shareholder and VP of Finance, for a Nasdaq-listed lending company, CCC, which failed after reporting massive losses;

(b)  material related party transactions with SOS and Rich Trading;

(c) independent director John Levy's long tenure as a director of CCC, a Nasdaq-listed company, that failed amidst detailed allegations that Jie misappropriated assets and;

(d) the Company lacked adequate internal controls and as a result had a heightened risk of  scrutiny and ultimately was subject to a United States Attorney's Office for the Southern District of New York and SEC investigation and action as well as a potential delisting by NASDAQ.

44.     On this news, Singularity's stock fell 40.63% to close at $4.80 per share on May 5, 2022 on unusually heavy trading volume, damaging investors. It fell further on May 6, 2022 13.21% to close at $4.24 per share.

45.     On May 25, 2022, Singularity filed with the SEC its Form 8-K signed by Pan.

46.     The May 25, 2022 Form 8-K downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part:

**Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

On May 24, 2022, Singularity Future Technology Ltd. (the "Company") received a delinquency notification letter (the "Letter") from the Listing Qualifications Department of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Company that due to the delay in filing the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2022 (the "Form 10-Q"), the Company is not in compliance with Nasdaq Listing Rule 5250(c)(1), which requires listed companies to timely file all periodic financial reports with the Securities and Exchange Commission (the "SEC").

The Letter states that, the Company has 60 calendar days to submit a plan addressing how it intends to regain compliance with Nasdaq's listing rules and, if

17

Nasdaq accepts the Company's plan, it may grant an extension of up to 180 calendar days from the original filing due date of the Form 10-Q, or until November 21, 2022, to regain compliance.

The Company's management is working diligently to complete the Form 10-Q and intends to file the Form 10-Q as soon as practicable to regain compliance with the Nasdaq Listing Rule.

47.     On October 7, 2022, Singularity filed with the SEC its Form 8-K signed by Shan.

48.     The October 7, 2022 Form 8-K provided partial disclosure of issues with the

Company's internal controls by reporting a potential delisting by NASDAQ, stating the following,

in pertinent part:

**Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

On October 3, 2022, Singularity Future Technology Ltd. (the "Company") received a notice (the "Notice") from the Listing Qualifications Department of The Nasdaq Stock Market LLC ("Nasdaq"), advising that the Company's securities would be subject to delisting unless the Company timely requests a hearing before a Nasdaq Hearings Panel (the "Panel"). Accordingly, the Company intends to timely request a hearing before the Panel. The hearing request will stay any delisting or suspension action through October 25, 2022. Pursuant to the Nasdaq Listing Rules, in connection with the hearing request, the Company will request that the automatic stay be extended through the conclusion of the hearings process and the expiration of any additional extension period granted by the Panel following the hearing.

As previously disclosed in the Company's Form 8-K filed with the SEC on May 25, 2022, on May 24, 2022, the Company received a delinquency notice from Nasdaq indicating that the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) due to the delay in filing its Quarterly Report on Form 10-Q for the quarter ended March 31, 2022, and was provided 60 days to submit a plan to regain compliance. On July 25, 2022, and September 14, 2022, the Company submitted its plan to regain compliance and supplementary information related to the plan, respectively (collectively, the "Compliance Plan").

Based on the review of the Compliance Plan as well as telephone conversations with outside counsel to the Company and counsel to the Company's special committee of the board of directors, the Staff has determined that the Company did not provide a definitive plan evidencing its ability to file the Quarterly Report on Form 10-Q for the quarter ended March 31, 2022 and the Annual Report on Form 10-K for the fiscal year ended June 30, 2022 (collectively, the "Reports") within the 180 calendar day period available to the Staff under the Nasdaq Listing Rules..

Specifically, the delisting determination referenced several aspects of the Compliance Plan that raise substantial doubts about the Company's ability to regain compliance: (i) the unreasonably short timeframe for the Company to file the Reports based on the anticipated timeframe the Company's special committee of the board of directors needs to substantially complete its investigation; (ii) the Company's ability to engage a new independent registered public accounting firm; and (iii) the departure of both the Company's Chief Executive Officer and Chief Financial Officer.

While the Company intends to make every effort to maintain its listing, there can be no assurance that the Panel will grant the Company's request for an extended stay or request for continued listing, nor can there be any assurance that the Company will ultimately regain compliance with all applicable requirements for continued listing.

49.     On this news, on October 7, 2022, Singularity's stock fell 11.79% to close at $2.29 per share, damaging investors.

50.     On November 16, 2022, Singularity filed with the SEC its Form 8-K signed by Shan.

51.     The November 16, 2022 Form 8-K disclosed governmental investigations of Singularity related to the claims raised by Hindenburg Research on May 5, 2022 and other related matters. It stated, in pertinent part:

**Item 8.01 Other Events.**

Press Release:
Singularity Future Technology Announces Update Related to Special Committee Investigation

Great Neck, N.Y., November 16, 2022 – Singularity Future Technology Ltd. ("Singularity" or the "Company") (Nasdaq: SGLY) announced an update with respect to the Company's business and other matters.

The Company has received subpoenas from the United States Attorney's Office for the Southern District of New York and the United States Securities and Exchange Commission. The Company is complying with these subpoenas and fully cooperating with these governmental entities. Additionally, the special Committee of the Company's Board of Directors is continuing to investigate the claims raised by Hindenburg Research on May 5, 2022 and other related matters.

The special committee anticipates that the fact-finding portion of investigation will be completed on or before December 31, 2022.

52.     On this news, on November 16, 2022, Singularity's stock fell 22.97% to close at $2.09 per share on unusually heavy trading volume, damaging investors. It fell further on November 17, 2022 84.96% to close at $1.13 per share.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons other than Defendants who acquired Singularity securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Singularity, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Singularity securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Singularity;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Singularity to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Singularity securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual

litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

59.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Singularity shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- As a public issuer, Singularity filed periodic public reports;

- Singularity regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Singularity securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Singularity was followed by securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

60.     Based on the foregoing, the market for Singularity securities promptly digested current information regarding Singularity from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Singularity securities during the Class Period.

66.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Singularity were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public;

and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Singularity, their control over, and/or receipt and/or modification of Singularity's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Singularity, participated in the fraudulent scheme alleged herein.

67.     Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Singularity personnel to members of the investing public, including Plaintiff and the Class.

68.     As a result of the foregoing, the market price of Singularity securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Singularity securities during the Class Period in purchasing Singularity securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

69.     Had Plaintiff and the other members of the Class been aware that the market price of Singularity securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Singularity securities at the artificially inflated prices that they did, or at all.

70.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

71.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Singlarity securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

72.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     During the Class Period, the Individual Defendants participated in the operation and management of Singularity, and conducted and participated, directly and indirectly, in the conduct of Singularity's business affairs. Because of their senior positions, they knew the adverse non-public information about Singularity's false financial statements.

74.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Singularity's financial condition and results of operations, and to correct promptly any public statements issued by Singularity which had become materially false or misleading.

75.     Because of their positions of control and authority as senior officers or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Singularity disseminated in the marketplace during the Class Period concerning Singularity's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Singularity to engage in the wrongful

acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Singularity within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Singularity securities.

76.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Singularity.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 9, 2022          **THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

27