

500 Fifth Avenue
50th Floor
New York, New York 10110

T +1 212 319 4755

www.kwm.com

September 15, 2023

Via ECF

Honorable Brian M. Cogan, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Sen Gao, et al. v. Singularity Future Technology, Ltd. f/k/a Sino-Global Shipping America Ltd., et al.*
            **Case No. 1:22-cv-07499**

Dear Judge Cogan:

      This Firm represents Defendant Mr. Lei Cao.  Pursuant to Local Civil Rule 7.1(d) and Section III(A)(2) of Your Honor's Individual Practices, we join Defendant Singularity Future Technology Ltd. ("Singularity") and other co-defendants and write to request a pre-motion conference regarding Defendants' motions to dismiss the Corrected Amended Class Action Complaint ("CAC").

      Plaintiffs purport to bring a class action lawsuit on behalf of purchasers of Singularity securities between February 2, 2021, and February 24, 2023, for claims of securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.  These claims are primarily based on the assertion that Singularity, along with the individual Defendants, orchestrated a scheme to create the false impression that the company was transitioning from its shipping and logistics operations to the emerging cryptocurrency market.  The CAC against Mr. Cao should be dismissed for the following reasons.

      ***Failure to Allege a Materially False or Misleading Statement or Omission by Mr. Cao.*** As a preliminary matter, Plaintiffs' entire case is not based on any factual allegations, but rather "information and belief" gathered principally from Singularity's SEC filings and "press releases and media reports," "publicly available information concerning" Defendants, "consultation with experts," "review and analysis of analyst reports" by Hindenburg Research and Peabody Street Research, and "court filings" in other cases.  *See* CAC, p. 1.  To the extent Plaintiffs allege that they also relied on "interviews of confidential witnesses in the U.S. and China," the CAC contains just two paragraphs discussing limited interactions between Confidential Witness 1 ("CW 1") and Defendant Yang Jie.  *See* CAC, ¶¶ 82-83.  However, these paragraphs merely provide conclusory statements, such as that it is CW 1's belief that "Jie was engaged in fraud" and that the franchising business was growing "in a way that constituted illegal fundraising."  *Id.*  However, the CAC does not provide any factual details about CW 1's "beliefs" and otherwise makes no reference to any actual confidential witness statements, nor does it contain any confidential source materials that corroborate Plaintiffs' allegations against Mr. Cao.  The CAC's reliance on uncorroborated public filings and reports concerning Mr. Cao, without more, do not discharge Plaintiffs' pleading burden.  *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015) (SEC orders quoted in the complaint "are in the nature of allegations 'upon information and belief,' which cannot ordinarily form the basis of a fraud claim 'except as to matters peculiarly within the opposing party's knowledge'").



The CAC further fails to mention any false and misleading statements by Mr. Cao. It relies exclusively on Singularity's SEC filings made between February and October 2021 and bore Mr. Cao's signature as the then-CEO. *See, e.g.*, CAC ¶¶ 95, 97, 99-101, 104, 107, 109, 138-140, 146-47. However, these challenged statements all relate to Singularity's promotion of the launch of its cryptocurrency business and therefore, constitute nonactionable forward-looking statements and puffery.[1]

These statements are forward-looking statements protected by the Private Securities Litigation Reform Act's safe harbor provision. *See, e.g.*, CAC ¶¶ 95, 104, 138-140, 146-47. Other than indicating that these statements were contained in Singularity's periodic public filings and signed by Mr. Cao, the CAC fails to establish that these statements were made or approved by Mr. Cao with actual knowledge that they were false or misleading. *See, e.g., Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 289 (S.D.N.Y. 2020) (to preclude application of the safe harbor protection, "plaintiff must plead facts supporting a strong inference of scienter that is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent'"); *Gissin v. Endres*, 739 F. Supp. 2d 488, 502 (S.D.N.Y. 2010) ("Liability under the actual knowledge prong of the safe harbor 'attaches only upon proof of knowing falsity'—a showing of recklessness is insufficient"). In contrast, these statements are "merely vague expressions of optimism or puffery" that are immaterial and not actionable. *See Gissin*, 739 F. Supp. 2d at 502; *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F.Supp.2d 348, 358 (S.D.N.Y.2006) (statements in SEC filings such as "Wholesale Banking is in very good shape as it moves into its next stage of development," found to be "inactionable as general statements of optimism"). These statements—in particular, those pertaining to the cryptocurrency market as well as its recent trends—are further protected by the truth-on-the-market doctrine as they barely relay information that was readily accessible by investors on the market. *See Gissin*, 739 F. Supp. 2d at 502.

***Failure to Plead Scienter with Particularity.***  The CAC must also be dismissed as to Mr. Cao for the independent reason that it fails to plead a strong inference of scienter. Scienter requires a showing of intent to "deceive, manipulate, or defraud," or reckless conduct. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). None is present here. In determining whether a plaintiff has alleged facts that give rise to a "strong inference" of scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct" as well as "take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310, 127 S. Ct. 2499, 2502 (2007). "The inference that the defendant acted with scienter need not be irrefutable, but it must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Id*.

The CAC is devoid of any particularized allegation that Mr. Cao had "both motive and opportunity to commit the fraud," nor does it present any "strong circumstantial evidence of conscious misbehavior or recklessness," which are typically required to satisfy the scienter element. *See ATSI*, 493 F.3d at 99. Moreover, the CAC does not allege that Mr. Cao acted with the requisite level of knowledge in approving Singularity's public filings or that Mr. Cao obtained any form of financial gain as a result of the publication of the allegedly false and misleading statements, for example, by selling his Singularity shares—even though the CAC makes repeated references to "artificially inflated prices" of Singularity

---

[1] To the extent some statements contained in Singularity's public filings and signed by Mr. Cao concern the closing of private offerings and a purchase order to buy 2,783 digital currency operation servers, those statements were substantially true when made and, in any event, the CAC fails to plead that Mr. Cao signed or approved those statements with actual knowledge that they were false or misleading.



stock.  *See* CAC, ¶ 266.  To the contrary, the CAC acknowledges that Mr. Cao "agreed to forfeit and return to [Singularity] the 600,000 shares of common stock."  *Id.* at ¶ 237.

***Failure to Allege Loss Causation.*** The CAC further fails to show loss causation, i.e., "the causal link between the alleged misconduct and the economic harm ultimately suffered." *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).  Contrary to Plaintiffs' assertion that the loss was foreseeable and caused by Defendants' alleged misconduct, an analysis of Singularity's historical stock price reveals that the fluctuations were not attributable to alleged misstatements or omissions, but rather a result of the broader market's reaction to the volatile developments within the cryptocurrency industry.

***The CAC Fails to Plead Control Personal Liability against Mr. Cao.*** Plaintiffs cannot establish control person liability in the absence of a primary violation by Singularity.  *See ATSI*, 493 F.3d at 108 ("[The plaintiff] fails to allege any primary violation; thus, it cannot establish control person liability.")  More important, the CAC cannot demonstrate that Mr. Cao had the requisite level of authority to even be a part of the alleged fraudulent scheme because the majority of the actions related to the alleged fraudulent scheme took place after November 1, 2021 and, therefore, occurred after Mr. Cao resigned from his position as the CEO of Singularity.  *See* CAC, ¶ 21.  Thus, the relevant events cited in the CAC occurred after Defendant Jie became the new CEO.  *See Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F.Supp.2d 41, 61 (E.D.N.Y. 2011) (corporate officers "cannot be liable as control persons for the period after they left the Company").

To the extent Plaintiffs' allegations rely on limited SEC filings containing Mr. Cao's signature, those allegations are insufficient to plead control person liability as they "focus exclusively" on Mr. Cao's status as the former CEO of Singularity "rather than [his] exercise of actual control over the matters at issue."  *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (rejecting allegations that CEO of accompany had control over putative violators and their misstatements "by virtue of his high-level positions," his "awareness of [defendants'] operations," and his "intimate knowledge of the statements filed . . . with the SEC" where the complaint contained no allegations that the CEO "signed, drafted, approved, or confirmed a misleading statement," or that he "ordered or encouraged" putative defendants to sign a misleading statement); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017) (finding allegation that executive board members of company were all responsible for all necessary corporate functions, including public filings, was insufficient to plead that former CEO had control over company's allegedly false and misleading SEC filings, absent any concrete allegations regarding CEO's actual control of, or role with respect to, SEC filings).

DATED: September 15, 2023
       New York, New York

Respectfully submitted,

**KING & WOOD MALLESONS LLP**

By: /s/ *Andrew Sklar*
     Andrew Sklar
     Aaron Wolfson
     *Attorneys for Defendant Lei Cao*