**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEN GAO, CONGLI HUO, RUIBIN WANG, LUXIAO XU, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., and GOLDEN MAINLAND, INC. <br><br> Defendants. | **Case No.: 22-cv-07499-BMC** |

**DEFENDANT JOHN LEVY'S MEMORANDUM OF LAW IN**
**SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS'**
**SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................................... 2

III.  ARGUMENT .................................................................................................................. 5

      A.    Legal Standard ................................................................................................... 5

      B.    Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10B-5 ................... 7

            1.    Plaintiffs Fail to Plead That Levy Acted With Scienter ............................ 8

            2.    Claims Against Levy Must Be Dismissed Because He Did
                  Not "Make" Any Allegedly False or Misleading Statements ................... 15

            3.    Plaintiffs Fail to Allege the At-Issue Statements Are False
                  or Misleading ......................................................................................... 16

            4.    Plaintiffs Fail to Plead Loss Causation ................................................... 19

      C.    Plaintiffs Fail to State a Section 20(a) Claim Against Levy ................................ 20

IV.   CONCLUSION ............................................................................................................. 22

**TABLE OF AUTHORITIES**

**Cases**

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ............................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 5, 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ................................. 1, 7, 9

*Behrendsen v. Yangtze River Port & Logistics, Ltd.*, No. 19 Civ. 00024, 2021 U.S.
    Dist. LEXIS 120264 (E.D.N.Y. June 28, 2021) ................................................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 5, 6

*C.D.T.S. No. 1 v. UBS AG*, No. 12 Civ. 4924, 2013 U.S. Dist. LEXIS 175757
    (S.D.N.Y. Dec. 13, 2013) ................................................................................................. 15

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423
    F.Supp.2d 348 (S.D.N.Y. 2006) ....................................................................................... 17

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982) ........................................... 13

*Dura-Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ............................................................ 21

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. J.P. Morgan Chase Co.*, 553
    F.3d 187 (2d Cir. 2009) ................................................................................................. 8, 9

*Fogel v. Wal-Mart de Mexico SAB De CV*, No. 13 Civ. 2282, 2017 U.S. Dist.
    LEXIS 26976 (S.D.N.Y. Feb. 27, 2017) ........................................................................... 13

*Gissin v. Endres*, 739 F. Supp. 2d 488 (S.D.N.Y. 2010) ....................................................... 17

*Golla v. Neovasc, Inc.*, 22-cv-361, 2023 U.S. App. LEXIS 5870 (2d Cir. Mar. 13,
    2023) ............................................................................................................................... 9

*Harris v. Am Tr. Fin. Servs., Inc.*, 135 F. Supp. 3d 155 (S.D.N.Y. 2015) .............................. 21

*Hart v. Internet Wire. Inc.*, 145 F. Supp.2d 360 (S.D.N.Y. 2001) ......................................... 9

*In re Adient PLC Sec. Litig.*, No. 18 Civ. 9116, 2020 U.S. Dist. LEXIS 58730
    (S.D.N.Y. Apr. 2, 2020) ................................................................................................... 17

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111
    (S.D.N.Y. 2021) ............................................................................................................... 15

*In re Aphria Sec. Litig.*, No. 18 Civ. 11376, 2020 U.S. Dist. LEXIS 181054
    (S.D.N.Y.  Sept. 30, 2020) ............................................................................................... 7

*In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008)..........................................15

*In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564 (S.D.N.Y. 2013) ...........................................................................................................................9

*In re BioScrip, Inc. Secs. Litig.*, No. 13 Civ. 6922, 2015 U.S. Dist. LEXIS 46763 (S.D.N.Y. Mar. 31, 2015) ........................................................................................20

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005)..........................................14

*In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731 (S.D.N.Y)........................................18

*In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36 (2d Cir. 2000)..................................10

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..........................12

*In re DraftKings Inc. Sec. Litig.*, No. 21 Civ. 5739, 2023 U.S. Dist. LEXIS 4519 (S.D.N.Y. Jan. 10, 2023) .........................................................................................18

*In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006) ................................9

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) .........................................................................................................................18

*In re Omnicom Grp. Inc. Sec. Litig*, 541 F. Supp. 2d 546 (S.D.N.Y. 2008)....................19

*In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ 1691, 2018 U.S. Dist. LEXIS 56897 (S.D.N.Y. Mar. 30, 2018) ...........................................................................13

*In re Sotheby's Holdings, Inc.*, No. 00 Civ.1041, 2000 U.S. Dist. LEXIS 12504 (S.D.N.Y. Aug. 31, 2000)..........................................................................................13

*In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449 (S.D.N.Y. Sept. 28, 2012) ..................................................................................2, 16

*In re Ultimate Corp. Sec. Litigation*, No. 86 Civ 5944, 1989 U.S. Dist. LEXIS 7629 (S.D.N.Y. June 30, 1989) ..................................................................................20

*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ...........................................18

*In re WebMD Health Corp. Sec. Litig.*, No. 11 Civ 5382, 2013 U.S. Dist. LEXIS 1512 (S.D.N.Y. Jan. 2, 2013) ...................................................................................17

*In re Xunlei Ltd. Sec. Litig.*, No. 18 Civ. 467, 2019 U.S. Dist. LEXIS 154010 (S.D.N.Y. Sept. 10, 2019) ........................................................................................19

*Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69 (2d Cir. 1995)...................................7

*Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ..................15, 16

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ................................................................ 9

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) .............................................. 7

*Lipow v. Net1 UEPS Techs.*, 131 F. Supp. 3d 144 (S.D.N.Y. 2015) ............................... 12

*Lopez v. CTPartners Exec. Search, Inc.*, 173 F. Supp. 3d 12 (S.D.N.Y. 2016) ............. 18

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ........................................ 10

*McAllister v. Metro. Transit Auth.*, No. 13 Civ. 2060, 2013 U.S. Dist. LEXIS
    120996 (E.D.N.Y. Aug. 26, 2013) ............................................................................ 6

*Miao v. Fanhua*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020) .......................................... 14, 15

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ...................................... 12

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ............................... 6

*Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002) ............................................................ 18

*Rolf v. Blyth Eastman Dillon & Co.*, 570 F.2d 38 (2d Cir. 1978) ................................ 10

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ..................................................... 8, 16

*Ross v. AH Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ................................................... 21

*San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ...................................................................................... 9

*Shields v. Citytrust Bancorp.*, 25 F.3d 1124 (2d Cir. 1994) ................................... 12, 21

*Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019) ........................................................ 7

*Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) ................................................ 15

*Stratte-McClure v. Stanley*, 598 F. App'x. 25 (2d Cir. 2015) ....................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...................... *passim*

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ............................................... 7

*Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352 (S.D.N.Y. 2022) ...................... 15, 16

**Statutes**

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 ............. *passim*

Securities Exchange Act of 1934, Sections 10(b) and 20(a), 15 U.S.C. §§ 78j(b) & 78t(a) ...................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 10(c) ............................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ............................................................................ *passim*

Fed. R. Civ. P. 9(b) ............................................................................................. 1

Defendant John Levy ("Levy"), by and through his attorneys, submits this Memorandum of Law in support of his Motion to Dismiss Plaintiffs' Second Amended Complaint (the "SAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

This putative class action lawsuit alleges violations of Sections 10 and 20 of the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiffs have failed to adequately plead the basic elements of these Exchange Act claims (and, by extension, a Section 20, "Control Act," claim for secondary liability) against Levy, and have similarly failed to comply with the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Fed. R. Civ. P. 9(b).

It is well settled in this Circuit that "securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Rather than plead a detailed and particularized set of facts as the PSLRA requires, the SAC merely repeats the claims of well-known short-sellers, Hindenburg Research (the "Hindenburg Report") and Peabody Street Research (the "Peabody Report") (collectively, the "Short Reports"), who targeted NASDAQ-listed Singularity Future Technology Ltd. ("Singularity") in a short seller attack.  The SAC offers no other facts or allegations to support the Exchange Act claims, rendering it infirm in pleading against Mr. Levy, who previously served as a Singularity board member.  Indeed, the Short Reports were based upon on publicly-available information that the Short Sellers maintained had not been previously accumulated with regard to Singularity, and were prepared by opportunistic firms intending to short Singularity's stock.  Regardless of the Plaintiffs' allegations, the SAC fails to state a claim in compliance with the PSLRA for the following reasons:

1

*First*, the SAC lacks particularized allegations supporting a strong inference of scienter as to Levy, which the U.S. Supreme Court has held must include facts demonstrating a "cogent" and "compelling" inference of fraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

*Second*, Levy was not a "maker" of any allegedly false and misleading statements, thereby rendering infirm any Exchange Act claims against him. *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449, at *120 (S.D.N.Y. Sept. 28, 2012) (dismissing claims against individual defendants for whom the complaint did not attribute "any actionable misstatement").

*Third*, Plaintiffs fail to plead any actionable misstatement or omission as to Levy.

*Fourth*, Plaintiffs have failed to adequately allege loss causation.

## II.    FACTUAL BACKGROUND

Levy joined the Sino Global Shipping America, Ltd. ("Sino Global" n/k/a Singularity; collectively, the "Company") board on November 18, 2021. (SAC ¶ 35) The November 19, 2021 8-K, which announced Levy as an Independent Director, Chairperson of the Compensation Committee, member of the Nominating/Corporate Governance Committee, and a member of the Audit Committee provided the following distinguished background of Levy:

> Mr. Levy, 66 years old, is the Chief Executive Officer, board advisory of Westfield, NJ, a consulting firm. From September 2019 to April 2020, he served as the Chief Executive Officer of Sticky Fingers Restaurants, LLC. Mr. Levy currently serves on the board of directors of two other public companies: Applied Minerals, Inc., New York, NY (AMNL.OB); and Happiness Biotech Group Ltd., which is a company listed on Nasdaq Capital Market (NASDAQ: HAPP). From June 2016 to October 2021, Mr. Levy served as board member and Chair of Audit Committee of Washington Prime Group, Inc. (NYSE: WPG), which filed for protection under Chapter 11 of the United States Bankruptcy Code on June 13, 2021 and

2

emerged from bankruptcy protection on October 21, 2021. He also served as board member and Chair of Governance Committee of Takung Art Co., Ltd. (OTCQB: TKAT), from March 2016 to June 2019. Mr. Levy is a Certified Public Accountant, and Mr. Levy is a graduate of the Wharton School of Business at the University of Pennsylvania, he received his MBA from St. Joseph's University in Philadelphia, Pennsylvania.

(SAC ¶ 98)

Prior to Mr. Levy joining the Board, the Company had experienced several changes, including in February 2021, the Company announcing its business model shift from shipping and freight logistics to cryptocurrency and bitcoin mining. (SAC ¶¶ 45, 102, 104) One month later, the Company announced it had contracted to purchase 2,738 digital currency operation servers for $4.6 million. (SAC ¶ 114) Later in 2021, the Company announced it had entered into bitcoin-mining joint venture agreement with a China-based company, Shenzhen Highsharp Electronic Ltd. ("Highsharp") to establish a joint venture known as "Thor Miner," with the goal of "collaborative engineering, technical development and commercialization of a proprietary bitcoin mining machine under the name Thor, with exclusive rights covering design production, intellectual property, branding, marketing and sales."[1] (SAC ¶ 147) A few weeks later on November 1, 2021, the Company announced in an 8-K that Defendant Lei Cao ("Cao"), the Company's CEO, was stepping down, to be replaced by Defendant Yang Jie ("Jie"), who would assume the role of CEO, President, and Executive Chairman. (SAC ¶¶ 26, 28)

The Company's bitcoin mining initiative continued after Levy joined the Board. On January 3, 2022, the Company changed its name from Sino-Global to Singularity to better align

---

[1] Press Release, Sino-Global Shipping America, Ltd., *Sino-Global Enters Bitcoin Mining Machine Joint-Venture with Highsharp; Will Make Investment to Drive Product Development and Expansion* (Oct. 4, 2021); Sino-Global Shipping America, Ltd., Current Report (Form 8-K) (Oct. 4, 2021).

with its shift into bitcoin mining and crypto currency.   Following its October 4, 2021 announcement of the Thor Miner joint venture, in January 2022, the Company announced Thor Miner had agreed to sell cryptocurrency mining machines to SOS Information Technology New York, Inc. ("SOS") (SAC ¶ 157), and in April 2022, the Company issued a press release that it had entered into a joint venture with Golden Mainland in connection with a bitcoin mining site.  (SAC ¶¶ 126-128)

On May 5, 2022, less than one year after Levy joined the Board, short-seller Hindenburg Research issued a short report attacking the Company, which allegations form the basis of the SAC, essentially a cut-and-paste Complaint.  (SAC ¶ 213, *passim*) The same day, Peabody Street Research issued a similar short report. (SAC ¶ 214) The Short Reports collectively assail the Company and Defendant Jie, including that (i) Jie was an active fugitive in China in connection with a $300 million Ponzi scheme with over 20,000 victims; (ii) Thor Miner's machines are not proprietary and that Thor Miner's website copied the photos and description of a competitor's product, claiming the technology as its own; (iii) Thor Miner's $200 million sale to SOS New York was a phony and related party transaction; (iv) the Company's partnership with Golden Mainland was fake; and (v) the Company's transaction with Rich Trading was a related-party transaction.  (SAC ¶¶ 12, 213-14)

In response to the Short Reports allegations, the Company exercised best practices for a publicly traded entity, forming "a [S]pecial [C]ommittee of its Board of Directors to investigate claims of alleged fraud, misrepresentation, and inadequate disclosure related to the Company and certain of its management personnel raised in the report of Hindenburg Research dated May 5, 2022 and other related matters."[2]  (SAC ¶ 229)  The Special Committee appointed Blank Rome

---

[2] Singularity Future Technology Ltd., Current Report (Form 8-K) (May 13, 2022).

4

LLP as its counsel to investigate the Short Reports allegations. *Id.* The two members of the Special Committee were Levy and Heng Wang.

During the Special Committee's investigation, the Company made a number of changes and announcements, including on August 9, 2022, Jie resigned as CEO and Director following the Special Committee's recommendation to the Board that Jie be terminated. (SAC ¶ 284) On August 31, 2022, Defendant Tuo Pan ("Pan") was terminated for cause as CFO of the Company. (SAC ¶ 283) On November 16, 2022, the Company announced it had received subpoenas from the U.S. Attorney's Office for the Southern District of New York and the U.S. Securities Exchange Commission, and was cooperating fully with the government inquiries. (SAC ¶ 237) On January 9, 2023, the Company entered into a Separation Agreement with Defendant Cao, which noted his ongoing cooperation with the Special Committee's investigation. (SAC ¶¶ 28, 240-41)

Mr. Levy resigned from the Singularity Board on February 23, 2023, which is when the Board approved the dissolution of the Special Committee following the conclusion of the investigation.[3] (SAC ¶¶ 35, 259) There were no adverse findings by the Special Committee concerning Levy or his board service, nor were any challenges made concerning Levy.

## III.    ARGUMENT

### A.    Legal Standard

To survive a Rule 12(b)(6) dismissal motion, a complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On the factual sufficiency prong, the pleading standard of Rule 8(a)(2) demands more than an unadorned,

---

[3] Singularity Future Technology Ltd., Current Report (Form 8-K) (Feb. 27, 2023).

5

"the-defendant-unlawfully-harmed-me" accusation. *Ashcroft*, 556 U.S. at 677-79. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of 'further factual enhancement." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013).

With respect to the "facial plausibility" prong, a claim meets this standard when factual content is pleaded that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 718. A complaint cannot simply recite legal conclusions or bare cause of action elements; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Facts must be pleaded that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 1949. To survive a motion to dismiss, a pleading "requires factual allegations that, taken as true, demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *McAllister v. Metro. Transit Auth.*, No. 13 Civ. 2060, 2013 U.S. Dist. LEXIS 120996, at *7 (E.D.N.Y. Aug. 26, 2013) (*citing Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Pension Ben. Guar. Corp.*, 712 F.3d at 718. Indeed, a district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

In deciding a 12(b)(6) motion, the Court may also consider documentary exhibits or written instruments annexed to the complaint, documents integral to the case and on which the complaint

relies heavily, and matters subject to judicial notice. *See Tellabs*, 551 U.S. at 322; *ATSI*, 493 F.3d at 98 ; *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Nelson v. Warren*, Case No. 10 Civ. 0990, 2012 U.S. Dist. LEXIS 27797, at *7 (N.D.N.Y. Mar. 2, 2012) (when construing the pleading sufficiency of a complaint the court may consider any matter of which the court can take judicial notice for the factual background of the case); *see also* Fed. R. Civ. P. 10(c).

## B.    Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10B-5

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege that each defendant (i) made misstatements or omissions of material fact; (ii) with scienter; (iii) in connection with the purchase or sale of securities; (iv) upon which the plaintiff relied, and (v) that the plaintiff's reliance was the proximate cause of its injury. *Stratte-McClure v. Stanley*, 598 F. App'x. 25, 27 (2d Cir. 2015) (citations and quotations omitted); *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019); *In re Aphria Sec. Litig.*, No. 18 Civ. 11376, 2020 U.S. Dist. LEXIS 181054, at *20 (S.D.N.Y. Sept. 30, 2020). In addition, "[a] securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. . . . Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI*, 493 F.3d at 99. The materiality requirement requires a substantial likelihood that the disclosure of the omitted fact "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

The PSLRA further heightens the pleading standard by requiring private securities complaints containing allegations of false or misleading statements to both "specify each statement

alleged to have been misleading [and] the reason or reasons why the statement is misleading" and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1)(B), (b)(2)(A); *see also Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012); *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. J.P. Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Thus, plaintiffs must "do more than say that the statements … were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Here, the putative class Plaintiffs fail to state a claim because, *inter alia*, they fail to allege: (i) scienter; (ii) that Levy was a maker of any statements; (iii) that the at-issue statements were materially false and misleading; and (iv) loss causation.

### 1.      Plaintiffs Fail to Plead That Levy Acted With Scienter

Under the PSLRA, a plaintiff alleging a claim under the Exchange Act must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A "strong" inference is one that is a reasonable person would "deem [as] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

Plaintiffs fall short in their attempt to plead scienter, which must be alleged specifically as to each Defendant. The SAC is devoid of any actual basis for the contention that Levy was aware of any facts that contradict Singularity's public statements. In an action under Section 10(b) and Rule 10b-5, the plaintiff must allege that at the time the statements were made, the defendants *knew* such statements to be false. To adequately plead scenter, plaintiffs must show either (i) "that the defendants had both motive and opportunity to commit the fraud"; or (ii) "strong circumstantial

evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Federal courts have recognized that "to withstand a motion to dismiss plaintiffs must detail specific contemporaneous data or information known to the defendants that was inconsistent with the representation in question." *Hart v. Internet Wire. Inc.*, 145 F. Supp.2d 360, 368 (S.D.N.Y. 2001) (*citation omitted*); *see San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801, 812-13 n. 13 (2d Cir. 1996) (plaintiffs must plead specific facts showing defendants' statements were false when made or that optimistic predictions "lacked a reasonable basis")

Plaintiffs have failed to establish that Levy had "both motive and opportunity to commit the fraud." *ATSI*, 493 F.3d at 99. To plead motive, the Second Circuit requires particularized allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *see also Golla v. Neovasc, Inc.*, 22-cv-361, 2023 U.S. App. LEXIS 5870, at *4 (2d Cir. Mar. 13, 2023). There is no indication that Levy obtained any form of financial gain or any advantage as a result of the allegedly false and misleading statements, nor have Plaintiffs made any such allegation.  Levy had a very distinguished career prior to joining the Singularity board, with no motive to make any misrepresentations regarding Singularity or his knowledge about any persons associated with Singularity.  (SAC ¶ 98)  Significantly, Levy had no stock or options in the Company. *Compare ECA & Loc. 134*, 553 F.3d at 198 ("[m]otive is generally met when corporate insiders allegedly make a misrepresentation in order to sell their own shares at a profit."); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 585 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) (complaint failed to allege motive or opportunity because it did not allege defendant sold any shares during class period); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) ("the fact that neither [the CEO nor the CFO] sold stock during the putative class period

9

undermines plaintiffs' motive allegations" for scienter).  There was no reason for Levy to omit anything about Singularity or make any misrepresentations.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) ("It bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information.").

And nothing has been pleaded which suggests Levy had (or could have had) any intention to mislead anyone about the Company, nor do Plaintiffs assign such a motive to Levy. (SAC, *passim*)

Plaintiffs fail to allege anything more than conclusory statements about Levy's alleged scienter and are unable to identify even circumstantial evidence of conscious misbehavior or recklessness. "To survive dismissal under the 'conscious misbehavior' theory, the appellants must show that they alleged reckless conduct by the appellees, which is 'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (*quoting Rolf v. Blyth Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978)).

Plaintiffs' only scienter allegation specific to Levy rests on the argument that Levy *should have* known about Jie's criminal past, financial improprieties, and education because both Levy and Jie both previously held roles at China Commercial Credit, Inc. ("CCC"). (SAC ¶¶ 74, 92) Plaintiffs claim that the November 1, 2021 Form 8-K and April 22, 2022 Proxy statement concerning Jie's background and educational history were misleading because of the omission of the criminal allegations against Jie. (SAC ¶¶ 51-53)  The fact that both Levy and Jie overlapped at CCC by not even two months, Plaintiffs contend, suggests Levy knew or should have known about the criminal allegations against Jie.  (SAC ¶¶ 71, 74, 97, 99, 218, 220-221)  The SAC

10

specifically points to Levy's role as a Board member of CCC as a basis for contending he must have been aware of litigation (the "Sorghum Litigation") which raised certain allegations about Jie's criminal past. (SAC ¶¶ 71, 74)

The reach of this alleged and conclusory scienter allegation exceeds the SAC's grasp, however, as Plaintiffs overlook that Levy resigned from the CCC Board on December 19, 2016 (SAC ¶ 99),[4] while the Sorghum Litigation dispute with CCC arose from an August 2017 agreement *after* Levy departed CCC.  (SAC ¶ 60)  Plaintiffs therefore cannot reconcile that Levy resigned from CCC eight months *before* the facts giving rise to the Sorghum Litigation with the SAC allegation that "[u]pon information and belief, Levy, having served as a director of CCC (where Jie was a General Manager), was aware of the [Sorghum Litigation]."  (SAC ¶ 74)  Levy was not a member of the CCC Board at the time of the Sorghum deal which led to the Sorghum Litigation or its eventual collapse, nor could he have been a party or witness to the Sorghum Litigation.  (SAC ¶¶ 60-68, 71-74, 99)  Indeed, Plaintiffs cannot allege with specificity that Levy knew anything about Jie's background, which public omission allegedly substantiates the basis of the Exchange Act claims against Levy, thereby confirming the lack of any scienter that may be assigned to Levy.

Further, according to an April 6, 2017 10-K, Jie was appointed Vice President of Finance for CCC on October 31, 2016.  (SAC ¶ 58)  Levy resigned from the CCC Board less than two months later, on December 19, 2016.[5]  The fact that Levy and Jie overlapped at CCC for just under two months in 2016 is insufficient to establish Levy knew or should have known about any criminal allegations concerning Jie, especially given that there is no allegation that Levy actually

---

[4] China Commercial Credit, Inc., Proxy Statement (Schedule 14A), (Dec. 23, 2016).
[5] China Commercial Credit, Inc., Proxy Statement (Schedule 14A), (Dec. 23, 2016).

knew anything about Jie's alleged dubious background.  The SAC does not allege that Levy actually knew anything about Jie while he was at CCC nor was furnished with such information that, even if true, would not be background details that Jie would likely disclose to Levy or others.

Plaintiffs therefore have failed to sufficiently establish that Levy knew or could have known that the Singularity November 1, 2021 Form 8-K or April 22, 2022 Proxy Statement were false or misleading.  Plaintiffs cannot identify any document or other information that: (i) demonstrates the statements made in press releases and SEC filings were false; and (ii) were available to Levy at the time the statements in those press releases/SEC filings were made.

Likewise, Plaintiffs do not allege whether Levy knew the statements were false at the time they were made, or whether Levy learned of their falsehood afterwards.  Plaintiffs therefore fail to meet their burden to "state with particularity facts giving rights to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 322-24, 326-27; *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("In order to satisfy the pleading requirements of Rule 9(b) and the PSLRA, a plaintiff must allege that an officer or director '*personally* knew of, or participated in, the fraud.'") (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (emphasis in original).

Even more compelling is that Plaintiffs cannot rely on the Levy's position with Singularity (or previously, CCC) or conclusory pronouncements that Levy knew or had access to information, as a basis for scienter. "Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Lipow v. Net1 UEPS Techs.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015); *see also Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[Plaintiff's] frequent conclusory allegations--that Defendants "knew but concealed" some things, or "knew or were reckless in not knowing" other things--do not satisfy

the requirements of Rule 9(b). . . . [and] in the context of securities fraud claims [] such allegations are "so broad and conclusory as to be meaningless."") (*quoting Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 119-20 (2d Cir. 1982)); *In re Sotheby's Holdings, Inc.*, No. 00 Civ.1041, 2000 U.S. Dist. LEXIS 12504, at *22 (S.D.N.Y. Aug. 31, 2000) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their . . . executive positions are insufficient to plead scienter."). Therefore, under prevailing law, the mere fact that Levy served on the CCC Board cannot elevate his alleged knowledge, or even impute knowledge to Levy, about Jie's background, thereby rejecting the primary scienter basis asserted in the SAC. *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ. 1691, 2018 U.S. Dist. LEXIS 56897, at *38-39 (S.D.N.Y. Mar. 30, 2018) ("[I]t is practically hornbook law that accusations such as these, which are founded on nothing more than a defendant's corporate position are entitled to no weight") (*quoting Fogel v. Wal-Mart de Mexico SAB De CV*, No. 13 Civ. 2282, 2017 U.S. Dist. LEXIS 26976, at *42 (S.D.N.Y. Feb. 27, 2017) (internal quotations omitted).

Unable to plead scienter as to each Defendant individually, Plaintiffs resort to plural group pleading, asserting that "Defendants" or "Individual Defendants" as a whole had knowledge about the allegedly false and misleading statements. Plaintiffs do not, however, identify any specific information demonstrating which Defendant had the alleged knowledge; when it was acquired; the basis for assigning such knowledge to an individual Defendant; and how the knowledge was gained or imputed to each Defendant. (SAC, *passim*)

Instead, the SAC alleges in a bald, conclusory fashion that *"Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Singularity were materially false and misleading."* (SAC ¶ 312) The SAC further alleges that

13

*"Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements ... or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Singularity personnel to members of the investing public."* (SAC ¶ 313)

Such generalized allegations of scienter are insufficient as a matter of law. *See Miao v. Fanhua*, 442 F. Supp. 3d 774, 806 (S.D.N.Y. 2020) ("Absent concrete allegations as to the Officer Defendants' knowledge of the alleged financial guarantees, the FAC cannot generate a strong inference of scienter.") For example, Plaintiffs conclude that Defendants' (plural) scienter is evidenced by the following:

- Singularity's failure to deliver on its cryptocurrency ventures (SAC ¶ 272);
- Singularity's failure to reveal Jie's criminal past, financial improprieties, and accurate educational background (SAC ¶ 273);
- Singularity abandoned its transformation to a cryptocurrency company (SAC ¶ 274);
- Singularity's settlements with SOS (SAC ¶ 275);
- Singularity's settlements with purchasers of unregistered shares of Singularity common stock (SAC ¶ 276);
- The criminal and SEC investigations of Singularity are strongly indicative of scienter (SAC ¶¶ 277-78);
- Leadership changes at Singularity further support a strong inference of scienter (SAC ¶¶ 279-289).[6]

Such serial group pleading is insufficient to state a claim against *an* individual defendant, in this case Levy. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d

---

[6] Plaintiffs contend that "leadership changes at Singularity" support a strong inference of scienter (SAC ¶ 279), but that argument has been squarely rejected in this Court. *See, e.g., In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005) ("Plaintiffs, however, fail to allege any facts linking the resignation of Suquet to the purported fraud. Even if they had alleged such a link, it is hard to see how the resignation of an executive who has not been named as a defendant in this action could create an inference of scienter with respect to the seven individuals who have been named.") Moreover, the resignations of Messrs. Liu, Wang, Ling, and Ms. Ling Jiang all occurred *after* Levy resigned. (SAC ¶¶ 286-289)

111, 161 (S.D.N.Y. 2021) ("However, scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading.") (quotations omitted) (*quoting C.D.T.S. No. 1 v. UBS AG*, No. 12 Civ. 4924, 2013 U.S. Dist. LEXIS 175757, at \*17 (S.D.N.Y. Dec. 13, 2013)); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008) ("[t]he group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants.")

Finally, the fact that Singularity commissioned an internal investigation led by a Special Committee of the Board of Directors factors against a finding of scienter. *See*, *e.g., Slayton v. Am. Exp. Co.*, 604 F.3d 758, 777 (2d Cir. 2010) ("Ordering an investigation . . . was a prudent course of action that weakens rather than strengthens an inference of scienter." (internal quotation marks and citations omitted); *Miao*, 442 F. Supp. at 808 (S.D.N.Y. 2020) ("Fanhua's initiation of an independent investigation here, if anything, weakens the inference of scienter.")

### 2. Claims Against Levy Must Be Dismissed Because He Did Not "Make" Any Allegedly False or Misleading Statements

In order to be liable as an individual defendant under Section 10(b), Plaintiffs must point to actual *public* statements made by Levy. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Not a single public statement by Levy is alleged in the 120-page SAC, nor can Plaintiffs allege that Levy signed, ratified, or approved any of the statements at issue – because he did not. Plaintiffs have failed to allege Levy made any public statement in connection with his tenure as a Board member, warranting dismissal of the claims against him. *See Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352 (S.D.N.Y. 2022) (denying motion to dismiss against individual

15

defendant who was found to be a "maker," and dismissing claims against individual defendants who were not makers of company's statements); *In re UBS AG Sec. Litig.*, 2012 U.S. Dist. LEXIS 141449, at *120 (dismissing claims against individual defendants for whom the complaint did not attribute "any actionable misstatement").

To the extent Plaintiffs contend the "Individual Defendants" were collectively responsible for public statements, the group-pleading doctrine is insufficient to meet the requirements of *Janus*, 564 U.S. at 142, and thus is no longer viable.  *See Xu*, 624 F. Supp. 3d at 365 ("Rather than rely on the presumption created by the group-pleading doctrine, a securities fraud plaintiff must allege facts showing, either directly or circumstantially, that the individual defendants named in the complaint possessed ultimate authority over the statements at issue."); *see also Behrendsen v. Yangtze River Port & Logistics, Ltd.*, No. 19 Civ. 00024, 2021 U.S. Dist. LEXIS 120264, at *30-32 (E.D.N.Y. June 28, 2021) (group pleading doctrine unavailable where plaintiffs failed to allege individual defendants engaged in the company's day-to-day operations).

### 3.    Plaintiffs Fail to Allege the At-Issue Statements Are False or Misleading

In order to meet the pleading standard for securities fraud, plaintiffs cannot merely allege that statements "were false and misleading; they must plead with specificity why and how that is so." *Rombach*, 355 F.3d at 174.  Plaintiffs fail to allege with the requisite particularity that any of the at-issue statements are actionable under the securities law for the following three reasons:

*i. Inactionable Forward-Looking Statements*.   The allegedly false and misleading statements relating to Singularity's promotion of its cryptocurrency business (*See, e.g.,* SAC ¶¶ 3, 102, 111, 114, 116, 119, 120, 122) are more aptly classified as forward-looking statements protected by the PSLRA. 15 U.S.C. § 78u-5(i); *Slayton*, 604 F.3d at 432. The SAC fails to establish

16

that these statements were made with the knowledge that they were false and misleading. *Gissin v. Endres*, 739 F. Supp. 2d 488, 502 (S.D.N.Y. 2010) ("Liability under the actual knowledge prong of the safe harbor 'attaches only upon proof of knowing falsity'—a showing of recklessness is insufficient"). Moreover, there are no allegations that Levy – or any of the Individual Defendants - knew the statements to be false when they were made, which is required to overcome the safe harbor. *In re WebMD Health Corp. Sec. Litig.*, No. 11 Civ. 5382, 2013 U.S. Dist. LEXIS 1512, at *34 (S.D.N.Y. Jan. 2, 2013) ("But there is a missing link between Defendants' cognizance of potentially adverse business conditions and Plaintiffs' accusation that the statements and projections were not simply too optimistic but actually false and made with an intent to deceive, manipulate, or defraud.") (internal quotations omitted).  In contrast, these statements are "merely vague expressions of optimism or puffery" that are immaterial and not actionable." *Gissin*, 739 F. Supp. 2d at 502; *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F.Supp.2d 348, 358 (S.D.N.Y. 2006) (statements in SEC filings such as "Wholesale Banking is in very good shape as it moves into its next stage of development," found to be "inactionable as general statements of optimism").  Moreover, a forward-looking statement is immaterial if it is not shown that it was made with actual knowledge that the statement was false or misleading.  *In re Adient PLC Sec. Litig.*, No. 18 Civ. 9116, 2020 U.S. Dist. LEXIS 58730, at * 60 (S.D.N.Y. Apr. 2, 2020).

    ***ii.  Statements Concerning Jie's Personal and Professional Background.***  Plaintiffs claim that Singularity misrepresented and omitted material facts regarding Jie's personal and professional background, restating the Short Reports' conclusion that Jie was a fugitive in the PRC for operating a Ponzi Scheme; misappropriated millions of dollars while at CCC; and misrepresented his educational background.  (SAC ¶¶ 12, 49-95)  Plaintiffs rely on the Hindenburg

17

Report, as well as court filings in a litigation involving CCC.  (*See, e.g.*, SAC ¶¶ 12, 62, 65, 76, 80, 86, 90)  Plaintiffs claim that Singularity misrepresented Jie's expertise because of the *omission* of Jie's history of failed businesses, educational history, and allegations of criminal and financial misconduct. Plaintiffs fail to identify any legal duty for Singularity to disclose the uncharged allegations concerning Jie likely because the securities laws do not create a general duty to disclose uncharged criminal conduct.  *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006); *see Lopez v. CTPartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 23 (S.D.N.Y. 2016) ("Disclosure of . . . information is not required . . . simply because it may be relevant or of interest to a reasonable investor.") (*quoting Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)). Rather, disclosure is required – and the failure to do so is actionable – only where disclosure "was necessary to prevent the corporation's *other* statements from being misleading." *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 752 (S.D.N.Y) (emphasis in original); *see also In re DraftKings Inc. Sec. Litig.*, No. 21 Civ.  5739, 2023 U.S. Dist. LEXIS 4519, at *46 (S.D.N.Y. Jan. 10, 2023) ("'Pure omissions' of information, absent a duty to disclose, are not actionable. Half-truths, however, 'statements that are misleading . . . by virtue of what they omit to disclose,' are.") (*quoting In re Vivendi, S.A. Sec. Litig*., 838 F.3d 223, 239-40 (2d Cir. 2016)).

*iii. Statements Concerning Levy's Background.*   Levy joined Singularity's board on November 18, 2021. The November 19, 2021 8-K which announced Levy as a Board member disclosed that Levy currently served on the board of two other public companies - Applied Minerals, Inc., New York, NY (AMNL.OB); and Happiness Biotech Group Ltd., which is a company listed on Nasdaq Capital Market (NASDAQ: HAPP), and that Levy previously served on the Boards of Washington Prime Group, Inc. (NYSE: WPG) and Takung Art Co., Ltd. (OTCQB: TKAT). Plaintiffs allege that the omission of Levy's role as a CCC director was "false

and misleading." (SAC ¶ 99) They also claim that because both Levy and Jie overlapped at CCC (for less than two months), Levy should have been "fully aware of Jie's sordid past." (SAC ¶¶ 218-221) However, Plaintiffs have not identified any duty to disclose Levy's tenure as a CCC director from January 2013 to December 2016. Contrary to Plaintiffs' assertions, there was no attempt to hide or omit Levy's CCC tenure. Levy has had experience as a board member and CFO of numerous public and private companies – all of which is publicly available information. As noted by Plaintiffs, Levy operates the Board Advisory, an advisory service for corporate boards. (SAC ¶ 96) Levy's full biography and resume (including his CCC tenure as well as other public companies) was *publicly available*, listed on the website for Board Advisory.[7] Thus, Levy's CCC board experience was public knowledge, and could not have been omitted by Levy, to the extent it was material to anything.

### 4.    Plaintiffs Fail to Plead Loss Causation

The SAC's failure to please loss causation also warrants dismissal. To plead loss causation, a plaintiff must allege that (1) "the market reacted negatively to a corrective disclosure"; or (2) "the materialization of the risks that were concealed by the alleged misrepresentations or omissions proximately caused plaintiff['s] loss." *In re Omnicom Grp. Inc. Sec. Litig*, 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008). Plaintiffs' reliance on the Hindenburg Report as a corrective disclosure is insufficient, because the Hindenburg Report was based on publicly available information and "fail[ed] to reveal any new facts not already known to the public." *In re Xunlei Ltd. Sec. Litig.*, No. 18 Civ. 467, 2019 U.S. Dist. LEXIS 154010, at *34 (S.D.N.Y. Sept. 10, 2019).

---

[7] Board Advisory, http://boardadvisory.net/index.html.

### C.    Plaintiffs Fail to State a Section 20(a) Claim Against Levy

Section 20(a) of the Exchange Act provides a cause of action against those who "control" an entity that has violated the securities laws. Section 20(a) provides that, "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person[.]"  15 U.S.C. § 78t(a).  Thus, "[i]n order to establish a prima facie case of liability under § 20(a), a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." *In re BioScrip, Inc. Secs. Litig.*, No. 13 Civ. 6922, 2015 U.S. Dist. LEXIS 46763, at *61-62 (S.D.N.Y. Mar. 31, 2015).

Plaintiffs have alleged that the Individual Defendants controlled Singularity and are therefore liable pursuant to Section 20(a) for the purportedly fraudulent statements made by Singularity.  Whether Plaintiffs can prevail on this claim as to Levy, of course, is contingent upon whether they can prove Levy violated the securities laws. If the Court dismisses the Section 10(b) and Rule 10b-5 claim for all of the reasons discussed above, the Section 20(a) claim against the Levy must be dismissed as well. *See, e.g.*, *In re Ultimate Corp. Sec. Litigation*, No. 86 Civ. 5944, 1989 U.S. Dist. LEXIS 7629, at *15-16 (S.D.N.Y. June 30, 1989) ("Having found that Ultimate is entitled to summary judgment in respect of the Section 10 and Rule 10b-5 claims, plaintiffs' claim pursuant to Section 20(a) of the 1934 Act fails. As is evidenced by the plain language of the statute, there can be no liability under the controlling person provisions of the 1934 Act where there is no finding of liability pursuant to the substantive provisions of the Act.").

Plaintiffs' Section 20(a) claim requires dismissal because it is wholly dependent on Plaintiffs' deficient Section 10(b) and Rule 10b-5 claim. The failure to state a Section 10(b) and Rule 10b-5 claim against Levy dooms Plaintiffs' Section 20 claim.

In addition, the Second Circuit has imposed a requirement that facts giving rise to a "strong inference" of scienter must be alleged with particularity, to avoid the facility with which claims of fraud by hindsight could be made. *Shields*, 25 F.3d at 1129; *Ross v. AH Robins Co.*, 607 F.2d 545, 556 (2d Cir. 1979). The PSLRA imposes additional pleading requirements, adopting the Second Circuit's "strong inference" of scienter obligation, particularly in situations like the SAC, where an untrue statement of fact or omissions are alleged. In such an instance, the PSLRA requires that each misleading statement be specified, including the basis for it being misleading (not copying the findings in the Short Reports as a basis, for instance). *See Harris v. Am Tr. Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159 (S.D.N.Y. 2015) (dismissing complaint that "rel[ied] almost entirely on a negative report published by a short seller" and that, as a result, was "long on sound, fury and speculation, but . . . short on specifics), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

Vague, group-pleaded, blanket, or catchall allegations that may otherwise be acceptable under a common Rule 12(b)(6) standard are not acceptable under the PSLRA's heightened pleading demands. *See* 15 U.S.C. § 78u-4(b)(a); *Dura-Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). This is particularly true when the allegations concern a defendant's state of mind, which must be pleaded with particularity. *Tellabs*, 551 U.S. at 324. It is important that under *Tellabs*, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff . . . . A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Here, the SAC's alleged facts targeting Levy's conduct

21

are directly gleaned from the Short Reports, and none of the claimed misrepresentations attributed to Levy or his alleged omissions come close to the required scienter under the Exchange Act claims.

## IV.    CONCLUSION

For the foregoing reasons, Levy respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice and without leave to amend.

Dated:  November 20, 2023

Respectfully submitted:

**BLANK ROME LLP**
By: */s/ Samuel D. Levy*
Samuel D. Levy (SDL9271)
Alexandra Clark
1271 Avenue of the Americas
New York, NY 10020
Tel.: 212-885-5000
Samuel.Levy@BlankRome.com
Alexandra.Clark@BlankRome.com

*Counsel for John Levy*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2023, a true and correct copy of the foregoing Memorandum in Support of Defendant John Levy's Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Samuel D. Levy*

Samuel D. Levy