**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SEN GAO, CONGLI HUO, RUIBIN WANG,
LUXIAO XU, individually and on behalf of
all others similarly situated,

                        **Plaintiffs,**

                  v.

SINGULARITY FUTURE TECHONOLGY,
LTD. F/K/A SINO-GLOBAL SHIPPING
AMERICA LTD., YANG JIE, LEI CAO,
ZHIKANG HUANG, TUO PAN,
XIAOHUAN HUANG, JING SHAN,
TIELING LIU, JING WANG, LEI NIE,
JOHN LEVY, THOR MINER, INC., and
GOLDEN MAINLAND, INC.,

                      **Defendants.**

Case No. 22-cv-07499-BMC

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY**
**DEFENDANT SHAN TO DISMISS PLAINTIFFS'**
**SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant Jing Shan ("Ms. Shan") submits this Memorandum of Law in support of her

Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Dkt. No. 58) pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing all of Plaintiffs' claims against

Defendant Jing Shan.

## Introduction

This is a class action for money damages for alleged violations of the Securities Exchange

Act of 1934, brought by lead Plaintiffs ostensibly on behalf of persons or entities who acquired

securities of Singularity Future Technology, Ltd. ("Singularity") between February 2, 2021 and

February 24, 2023.

2

Like most cases of this kind, the Plaintiffs name as defendants both the relevant entity and certain directors and officers and others associated with that entity.  Like many cases of this kind, the Plaintiffs cast the net very broadly, naming ten individual defendants who have differing connections with Singularity.  Ms. Shan was named in the somewhat indiscriminate pleading solely for actions she performed in the course of her work as an officer of Singularity.

As set forth below, the claims against her are fatally flawed as a matter of law because they are based upon speculation, without sufficient averments showing Ms. Shan's knowledge of relevant Singularity conduct, and without any averments whatsoever showing Ms. Shan's knowing participation in any misconduct.

<u>Argument</u>

**Legal Standards**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007).  Even so, conclusory statements and "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1955.

Plaintiffs' claims against Ms. Shan are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) and of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3) ("PSLRA").  Accordingly, to state a claim for violation of Section 10(b) of the Exchange Act of 1934, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has interpreted Rule 9(b) to require

3

that such a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004) (citation and internal quotation marks omitted). In addition, under the PSLRA, the plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may proscribe." 15 U.S.C. § 78j(b). SEC Rule 10b-5, which implements the statute, prohibits "mak[ing] any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). In order to establish a claim under these provisions, a plaintiff bears the burden to prove that "(1) the defendant made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC,* 783 F.3d 383, 389 (2d Cir.2015).

Facts proving requisite scienter must be alleged for each named individual defendant: "the group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants." *In re AstraZeneca Securities Litig.*, 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008) (citing *In re BISYS Sec. Litig., 397 F.Supp.2d 430, 440 (S.D.N.Y.2005); In re Citigroup, Inc. Sec. Litig., 330 F.Supp.2d 367, 381 (S.D.N.Y. 2004).* Rather, a plaintiff must "state with particularity facts giving rights to a strong inference that the defendant acted with the required state of mind."

4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 314, 322-24, 326-27 (2007); *see also In re Citigroup, Inc. Securities Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("In order to satisfy the pleading requirements of Rule 9(b) and the PSLRA, a plaintiff must allege that an officer or director '*personally* knew of, or participated in, the fraud' ") (emphasis in original) (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

It is insufficient to plead that a statement was fraudulent simply because it was inaccurate. A statement of opinion, especially regarding anticipated events, is not materially false just because it is incorrect unless it is not "honestly held" or omits material facts about the speaker's basis for holding that view, and those facts conflict with what a reasonable investor would understand from the statement itself. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,* 575 U.S. 175, 135 S.Ct. 1318, 1327, 191 L.Ed.2d 253 (2015).

Similarly, it is insufficient to plead that a corporate officer was highly likely to have known about a fraud by the officer's employer because of that person's position and consequent access to information.  *See Maldonado v. Dominguez*, 137 F.3d 1, 9–10 (1st Cir. 1998) (rejecting that defendants "must have known" of facts due to their positions; "these are precisely the types of inferences which this court, on numerous occasions, has determined to be inadequate to withstand Rule 9(b) scrutiny"); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company"); *see also City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001) (same).

### Plaintiffs Fail to State a Claim Against Ms. Shan

The averments regarding Ms. Shan in the current pleading are precisely of the kind found insufficient as a matter of law in the above-cited cases.  Of the Amended Complaint's 322

paragraphs, 33 mention Ms. Shan.[1]  Of these, some are "group pleadings" about the ten Individual Defendants or some subset of them, some aver that Ms. Shan's predictions and other opinions were inaccurate, and the balance allege facially innocent conduct she executed in the ordinary course of her duties as a corporate officer.

Among the hundreds of paragraphs in the pleading there is not a single one which alleges direct evidence of Ms. Shan's relevant scienter, such as an admission, or a personal statement which is inconsistent with a public statement, or even an accusation by a co-worker that she engaged knowingly in any fraudulent conduct.

Plaintiffs offer instead only a series of speculative contentions based upon circumstantial evidence and inference: (1) that the cryptocurrency business was a total "sham" notwithstanding Plaintiffs' own admissions that the business accepted and fulfilled some of its orders, (2) that Ms. Shan "must have" known that the business was a sham because of her position as Singularity's COO, and (3) that Ms. Shan knowingly acted to further the alleged sham.

As set forth in the legal standards above, Plaintiffs have the burden to make a plausible and specific case re Ms. Shan on all three points, and they don't come close to meeting that burden.  Allegations regarding Ms. Shan's knowledge of relevant activity are thin and largely speculative, and allegations about her intention to participate in a fraud are *entirely absent*.

To the contrary, all allegations re Ms. Shan are fully consistent with her having been a diligent Singularity employee acting in good faith to support a new cryptocurrency business that was experiencing a slow start.  Even regarding Ms. Shan's signature on documents alleged to contain false and misleading information, the Plaintiffs aver nothing about the creation of those

---

[1] (Dkt. No. 58 at ¶¶ 32, 36, 109, 133, 146, 152, 153, 158, 162, 165, 166, 167, 171, 173, 180, 181, 188, 189, 204, 232, 236, 242, 243, 244, 256, 275, 276, 279, 281, 282, 283, 284, and 285)

documents which would negate Ms. Shan's good faith reliance upon others regarding preparation of those documents or her intentions when signing.  At most, Plaintiffs allege that Ms. Shan had knowledge of possible breach of commercial agreements about the cryptocurrency business due to late and partial deliveries, but not fraud.[2]

Quick review of all averments which reference Ms. Shan specifically makes plain their insufficiency to state a claim for securities law violations against Ms. Shan:

- 32: identifies Ms. Shan as former COO of Singularity who executed the "SOS Agreement" and was terminated by Singularity in July 2023.

- 36: defines "Individual Defendants" to include Ms. Shan and all nine of the other individual co-defendants, without distinctions for board members, officers, or otherwise.

- 109: this is a "group pleading" re investment inducements.

- 133: identifies Ms. Shan as the person to receive notices for Singularity in the Mainland JV Agreement, presumably to show she "must have known" about any misconduct in the performance of that agreement.

- 146: references Ms. Shan's statement that the business purpose of the Thor Joint Venture, to make, market, and sell bitcoin mining machines.

- 152: references Ms. Shan's statement that HighSharp was in the business of block-chain technology, hardware, software technology management, and cloud computing.

- 153: avers Ms. Shan was COO of Singularity and Thor Miner.

---

[2] We anticipate Singularity will move to dismiss on grounds that no fraud occurred and that Plaintiffs failed to properly allege fraud by the company.  Of course, if there was no fraud by Singularity then Ms. Shan had no fraud in which to be a participant, and so Ms. Shan joins in such Singularity arguments for purposes of this motion.

- 158: avers Ms. Shan signed the SOS Agreement as COO of Thor Miner.

- 162: avers Ms. Shan sent a debit notice to SOS in anticipation of expected delivery of data mining machines.

- 165: avers SOS requested contract performance assurance from Ms. Shan.

- 166: avers Ms. Shan provided contract performance assurance to SOS.

- 167: avers that delivery of product to SOS was well under projections.

- 171: avers Ms. Shan acknowledged that Thor Miner delivery was well under projections, and explained this was due to "worldwide chip shortages and difficulty in obtaining parts" and other reasons, some caused by the COVID-19 pandemic.

- 173: contends that S&P Global analysis contradicts Ms. Shan's stated causes for delay.

- 180: avers SOS sued several defendants including Ms. Shan.

- 181: avers SOS settled the litigation.

- 188: avers that SOS told Ms. Shan that Defendant Huang had never been an SOS employee.

- 189: avers that the said SOS communication provided notice that Defendant Huang had never been an SOS employee, and that Ms. Shan responded to the letter, but that no action was taken to correct statements about Huang's employment.

- 204: avers Ms. Shan, among others, signed the company's 2021 Annual Report.

- 232: avers Ms. Shan signed Singularity's October 7, 2022 Form 8-K.

- 236: avers Ms. Shan signed Singularity's November 16, 2022 Form 8-K.

- 242: avers Singularity filed a Form 8-K which disclosed that Ms. Shan and others had been sued by SOS Information Technology NY.

- 243: this is another "group pleading" re investment inducements.

8

- 244: avers Hexin Global Limited and Viner Total Investments Fund sued several defendants including Ms. Shan.

- 256: avers St. Hudson Group LLC and others sued several persons including Ms. Shan.

- 275: avers SOS sued several defendants including Ms. Shan (same as 180).

- 276: avers Singularity paid to settle the Hexin Global Limited and Viner Total Investments Fund lawsuit.

- 279: avers Ms. Shan and three others were terminated by Singularity, which is somehow evidence of "house-cleaning" for misconduct, facts which "support a strong inference of scienter" according to Plaintiffs.

- 281: avers Ms. Shan signed Singularity's June 24, 2022 Form 8-K.

- 282: avers Ms. Shan approved expense reimbursement for Defendant Pan.

- 283: avers Ms. Shan signed Singularity's September 7, 2022 Form 8-K regarding termination of Defendant Pan.

- 284: avers Ms. Shan signed Singularity's August 12, 2022 Form 8-K regarding resignation of Defendant Jie.

- 285: avers Ms. Shan signed Singularity's November 22, 2022 Form 8-K regarding resignation of Shi Qiu.

Indeed, not only do these allegations fall short of the particularity required to allege knowledge and scienter in a securities case, they indicate that Ms. Shan was executing the speculative "house-cleaning" alleged in paragraph 279.

9

## **Conclusion**

The law requires more to state a claim against Ms. Shan, and she should be dismissed

from this action pursuant to Fed. R. Civ. P. 12(b)(6) for the reasons summarized above and for

applicable reasons argued by Ms. Shan's co-defendants in their respective motions.

Dated:   November 20, 2023
          New York, New York

                                        CADWALADER, WICKERSHAM & TAFT LLP

                              By:    *s/Michael D. Pinnisi*
                                     Michael D. Pinnisi (MP5075)
                                     200 Liberty Street
                                     New York, New York 10281
                                     Telephone: (212) 504-6000
                                     Michael.Pinnisi@cwt.com
                                     *Attorneys for Defendant Jing Shan*

10