# EXHIBIT W

{EXHIBIT 1 }

Case 1:22-cv-07499-BMC    Document 63-24    Filed 11/20/23    Page 2 of 20 PageID #: 1668

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

SHANGHAI NONOBANK FINANCIAL  :
INFORMATION SERVICE CO., LTD.,  :  Index No. _____

  Plaintiff,  :
      :
      :
  v.  :  **<u>SUMMONS</u>**
      :
      :
YANG JIE, CHINA COMMERCIAL CREDIT, :
INC., and YI LIN,  :
  Defendants.  :
      :
      :

-------------------------------------------------------------------x

To the Persons Named as Defendants above:

  PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the Plaintiff herein and to serve a copy of your answer on the Plaintiff at the address indicated below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if the Summons is not delivered personally to you within the State of New York.

  YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: August 2, 2018

      DAI & ASSOCIATES, P.C.

      By: <u>/s/ Amiad M. Kushner</u>
        Amiad M. Kushner
        Rongping Wu
        1500 Broadway, 22nd Floor
        New York, New York 10036
        Telephone: (212) 730-8880
        Facsimile: (212) 730-8869
        *Counsel for Plaintiff Shanghai NoNoBank Financial Information Service Co., Ltd.*

Case 1:22-cv-07499-BMC Document 63-24 Filed 11/20/23 Page 3 of 20 PageID #: 1669

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

SHANGHAI NONOBANK FINANCIAL
INFORMATION SERVICE CO., LTD.,

      Plaintiff,

      v.

YANG JIE, CHINA COMMERCIAL CREDIT,
INC., and YI LIN,

      Defendants.

-------------------------------------------------------------------x

Index No. _____

**Jury Trial Demanded**

**COMPLAINT**

Plaintiff Shanghai NoNoBank Financial Information Service Co., Ltd. ("Nonobank"), for its Complaint against defendants Yang Jie ("Jie"), China Commercial Credit, Inc. ("CCCR") and Yi Lin ("Lin," and together with Jie and CCCR, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1. In this action, Nonobank seeks to recover approximately $3.5 million of its funds that were required to be held in escrow in New York pursuant to a New York law-governed escrow agreement among Nonobank, Jie and Lin. The funds were required to be held in escrow in a New York attorney trust account pending the consummation of a merger between Nonobank's parent company and CCCR, a company effectively controlled by Jie that is traded on the Nasdaq stock exchange. The merger was not consummated and the $3.5 million is therefore required to be refunded to Nonobank under the terms of the escrow agreement.

2. Instead of being placed in escrow, Nonobank's funds were brazenly converted by Jie, who was secretly colluding with a rogue Nonobank employee. Jie provided Nonobank with documentation purporting to show that the missing $3.5 million was transferred from Jie's

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 4 of 20 PageID #: 1670

accounts to the New York escrow account. However, Jie has refused to respond to Nonobank's demand for the release of the funds from the New York escrow account to Nonobank.

3.   Defendant Lin, in disregard of his contractual and fiduciary duties as escrow agent, has refused to provide an accounting of any funds that he received from Jie and/or Nonobank.

4.   By this action, Nonobank seeks declaratory, compensatory, and other relief arising from Defendants' misconduct, including damages based upon the wrongful conversion of Nonobank's funds.

## PARTIES

5.   Plaintiff Nonobank is a financial services firm incorporated in the People's Republic of China ("PRC") and based in Shanghai, PRC.

6.   Defendant Jie is a resident of the State of New York. At times material to this action, Mr. Jie was the Vice President of Finance of CCCR and the General Manager of CCCR's New York office. In addition, at relevant times, Mr. Jie was CCCR's largest shareholder.

7.   Defendant CCCR is a corporation organized under the laws of the State of Delaware, with an office located in Manhattan. CCCR's stock is traded on the Nasdaq stock exchange.

8.   Defendant Lin is an attorney admitted to the New York bar who maintains a law office in Manhattan. Mr. Lin is a resident of the State of New York.

## JURISDICTION AND VENUE

9.   This Court has personal jurisdiction pursuant to CPLR §§ 301 and 302 because defendants Lin and Jie are residents of the State of New York and because Defendants engaged in conduct in New York (or specifically directed to New York) that is directly relevant to Nonobank's causes of action.

- 2 -

Case 1:22-cv-07499-BMC    Document 63-24    Filed 11/20/23    Page 5 of 20 PageID #:
1671

10. Venue is proper in New York County pursuant to CPLR § 503(a) because (i) at all relevant times defendants Lin and CCCR maintained offices in New York County, (ii) the Lin Escrow Account (defined below) is located in New York County, and (iii) conduct relevant to the causes of action asserted in this Complaint occurred in New York County.

## FACTS

### The Potential Merger

11. Nonobank is a wholly-owned subsidiary of Shanghai Wheat Asset Management Co., Ltd. ("Wheat"), a web-based financial services company based in Shanghai, PRC with over five hundred employees.

12. CCCR is a financial services firm incorporated in Delaware that is traded publicly on the Nasdaq stock exchange. Through its PRC operating subsidiaries, CCCR provides loans, financial guarantees and other financial services in Jiangsu Province, PRC.

13. In early 2017, senior executives of CCCR (including Jie) approached Wheat to discuss a potential "reverse merger" transaction (the "Transaction").

14. In March 2017, Jie, who was then CCCR's Vice President of Finance, head of its New York office, and its largest shareholder, conducted meetings with Nonobank and Wheat in the PRC to negotiate the Transaction.

15. Upon information and belief, Jie effectively controls CCCR, and CCCR's major decisions (including its decision to pursue the Transaction) are controlled by Jie.

16. On or about March 21, 2017, CCCR, Jie, and Nonobank entered into a memorandum of understanding concerning the Transaction.

- 3 -

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 6 of 20 PageID #: 1672

**The Escrow Agreement**

17.     On March 24, 2017, Nonobank, Jie, and Lin (as escrow agent) entered into an Escrow Agreement (the "Escrow Agreement").  A copy of this agreement (together with a certified translation) is attached to this Complaint as Exhibit A.

18.     Under the terms of the Escrow Agreement, Jie was required to work with Nonobank in connection with the Transaction "with no condition."  Escrow Agreement, Art. III(1).

19.     Further, under the terms of the Escrow Agreement, Jie stood to receive a total of $3.5 million after the Transaction was consummated.  The Escrow Agreement required Nonobank to deposit $3.5 million in escrow in the Law Office of Yi Lin IOLA Attorney Trust Account (the "Lin Escrow Account") with TD Bank, located at 155 Canal Street in New York, New York.

20.     The $3.5 million is required to be held in the Lin Escrow Account pending the consummation of the Transaction.  The Escrow Agreement provides in relevant part that "[Jie] will work with [Nonobank] to complete [Nonobank's] reorganization with Nasdaq listed company, China Commercial Credit, Inc.," and "[Lin] shall transfer the escrow fund to the account designated by [Jie] upon notice from [Jie] and [Nonobank]."  Escrow Agreement, Art. II.

21.     In the event the Transaction is not consummated, the Escrow Agreement requires the amount in escrow to be refunded to Nonobank upon written notice from Jie and Nonobank:

> If [Jie] and [Nonobank] cannot complete the reorganization in accordance with this agreement, upon the written consent of both parties, they shall notify [Lin] to return the escrow fund with interest to its original source by its original route.

Escrow Agreement, Art. VI.

22.     Further, the Escrow Agreement provides that:

> If [Jie] and [Nonobank] cannot perform this agreement or cancel the agreement due to reasons not related to [Lin], [Lin] only has the

- 4 -

obligation to assist in returning the escrow fund with interest back
to [Nonobank], and this agreement will terminate.

Escrow Agreement, Art. VII (emphasis added).

23.     The Escrow Agreement is governed by New York law.  Escrow Agreement, Art. XI.

24.     Pursuant to the Escrow Agreement, in April 2017, Nonobank transferred the Chinese currency equivalent of approximately 3.5 million U.S. dollars to an intermediary in the PRC (the "Escrow Payment"), which was intended to be transferred to the Lin Escrow Account under the supervision and control of Lin.

25.     However, as described further below, the funds were converted by Jie.

**The Share Exchange Agreement**

26.     On or about August 9, 2017, CCCR entered into a Share Exchange Agreement (the "SEA") with Wheat's parent corporation Sorghum Investment Holdings Limited ("Sorghum"), documenting the Transaction.  Sorghum is a British Virgin Islands corporation.  Under the terms of the SEA, upon consummation of the Transaction, Sorghum would become a wholly owned subsidiary of CCCR, and Sorghum's former shareholders would own a majority of CCCR.

27.     Between August 9, 2017 and December 2017, representatives of CCCR and Sorghum worked jointly to consummate the Transaction.

**Sorghum Discovers Irregularities Related to Jie**

28.     Beginning in or about early December 2017, Sorghum and its subsidiaries (including Nonobank) began to have serious concerns regarding Jie and his role in the Transaction.

29.     Sorghum discovered that the company which it had retained to opine on the fairness of the Transaction was wholly owned by Jie and thus, had a conflict of interest that should have disqualified it from issuing a fairness opinion concerning the Transaction.

- 5 -

Case 1:22-cv-07499-BMC    Document 63-24    Filed 11/20/23    Page 8 of 20 PageID #: 1674

30.     Sorghum also discovered that a rogue employee, Ms. Xiaoying Sun, was secretly colluding with Jie.  Ms. Sun had day-to-day responsibility for overseeing the Transaction, including arranging for payment of the Escrow Payment to the Lin Escrow Account.

31.     Further, in mid-December 2017, China Central Television, the predominant state television broadcaster in the PRC, reported that Jie was under criminal investigation in Anhui Province, PRC in connection with the theft of 1.9 billion RMB (the equivalent of approximately 300 million U.S. dollars) from over 20,000 investors through fraudulent securities transactions intended to raise capital for Tianhe Technology Co., Ltd.  Jie was reported to be the main suspect in the criminal investigation and was being actively sought by PRC authorities.

32.     Sorghum subsequently received confirmation directly from PRC government authorities that Jie is the main suspect in the ongoing criminal investigation, which remains pending as of the date of this Complaint.

33.     Further, upon information and belief, Lin acts as counsel to Jie and CCCR.  This fact was not known to Nonobank's senior management at the time that the Escrow Agreement was signed.

34.     On or about December 19, 2017, Ms. Sun was terminated.

**<u>Nonobank's Efforts to Recover the Escrow Payment</u>**

35.     When Ms. Sun was terminated, Nonobank attempted to confirm the security of the Escrow Payment.  As noted above, Ms. Sun had responsibility for transferring the Escrow Payment to the Lin Escrow Account.  Based upon its own investigation, Nonobank confirmed that (as noted above) in April 2017, shortly after the Escrow Agreement was signed, Ms. Sun transferred the Chinese currency equivalent of approximately $3.5 million to a PRC intermediary.  Ms. Sun's termination complicated Nonobank's efforts to trace the ultimate destination of these funds and to

- 6 -

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 9 of 20 PageID #: 1675

confirm whether and when the funds were ultimately transferred from the PRC to the Lin Escrow Account.

36. Nonobank was seriously concerned about the safety of the Escrow Payment, particularly given its discovery that Jie was secretly colluding with Ms. Sun and thus, upon information and belief, had the means and opportunity to divert the Escrow Payment to his own accounts.

37. On December 19, 2017, Nonobank's U.S. counsel, Dai & Associates, contacted Lin and requested confirmation that the Escrow Payment was being held in the Lin Escrow Account.

38. On December 19, 2017, Lin responded to Dai & Associates via email, cryptically claiming that he could not "confirm" the existence of the Escrow Agreement.

39. On December 20, 2017, during a call with Dai & Associates, Lin admitted that he had, in fact, executed the Escrow Agreement. Lin claimed that due to foreign exchange difficulties in the PRC, the funds could not be wired to the Lin Escrow Account and were instead deposited in an account owned by Jie in the PRC. Lin represented, however, that his client Jie had informed him that morning that the funds were just wired to the Lin Escrow Account that day, *i.e.*, on December 20, 2017. Lin further agreed to inform Dai & Associates once he confirmed receipt of the wire from Jie.

40. Contrary to his representations during the December 20, 2017 call, Lin never confirmed (or denied) that Jie deposited any funds in the Lin Escrow Account on December 20, 2017 or at any other time.

41. On or about December 22, 2017, Jie sent Nonobank's PRC counsel copies of alleged bank records (the "Jie Funds Transfer Authorizations") purporting to document Jie's authorization of two transfers totaling $3.5 million from two accounts controlled by Jie to the Lin

- 7 -

Case 1:22-cv-07499-BMC Document 63-24 Filed 11/20/23 Page 10 of 20 PageID #: 1676

Escrow Account in New York. Copies of the Jie Funds Transfer Authorizations are attached to this Complaint as Exhibit B.

42. On December 29, 2017, Nonobank's chief executive officer Ms. Darong Huang sent an email to Lin attaching the Jie Funds Transfer Authorizations and stating as follows:

> As a party to the Escrow Agreement, I, on behalf of Nonobank, ask that you please confirm that the enclosed two wires were made in connection with the transaction contemplated in the escrow agreement provided, that the funds have been received by you in full, and said funds have since remained in your escrow account till this date. Please also provide a full record of any and all transactions relating to said escrowed funds.
>
> Your immediate response and cooperation are highly anticipated.

43. Lin did not respond to this email.

44. The actions of Jie and Lin form a pattern of egregious misconduct, which includes conversion, breaches of fiduciary duty, and/or breaches of contract.

45. If, as Lin admitted on December 20, 2017, the Escrow Payment was deposited in an account owned by Jie, then Nonobank's funds were fraudulently converted by Jie. Jie never had the right to take possession of Nonobank's funds.

46. Even if Jie converted the funds and then transferred them to the Lin Escrow Account in New York (as Jie claimed when he provided the Jie Funds Transfer Authorizations), that would not alter the fraudulent nature of the transfer of the Escrow Payment to and from Jie, given that Jie had no right to possess these funds.

47. Further, if (as Lin admitted on December 20, 2017), the Escrow Payment was deposited with Jie, then Lin aided and abetted Jie's conversion by either (i) failing to inform Nonobank of Jie's conversion, or (ii) to the extent Jie later wired the funds to Lin, accepting the converted funds without informing Nonobank.

- 8 -

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 11 of 20 PageID #: 1677

48.     Further, Lin's failure to respond to Nonobank's inquiries concerning whether he received $3.5 million from Jie (as purportedly shown in the Jie Funds Transfer Authorizations) breached his fiduciary duties as an escrow agent under New York law, in addition to breaching his duties under the Escrow Agreement to safeguard Nonobank's funds.

**Termination of the SEA**

49.     On December 29, 2017, Sorghum terminated the SEA with immediate effect.

50.     Under the terms of the Escrow Agreement, the Escrow Payment is required to be refunded to Nonobank if the Transaction cannot be completed.   Notwithstanding this fact, Defendants have failed to return the Escrow Payment and continued to conceal its whereabouts.

51.     In February and March 2018, Jie requested that Ms. Darong Huang, the chief executive officer of Nonobank and Sorghum, meet with him in New York in order to resolve all disputes among the parties.  Jie held himself out as having authority to speak for CCCR, consistent with the fact that Jie effectively controls CCCR.   Ms. Huang did not agree to meet with Jie.

52.     On March 24, 2018, Nonobank sent a letter to Jie, demanding that Jie instruct Lin to return the Escrow Payment to Nonobank.  Jie did not respond to this letter.

53.     On April 20, 2018, Dai & Associates sent a letter to Lin on behalf of Nonobank, informing him that the Transaction could not be completed and demanding that the Escrow Payment be returned to Nonobank pursuant to the Escrow Agreement.

54.     On April 23, 2018, Lin responded by letter, demanding that Nonobank provide "proof" of having deposited funds in the Lin Escrow Account.  Lin did not deny that the Escrow Payment was deposited in the Lin Escrow Account or that it was otherwise under his control.

55.     On May 1, 2018, Dai & Associates again wrote to Lin on behalf of Nonobank, asking whether Lin had received "any funds" pursuant to the Escrow Agreement.

- 9 -

Case 1:22-cv-07499-BMC    Document 63-24    Filed 11/20/23    Page 12 of 20 PageID #: 1678

56.     On May 4, 2018, Lin replied by letter.  Contrary to his previous representations to Dai & Associates, Lin claimed for the first time that the signature underneath his name on the Escrow Agreement is not his signature.  However, Lin did not deny that the Escrow Payment was deposited in the Lin Escrow Account (whether by his client Jie or otherwise) or that the Escrow Payment was under Lin's control.  Instead, Lin demanded that Nonobank provide "proof" that it deposited the funds with Lin in accordance with the requirements of the Escrow Agreement:

> If the deposit was indeed made by [Nonobank] (within 60 days per purported escrow agreement) in my trust account, provide proof.

57.     There is no good faith basis for Lin's refusal to confirm whether the Escrow Payment is (or was) under his control.  If Nonobank's $3.5 million was never deposited with Lin (whether by Jie or any other person), Lin could have said so.  He did not.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Against Jie and Lin Under the Escrow Agreement)

58.     Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

59.     The Escrow Agreement is a valid, binding and enforceable contract among Nonobank, Jie, and Lin.

60.     Nonobank has fully complied with all terms of the Escrow Agreement.

61.     The Escrow Agreement provides that if the Transaction cannot be completed, the Escrow Payment must be returned to Nonobank upon the written instruction of Jie and Nonobank.  The Escrow Agreement further provides that if Jie and Nonobank cannot perform the agreement, Lin must assist in returning the Escrow Payment with interest back to Nonobank.

62.     Jie and Lin knew that the Transaction could not be completed.

- 10 -

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 13 of 20 PageID #: 1679

63.     Jie breached the Escrow Agreement by failing to instruct Lin to return the Escrow Payment to Nonobank, as requested by Nonobank.

64.     Lin breached the Escrow Agreement when he refused (i) to return the Escrow Payment to Nonobank upon its request, or (ii) to confirm whether the Escrow Payment was deposited in the Lin Escrow Account without "proof" that Nonobank had deposited the funds.

65.     Nonobank has suffered monetary damages as a direct and proximate result of the foregoing breaches.

## SECOND CAUSE OF ACTION
### Declaratory Judgment
**(Against Lin Under the Escrow Agreement)**

66.     Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

67.     A justiciable controversy exists within the meaning of CPLR § 3001 because Nonobank contends that Lin is a party to the Escrow Agreement and Lin denies that he is a party to the agreement.  Further, Lin has contended that he is not required to disclose if and when the Escrow Payment has been deposited in the Lin Escrow Account unless Nonobank furnishes "proof" that it transferred the Escrow Payment to the Lin Escrow Account.

68.     Nonobank is entitled to an order adjudging, declaring, and decreeing that (a) Lin is a party to the Escrow Agreement, and (b) the Escrow Agreement requires Lin to disclose to Nonobank if and when the Escrow Payment was deposited in the Lin Escrow Account.

## THIRD CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
**(Against Lin and Jie Under the Escrow Agreement)**

69.     Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

- 11 -

Case 1:22-cv-07499-BMC Document 63-24 Filed 11/20/23 Page 14 of 20 PageID #: 1680

70.     Under New York law, every contract (including the Escrow Agreement) contains an implied covenant of good faith and fair dealing.

71.     Lin breached the implied covenant of good faith and fair dealing under the Escrow Agreement by refusing to disclose if and when the Escrow Payment was deposited in the Lin Escrow Account, unless Nonobank furnished "proof" that it transferred the Escrow Payment to the Lin Escrow Account.  Lin's refusal has frustrated Nonobank's efforts to recover the Escrow Payment and deprived Nonobank of the protections of the Escrow Agreement.

72.     Jie also breached the implied covenant under the Escrow Agreement.

73.     The Escrow Agreement provides that if the Transaction cannot be completed, the Escrow Payment must be returned to Nonobank upon the written instruction of Jie and Nonobank. Nonobank contends that Jie breached the Escrow Agreement by failing to instruct Lin to return the Escrow Payment to Nonobank after the Transaction was terminated, as demanded by Nonobank.

74.     To the extent that the Escrow Agreement provides Jie with any discretion regarding whether to issue an instruction under the circumstances (which Nonobank disputes), it was arbitrary and unreasonable for Jie not to do so.  Jie's failure to do so was a breach of the implied covenant under the Escrow Agreement.

75.     As a direct and proximate result of Lin's and Jie's breaches of the implied covenant of good faith and fair dealing, Nonobank has suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Lin)

76.     Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

- 12 -

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 15 of 20 PageID #: 1681

77. Under Rule 1.15 of New York's Rules of Professional Conduct and applicable New York law, Lin had a fiduciary duty to, among other things, (i) promptly notify Nonobank of the receipt of funds in which Nonobank had an interest, (ii) maintain complete and accurate records of all funds coming into his possession in which Nonobank had an interest, and (iii) promptly pay or deliver to Nonobank all funds that it is entitled to receive.

78. Lin breached his fiduciary duties by refusing to confirm if and when the Escrow Payment was deposited in the Lin Escrow Account unless Nonobank furnished "proof" that it transferred the Escrow Payment to the Lin Escrow Account.

79. Further, to the extent the Escrow Payment was deposited with Lin (whether by Jie or any other person), Lin has breached his fiduciary duties by failing to return it to Nonobank upon Nonobank's demand.

80. As a direct and proximate result of Lin's breaches of fiduciary duty, Nonobank has suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Fraud / Fraudulent Inducement
### (Against CCCR and Jie)

81. Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

82. Nonobank wired the Escrow Payment to an intermediary in the PRC based upon Jie's representations in the Escrow Agreement that the funds would be held in safe keeping in escrow in the Lin Escrow Account and would not be released to Jie unless the Transaction was successfully consummated.

- 13 -

83.     Jie knew that Nonobank would be relying upon these representations, which were material.  Nonobank would not have entered into the Escrow Agreement absent these representations.

84.     Jie's representations were false when made; he never intended to comply with them. Indeed, Jie engaged in a fraudulent scheme to divert the Escrow Payment to his own accounts almost immediately after it left Nonobank.

85.     CCCR is vicariously liable for Jie's fraudulent conduct, given that Jie (CCCR's Vice President of Finance and the manager of CCCR's representative office in New York) represented CCCR in negotiating the Transaction, had authority to bind CCCR in matters related to the Transaction, and was acting within the scope of that authority when he committed the fraud alleged herein.

86.     Further, Jie's entry into the Escrow Agreement was intended to benefit CCCR. Indeed, the purpose of the $3.5 million payment to Jie contained in the Escrow Agreement was to secure Jie's assistance in facilitating the Transaction between Nonobank's parent and CCCR.

87.     As a direct and proximate result of Jie's and CCCR's fraudulent conduct, Nonobank has suffered damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### Conversion
### (Against CCCR and Jie)

88.     Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

89.     Pursuant to the Escrow Agreement, Nonobank transferred the Escrow Payment to an intermediary in the PRC with the intent that the funds be deposited in the Lin Escrow Account. At all relevant times, Nonobank was the rightful owner of these funds.

- 14 -

Case 1:22-cv-07499-BMC    Document 63-24    Filed 11/20/23    Page 17 of 20 PageID #: 1683

90.     Jie, without authority, intentionally exercised complete dominion and control over the funds to the exclusion of Nonobank, and therefore interfered with Nonobank's rights. Nonobank has been unable to recover the funds.

91.     Jie's conduct constituted conversion, rendering him liable to Nonobank to the extent of the value of the converted funds.

92.     CCCR is vicariously liable for Jie's conversion, given that Jie (CCCR's Vice President of Finance and the manager of CCCR's representative office in New York) represented CCCR in negotiating the Transaction, had authority to bind CCCR in matters related to the Transaction, and was acting within the scope of that authority when he committed the conversion alleged herein.

93.     As a direct and proximate result of the conversion, Nonobank has suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Aiding and Abetting Conversion
### (Against Lin)

94.     Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

95.     Pursuant to the Escrow Agreement, Nonobank transferred the Escrow Payment to an intermediary in the PRC with the intent that the funds be deposited in the Lin Escrow Account. At all relevant times, Nonobank was the rightful owner of these funds.

96.     Jie, without authority, intentionally exercised complete dominion and control over the Escrow Payment to the exclusion of Nonobank, and therefore interfered with Nonobank's rights. Nonobank has been unable to recover the funds.

- 15 -

Case 1:22-cv-07499-BMC   Document 63-24   Filed 11/20/23   Page 18 of 20 PageID #: 1684

97.     Lin informed Nonobank that Jie would be transferring funds from Jie's accounts in the PRC to the Lin Escrow Account.  Lin knew that Jie had no right to possess these funds. However, Lin refused to provide Nonobank with an accounting of any funds transferred by Jie to the Lin Escrow Account.

98.     Based upon the foregoing, Lin aided and abetted Jie's conversion of Nonobank's funds.

99.     As a direct and proximate result of Lin's aiding and abetting Jie's conversion, Nonobank has suffered damages in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Equitable Accounting**
**(Against Lin)**

100.    Nonobank repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

101.    Prior to the commencement of this action, Nonobank, through its U.S. counsel, demanded that Lin account for all funds belonging to Nonobank in the Lin Escrow Account, turn over to Nonobank all records in his possession relating to same, and pay over to Nonobank any funds to which it is entitled.

102.    To date, Lin has refused to provide an accounting of any funds in which Nonobank has an interest that are held by him in escrow (whether deposited by Jie or any other person), nor has he released any such funds to Nonobank.

103.    Nonobank has no adequate remedy at law.

104.    Accordingly, Nonobank demands that Lin turn over to Nonobank all records in his possession relating to funds in which Nonobank has an interest, and pay over to Nonobank any funds to which Nonobank is entitled.

- 16 -

Case 1:22-cv-07499-BMC Document 63-24 Filed 11/20/23 Page 19 of 20 PageID #: 1685

## PRAYER FOR RELIEF

WHEREFORE, Nonobank respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

(1) An award of damages against Jie and Lin for breaching the Escrow Agreement;

(2) An order adjudging, declaring, and decreeing that (a) Lin is a party to the Escrow Agreement, and (b) the Escrow Agreement requires Lin to disclose to Nonobank if and when the Escrow Payment was deposited in the Lin Escrow Account;

(3) An award of damages against Jie and Lin for breaching the covenant of good faith and fair dealing under the Escrow Agreement;

(4) An award of damages against Lin for breaching his fiduciary duties;

(5) An award of damages against Jie and CCCR resulting from their fraudulent conduct;

(6) An award of damages against Jie and CCCR for converting the Escrow Payment;

(7) An award of damages against Lin for aiding and abetting the conversion of the Escrow Payment;

(8) An order requiring Lin to turn over to Nonobank all records in his possession relating to funds in which Nonobank has an interest, and to pay over to Nonobank any funds to which Nonobank is entitled;

(9) Applicable interest; and

(10) Any such further and other relief that the Court deems just and proper.


Dated: August 2, 2018

DAI & ASSOCIATES, P.C.


By: /s/ Amiad M. Kushner
Amiad M. Kushner
Rongping Wu
1500 Broadway, 22nd Floor
New York, New York 10036
Telephone: (212) 730-8880

- 17 -

Case 1:22-cv-07499-BMC    Document 63-24    Filed 11/20/23    Page 20 of 20 PageID #: 1686

Facsimile: (212) 730-8869
*Counsel for Plaintiff Shanghai NoNoBank Financial Information Service Co., Ltd.*

- 18 -