# EXHIBIT Z

Case 1:22-cv-07499-BMC     Document 63-27     Filed 11/20/23     Page 2 of 8 PageID #:
1714

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. ANDREW BORROK**                                   PART        IAS MOTION 53EFM

_Justice_

-------------------------------------------------------------------------------X

SORGHUM INVESTMENT HOLDINGS LIMITED                       INDEX NO.         655372/2018

Plaintiff,                                                MOTION DATE       10/29/2018

- v -                                                     MOTION SEQ. NO.      001

CHINA COMMERCIAL CREDIT, INC.,

Defendant.                                                **DECISION AND ORDER**

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 36, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 56, 57, 58, 59

were read on this motion to/for                VACATE - DECISION/ORDER/JUDGMENT/AWARD          .

This is a motion brought by Petitioner Sorghum Investment Holdings Limited (**Sorghum**) to vacate an arbitration award, dated July 30, 2018 (the **Award**), issued in the arbitration proceedings between Sorghum and Respondent China Commercial Credit, Inc. (**CCCR**) arising out of a failed reverse merger transaction (the **Transaction**). Sorghum asserts, _inter alia_, that CCCR's attorney, Yi Lin, concealed the existence of a $3.5 million escrow payment at the heart of the dispute and made false and misleading statements in his declaration, and that the Award was therefore procured by fraudulent and undue means and must be vacated. For the reasons set forth below, the motion to vacate the Award is granted.

## FACTS RELEVANT TO THE MOTION

Beginning in early 2017, representatives of CCCR entered into discussions with Shanghai Wheat Asset Management Co., Ltd. (**Wheat**), a wholly-owned subsidiary of Sorghum, to discuss a possible reverse merger. Yang Jie , CCCR's Vice President of Finance and largest shareholder, represented CCCR in these discussions. CCCR, Mr. Jie, and Shanghai NoNobank Financial

INDEX NO. 655372/2018
RECEIVED NYSCEF: 05/06/2019

Case 1:22-cv-07499-BMC    Document 63-27    Filed 11/20/23    Page 3 of 8 PageID #:
1715

Information Service Co., Ltd. (**Nonobank**) entered into a Memorandum of Understanding (**MOU**), dated March 21, 2017, regarding the terms of the Transaction. Pursuant to the MOU, Nonobank agreed to deposit $3.5 million in escrow, which would be paid to Mr. Jie upon the consummation of the Transaction. The terms of the escrow payment were set forth in an Escrow Agreement (the Escrow Agreement), dated March 24, 2017, among Nonobank, Mr. Jie, and Mr. Lin, as escrow agent. Pursuant to the Escrow Agreement, Nonobank agreed to deposit the funds into Mr. Lin's attorney escrow account at TD Bank, N.A. (the **Lin Escrow Account**) pending consummation of the Transaction.

CCCR and Sorghum entered into a Share Exchange Agreement (**SEA**), dated August 9, 2017, pursuant to which Sorghum agreed to become a wholly-owned subsidiary of CCCR, and Sorghum's former shareholders would own a majority of CCCR. The SEA required that any disputes arising out of the transaction be submitted to arbitration. From August 2017 until December 2017, the parties worked toward closing the Transaction. In mid-December 2017, Sorghum learned that Mr. Jie was under criminal investigation in China for securities fraud. Then, Sorghum discovered that the advisory firm that it had retained to render a fairness opinion as to the Transaction was wholly-owed by Mr. Jie. This conflict of interest had not previously been disclosed. Sorghum's investigation also revealed that Mr. Jie had colluded with a rogue employee of Nonobank, Xioying Sun, to divert the payment of the $3.5 million escrow funds to Mr. Jie's account.

Sorghum, though counsel, made several attempts to inquire with Mr. Lin as to the status of the escrow payment. Mr. Lin revealed that the funds had actually been deposited in an account

655372/2018   SORGHUM INVESTMENT HOLDINGS vs. CHINA COMMERCIAL CREDIT, INC.                    Page 2 of 7
Motion No.  001

2 of 7

Case 1:22-cv-07499-BMC    Document 63-27    Filed 11/20/23    Page 4 of 8 PageID #: 1716

owned by Mr. Jie in China rather than the Lin Escrow Account in accordance with the Escrow Agreement, but he indicated that the funds were being wired to the Lin Escrow Account. On December 21, 2017, CCCR served a notice of breach on Sorghum, alleging that Sorghum breached the SEA by failing to respond to certain comments made by the Securities and Exchange Commission (the **SEC**). On December 28, 2017, Sorghum responded to CCCR's breach notice with a request for information from CCCR regarding the status of Nonobank's $3.5 million payment. On December 27, 2017, CCCR filed a form 8-K with the SEC without prior notice to Sorghum. On December 29, 2017, Sorghum terminated the SEA based on CCCR's actions in filing the form 8-k without prior notice. Pursuant to Section 11.4 of the SEA, CCCR filed an arbitration demand with the American Arbitration Association on January 25, 2018, alleging that Sorghum breached the SEA. In its answer and counterclaim, Sorghum denied breaching the SEA and asserted that it was in fact CCCR that breached the SEA.

In the course of the arbitration proceedings, Mr. Lin made a declaration as to the events giving rise to the termination of the Transaction. In his declaration, Mr. Lin stated that he never signed any agreement relating to the escrow payment, had no record of any escrow agreement, and had no record of any escrow account (NYSCEF Doc. No. 50 ¶¶ 115-116, 120). Mr. Lin further stated that he had no "direct or indirect" proof that the purported escrow funds were ever deposited (*id.* ¶ 122). Relying on the declaration of Mr. Lin, the Arbitrator concluded that Nonobank never made the escrow payment as required under the Escrow Agreement and found that Sorghum committed a willful breach of the SEA (*id.* ¶¶ 102, 107, 113-122, 152).

655372/2018  SORGHUM INVESTMENT HOLDINGS vs. CHINA COMMERCIAL CREDIT, INC.          Page 3 of 7
Motion No. 001

3 of 7

Case 1:22-cv-07499-BMC    Document 63-27    Filed 11/20/23    Page 5 of 8 PageID #:
1717

Specifically, the Arbitrator found that,

> Based on the declaration of Mr. Lin, . . . which I find credible, I do not find it credible that [the President and Director of Sorghum] or anyone in her organization or her counsel received a message from Mr. Lin that funds had been deposited into the purported escrow account on December 19 or on any other date (*id.* ¶ 107).

The Arbitrator expressly relied on Mr. Lin's representations that "the signature on the Escrow Agreement was not his signature nor that of anyone from his office" and that, while he was aware of a discussion draft that had been circulated, "he did not sign the Escrow Agreement, and he has no record of it being fully executed by the other parties" (*id.* ¶ 120). The Arbitrator further relied on Mr. Lin's statement that

> he further reviewed his escrow deposit record and found no record of any Escrow Agreement wherein Nonobank is a depositor and he is the escrow agent; and, that he has 'received no proof, direct or indirect, concerning deposit of funds by' Nonobank or affiliated entities" (*id.* ¶ 122).

Discovery in a related action currently pending before this court, *Shanghai NoNoBank Financial Information Service Co. v China Commercial Credit Inc.*, Index No. 653834/2014, revealed that Mr. Jie had in fact wired the escrow payment to the Lin Escrow Account (NYSCEF Doc. Nos. 24, 25). Documents produced by TD Bank confirm that the sum of $3.5 million dollars was wired in two payments from accounts controlled by Mr. Jie to Mr. Lin's attorney escrow account at TD Bank on December 20, 2017 (*id.*). Sorghum now moves to vacate the Award.

## DISCUSSION

The Federal Arbitration Act (9 USC § 1 *et seq.*, hereinafter the **FAA**) governs in proceedings to confirm or vacate arbitration awards where the transactions at issue arise out of international commerce (*ACN Digital Phone Service, LLV v Universal Microelectronics Co., LTD*, 115 AD3d 602, 603 [1st Dept 104]). The instant petition involves an arbitration award arising out of a

655372/2018   SORGHUM INVESTMENT HOLDINGS vs. CHINA COMMERCIAL CREDIT, INC.          Page 4 of 7
Motion No.  001

4 of 7

Case 1:22-cv-07499-BMC Document 63-27 Filed 11/20/23 Page 6 of 8 PageID #: 1718

proposed cross-border reverse merger transaction, which involves international commerce. Accordingly, the FAA applies here. The court's role in judicial review of an arbitration award is extremely limited, and "[a]n arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached" (*Wien & Malkin, LLP v Helmsley-Spear, Inc.*, 6 NY3d 471, 479-480 [1985]).

With this high bar in mind, there are limited circumstances where it is appropriate for a court to vacate an arbitration award. Specifically, the FAA provides that an arbitration award may be vacated "where the award was procured by corruption, fraud, or undue means" (9 USC § 10 [a] [1]). A petitioner seeking to vacate an arbitration award on the basis that it was procured by fraud must plead that "(1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration" (*Odeon Capital Group LLC v Ackerman*, 864 F 3d 191, 196 [2d Cir 2017]). In the context of a motion to vacate an arbitration award, a petitioner need not demonstrate that, but for the alleged fraud, the arbitrators would have reached a different result (*id.*). Rather, the petitioner must demonstrate that there is a nexus between the alleged fraud and the decision of the arbitrator (*id.*). An arbitration award may also be vacated if it was procured by undue means (9 USC § 10 [a] [1]). An award is procured by undue means where it was the result of immoral, if not necessarily illegal conduct, which is underhanded or conniving but falls short of corruption or fraud (*Bauer v Carty & Co., Inc.*, 246 Fed Appx 375, 378 (6 Cir 2007); *Nat'l Cas. Co. v First State Ins. Grp.*, 430 F 3d 492, 499 [1st Cir 2005]).

Case 1:22-cv-07499-BMC    Document 63-27    Filed 11/20/23    Page 7 of 8 PageID #: 1719

Here, the Arbitrator relied on Mr. Lin's statements that he had no knowledge of any Escrow Agreement or escrow account and that he was not in possession of the escrow funds in issuing the Award (NYSCEF Doc. No. 50 ¶¶ 102, 107, 113-122, 152). Mr. Lin's omitted the material fact later revealed by the TD Bank statements and wire transfers that, on December 20, 2017, Nonobank's $3.5 million escrow payment was in fact wired to Mr. Lin's attorney trust account by Mr. Jie (NYSCEF Doc. Nos. 24, 25). His statement that he had "no record of any escrow deposit" and that he "received no proof, direct or indirect, concerning deposit of funds by [Nonobank] or its affiliated entity" which were relied upon by the Arbitrator and which were critical in in her findings require vacatur of her decision as the Award was procured by fraud or undue means.

In addition, the court notes that, inasmuch as the Arbitrator also found that there was a "willful breach," the Arbitrator exceeded her authority by resolving an issue never submitted by the parties (9 USC § 10 [a] [4]). Where an arbitrator renders a decision beyond the scope of the issues presented by the parties, the arbitrator has exceeded his or her authority and the award must be vacated (*Fahnestock & Co., Inc. v Waltman*, 935 F 2d 512, 514 [2d Cir 1991]). Here, the issue of whether there was a "willful breach" of the SEA was not presented by the parties and the arbitrator therefore exceeded her authority by reaching this issue. Accordingly, the motion to vacate the Award is granted.

Therefore, it is

655372/2018   SORGHUM INVESTMENT HOLDINGS vs. CHINA COMMERCIAL CREDIT, INC.          Page 6 of 7
Motion No.  001

6 of 7

Case 1:22-cv-07499-BMC    Document 63-27    Filed 11/20/23    Page 8 of 8 PageID #:
1720

ORDERED that Petitioner Sorghum Investment Holdings Limited's petition to vacate the

Arbitration Award dated July 30, 2018 is granted; and it is further


ORDERED that the Arbitration Award dated July 30, 2018 is hereby vacated.

20190506141455ABORROK36F01EAB9E8D1CFBAF3DCD49C7F50A53

| 5/6/2019 | | ANDREW BORROK, J.S.C. |
|----------|--|------------------------|
| **DATE** | | |

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|------------|--|---|---------------|--|--|----------------------|--|
| | | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |