# EXHIBIT PP

{EXHIBIT 1 }

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 2 of 40 PageID #: 1910

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------

SOS INFORMATION TECHNOLOGY NEW YORK, INC.,

                       Plaintiff,

       v.

THOR MINER INC., SINGULARITY FUTURE TECHNOLOGY LTD., LEI CAO, YANG JIE, JOHN F. LEVY, TIELIANG LIU, TUO PAN, SHI QIU, JING SHAN and HENG WANG,

                       Defendants.

------------------------------------------------------------

Index No. _____ /2022

Date Purchased: December __, 2022

**SUMMONS**

Plaintiff designates New York County as the place of venue based upon CPLR 503

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and serve a copy of your Answer on the Plaintiff's attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after the completion of service or service made in any manner other than personal delivery within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

     The nature of this action is breach of contract.

Dated: December 9, 2022
       New York, New York

                                */s/ Sandra D. Grannum*
                                Sandra D. Grannum
                                Jeffrey S. Jacobson
                                Marsha J. Indych
                                FAEGRE DRINKER BIDDLE & REATH LLP
                                1177 Avenue of the Americas 41st Floor
                                New York, NY 10036
                                Phone: (212) 248-3140
                                sandra.grannum@faegredrinker.com
                                jeffrey.jacobson@faegredrinker.com
                                marsha.indych@faegredrinker.com
                                *Attorneys for Plaintiff SOS Information Technology New York, Inc.*

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 3 of 40 PageID #: 1911

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------

SOS INFORMATION TECHNOLOGY NEW
YORK, INC.,

                      Plaintiff,

        v.

THOR MINER INC., SINGULARITY
FUTURE TECHNOLOGY LTD., LEI CAO,
YANG JIE, JOHN F. LEVY, TIELIANG LIU,
TUO PAN, SHI QIU, JING SHAN and HENG
WANG,

                      Defendants.

-----------------------------------------------------------------

Index No. _____ /2022

**VERIFIED COMPLAINT**

Plaintiff SOS Information Technology New York, Inc. ("SOS"), by its attorneys, Faegre

Drinker Biddle & Reath LLP, as and for its Verified Complaint ("Complaint"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this Action to recover $286,953,270, which includes: a) at least

$191,302,180, which is the difference between what SOS contracted for ($200,000,000 worth of

cryptocurrency mining rigs with a particular hash rate) and the value of the 1,948 rigs it actually

received ($8,697,820 worth of rigs); and b) $95,651,090, which is the 50% increase in replacement

cost SOS will incur to obtain rigs of a similar hash rate as the rigs for which SOS bargained, but

never received.

## THE PARTIES

2. SOS is a subsidiary of SOS Limited, which is a high-tech company headquartered

in Qingdao, China. SOS Limited is currently listed on the New York Stock Exchange and trades

under the symbol "SOS." Plaintiff is a New York corporation with an office in Manhattan, New

York, New York. Through core technologies, such as AI, block technology, satellite

2

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 4 of 40 PageID #: 1912

communication, and big data, SOS provides digital technical services for emergency rescue, big data marketing, international trade, and digital assets industries, and it provides customers with one-stop digital overall solutions.  SOS's business necessitates the mining of bitcoin.

3.　　　Defendant Singularity Future Technology Ltd. ("Singularity") is a publicly traded company trading as "SGLY" on the Nasdaq Stock Market LLC ("NASDAQ").  Upon information and belief, Singularity is organized under the laws of Virginia, and its principal place of business is in New York at 98 Cutter Mill Road, Suite 322, Great Neck, NY 11021.  Singularity, which is, or was, also known as Sino-Global Shipping America, Ltd. ("Sino-Global"), reported it changed its name to Singularity on or around January 5, 2022.  Upon information and belief, Singularity is a logistics-integrated solution provider, primarily focused on providing logistics, resources, equipment, and other logistical support to blockchain and crypto mining businesses.  Singularity distributes, sells, and markets crypto mining machines through a joint venture with HighSharp (Shenzhen Gaorui) Electronic Technology Co., Ltd. ("HighSharp").  This joint venture is known as Thor Miner, Inc., of which Singularity is a 51% owner.  Singularity maintains a warehouse in Houston, Texas, through which it provides inventory control and management services.

4.　　　Defendant Thor Miner Inc. ("Thor Miner") is, upon information and belief, a Delaware corporation that is the joint venture through which Singularity and HighSharp market, sell, and distribute crypto mining machines.  Upon information and belief, its principal place of business is in New York at Singularity's offices located at 98 Cutter Mill Road, Suite 322, Great Neck, NY 11021.  Thor Miner engages in the manufacture and sale of integrated products, including servers and cloud solutions for blockchain-digital mining machines and AI applications. Upon information and belief, Thor Miner's crypto mining rigs are delivered to the United States

3

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 5 of 40 PageID #: 1913

through Singularity's Houston, Texas, warehouse before they are sent out for distribution to buyers.

5.    Defendant Lei Cao is an individual who, upon information and belief, resides and works in Jericho, New York.  Lei Cao is Chairman of Singularity's Board of Directors ("Board"), with his term as a Board member scheduled to continue until the annual stockholders' meeting for fiscal year 2023.

6.    Defendant Yang Jie is an individual who, upon information and belief, resides and works in Great Neck, New York.  Yang Jie was the Chief Executive Offer ("CEO") of Singularity until he resigned on August 9, 2022.

7.    Defendant John F. Levy is an individual who, upon information and belief, resides and works in Westfield, New Jersey.  John F. Levy is a Board member for a term scheduled to continue until the annual stockholders' meeting for fiscal year 2024.

8.    Defendant Tieliang Liu is an individual who, upon information and belief, resides in West Covina, California.  Tieliang Liu is a Board member for a term scheduled to continue until the annual stockholders' meeting for fiscal year 2023.

9.    Defendant Tuo Pan is an individual who, upon information and belief, resides and works in Jericho, New York.  Tuo Pan was the Chief Financial Officer ("CFO") of Singularity until she was terminated on August 31, 2022.

10.    Defendant Shi Qiu is an individual who, upon information and belief, resides and works in Great Neck, New York.  Shi Qiu was the Chief Technology Officer of Singularity until he resigned on November 18, 2022.

11.    Defendant Jing Shan, upon information and belief, also known as Angela Shan, is an individual who, upon information and belief, resides and works in New York, New York.  Jing

4

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 6 of 40 PageID #: 1914

Shan is the Chief Operating Officer ("COO") of Singularity and the designated "Representative" of Thor Miner.

12. Defendant Heng Wang is an individual who, upon information and belief, resides and works in Great Neck, New York. Heng Wang is a Board member for a term scheduled to continue until the annual stockholders' meeting for fiscal year 2022.

13. At all relevant times, Lei Cao, Yang Jie, John F. Levy, Tieliang Liu, Tuo Pan, Shi Qiu, Jing Shan, and Heng Wang (the "Officer and Director Defendants") listed above were Officers and Directors of Singularity and tasked with the management and governance of Singularity and its joint venture, Thor Miner. They are responsible for any failings of Singularity or Thor Miner ("Corporate Defendants"). Upon information and belief, all the Officer and Director Defendants are domiciled in the State of New York except as stated above. However, in all cases, the Officer and Director Defendants are actively engaged in the management and/or governance of Defendant Singularity, which, upon information and belief, has its principal place of business in New York.

## JURISDICTION

14. Jurisdiction is proper with this Court in accordance with CPLR §§ 301 and 302. The majority of the parties reside in New York, the Agreement was entered into in New York, and the overall Purchase and Sale Agreement at issue was a New York contract involving New York law for a Plaintiff with its principal please of business in New York.

## VENUE

15. Venue is proper with this Court in accordance with CPLR § 503. SOS's principal place of business is in New York County, New York.

5

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 7 of 40 PageID #: 1915

## FACTUAL BACKGROUND

16.     Cryptocurrency is a digital currency that is generated through the computational solution of mathematical problems and that operates independently of a central bank. The solving of mathematical problems to generate cryptocurrency is called "mining," and the computers that are specifically designed to engage in these high-speed calculations are referred to as "mining rigs" or "rigs."

17.     SOS is engaged in cryptocurrency mining. To facilitate its business, SOS must keep up with the market demands for an ever-increasing speed of mining rigs. SOS endeavors to obtain the fastest rigs at competitive prices. However, even at competitive prices, the cost of mining rigs is quite high and the competition to obtain the rigs is fierce.

18.     Mining rig speed is measured in "hash rates." The hash rate is the total computational power the cryptocurrency network uses to process transactions. It is measured by the number of calculations done per second and can be in the quintillions.

19.     Singularity, also known as Sino-Global, provides logistical support to blockchain and crypto mining businesses and sells mining rigs through Thor Miner.

20.     In October 2021, CRYPTONEWS reported that:

**Sino-Global Shipping America, Ltd.** said it plans to enter a Bitcoin (BTC) mining machine joint-venture with **Highsharp**, to work on development, engineering, and commercialization of a mining machine called 'Thor'.

Sino-Global is a global logistics and ship management services company, founded in New York, which, per the press release, has been diversifying into the cryptocurrency market. Highsharp is a company focused on blockchain technology, hardware, software and technology management, and cloud computing, it said.

The scope of the joint venture "will encompass collaborative engineering, technical development and commercialization of a proprietary Bitcoin mining machine under the name Thor, with exclusive rights covering design production, intellectual property, branding, marketing and sales," the partners said.

6

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 8 of 40 PageID #: 1916

This joint venture will also be exclusively licensed to manufacture, market, and sell the Thor Bitcoin Mining Machine across the world; it will own all intellectual property rights related to it, and is set to file a utility patent application with the **United States Patent and Trademark Office** for the machine.

*See* Sead Fadilpasic, *Sino-Global & Highsharp To Throw Thor Into Bitcoin Mining Industry*, Cryptonews (Oct. 4, 2021 10:27 AM), https://cryptonews.com/news/sino-global-highsharp-to-throw-thor-into-bitcoin-mining-industry.htm.

21.     On or around January 5, 2022, Sino-Global changed its name to Singularity Future Technology Ltd. *See Sino-Global Changes Name to Singularity Future Technology Ltd.; Reflects New Focus and Mandate*, Cision PR Newswire (Jan. 5, 2022), https://www.prnewswire.com/news-releases/sino-global-changes-name-to-singularity-future-technology-ltd-reflects-new-focus-and-mandate-301454114.html.

22.     Upon information and belief, if there are any employees, officers, and directors of Thor Miner, they are employees, officers, and directors of Singularity and, therefore, Singularity and the Officer and Director Defendants handled the operations and governance of Thor Miner.

23.     Upon information and belief, Thor Miner shares the same address as Singularity and has no structure or operations independent of Singularity.

24.     Upon information and belief, all of Thor Miner's actions as related to SOS were directed and controlled by Singularity and the Officer and Director Defendants.

25.     On January 10, 2022, SOS entered into a Purchase and Sale Agreement with Thor Miner. The Purchase and Sale Agreement provided that SOS would purchase up to approximately 44,792 rigs for $200,000,000 (approximately $4,465.08/rig) ("Agreement") (attached as Ex. 1). The purchase was agreed to be made in installments, which would be based upon orders made by SOS and agreed to by Defendants. Signing the Agreement on behalf of Thor Miner was Jing Shan, with her title indicated as "COO."

7

26.     In the Agreement, Ms. Shan's contact information is listed as:

**Seller (Thor)**
Attn: Ms. Jing Shan
Address: 98 Cutter Mill Rd[.] Suit[e] 322, Great Neck, NY 11021
Tel: +1 718-888-1814
Email: angelashan@sino-global.net

(*See* Ex. 1, Article 17).

27.     The Agreement[1] provides, among other things:

### Article 1. Purchase Order(s)

(1)     Seller agrees to manufacture and sell to Buyer the Products from time to time, in each case, pursuant to an Order to be placed by Buyer and confirmed by Seller according to the terms provided herein.  Buyer agrees to purchase the Products as specified in each Order according to such terms.
(2)     Price and payment.
        (2.1) The Parties agreed per unit price shall be set forth in Exhibit A.
        (2.2) The Parties agreed Buyer shall make payment of equal to 50% of the Total Purchase Price within 5 days upon [the signing of] this agreement, and the remaining 50% for each Order shall be paid at least seven calendar days before the Shipment.

### Article 8. Default Clauses

(1)     Both Parties solemnly promise to strictly [perform] their respective responsibilities and obligations stipulated in this Agreement.  Any breach of any obligation under this Agreement by either Party shall constitute a breach of contract hereunder.  The breaching party shall bear responsibility for continuing to perform, taking remedial measures, and compensating for losses.  Compensation for losses should include attorney fees, litigation fees, investigation fees, notarization fees, travel expenses and other rights protection expenses.

### Article 15. Governing Law

(2)     All future agreement of this Agreement shall be governed by and construed in accordance with the laws of the New York State without regard to its conflict of law principles.

(*Id.* at Articles 1, 8, 15) (emphasis added).  The Agreement also appears in the SEC's archives

(without        its        accompanying        exhibits        or        contact        information)        at

---

[1]     The Agreement is a bilingual document in both English and Chinese.  For simplicity, in quoting the text, SOS has omitted the Chinese translations of the Agreement's provisions.

8

Case 1:22-cv-07499-BMC   Document 63-43   Filed 11/20/23   Page 10 of 40 PageID #: 1918

https://www.sec.gov/Archives/edgar/data/1346610/000121390022001753/ea153911ex99-1_soslimited.htm (last visited Dec. 6, 2022).

28.      Exhibit A of the Agreement provided the particulars of the total amount of the Order SOS could request from Thor Miner as:

| Commodity | Model | (TH/S) HashRate | Power Consumption | Quantity/pcs | Price/USD | Total Amount/USD |
|---|---|---|---|---|---|---|
| server | S99 | No less than 95 | 3,400 | Approximate 44792 | $47.00/T | $200,000,000.00 |
| The performance parameters (HashRate, power consumption) of[ ]the target Products listed in this table are the operating results under 25° C environmental conditions. | | | | | | |

The quantity of rigs is denoted as an "Approximate" in recognition that rigs improve quickly, and it is not necessarily the exact number of rigs SOS seeks, but rather the hash rate (no less than 95) and the Power Consumption (3,400).  The hash rate and consumption power for which SOS bargained could be achieved by approximately 44,792 model S99 rigs in January 2022.

29.      A Form 8-K filing is the method by which publicly traded companies promptly advise the United States Securities and Exchange Commission ("SEC") and the investing public of material events or corporate changes that could be important to the investing public.

30.      Singularity initially disclosed the Agreement in its Form 8-K filing with the SEC dated January 11, 2022, the day after the Agreement was executed.  *See* Singularity Future Technology Ltd., Current Report (Form 8K) (Jan. 11, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001422892/000121390022001458/ea153823-8k_singularity.htm.

31.      On January 14, 2022, Singularity amended its Form 8-K filing, attaching the Agreement (without its accompanying exhibits) as Exhibit 10.1 and reporting:

Amendment to the Current Report on Form 8-K filed on January 11, 2022

As previously disclosed, on January 11, 2022, the Company filed a Current Report on Form 8-K to report that the Company's joint venture, Thor Miner Inc ("Thor"), entered into a Purchase and Sale Agreement with SOS Information Technology New York Inc. (the "Buyer"). Pursuant to the Purchase and Sale Agreement, Thor agreed to sell and the Buyer agreed to purchase certain cryptocurrency mining hardware and other equipment. The aggregate amount of the Purchase and Sale Agreement is $200,000,000, which is expected to be completed under separate purchase orders. Thor and the Buyer agreed that the Buyer shall make payment equal to 50% of the total purchase price within 5 days after the execution of the Purchase and Sale Agreement, and the remaining 50% for each order shall be paid at least seven (7) calendar days before the shipment.

Subsequently, Thor and the Buyer agreed that the Buyer shall make payment equal to 50% of the total purchase price of each order within 5 days, and the remaining 50% for each order shall be paid at least seven (7) calendar days before the shipment. The first order under the Purchase and Sale Agreement Thor received was a $80,000,000 order placed on January 10, 2022. As of the date of this report, Thor has already received the $40,000,000 for the first order.

(Ex. 2). *See also* Singularity Future Technology Ltd., Current Report (Form 8-K/A) (Jan. 14, 2022), https://sec.report/Document/0001213900-22-002157/.

32. Yang Jie was the CEO and a Director of Singularity at the time Defendants entered into the Agreement. Singularity reported to the SEC that Mr. Jie began working for Singularity in January 2021 and was appointed CEO of Singularity on November 1, 2021. *See* Sino-Global Shipping America, Ltd., Current Report (Form 8-K) (Nov. 1, 2021), https://sec.report/Document/0001213900-21-055789/.

33. Conflicting information has been publicly reported about Mr. Jie's education.

a) Upon information and belief, in his 2014 autobiography "The Power of Trying," he claims to have only received an elementary school education. *See Singularity Future Technology: This Nasdaq-Listed Company's CEO Is a Fugitive, On The Run For Allegedly Operating A Massive Ponzi Scheme*, Hindenburg Research (May 5, 2022), https://hindenburgresearch.com/singularity/ (citing to pages from Mr. Jie's biography at

10

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 12 of 40 PageID #: 1920

https://www.slideshare.net/HindenburgResearch/yang-jie-biography/1)("Hindenburg Publication").

b) In March 2016, Tianhe Union Holdings Limited reported that Mr. Jie had a degree in Marketing from Lv'an Teachers College. *See* Tianci International, Inc., Current Report (Form 8-K) (March 30, 2016), https://www.sec.gov/Archives/edgar/data/1619870/000121390016012193/f8k033 016_tianheunion.htm.

c) In a 2017 SEC filing by Tianci International, Inc., it was reported that Mr. Jie obtained his bachelor's degree in Business Administration from Beijing College of Finance and Commerce in 2006. *See* Tianci International, Inc., Annual Report (Form 10-K) (Jan. 13, 2017), https://www.sec.gov/Archives/edgar/data/1557798/000121390017000348/f10k20 16_tianciinternational.htm.

d) In a November 1, 2021 Form 8-K, Singularity, also known as Sino-Global, reported to the SEC that Mr. Jie held a bachelor's degree in Business Management from Beijing Finance and Trade Technology College. *See* Sino-Global Shipping America, Ltd., Current Report (Form 8-K) (Nov. 1, 2021), https://sec.report/Document/0001213900-21-055789/.

34. On January 10, 2022, SOS ordered from Defendants 17,917 "Thor Mining Machine[s]" with a hash rate of no less than 95 ("Purchase Order"). (*See* Ex. 3.) The value of each mining rig was about $4,465, for a total cost of $80,000,000. (*Id.*) Ms. Angela Shan was listed as the Thor Miner contact on the Purchase Order, with her "Sino-Global" email address. (*Id.*)

11

35.    On or around January 11, 2022 at 11:58 AM Eastern Time, SOS made a wire transfer of $40,000,000 to Defendants' JPMorgan Chase Bank Account.  (*See* Ex. 4.)

36.    This $40 million payment was in accord with the terms of the Agreement, and by making this payment, SOS fulfilled its obligation to pay 50% of the full payment of the first order within 5 days of making that order to Defendants.  In fact, SOS's payment was four days ahead of its obligation to pay.

37.    On April 5, 2022, SOS received a "Debit Notice[]" from Defendants, which read:

According to the Purchase order from you on January 10th 2022 which regarding to [sic] purchase mining machine from Thor Miner Inc[.], we are pleased to inform you that 4000 mining machines from the order will be available ship [sic] to your designate[d] place within one month.  Please wire the balance fund for these machines which in amount [sic] of **USD$8,930,000.00** to the account as following, we will arrange the shipment once we receive the fund.  Thank you.
…

**Thor Miner Inc**

**Representative:  Jing SHAN**

(*See* Ex. 5.)

38.    Based upon the statement in the Debit Notice that 4,000 rigs would be ready for shipment within one month, and based on the Agreement's promise of a total of 17,917 rigs, SOS wired $8,930,000 to Defendants' JPMorgan Chase Bank Account on April 11, 2022, at 12:11 AM Eastern Time.  (*See* Ex. 6.)

39.    The $8,930,000 is the second half of the full payment of $17,860,000 for 4,000 rigs at $4,465.  The first half of the payment was subsumed in the initial $40,000,000 signing price.  Therefore, by April 11, 2022, SOS had fully paid for 4,000 rigs and satisfied all its contractual obligations under the Agreement for the first batch of 4,000 rigs out of the 17,917 total rigs ordered in the January 10, 2022 Purchase Order.

40.     The first 4,000 rigs were to be delivered to SOS in installments falling between May 27, 2022 and June 18, 2022, according to a Miner Shipment Schedule dated May 25, 2022, which Defendants created and Angela (a/k/a Jing) Shan sent to SOS ("May 25, 2022 Schedule"). (Ex. 7.)

41.     Notably, given the nature of the crypto mining industry and, especially, the fast pace at which mining rigs become obsolete, the Agreement included a material term that "[t]ime and quantities are of the essence under the Order and Shipment Schedule." (Ex. 1 at Article 2, ¶ 5.) To that end, the Defendants agreed "to deliver the quantities on-time, as stated in the Orders and Shipment Schedule[.]" (*Id.*) As such, a failure to deliver rigs on time or at the quantities ordered would be a material breach of the Agreement.

42.     Additionally, Defendants agreed that the breaching party was responsible for the cost of all remedial measures and, therefore, Defendants are responsible for all costs SOS will incur to replace the rigs for which it bargained. (Ex. 1 at Article 8, ¶ 1.)

43.     Within a month after SOS made its full payment for the 4,000 rigs, a report was published by a short seller Hindenburg Research alleging Thor Miner was a fraud. On May 5, 2022, it published an article entitled "*Singularity Future Technology: This Nasdaq-Listed Company's CEO Is A Fugitive, On The Run For Allegedly Operating A Massive Ponzi Scheme*" (previously defined as "Hindenburg Publication"). There it claimed that Singularity's CEO, Mr. Yang Jie, is a fugitive on the run from Chinese authorities after allegedly running a $300 million Ponzi scheme that lured in over 20,000 victims. The article also claimed that Singularity's Thor Miner joint venture was a fraud and that Thor Miner had not actually developed its own cryptocurrency mining rigs. Instead, the report claimed, Thor Miner was advertising another company's rigs (KOI) as its own.

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 15 of 40 PageID #: 1923

44.     While short seller Hindenburg had its own agenda in publishing its piece, SOS did not know if any of the accusations in the piece was accurate, out of an abundance of caution, SOS sought assurances from Defendants that they intended to deliver the rigs they had contracted to deliver. Therefore, on May 6th, SOS's counsel wrote a letter to Ms. Jing Shan, Singularity's COO, who had signed the Agreement and the Debit Notice on Thor Miner's behalf and had identified herself as Thor Miner's "Representative."  SOS's counsel sought assurance from Ms. Shan that Defendants would satisfy their responsibility under the Agreement and advised Ms. Shan that:

> Our client is concerned about Thor Miner's ability to perform under the [January 10, 2022] Agreement . . . and requires immediate assurances from Thor Miner that the cryptocurrency rigs SOS has ordered and for which SOS has provided a substantial deposit of Forty[-]Eight Million Nine Hundred Thirty Thousand Dollars (US$48,930,000), in payments made on January 11 and April 11, 2022, will be delivered on time.

> You may already be aware of a report entitled "Singularity Future Technology: This Nasdaq-Listed Company's CEO is a Fugitive, On the Run for Allegedly Operating a Massive Ponzi Scheme," published yesterday by Hindenburg Research.           The           report           is           available           at https://hindenburgresearch.com/singularity/#_ftn7.   In addition to alleging that Singularity's Chief Executive Officer Yang Jie is an international fugitive, the report claims that Singularity's Thor Miner joint venture is a fraud and that Thor Miner has not developed cryptocurrency mining rigs.  A picture that Hindenburg Research published of Thor Miner's "S99" rig included the word "KOI" on the rig itself.  Another company, AGM Group Holdings, manufactures a cryptocurrency mining rig called the "KOI."  Hindenburg Research alleges that the product Thor Miner advertises as its own is in fact the KOI Miner manufactured by a competitor.

> Thor Miner represented and warranted in the Article 6 of the Agreement that it possesses all necessary rights to perform under the contract, that performing under the contract would not violate any applicable law, and that it has good and marketable title to all the Products it delivers, free of any encumbrances.  The Hindenburg Research report casts significant doubt on these representations and warranties.  Consequently, SOS needs additional information from Thor Miner immediately.

> If Thor Miner will not be able to deliver Products conforming to its representations and warranties within the time frame specified in the Agreement, SOS hereby demands an immediate and full refund of all monies SOS has paid under the Agreement.  SOS reserves all rights to seek further damages from Thor Miner to the extent SOS is not able to obtain comparable mining rigs to those promised in

14

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 16 of 40 PageID #: 1924

the Agreement at the price contemplated by the Agreement. If Thor Miner intends to deliver the promised rigs by the promised date, please immediately send to us photographic evidence that the rigs are in a suitable state of manufacturing, assembly or transportation, or advise us in writing of why you cannot do so.

…

These are matters of the utmost concern. We therefore must insist that you provide us a response no later than the close of business in New York on Monday, May 9, 2022.

(Ex. 8.)

45. On May 8, 2022, Ms. Shan responded on behalf of Defendants, identifying herself as Singularity's COO. In her email, Ms. Shan stated "Please rest assured and understand that **we** do not believe that the original agreement will be changed. In addition, with regard to the mining machine, the management of SOS have directly contacted **our people** in Shenzhen and have the real-time photos of the production line and transportation on May 8, 2022 as proof (see attached). Please kindly confirm this with your firm internally." (Ex. 9, at 3) (emphasis added).[2]

46. In their email response, clearly Singularity took ownership of the responsibility to deliver the rigs. The photographs referenced by Ms. Shan appeared to show approximately 144 unlabeled rigs, boxes sealed and wrapped in a warehouse, boxes sealed and wrapped on the back of a truck, and what appeared to be computer motherboards. The photographs did not adequately assuage SOS's concerns that Defendants had not developed their own rigs and instead sold KOI rigs, as Hindenburg Research alleged. Nor did they satisfy SOS's request for proof that the 4,000 mining rigs, for which SOS had paid in full, would be delivered to SOS in a timely fashion. (*See id.*)

47. On Friday, May 20, 2022, SOS inquired of Defendants, through their employee Ms.

---

[2] The quoted language is taken from an English translation of the original email in Chinese. (*See* Ex. 9, at 1-3.)

15

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 17 of 40 PageID #: 1925

Shan, when the rigs would be forthcoming. (*See* Ex. 10, at 12-13.)

48. Receiving no response to its May 20, 2022 query, SOS again inquired on Monday, May 23rd about the status of the rig delivery. Ms. Shan responded, "the expected first batch would be this week[.]" SOS followed up on May 24th, asking Ms. Shan "When will the first batch of 4,000 units be delivered according to the [A]greement?" When pushed for specifics about the number of rigs and the timing of delivery, Ms. Shan then reported on May 25th that Defendants would deliver 120 rigs over the weekend. In these email messages, Ms. Shan responded using her corporate signature, identifying herself as "the Chief Operating Officer at Singularity Futures Technology, Ltd", and using an email address that identified her affiliation with "Sino-Global" (Singularity's prior name). (*See id.* at 9-12, 14-18.)

49. In fact, Defendants did not deliver any mining rigs to SOS in May 2022, not even the 120 rigs that Singularity's COO reluctantly promised. (*See id.* at 9-10.)

50. Defendants were supposed to deliver the 4,000 rigs, which were fully paid for, in installments between May 27, 2022 and June 18, 2022 as follows:

| Delivery Batch | Product Name | Date of Delivery | Quantity |
|---|---|---|---|
| 1 | | By 2022.5.27 | 320 |
| 2 | | By 2022.6.4 | 700 |
| 3 | S99 | By 2022.6.11 | 1,000 |
| 4 | | By 2022.6.18 | 1,000 |
| 5 | | By 2022.6.18 | 980 |
| Subtotal | | | 4,000 |

(*See* Ex. 7.) Ms. Shan proposed the May 25, 2022 Schedule and signed it as Thor Miner's "Representative." (*Id.*)

51. The rigs as proposed in the May 25, 2022 Schedule did not arrive. (*Id.*)

16

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 18 of 40 PageID #: 1926

52.     Therefore, on June 1, 2022, SOS followed up with Defendants, advising them that "The 120 pieces of equipment didn't arrive as promised in your last week's email.  What is the status?"  Ms. Shan responded that "The first batch has arrived on May 28th and <u>its [sic] in our Houston warehouse now</u>.  Kindly Please let me know when would be the good time for you to pick it up." (Ex. 10, at 9) (emphasis added).

53.     Singularity had a Houston, Texas warehouse.  SOS did not, and its warehouse was approximately 1,200 miles away in Wisconsin.

54.     Having fully paid for the 4,000 rigs by April 11, 2022, SOS advised Defendants, through Ms. Shan, on June 1, 2022, that "As equipments [sic] delivery deadline from your company is far later than that stipulated in the contract, in order to reduce the impact on our company, It's your company responsibility for transporting this batch of equipments [sic] to our designated location in Wisconsin within 3 days."  SOS further sought assurance that the remainder of the Order would be satisfied.  It inquired, "Apart from these 4,000 equipments [sic], please also provide the delivery plan of the remaining equipments [sic] that we have paid the downpayment [sic]." (Ex. 10, at 8.)

55.     In an email response dated June 1, 2022, Ms. Shan responded from her "**singularity.us**" email address to SOS directing it to the shipment schedule estimate "from our manufacturer." (Ex. 11.)  The attached Miner Shipment Schedule was dated May 27, 2022, sent from "Shenzhen Gaorui Electronic Technology Co., Ltd.," and directed to "**Singularity Future Technology**" ("May 27, 2022 Schedule").  (*Id.*) (emphasis added).  The May 27, 2022 Schedule pushed back the end delivery date from June 18th to June 30th as follows:

17

| Delivery Batch | Product Name | Date of Delivery | Quantity |
|---|---|---|---|
| 1 | | By 2022.5.27 | 320 |
| 2 | | By 2022.6.11 | 700 |
| 3 | | By 2022.6.18 | 1,000 |
| 4 | S99 | By 2022.6.25 | 1,000 |
| 5 | | By 2022.6.30 | 980 |
| Subtotal | | | 4,000 |

(*Id.*) It also addressed only the delivery of the first installment of 4,000 rigs and not SOS's larger questions and concerns about the delivery of the full 17,917 rigs SOS ordered on January 10, 2022, and for which it paid the down payment on January 11, 2022 pursuant to the Agreement.

56. Notwithstanding the revised May 27, 2022 Schedule indicating delivery of 320 rigs by May 27, 2022, the rigs were not delivered.

57. Defendants, through Ms. Shan, then promised delivery on Monday, June 6, 2022. (*See* Ex. 10, at 7-8.)

58. SOS did not receive any rigs until June 6, 2022, and then it received only 120 rigs not 320. (*Id.* at 4-7, 22-23); (*see also* Ex. 12.)

59. On June 6, 2022, SOS emailed Ms. Shan and advised her that "In accordance with the equipment delivery schedule you sent earlier, the first batch of equipment has been delivered late. What is the other equipments [sic] schedule? Please update the following delivery plan according to the current delivery status." (Ex. 10, at 3.)

60. Therefore, on June 6, 2022, Defendants revised their delivery schedule once again ("June 6, 2022 Schedule"). This time, the June 6, 2022 Schedule pushed back the end delivery date from June 30th to July 9th, as follows:

18

Case 1:22-cv-07499-BMC   Document 63-43   Filed 11/20/23   Page 20 of 40 PageID #: 1928

| Delivery Batch | Product Name | Date of Delivery | Quantity |
|---|---|---|---|
| 1 | | By 2022.6.11 | 320 |
| 2 | | By 2022.6.18 | 700 |
| 3 | S99 | By 2022.6.25 | 1,000 |
| 4 | | By 2022.6.30 | 1,000 |
| 5 | | By 2022.7.9 | 980 |
| Subtotal | | | 4,000 |

(*See* Ex. 13.)

61.     As of June 6, 2022, Defendants had repeatedly failed to deliver the ordered (and paid for) quantities of rigs in a timely manner in breach of the Agreement and Purchase Order. By that time, Defendants had also repeatedly failed to provide adequate assurance, notwithstanding SOS's demands regarding Defendants' remaining performance obligations. Defendants' failures constituted anticipatory breach of the Agreement.

62.     Accordingly, on June 7, 2022, SOS advised Defendants, through an email to Ms. Shan, that:

> 1. As the first batch delivery date is much later than the contract, what's the cause of the delivery delayed [sic]? Please give us a clear explanation.
>
> Please note that it must be no later than your updated delivery schedule and the 7-10 days land transportation time required in the shipping instructions issued by your company from your privious [sic] email, otherwise we will immediately start legal proceedings against [sic] for breach of contract in this transaction from our side.
>
> 2. Since the first batch delivery date is much later than the scheduled date in the contract, it has a significant adverse impact on our company's operation. We will not purchase the remaining equipments [sic] except these 4,000 units, so please initiate the refund processing from your company.

(Ex. 10, at 1-2.)

63.     On June 8, 2022, Ms. Shan advised SOS that another 200 rigs were on their way to

19

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 21 of 40 PageID #: 1929

SOS and would be delivered by Sunday, June 12, 2022.  (*Id.* at 1.)

64.     On June 8, 2022, SOS inquired, "What's the result of discussion with your lawyer about refunding process."  (*See* Ex. 14, at 3-4.)

65.     Between June 9 and June 28, 2022, SOS repeated its question eight more times and also asked for Ms. Shan to "update the current actual shipment status according to the updated shipment schedule sent by you previously."  (*See id.* at 1-3, 19-21.)

66.     On or about June 10, 2022, SOS received 216 rigs from Defendants.  (Ex. 15.)

67.     On July 4, 2022, Ms. Shan reported that 700 rigs were on their way.  (*See* Ex. 16.) On or about July 7, 2022, SOS received 700 "S99" rigs.  (*See* Ex. 17.)

68.     On July 26, 2022, SOS requested an update on the status of the remaining unshipped equipment.  (*See* Ex. 18.)  On August 1, 2022, Ms. Shan reported an additional 208 rigs were on their way.  (*Id.*)

69.     On or about August 8, 2022, SOS received an additional 208 rigs from Defendants. (*See* Ex. 19.)

70.     On August 9, 2022, Mr. Jie resigned from his position as CEO and Director of Singularity after the Board recommended that he be suspended immediately pending a Special Committee investigating the allegations raised in the May 5, 2022 Hindenburg Publication.  *See* Singularity Future Technology Ltd., Current Report (Form 8-K) (Aug. 12, 2022), https://sec.report/Document/0001213900-22-047378/.

71.     On or about August 11, 2022, SOS received 192 rigs from Defendants.  (Exs. 20-21.)

72.     On or about October 28, 2022, SOS received a final shipment of 512 rigs from Defendants.  (*See* Ex. 22.)

20

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 22 of 40 PageID #: 1930

73. Ultimately, SOS received a total of 1,948 rigs on the following approximate dates:

| Quantity of mining rigs | Approximate Date of Receipt |
| --- | --- |
| 120 | June 6, 2022 |
| 216 | June 10, 2022 |
| 700 | July 7, 2022 |
| 208 | August 8, 2022 |
| 192 | August 11, 2022 |
| 512 | October 28, 2022 |

(*See* Exs. 12, 15, 17, -19-22.)

74. After the last delivery of 512 rigs on October 28, 2022, Defendants stopped responding to SOS's requests for information regarding the delivery of the remaining rigs and the refund of the down payment SOS had made to Defendants.

75. Therefore, Defendants were not only over a month late on the delivery of the rigs (for which they had demanded, and received, payment) according to their own third revised June 6, 2022 Schedule, but they were also 2,052 rigs short when they stopped communicating with SOS.

76. Notwithstanding repeated demands for delivery of the remaining rigs to fulfill the 4,000 rigs promised to be delivered within a month in the April 5, 2022 Debit Notice, and for which SOS had paid in full, Defendants failed to deliver any additional rigs, and Defendants failed to refund SOS's previous payments.

77. On August 31, 2022, Singularity's CFO Ms. Tuo Pan was terminated for cause. *See* Singularity Future Technology Ltd., Current Report (Form 8-K) (Sept. 7, 2022), https://sec.report/Document/0001213900-22-054510/.

78. For the period ended September 30, 2022, Singularity failed to file its required 10-

Case 1:22-cv-07499-BMC   Document 63-43   Filed 11/20/23   Page 23 of 40 PageID #: 1931

Q Report with the SEC. *See* Singularity Future Technology Ltd., Current Report (Form 8-K) (Nov. 22, 2022), https://sec.report/Document/0001213900-22-074586/.

79. On October 7, 2022, Singularity announced that on October 3, 2022, it received a notice from the Listing Qualifications Department of NASDAQ, advising that the company's securities would be subject to delisting unless the company timely requested a hearing before a NASDAQ Hearings Panel. Therefore, Singularity stated its intention to request a hearing on the subject. *See* Singularity Future Technology Ltd., Current Report (Form 8-K) (Oct. 7, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001422892/000121390022062854/ea166898 -8k_singularity.htm.

80. On November 8, 2022, SOS's counsel wrote to Ms. Shan, Singularity's COO. The letter pointed out that notwithstanding the Agreement, SOS had only received 1,948 rigs from Defendants and it was evident Defendants would not be able to satisfy their obligations under the Agreement. SOS's counsel demanded an immediate and full refund of $40,579,604 for the rigs that had not yet been delivered, as well as an additional $20,000,000 in compensatory damages to make SOS whole "for [Defendants'] default since the market price of the rigs increased approximately 50%." (*See* Ex. 23.)

81. Specifically, SOS's counsel wrote:

On May 6, 2022, we wrote asking Thor Miner for assurances that it would satisfy the terms of its Agreement with SOS and deliver the cryptocurrency rigs to SOS in a timely fashion. As of the date of this letter, SOS has received only 1,948 rigs, which is significantly less than the number of rigs called for by the Agreement. It is evident that Thor Miner is not be able to satisfy the Agreement.

Consequently, we are forced to demand an immediate and full refund of $40,579,604 which would reimburse SOS for the rigs which were not delivered pursuant to the Agreement and payment of $20,000,000 as damages for your default since the market price of the rigs increased approximately 50%. We expect payment of this refund by November 11, 2022. Should payment not be forthcoming SOS will be forced to utilize those legal options available to it.

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 24 of 40 PageID #: 1932

In addition, SOS reserves all rights to seek further damages from Thor Miner to the extent SOS is not able to obtain comparable mining rigs to replace the Agreement's promised rigs at the price contemplated by the Agreement.

It is our hope that Thor Miner will promptly comply with this demand to avoid the expense and distraction of litigation for both parties. All rights, claims, and remedies in connection with this matter are hereby expressly reserved.

(*See* Ex. 23.) Notwithstanding this demand, Defendants never delivered more than 1,948 rigs and never refunded SOS's payments to Defendants.

82. Submitted and published on November 22, 2022, Singularity filed a Form 8-K with the SEC, in which it disclosed the following:

**Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

On November 16, 2022, Singularity Future Technology Ltd. (the "Company") received an additional staff determination notice (the "Notice") from the Listing Qualifications Department of The Nasdaq Stock Market LLC ("Nasdaq"), advising that it had not received the Company's Form 10-Q for the quarterly period ended September 30, 2022, which served as an additional basis for delisting the Company's securities and that the Nasdaq Hearings Panel (the "Panel") will consider the additional deficiency in rendering a determination regarding the Company's continued listing on The Nasdaq Capital Market. The Company has submitted to the Panel a plan to regain compliance with the continued listing requirements, including the filing of the Form 10-Q for the quarterly period ended September 30, 2022.

*See* Singularity Future Technology Ltd., Current Report (Form 8-K) (Nov. 22, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001422892/000121390022074586/ea169146-8k_singularity.htm.

83. On November 18, 2022, Singularity's Chief Technology Officer Shi Qiu tendered his resignation, effective immediately. *Id.*

84. On November 22, 2022, Singularity issued a press release announcing its receipt of the Notice, which it attached to its November 2022 Form 8-K as Exhibit 99.1. *See* Singularity Future Technology Announces Receipt of Nasdaq Notice of Additional Staff Determination (Nov.

23

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 25 of 40 PageID #: 1933

22,    2022),    https://www.sec.gov/Archives/edgar/data/1422892/000121390022074586/ea169146ex99-1_singularity.htm.

85.    On November 28, 2022, twenty days after SOS's counsel's letter to Ms. Shan demanding a refund for SOS, Singularity's counsel responded.  In that communication, Singularity's counsel asserts that SOS's claims are "more properly directed to Thor Miner. [Singularity] is not a party to the agreement between SOS and Thor Miner, and has no obligations thereunder."  (*See* Ex. 24.)

86.    This response came notwithstanding the fact that the designated "Representative" for Thor Miner, signing both the Agreement and the Debit Notice[] calling for SOS to pay an additional $8.93 million with the promise of deliverable rigs, was none other than Ms. Shan, the COO of Singularity.  Moreover, Ms. Shan responded to all of SOS's inquiries and made promises as to the number of rigs and timing of their delivery, or lack thereof, under the signature of her Singularity Officer title.  In fact, the very communication to which Singularity's counsel responded was, in fact, a communication addressed to Ms. Shan at the address Thor Miner shares with Singularity, and specifically to her "Sino-Global" (a/k/a Singularity) email address.  Indeed, this is not the first letter SOS's counsel addressed to Ms. Shan.  As discussed above, on May 6, 2022, SOS's counsel asked Ms. Shan whether Thor Miner could meet its obligations under the Agreement, to which Ms. Shan responded (using her Singularity title and Sino-Global email).  (*See* Exs. 8-9.)

87.    Singularity is responsible for every action and failure to act by Thor Miner.

88.    Defendants are clearly in the midst of corporate crises, and they are incapable of fulfilling their obligations under the Agreement.

24

89.     To date, Defendants have not completed delivery of the remaining 2,052 rigs to complete the 4,000 rigs it promised to deliver in its April 15, 2022 Debit Notice.  Nor have Defendants returned to SOS the $40,232,180 excess payment they received from SOS for rigs they never delivered.

### First Cause of Action
(Breaches of Contract)

90.     The allegations set forth in paragraphs 1 through 89 are incorporated herein as if set forth in full.

91.     SOS entered into the Agreement and Purchase Order with Defendants on or about January 10, 2022.

92.     Defendants and SOS agreed that time and quantities were of the essence under the Agreement.

93.     Defendants and SOS further agreed that SOS would make a payment equal to 50% of the total purchase price of each order within five (5) days of making that order.

94.     As Singularity reported in its Amendment to its Form 8-K dated January 11, 2022, SOS's first order under the Agreement was a $80,000,000 order placed on January 10, 2022.

95.     Fulfilling its obligations under the Agreement, SOS paid Defendants $40,000,000 as its 50% down payment on January 11, 2022 – well within the required five (5)-day window.

96.     On April 5, 2022, Defendants issued a Debit Notice, advising SOS that 4,000 rigs were ready for delivery within the month and demanding that SOS pay $8,930,000 as full payment for those 4,000 rigs before delivery would be made.

97.     Once again, SOS fulfilled the terms of the Agreement and wired $8,930,000 to Defendants on April 11, 2022.

25

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 27 of 40 PageID #: 1935

98. According to Defendants' May 25, 2022 Schedule, Defendants were supposed to deliver the 4,000 rigs to SOS in five (5) batches, the first of which was to occur before May 27, 2022, and the last of which was to occur no later than June 18, 2022.

99. Defendants were obligated to deliver 320 "S99" rigs before May 27, 2022.

100. Defendants did not deliver 320 rigs, but instead delivered only 120 rigs, and did not do so until June 6, 2022.

101. Thereafter, Defendants changed the May 25, 2022 Schedule twice and sent SOS the May 27, 2022 Schedule and the June 6, 2022 Schedule.

102. Notwithstanding the changes made in their May 27, 2022 Schedule and June 6, 2022 Schedule, Defendants continued to fail to meet delivery deadlines and repeatedly delivered fewer rigs than SOS ordered.

103. On June 7, 2022, SOS gave Defendants notice that Defendants were in material breach of the Agreement and SOS would not continue with the Agreement and/or Purchase Order. SOS asked Defendant to fulfill the 4,000-rig commitment and refund any payments for which no rigs were delivered.

104. Defendants never delivered to SOS the 4,000 rigs it repeatedly promised were forthcoming, much less the 17,917 called for by the Purchase Order.

105. Defendants did not return $40,232,180 to SOS and deliver the remaining 2,052 rigs they owed to complete the promised delivery of the first batch of 4,000 rigs.

106. The 1,948 rigs Defendants delivered to SOS were valued at $8,697,820, which was the only amount Defendants were entitled to keep from SOS's payments. Nevertheless, Defendants did not return to SOS the remaining $40,232,180 that SOS paid and that Defendants accepted pursuant to SOS's first order, which Defendants could not, or would not, satisfy.

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 28 of 40 PageID #: 1936

107. SOS provided Defendants and Singularity $48,930,000 (forty-eight million nine hundred thirty thousand dollars) in consideration for the 17,917 mining rigs it was supposed to receive under the Agreement and Purchase Order.

108. SOS fully performed its obligations under the Agreement and Purchase Order.

109. Defendants have failed to perform their duties and obligations pursuant to the Agreement and Purchase Order by failing to deliver the remaining 2,052 rigs, for which SOS paid in full, and an additional 13,917 rigs, for which SOS paid the 50% deposit, thereby breaching the Agreement and Purchase Order.

110. Defendants' actions damaged SOS in the amount of at least $286,953,270, which includes: a) at least $191,302,180, which is the difference between what SOS contracted for ($200,000,000 worth of rigs) and the value of the 1,948 rigs it actually received ($8,697,820 worth of rigs); and b) $95,651,090, which is the 50% increase in replacement cost SOS will incur to obtain the rigs and computing power for which it bargained.

## Second Cause of Action
(Anticipatory Breach of Contract)

111. The allegations set forth in paragraphs 1 through 110 are incorporated herein as if set forth in full.

112. SOS entered into the Agreement with Defendants on or about January 10, 2022, pursuant to which SOS agreed to order approximately 44,792 crypto mining rigs from Defendants for $200,000,000.

113. That same day, the Parties entered into the first Purchase Order under the Agreement, pursuant to which SOS ordered 17,917 rigs for $80,000,000.

27

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 29 of 40 PageID #: 1937

114.    Fulfilling its obligations under the Agreement and Purchase Order, SOS paid Defendants $40,000,000 as its 50% down payment on January 11, 2022 – well within the required five (5)-day window.

115.    On April 5, 2022, Defendants issued a Debit Notice, advising SOS that 4,000 rigs were ready for delivery within the month and demanding that SOS pay $8,930,000 as full payment for those 4,000 rigs before delivery would be made.

116.    Once again, SOS fulfilled the terms of the Agreement and Purchase Order and wired $8,930,000 to Defendants on April 11, 2022.

117.    According to the May 25, 2022 Schedule, the 4,000 rigs were scheduled to be delivered to SOS in five (5) batches, the first of which was to occur before May 27, 2022, and the last of which was to occur no later than June 18, 2022.

118.    On May 5, 2022, short seller Hindenburg Research published an article entitled "*Singularity Future Technology:  This Nasdaq-Listed Company's CEO Is A Fugitive, On The Run For Allegedly Operating A Massive Ponzi Scheme*,"[3] which claimed, among other things, that Singularity's CEO is a fugitive on the run from Chinese authorities after allegedly running a $300 million Ponzi scheme that lured in over 20,000 victims. The article also claimed that Singularity's Thor Miner joint venture was a fraud and that Thor Miner had not actually developed its own cryptocurrency mining rigs.  Instead, the report claimed, Thor Miner was advertising another company's rigs (KOI) as its own.

119.    While short seller Hindenburg had its own agenda and SOS was unaware of whether the statements in the publication where truthful, the mere allegation caused SOS to seek assurance from Defendants that they intended to fulfilling their obligations under the Agreement.

---

[3]    Hindenburg Publication (previously defined).

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 30 of 40 PageID #: 1938

120. Therefore, on May 6, 2022, SOS requested that if Defendants intended to deliver the promised rigs by the promised date, Defendants must provide SOS with assurance and either: (1) immediately send to SOS photographic evidence that the rigs were in a suitable state of manufacture, assembly, or transportation; or (2) advise SOS in writing of why they could not do so. SOS further advised that if Defendants could not meet their obligations, they should return the $48,930,000 SOS had paid for the rigs.

121. Defendants sent photographs of what appeared to be approximately 144 unlabeled rigs, boxes sealed and wrapped in a warehouse, boxes sealed and wrapped on the back of a truck, and what appeared to be computer motherboards.

122. The cryptocurrency market is rapidly moving. There is a constant pressure to improve the design of rigs to function at faster and faster hash rates. Therefore, any delay in delivery disadvantaged SOS in the market against its competitors.

123. Based on the photographs Defendants sent to SOS on May 8, 2022, it did not appear that Defendants were on a path to fulfilling their initial delivery obligation to deliver the first 4,000 Thor Miners batch.

124. Defendants did not meet their commitments under the Agreement and Purchase Order.

125. Defendants did not deliver 320 rigs in their first delivery for their first installment of the delivery of the 4,000 batch, but instead delivered only 120 rigs and did not do so on May 27, 2022 but rather not until June 6, 2022.

126. Thereafter, Defendants changed their May 25, 2022 Schedule, first to their May 27, 2022 Schedule and then to their June 6, 2022 Schedule.

29

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 31 of 40 PageID #: 1939

127.    Notwithstanding the changes to their delivery schedules, Defendants continued to fail to meet deadlines and repeatedly delivered fewer rigs than they had promised.

128.    SOS repeatedly sought assurance from Defendants that Defendants would meet their performance obligations under the Agreement.

129.    Defendants repeatedly failed to provide SOS with adequate assurance that they would perform their obligations under the Agreement, and Defendants continued to breach the terms of the Agreement with respect to the Purchase Order.

130.    On June 7, 2022, SOS gave Defendants notice that they were in material breach of the Agreement and SOS would not continue with the Agreement and/or Purchase Order.  SOS asked Defendant to fulfill the 4,000-rig commitment and refund any funds that SOS paid for which no rigs were delivered.

131.    Defendants have failed to abide by their duties and obligations pursuant to the Agreement by failing to deliver $200 million worth of rigs contracted for and, thereby, breached the Agreement.

132.    Pursuant to § 2-609 of the Uniform Commercial Code ("UCC"), SOS was entitled to adequate assurance of performance from Defendants.  "When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return."  The Hindenburg Publication cast sufficient doubt on Defendants' willingness or ability to perform its obligation under the Agreement to warrant SOS demanding an adequate assurance from Defendants.

133.    SOS did not receive any adequate assurance from Defendants.

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 32 of 40 PageID #: 1940

134.    SOS waited a reasonable time for Defendants to fulfill its obligations under the Agreement.  The failure to provide adequate assurance in the face of the Hindenburg Publication and Defendants' repeated breaches of the Purchase Order constitute an anticipatory repudiation (as set forth by UCC § 2-610) of the entire Agreement to provide SOS with $200,000,000 worth of rigs.

135.    Defendants' actions damaged SOS in the amount of at least $286,953,270, which includes: a) at least $191,302,180, which is the difference between what SOS contracted for ($200,000,000 worth of rigs) and the value of the 1,948 rigs it actually received ($8,697,820 worth of rigs); and b) $95,651,090, which is the 50% increase in replacement cost SOS will incur to obtain the rigs and computing power for which it bargained.

### Third Cause of Action
(Conversion)

136.    The allegations set forth in paragraphs 1 through 135 are incorporated herein as if set forth in full.

137.    On January 11, 2022, SOS made a wire transfer of $40 million into a specific account at JPMorgan Chase Bank that Defendants identified as their account.

138.    SOS wired $40 million to Defendants, believing it would receive a certain quantity of mining rigs with an expected computing power in return for the funds.

139.    On April 11, 2022, SOS made a wire transfer of an additional $8.93 million into a specific account at JPMorgan Chase Bank that Defendants identified as their account.

140.    SOS wired $8.93 million to Defendants, believing it would receive a certain quantity of mining rigs with an expected computing power in return for the funds.

141.    SOS provided Defendants $48,930,000 in consideration for the mining rigs it was supposed to receive.

31

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 33 of 40 PageID #: 1941

142. Defendants failed to deliver the appropriate number of rigs and agreed-upon computing power, and therefore, they were not entitled to the $48,930,000 of SOS's funds in their possession.

143. On May 6, 2022, then June 7, 2022, and again on November 8, 2022, SOS demanded the return of their funds. Between June 9 and June 28, 2022 alone, SOS followed up with Defendants eight times about its demand for a refund. Defendants failed to return the funds from SOS that they did not earn, and they have thereby converted those funds for their own purposes.

144. The $48,930,000 that SOS wired to Defendants' JPMorgan Chase Bank account is a specifically identifiable and segregated amount. Defendants had an obligation to return to SOS $40,232,280, the difference between what SOS paid and the value of the 1,948 rigs Defendants actually delivered.

145. Defendants' conversion of SOS's assets has caused SOS damages of $40,232,180 difference in what SOS paid (as half of their first full order and the full amount of the first batch of 4,000 rigs promised to SOS) and the value of the 1,948 rigs delivered.

### Fourth Cause of Action
(Unjust Enrichment)

146. The allegations set forth in paragraphs 1 through 145 are incorporated herein as if set forth in full.

147. SOS may recover under unjust enrichment if the Court determines that the Agreement does not govern some or all of the dispute or that the Agreement is invalid or unenforceable.

148. SOS provided Defendants with $48,930,000 in consideration for the mining rigs it was supposed to receive.

32

149. Defendants failed to deliver the mining rigs that they promised to SOS.

150. Defendants have refused to return to SOS $40,232,180, the difference between what SOS paid ($48,930,000) and the value of the 1,948 rigs Defendants actually delivered ($8,697,820).

151. Upon information and belief, Defendants anticipated that they would not be able to deliver the mining rigs that they promised to SOS when they signed the Agreement and received payments totaling $48,930,000 from SOS.

152. Upon information and belief, Defendants misrepresented that they would be able to deliver the mining rigs that they promised to SOS when they signed the Agreement and received payments totaling $48,930,000 from SOS.

153. Upon information and belief, Defendants misrepresented the qualifications of their CEO.

154. Upon information and belief, Defendants have engaged in fraudulent activities, including misrepresenting their production capacity to make the rigs they contracted to provide to SOS.

155. Upon information and belief, Defendants have engaged in fraudulent activities, including purporting to be separate entities, but being, in fact, one functioning entity.

156. Upon information and belief, Defendants have engaged in fraudulent activities, including misrepresenting their production capacity to make the rigs they contracted to provide to SOS.

157. Upon information and belief, Defendants have engaged in fraudulent activities, including misrepresenting that SOS's rigs were being manufactured and shipped, thereby preventing SOS from mitigating its damages.

Case 1:22-cv-07499-BMC   Document 63-43   Filed 11/20/23   Page 35 of 40 PageID #: 1943

158. Upon information and belief, Defendants knowingly made the misrepresentations above with the intention to induce SOS to enter the Agreement and to pay Defendants, including the $48,930,000 that SOS wired to Defendants.

159. Defendants have accepted and retained SOS's $40,232,180 (the difference between what SOS paid and the value of the 1,948 rigs delivered), inequitably and at SOS's expense.

160. For the reasons set forth above, it is against equity and good conscience to permit Defendants to retain at least the $40,232,180 that SOS provided plus pre-judgment interest.

### Fifth Cause of Action
(Fraudulent Inducement)

161. The allegations set forth in paragraphs 1 through 160 are incorporated herein as if set forth in full.

162. Upon information and belief, Defendants made material misrepresentations that they would be able to deliver the mining rigs they promised to SOS when they signed the Agreement, and Defendants received payments totaling $48,930,000 from SOS.

163. Upon information and belief, Defendants misrepresented the qualifications of their CEO.

164. Upon information and belief, Defendants have been engaged in fraudulent activities, including misrepresenting their production capacity to make the rigs that they contracted to provide.

165. Upon information and belief, Defendants have been engaged in fraudulent activities, including misrepresenting that SOS's rigs were being manufactured and shipped, thereby preventing SOS from mitigating its damages.

34

166. Upon information and belief, Defendants knowingly made the misrepresentations above with the intention to induce SOS to enter the Agreement and to pay Defendants, including the $48,930,000 that SOS wired to Defendants.

167. The misrepresentations above were about facts that a reasonable person would likely consider important in choosing to enter the Agreement and that have a natural tendency to lead a reasonable person to change his conduct. Defendants' fraudulent behavior has caused SOS damages of $40,232,180 difference in what SOS paid (as half of their first full order and the full amount of the first batch of 4,000 rigs promised to SOS) and the value of the 1,948 rigs delivered.

168. Based upon Defendants' egregious actions, SOS is entitled to punitive damages in an amount to be determined by the Court.

## Sixth Cause of Action
(Constructive Trust)

169. The allegations set forth in paragraphs 1 through 168 are incorporated herein as if set forth in full.

170. SOS transferred $48,930,000 to Defendants in reliance on Defendants' misrepresentations.

171. Defendants have refused to return $40,232,180, the difference between what SOS paid ($48,930,000) and the value of the 1,948 ($8,697,820) rigs delivered, to SOS.

172. Having been unjustly enriched by at least $40,232,180, Defendants hold these funds in a constructive trust for SOS's benefit.

173. SOS respectfully requests that this Court impose a constructive trust for the benefit of SOS on SOS's funds in the amount of $40,232,180 currently held by Defendants.

35

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 37 of 40 PageID #: 1945

### Seventh Cause of Action
(Attorney's Fees)

174.    The allegations set forth in paragraphs 1 through 173 are incorporated herein as if set forth in full.

175.    SOS entered into the Agreement with Defendants on or about January 10, 2022.

176.    SOS provided Defendants $48,930,000 in consideration for the mining rigs it was supposed to receive.

177.    Defendants have failed to abide by their duties and obligations pursuant to the Agreement by failing to deliver the rigs and, thereby, breached the Agreement.

178.    The Agreement provides that:

Article 8. Default Clauses

(1)    Both Parties solemnly promise to strictly [perform] their respective responsibilities and obligations stipulated in this Agreement.  Any breach of any obligation under this Agreement by either Party shall constitute a breach of contract hereunder.  The breaching party shall bear responsibility for continuing to perform, taking remedial measures, and compensating for losses.  Compensation for losses should include attorney fees, litigation fees, investigation fees, notarization fees, travel expenses and other rights protection expenses.  (Emphasis added).

179.    Therefore, SOS is contractually entitled to receive not only the compensatory damages of $40,232,180 which Defendants caused, but also compensation for its attorneys' fees, litigation fees, investigation fees, notarization fees, travel expenses, and other rights protection expenses.

**WHEREFORE,** Plaintiff SOS Limited respectfully requests judgment as follows:

A.    On the First Cause of Action for Breach of Contract, a money judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of at least $286,953,270, in compensatory damages plus pre- and post-judgment interest accrued at a rate of 9% per annum from October 28, 2022 (the late date a rig was delivered) through satisfaction of judgment, and a sum for lost opportunity cost to be determined by the Court.

36

Case 1:22-cv-07499-BMC    Document 63-43    Filed 11/20/23    Page 38 of 40 PageID #: 1946

B.      On the Second Cause of Action Anticipatory Breach of Contract, a money judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $286,953,270 in compensatory damages plus pre- and post-judgment interest accrued at a rate of 9% per annum from May 8, 2022 (the date Defendant provided an unsatisfactory response for assurance that they would meet their obligations pursuant to the Agreement) through satisfaction of judgment, and a sum for lost opportunity cost to be determined by the Court.

C.      On the Third Cause of Action for Conversion, a money judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $40,232,180 plus pre- and post-judgment interest accrued at a rate of 9% per annum from November 28, 2022 (the date SOS demanded return of their deposit, payment for the original batch and replacement costs, respectively) through satisfaction of judgment.

D.      On the Fourth Cause of Action for Unjust Enrichment, a money judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $40,232,180 plus pre- and post-judgment interest accrued at a rate of 9% per annum from May 8, 2022 (the date Defendant provided an unsatisfactory response for assurance that they would meet their obligations pursuant to the Agreement) through satisfaction of judgment, and a sum for lost opportunity cost to be determined by the Court.

E.      On the Fifth Cause of Action for Fraudulent Inducement, a money judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $40,232,180 plus pre- and post-judgment interest accrued at a rate of 9% per annum from January 10, 2022 (the date of the Agreement) through the date of judgment, a sum for lost opportunity cost to be determined by the Court, and punitive damages to be determined by the Court.

37

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 39 of 40 PageID #: 1947

F.	On the Sixth Cause of Action for Constructive Trust, the imposition of a constructive trust for the benefit of SOS on SOS's funds in the amount of $40,232,180 currently held by Defendants.

G.	On the Seventh Cause of Action for Attorneys' Fees, a money judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of attorneys' fees, litigation fees, investigation fees, notarization fees, travel expenses, and other rights protection expenses to be determined at trial.

H.	Such other relief as this Court deems fit.

Dated:	December 9, 2022
	New York, New York

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Sandra D. Grannum*
Sandra D. Grannum
Jeffrey S. Jacobson
Marsha J. Indych
1177 Avenue of the Americas, 41st Floor
New York, NY  10036
Phone:  (212) 248-3140
Fax:  (212) 248-3141
sandra.grannum@faegredrinker.com
jeffrey.jacobson@faegredrinker.com
marsha.indych@faegredrinker.com

*Attorneys for Plaintiff*
*SOS Information Technology New York Inc.*

38

Case 1:22-cv-07499-BMC Document 63-43 Filed 11/20/23 Page 40 of 40 PageID #: 1948

## VERIFICATION

Huichao Zhang, a person physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States, affirms as follows under the penalty of perjury:

I, Huichao Zhang, Chief Technology Officer of Plaintiff SOS Information Technology New York Inc. ("SOS"), being duly sworn, verify that I am authorized on behalf of SOS to submit this verification, that I have read the attached Complaint, and the facts alleged therein are true based upon my personal knowledge in my capacity as Manager or based upon my review of the books and records maintained by SOS, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

I also affirm this 8th day of December, 2022, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: December 8, 2022

_____
Huichao Zhang
Chief Technology Officer