UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------- X
                                                     :
SEN GAO, CONGLI HUO, RUBIN WANG,                     :    Case No. 22-cv-07499-BMC
LUXIAO XU, Individually, and on behalf of all others :
similarly situated,                                  :
                                                     :
                      Plaintiffs                     :
                                                     :
      v.                                             :
                                                     :
SINGULARITY FUTURE TECHNOLOGY, LTD                   :
F/K/A SINO-GLOBAL SHIPPING AMERICA LTD,              :
YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN,           :
XIAOHUAN HUANG, JING SHAN, TIELING                   :
LIU, JING WANG, LEI NIE, JOHN LEVY, THOR             :
MINER, INC., AND GOLDEN MAINLAND, INC.,              :
                                                     :
                      Defendants.                    :
                                                     :
                                                     :
------------------------------------------------------------------- X
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' YANG JIE AND
XIAOHUAN HUANG MOTION TO DISMISS**

**On the Brief:**
James J. Mahon (Bar Id. No. 321332020)
Adam K. Gallagher (Bar Id. No. 195492017)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................4

LEGAL ARGUMENT................................................................................................4

I. STANDARD ON A MOTION TO DISMISS.........................................................4

    A. Federal Rules of Civil Procedure and Private Securities Litigation Reform Act ........4

    B. Documents that a Court May Consider on a Motion to Dismiss ..................................4

II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION ........................................................................................................5

    A.      Plaintiffs Have Failed to Exhibit an Actionable Material Misstatement or Omission ..........................................................................................................................6

        i. Material Misstatement or Omission.......................................................................6

        ii. The Plaintiffs Have Not Established a Duty To Disclose......................................8

    B.      Plaintiffs Have Failed to Plead Loss Causation...................................................17

    C.      Plaintiffs Have Failed to State a Claim against Xiaohuan Huang .........................17

    D.      Plaintiffs have Failed to Plead Scienter ..............................................................18

III. PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON A REPORT OF A SHORT SELLER WITH A BASIS ON INADMISSIBLE FACTS........................................................21

    A. The Hindenburg Short Seller Report was Based Solely on Unverified Information and Not Sufficient to Premise A Cause of Action ..................................................................21

    B. Plaintiffs' Counsel Has Not Exhibited An Independent Investigation was Performed, the Complaint was based Solely on Hearsay and therefore the Complaint is Insufficient......23

IV. THE ALLEGATIONS FOR LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT ARE ALSO INSUFFICIENT BECAUSE THERE IS NO UNDERLYING ADEQUATELY PLED VIOLATION OF SECTION 10 OR RULE 10b-5 ................................24

CONCLUSION.........................................................................................................25

24241607v.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re AstraZeneca Securities Litig.,
    559 F. Supp. 2d 453 (S.D.N.Y. 2008) ........................................................................20

In re Axis Capital Holdings, Ltd. Sec. Litig.,
    456 F. Supp.2d 576 (S.D.N.Y. 2006) ........................................................................12

Bartesch v. Cook,
    941 F. Supp.2d 501 (D. Del. 2013) ..........................................................................24

Basic, Inc. v. Levinson,
    485 U.S. 224 (1988) ....................................................................................................9

In re Citigroup, Inc. Secs. Litig.,
    330 F. Supp. 2d. 367 (S.D.N.Y. 2004) ....................................................................20

Condit v. Dunne,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) ......................................................................15

In re Draft Kings Sec. Litig.,
    No. 21-cv-5739, 2023 WL 145591 (S.D.N.Y. 2023) ...............................................26

ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009) ........................................................................21, 22, 23

In re FBR Secs. Litig.,
    544 F. Supp.2d 346 (S.D.N.Y. 2008) ......................................................................12

Finn v. Barney,
    471 Fed. Appx. 30 (2d Cir. 2012) ..............................................................................7

Ganino v. Citizens Utilities Co.,
    228 F.3d 154 (2d Cir. 2000) ........................................................................................8

In re Gentiva Secs. Litig,
    932 F. Supp.2d 352 (E.D.N.Y. 2013) ..................................................................18, 22

Glazer v. Formica Corp.,
    964 F.2d 149 (2d Cir. 1992) ......................................................................................10

Gonzalez v. Cheesecake Factory Rests, Inc.,
    No. 21-CV-5017, 2023 WL 2477697 (E.D.N.Y. 2023) ...........................................12

In re Hain Celestial Group Inc. Secs. Litig.,
    No. 16-CV-04581, 2022 WL 18859055 (E.D.N.Y. 2022) ....................................23

Harris v. AmTrust Fin Servs., Inc.,
    135 F. Supp.3d 155 (S.D.N.Y. 2015)......................................................................24

In re Initial Public Offering Secs. Litig.,
    383 F. Supp.2d 566 ...................................................................................................7

In re ITT Educ. Servs, Inc.,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012)......................................................................11

In re Keyspan Corp. Sec. Litig.,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...............................................................11, 27

Leon v. Martinez,
    84 N.Y.2d 83 (1994) ................................................................................................15

In re Livent, Inc. Secs. Litig.,
    151 F. Supp.2d 371 (S.D.N.Y. 2001).........................................................................3

Long Miao v. Fanhua, Inc.,
    442 F. Supp.3d 774 (S.D.N.Y. 2020).......................................................................25

In re Longtop Financial Tech. Sec. Litig.,
    910 F. Supp.2d 561 (S.D.N.Y. 2012).......................................................................24

In re Marsh & Mclennan Cos., Inc. Sec. Litig.,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)...........................................................8, 10, 16

In re MBIA Secs. Litig.,
    700 F. Supp.2d 566 (S.D.N.Y. 2010).........................................................................7

Menaldi v. Och-Ziff Capital Mgmt. Group LLC,
    164 F. Supp.3d 568 (S.D.N.Y. 2016)......................................................................12

In re Moody's Corp. Secs. Litig.,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009).......................................................................9

Mucha v. Volkswagen Aktiengellschaft,
    540 F. Supp.3d 269 (E.D.N.Y. 2021) .................................................................12, 13

Nam v. Permanent Mission of Republic of Korean to United Nations,
    --- F. Supp. 3d. ---, 2023 WL 2138601 ....................................................................13

Nodus International Bank, Inc. v. Arocha Hernandez,
    511 F. Supp. 3d 1316 (S.D. Fla. 2021) ....................................................................13

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000)......................................................................................9, 16, 25

Rich v. Maidstone Fin., Inc.,
    No 98-cv-2569, 2001 WL 286757 (S.D.N.Y. 2001) ................................................................27

RSM Prod. Corp. v. Fridman,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009)......................................................................15, 18, 22

In re Sanofi Secs. Litig.,
    155 F. Supp.3d 386 (S.D.N.Y. 2016)................................................................................ *passim*

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)...........................................................................................................21

In re Time Warner Secs. Litig.,
    9 F.3d 259 (2d Cir. 1993)..............................................................................................10, 16

In re Turqoise Hill Resource Ltd. Secs. Litig.,
    625 F. Supp. 2d 164 (S.D.N.Y. 2022).....................................................................................17

Zhou v. NextCure, Inc.,
    NO. 20-CV-07772, 2023 WL 4493541 (S.D.N.Y. 2023)........................................................14

**Statutes**

17 C.F.R. § 240.10b-5..............................................................................................................3

10 U.S.C. § 78.............................................................................................................. *passim*

18 U.S.C. § 3491....................................................................................................................13

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 9(b) ........................................................................................................3, 6, 20

Fed. R. Civ P. 12(b)6 .........................................................................................................3, 6

Fed. R. Civ. P. 12(f) .................................................................................................15, 18, 23

Fed. R. Civ. P. 44(a)(2)..........................................................................................................13

24241607v.5

# INTRODUCTION

The Instant Matter shows the hallmarks of a classic "strike suit of dubious merit" by a disgruntled group of investors in an attempt to obtain a speedy settlement. E.g., In re Livent, Inc. Secs. Litig., 151 F. Supp.2d 371, 418 (S.D.N.Y. 2001). Defendants Yang Jie and Xiaohuan Huang[1] refused to respond to the invitation and instead move the court for dismissal.

Before the Court is Defendants' Yang Jie's and Xiaohuan Huang's Motion to Dismiss with prejudice the actions on the part of the Plaintiffs Sen Gao, Congli Huo, Ruibin Wang, Luxiao Xu (collectively the "plaintiffs"), and the purported putative class pursuant to Fed. R. Civ P. 12(b)6), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act (the "PSLRA") 15 U.S.C. § 78u-4. The Complaint is a two-count complaint brought by the plaintiffs alleging violations, allegedly on behalf of a purported putative class, of 1)15 U.S.C. § 78j(b) (commonly known as Section 10(b) of the Exchange Act) and the accompanying regulation implemented as 17 C.F.R. § 240.10b-5 (commonly known as "Rule 10b-5"), and 2) 10 U.S.C. § 78t (commonly known as "Section 20A of the Exchange Act"). There are obvious defects and deficiencies in the Plaintiffs' complaint. Therefore, Mr. Jie and Ms. Huang are requesting that this Court grant the instant motion and dismiss the instant Complaint with Prejudice.

# PRELIMINARY STATEMENT

The Instant Matter is a shareholder strike suit brought by the Plaintiffs on behalf of themselves and a purported uncertified putative class alleging securities law violations and individual liability related to alleged misstatements and omissions and the purported effect of those on the stock of Singularity Future Trading Corp f/k/a Sino Global Shipping ("Singularity"). However, these actions do not sufficiently state any causes of action, in part, due to the Operative

---

[1] Defendants Yang Jie and Xiaohuan Huang incorporate by reference and rely on the arguments made in Singularity's and Lei Cao's respective Motions to Dismiss.

Complaint's reliance on rank hearsay and the reliance on court pleadings and uncertified foreign legal pleadings without certifications, under which a complaint cannot be premised. Instead of conducting an investigation relating to criminal allegations and pleading facts to constitute claims, Plaintiffs rely on complaints to settled lawsuits and cherry-picked provisions from foreign pleadings with no certified translation and no explanation of what the pleading is. This is not what the law envisions as facts to support a pleading, and the law has expressly held that facts such as those used by Plaintiffs are insufficient to support a pleading. Plaintiffs also cite statements of hope, goals, or aspiration with forward-looking statements, attempting to dress those statements up as actionable, despite prevailing law.

Defendants Mr. Jie and Ms. Huang have exhibited that the Plaintiffs do not stand on firm ground, if any, to proceed with a cause of action, thus the claims must be dismissed. The Plaintiffs claims are deficient and devoid of any elements of securities law violations under Section 10(b) or Rule 10b-5. The plaintiffs have failed to prove any of the elements of securities violations including scienter, omissions or misrepresentations, and loss causation.

Plaintiffs allege that but for this non-disclosure, they would not have invested in Singularity, that Mr. Jie was the cause of Singularity's stock increasing in value, and that the release of a report by Hindenburg Research on May 5, 2022 caused Singularity's stock to decrease in value, causing a loss to Plaintiffs. Plaintiffs thus brought a suit alleging two claims against Mr. Jie for securities violations under Section 10(b) and Rule 10b-5 and individual liability under Section 20(a) of the Exchange Act.

However, as to loss causation, Plaintiffs do not adequately address the history of Singularity's Stock, the existence of "storm warnings," the gradual decrease in value of the stock, and other circumstances that affected Singularity's stock, all elements required under the law.

2

Rather, Plaintiffs, again, ignoring prevailing case law, use a 125 page complaint as a mechanism to force a settlement. Here, however, pleadings matter and Defendants Mr. Jie and Ms. Huang decline the invitation to settle such a frail cause of action.

Additionally, Plaintiffs' complaint is devoid of any hint of scienter required under the Private Securities Litigation Reform Act. Furthermore, Plaintiffs do not establish a duty of disclosure of the alleged prior action on the part of Mr. Jie, partly because the allegations of $3.5 Million dollar failed reverse merger were brought in a lawsuit that was discontinued before judgment (not triggering a duty to disclose under the Stock Purchase Agreements). Furthermore, there was no duty to disclose information that was already on file with the SEC, and no duty to disclose uncharged allegations of criminal conduct, which Plaintiffs consequently have not pled sufficient facts to sustain a hint of a cause of action. The term "uncharged" certainly attaches to the allegations, as Mr. Jie's counsel retained a China based law firm to perform an investigation that returned a result that Mr. Jie was never the subject of nor was he charged in connection with the allegations that Plaintiffs allege underpin their causes of action for omission or misrepresentation.

Furthermore, attorneys have a duty to perform an independent investigation when allegations are solely based on short seller reports (conveniently labeled as corrective disclosures). Here, Plaintiffs' counsel has clearly exhibited that they did not perform an independent investigation, if any at all. In fact, defense counsel for Mr. Jie took the expense of retaining a China based law firm to investigate the truth of any of the allegations made in the Hindenburg Report. The Report is the polar opposite of the allegations made in Plaintiffs' Complaint and shows the dangers of relying on rank hearsay to bring a lawsuit. Thus, Plaintiffs have failed to plead any of the elements to sustain causes of action for violations of Section 10(b) or Rule 10b-

5.  As no cause of action has been pled under Section 10(b) or Rule 10b-5, a claim for individual liability under Section 20 cannot survive.  Therefore, the Court should grant the instant motion to dismiss and dismiss Plaintiffs' complaint with prejudice.

## STATEMENT OF FACTS

For the sake of brevity, Defendant Yang Jie (hereinafter referred to "Defendant" "Yang Jie" or "Mr. Jie") and Xiaohuan Huang ("Xiaohuan Huang" or "Ms. Huang") are relying on the Affirmation of James J. Mahon dated November 20, 2023 (hereinafter referred to as the "Mahon Aff.") as their statement of facts.  Therefore, that Affirmation is incorporated by reference as if fully set forth herein.  Mr. Jie and Ms. Huang are also relying on the statement of facts as set forth in the brief submitted on behalf of Lei Cao and incorporate same as if fully set forth herein.   The instant memorandum of law is being submitted in support of Mr. Jie's and Ms. Huang's motion to dismiss with prejudice the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) Fed. R. Civ P. 12(b)6), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act (the "PSLRA") 15 U.S.C. § 78u-4.

## LEGAL ARGUMENT

### I.      STANDARD ON A MOTION TO DISMISS

**A.  Federal Rules of Civil Procedure and Private Securities Litigation Reform Act.**

Defendants Mr. Jie and Ms. Huang adopt the standard of review set forth in Singularity's Memorandum of Law in Support of their Motion to Dismiss as if fully set forth herein.

**B.  Documents that a Court May Consider on a Motion to Dismiss**

Unlike the traditional Rule 12 motion, in securities litigation cases, "a court 'may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and

4

documents possessed by or known to plaintiff and upon which it relied in bringing the suit." In re Sanofi Secs. Litig., 155 F. Supp.3d 386, 397 (S.D.N.Y. 2016) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In addition, a District Court is also permitted to "take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." In re Initial Public Offering Secs. Litig., 383 F. Supp.2d 566, 574 (quoting Ganino v. Citizens Utilities Co., 223 F.3d 154, 167 n.8 (2d Cir. 2000) (other citations omitted). Furthermore, documents submitted in other litigations are also permissible documents for a Court to review on a motion to dismiss, solely for the fact that the statements were made or information was publicly available, but not for the truth of the matter asserted. Finn v. Barney, 471 Fed. Appx. 30, 32 (2d Cir. 2012).

In the instant matter, Defendant offers several documents that can be considered by this Court including numerous filings with the Securities and Exchange Commission (the "SEC"), documents submitted to the Supreme Court of the State of New York, New York County in the action titled Shanghai Nonobank Financial Serv. Co. Ltd. v. Yang Jie under index number 653834/2018, a report by Hindenburg Research, a short seller, also referenced in the Complaint, as well as additional documents referenced within the Complaint itself. Each of the documents submitted by the Defendant can be rightfully considered by this Court in the instant motion.

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION.

"Rule 10b-5 states, in relevant part, that it is 'unlawful for any person…[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.'" In re MBIA Secs. Litig., 700 F. Supp.2d 566 (S.D.N.Y. 2010) (quoting 17 C.F.R. 240.10b-5(b)). "[T]o state a claim under section 10(b) of the Exchange Act and Rule 10b-5, plaintiffs must

5

plead that the defendants '(1) made misrepresentations or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which the plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" In re Sanofi Secs. Litig., supra. at 398-99 (quoting In re Int'l Bus. Machines Corp. Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)).

## A. Plaintiffs Have Failed to Exhibit an Actionable Material Misstatement or Omission.

Courts analyze allegations regarding material misrepresentations and omissions in a two-factor test: (1) whether the misstatement or omission was material and (2) whether there was a duty to disclose. In re Marsh & Mclennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452 (S.D.N.Y. 2006). "As the Supreme Court has made clear[,]…the concepts of materiality and duty to disclose are different." Id. (quoting Glazer v. Formica Corp., 964 F.2d 149, 156 (2d Cir. 1992) (alternations in original); In re Time Warner Inc. Sec. Litig., 9 F.3d 159, 267 (2d Cir. 1993)). "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." In re Marsh & Mclennan, supra. at 469 (quoting Chiarella v. United States, 445 U.S. 222, 235 (1980).

### i. Material Misstatement or Omission.

"At the pleading stage, a plaintiff satisfies the materiality requirement rule of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000) (internal citations omitted). The Courts in the Second Circuit have "consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation." In re Marsh & McLennan Companies, Inc., 501 F. Supp.2d 452, 468 (S.D.N.Y. 2006) (citing Ganino, supra. at 162 (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)). When analyzing alleged omissions, the Supreme Court has set forth a test that "there must be a substantial likelihood that

6

the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic, Inc. v. Levinson, 485 U.S. 224, 231 (1988) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976)).

As noted extensively below, there are no omissions relating to 1) Allegations regarding a failed reverse merger and a discrepancy over $3.5 Million in a lawsuit that was dismissed before the instant litigation, and 2) Allegations regarding criminality in China. All of these facts were extensively analyzed, and conceded in the complaint as publicly available knowledge. See generally, Complaint [D.E. 58]. Thus, there were no actionable material misstatements or omissions.

Furthermore, there were no misstatements with regard to Mr. Jie's background nor was there any duty to disclose. The Complaint points to statements that were mere puffery (e.g. "Mr. Jie has been nominated to serve because of his business management experience"), which are unactionable under 10b-5 and does not carry with it a duty to disclose. Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000). For example, the classification that Mr. Jie "is an outstanding executive" with forward looking statements to lead the company do nothing to exhibit any duty, nor do they carry any statements that would be actionable misstatements. The statement did not state that Mr. Jie was a law-abiding citizen or has never been involved in any litigation. This was simply a statement of hope that Mr. Jie would lead the company to a bright future, which is not enough. This is because "courts have identified declaration[s] of intention, hope or projections of future earnings as the hallmarks of unactionable puffery." In re Moody's Corp. Secs. Litig., 599 F. Supp. 2d 493, 508 (S.D.N.Y. 2009).

24241607v.5

## ii.     <u>The Plaintiffs Have Not Established a Duty To Disclose.</u>

It is not enough, however, to state that material information was not disclosed, as it "is insufficient to state an actionable misrepresentation absent a duty to disclose." <u>In re Marsh & Mclennan Companies</u>, <u>supra</u> at 469. "As the Supreme Court has made clear in insider trading cases, the concepts of materiality and duty to disclose are different." <u>Glazer v. Formica Corp.</u>, 964 F.2d 149, 156 (2d Cir. 1992) (citing <u>Chiarella v. United States</u>, 445 U.S. 222, 235 (1980). Disclosure of a fact "is not required…merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." <u>In re Time Warner Secs. Litig.</u>, 9 F.3d 259, 267 (2d Cir. 1993) (citing <u>Basic, Inc.</u>, <u>supra.</u>; <u>Glazer</u>, <u>supra.</u>). The duty of an entity to disclose only "arises in limited situations." <u>In re Marsh & McLennan Companies, Inc.</u>, <u>supra.</u> at 469.

Despite the ordering of allegations in the complaint, it is glaringly obvious that the focal point is centered on the Hindenburg Report's amplifying uncharged criminal allegations relating to Mr. Jie's business ventures in China. Plaintiffs further allege that the unverified and uncharged criminal activity from China should have been reported on Singularity's Form 8-K. However, these arguments fail for numerous reasons: 1) there was no statutory, contractual, or common law duty to disclose, 2) Plaintiffs have failed to plead a duty to disclose the uncharged criminal conduct, 3) facts relating to the uncharged criminal conduct were in the public specter, and 4) even if there were a duty to disclose, plaintiffs' pleading fails for not pleading essential facts. Plaintiffs also draw facts from the Hindenburg Report and set forth allegations regarding Mr. Jie's previous employer and actions related to Mr. Jie's time at China Commercial Credit. Plaintiffs attempt to

8

save the procedural deficiencies by citing to pleadings and other court documents, but their attempt fails to come close to the target set forth by the pleading jurisprudents set forth by the Federal Rules of Civil Procedure and Supreme Court jurisprudence.

Case law is legion that there is generally no duty to disclose publicly available information. In fact, "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain, the Second Circuit has found that a defendant may not be held liable for failing to disclose this information." In re Keyspan Secs. Litig., 383 F. Supp. 3d 358, 377 (E.D.N.Y. 2003) (citing Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978)). Thus, the overwhelming majority of the information cited in Mr. Jie's complaint was drawn from electronically filed court documents which were accessible to the public on the New York State Courts Electronic Filing System ("NYSECF"), in fact, the Plaintiffs' Complaint even cites to these documents on the NYSECF system. Thus, there was no duty to disclose this information and this fact alone should be dispositive.

### There was No Duty to Disclose Mr. Jie's Alleged Uncharged Criminal Conduct

With regard to uncharged criminal conduct, "the securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct." In re ITT Educ. Servs, Inc., 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (quoting In re Marsh & Mclennan, Inc., supra. at 469. With regard to alleged omissions, they "must be 'sufficiently connected to Defendants' existing disclosures to make those public statements misleading.'" Id. (citing In re Marsh & Mclennan, Inc., supra.). The duty to disclose can arise out of statute or of correcting misleading statements. Id. "The critical consideration for those courts in determining whether a corporation must disclose mismanagement or uncharged criminal conduct is whether 'the alleged omissions…are sufficiently connected to defendants' existing disclosures to make those public

statements misleading.'" In re. Sanofi Secs. Litig., 155 F. Supp.3d at 403 (quoting In re Marsh &

Mclennan, Inc., supra.; and citing In re FBR Secs. Litig., 544 F. Supp.2d 346, 357 (S.D.N.Y.

2008)).

> Additionally, where plaintiffs allege that a defendant's unlawful conduct renders a
> statement false or misleading, they must plead facts supporting the conclusion that
> the conduct, in fact, was unlawful. See, Das, 332 F. Supp.3d at 803 (holding that
> where "securities fraud claims are based on failure to disclose uncharged illegal
> conduct, 'the complaint must state a plausible claim that the underlying conduct
> occurred.' ") (quoting Menaldi v. Och-Ziff Capital Mgmt. Group LLC, 164 F.
> Supp.3d 568, 578 (S.D.N.Y. 2016)); In re Axis Capital Holdings, Ltd. Sec. Litig.,
> 456 F. Supp.2d 576, 585 (S.D.N.Y. 2006) (holding that, in such cases, "[i]f the
> complaint fails to allege facts[,] which would establish such an illegal scheme,
> then the securities law claims premised on the nondisclosure of the alleged scheme are
> fatally flawed.") (emphasis omitted); In re FBR Inc. Sec. Litig., 544 F. Supp.2d
> 346, 354 (S.D.N.Y. 2008) ("[I]n order to state a claim that defendants violated the
> securities laws because they failed to disclose the insider trading scheme, plaintiffs
> must plead the alleged trading scheme with particularity.").

> Mucha v. Volkswagen Aktiengellschaft, 540 F. Supp.3d 269, 293 (E.D.N.Y. 2021).

Evaluating the complaint in this light, plaintiffs have failed to plead facts establishing a

duty to disclose uncharged criminal conduct. Menaldi v. Och-Ziff Capital Management Group,

LLC, 164 F. Supp.3d 568, 579 (S.D.N.Y. 2016). Further, plaintiffs have failed to "state a plausible

claim that the underlying conduct occurred." Mucha, supra. (quoting Menaldi, 164 F. Supp. 3d at

578). Finally, Plaintiffs "have not identified any specific laws Defendants violated or explained

how [Defendants'] conduct ran afoul of those laws." Mucha, supra.

Documents in foreign languages, and pleadings in foreign legal proceedings must 1) be

certified documents, and 2) be accompanied by certified translations of those documents.

Gonzalez v. Cheesecake Factory Rests, Inc., No. 21-CV-5017, 2023 WL 2477697 at *1 (E.D.N.Y.

2023) (citing cases excluding foreign language evidence proffered without foreign language

translation); Nam v. Permanent Mission of Republic of Korean to United Nations, --- F. Supp. 3d.

----, 2023 WL 2138601 at *17 ("The documents were therefore inadmissible under the well-

established rule that a document in a foreign language is admissible unless accompanied by a Certified English Translation.") (internal citations and quotations omitted); <u>Nodus International Bank, Inc. v. Arocha Hernandez</u>, 511 F. Supp. 3d 1316, 1325 (S.D. Fla. 2021) (declining to review foreign language document annexed to a complaint without a certified foreign translation on a motion to dismiss).  Additionally, foreign language documents must be "duly certified" pursuant to 18 U.S.C. § 3491, and must meet the admissibility criteria as set forth in Fed. R. Civ. P. 44(a)(2) to be "an official publication of the record," contain a "final certification of genuineness," and the parties must be given " a reasonable opportunity to investigate [the] foreign record's authenticity and accuracy."

As a primary matter, the Chinese language documents cited in ¶¶72, 73, 84, 91, 92, 93 and other paragraphs of the complaint are uncertified, do not contain certified translations, and do not meet the statutory, and jurisprudential requirements set forth above.  Furthermore, the Plaintiffs have admitted in their complaint that Mr. Jie was not present in China for the proceedings and was not subject to a judgment in China.  Even worse, Plaintiffs have also failed to plead, with sufficient facts, that Mr. Jie was even charged in China, nor have they pled sufficient facts to exhibit that Mr. Jie committed the crime alleged.  Thus, these allegations are not sufficient as the Plaintiffs have not pled sufficient allegations, drawn from traditional investigation and pleading of facts as would be required in any other lawsuit.  <u>See</u>, <u>Mucha</u>, <u>supra.</u>

Even more troubling to this Court should be the fact that the Defendant Yang Jie engaged counsel in China to perform a thorough and detailed investigation.  This due diligence, which included meeting with prosecutorial authorities and the police have returned that there were no criminal charges against Mr. Jie.  This report from Chinese Counsel shows that the underlying case that the Hindenburg Report and, consequently, Plaintiffs heavily rely, is closed and that Mr. Jie

was never charged as a suspect. Mahon Aff. **Exhibit RR.** The conclusions were replicated in Singularity's own investigation, which was subsequently documented on a Form 8-K dated July 3, 2023, as reported to the SEC "On June 12, 2023, Heibei Mei Dong Law Firm issued a report to the Registrant with respect to these issues. In their report, the Chinese counsel concluded after conferring with local officials, that investigation of Mr. Jie conducted by the Baohe District Police Bureau of Heifei City was completed, that Mr. Jie was never prosecuted and there was no criminal judgment against Mr. Jie as of the date of the report. The Chinese counsel also confirmed that no 'Red Notice' was issued for Mr. Jie by the PRC." Mahon Aff. **Exhibit SS.**

Instead of engaging their own expert, Plaintiffs baldly label the Zhonglun Report as unreliable because its existence is inconvenient to their case and attack the Singularity 8K containing the summary of Singularity's legal report. The fact that Plaintiffs have not pled that any significant steps have been taken to rebut the reports set forth in prior pleadings and public filings exhibits the weakness of their case.

### *Plaintiffs Have Not Sufficiently Pled Facts To Prove A Duty to Disclose Other Allegations of Criminality*

In addition to the Chinese documents, Plaintiff relies on documents from other litigations to buttress their allegations of criminality. Plaintiffs have failed to present any facts other than those which were drawn from pleadings consisting of unproven allegations, which "do not, on their own, constitute factual allegations to survive a motion to dismiss." Zhou v. NextCure, Inc., NO. 20-CV-07772, 2023 WL 4493541 at *11 (S.D.N.Y. 2023) (citing In re CRM Holdings, Ltd. Sec. Litig., No. 10-CV-975, 2012 WL 1646888 at *26 (S.D.N.Y. 2012). "Second Circuit Case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have…not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d. 382, 403 (S.D.N.Y. 2009) (citing

12

Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894-94 (2d Cir. 1976). The allegations contained with the complaint contain citations to Shanghai NoNobank Fin. Info. Serv. Co. v. China Commercial Credit, Inc., Index No. 653834/2014, a New York County Supreme Court case that was **voluntarily discontinued** on March 13, 2020 prior to Mr. Jie's tenure, without a finding of fact or judgment. Mahon Aff. **Exhibits W** and **X** The only decision issued in that case and cited to in the complaint was a partial paragraph drawn from an order on a motion to dismiss. [D.E. 58] ¶¶65-66. Mahon Aff. **Exhibit Y**. The citation of a paragraph in a complaint is hardly a finding of fact because in both New York Federal and State Courts, when reviewing a motion to dismiss, courts **presume** facts to be true to decide the motion. E.g., Condit v. Dunne, 317 F. Supp. 2d 344, 355 (S.D.N.Y. 2004) ("the factual allegations set forth in the complaint do not constitute findings of fact by the court, but rather are presumed to be true for the purposes of deciding a motion to dismiss.") (internal quotation marks and citations omitted):Leon v. Martinez, 84 N.Y.2d 83, 87-88 (1994) ("On a motion to dismiss…**[w]e accept the facts as alleged in the complaint as true**, accord plaintiffs the benefit of every favorable inference, **and determine only whether the facts as alleged fit within any cognizable legal theory**") (emphasis added) (internal citations omitted).

Furthermore, the complaint contains references to a party's contentions in litigation, attempting to clothe the recitation of the party's contentions with judicial authority, even though, when the entire document is analyzed, it is quite apparent the references are to a party's contentions in litigation or arbitration. See, e.g. ¶77. Mahon Aff. **Exhibit BB** (Arbitration Decision). The Complaint is likewise infected by numerous references to these accusations that cannot support a pleading in the securities fraud context. Even more troublesome, these were documents that were apparently taken from references in the short seller reports, which are also rank hearsay and further discussed in Point III, infra.

24241607v.5

***Plaintiffs' Other Allegations of Misstatements or Omissions Are Unactionable Under the Safe Harbor Provisions of the PSLRA.***

In the complaint, the Plaintiffs also make a host of allegations under the guise of a material misstatement or omission.  However, disclosure of a fact "is not required…merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." In re Time Warner Secs. Litig., 9 F.3d 259, 267 (2d Cir. 1993) (citing Basic, Inc., supra.; Glazer, supra.). The duty of an entity to disclose only "arises in limited situations." In re Marsh & McLennan Companies, Inc., supra. at 469.   This holds true with the allegations of an omission regarding John Levy, in relation to the November 19, 2021 8-K.  Complaint ¶¶96-99 Mahon Aff. **Exhibit FF.** Plaintiffs' allegations relating to an alleged omission about Levy's background with China Commercial Credit do not hold weight, because there was no duty to disclose that information as related to alleged uncharged criminal conduct.  See, supra.

Plaintiffs also cite a number of statements, that are otherwise unactionable, to support their complaint, but in actuality fail to support their allegations.  Forward looking statements are not actionable by the mere utterance of fraud or misrepresentation in the allegation.  As noted above, the Complaint points to statements that were mere puffery, which are unactionable under 10b-5 and do not carry with it a duty to disclose.  Novak, supra.  Furthermore, statements of belief, opinion, or goals are likewise unactionable.  In re Adient plc Secs. Litig., No 18-CV-9116, 2020 WL 1644018 at *17 (S.D.N.Y. 2020) (citing In re Lululemon, 14 F. Supp. 3d 553, 578 (S.D.N.Y. 2014).

Furthermore, the PSLRA provides a safe harbor to "forward looking statements."  "[A] defendant is not liable for a forward-looking statement if (1) 'the forward-looking statement is identified and accompanied by meaningful cautionary language,' or (2) the forward-looking

statement 'is immaterial' or (3) 'the plaintiff fails to prove that [the forward-looking statement] was made with actual knowledge that it was false or misleading.'" In re Turqoise Hill Resource Ltd. Secs. Litig., 625 F. Supp. 2d 164, 209 (S.D.N.Y. 2022) (quoting and citing Slayton v. American Exp. Co., 604 F.3d 758, 766 (2d Cir. 2010) (citing PSLRA 15 U.S.C. §78u-5(c)).

Turning to the allegations upon the Plaintiffs premise their complaint, the statements allegedly made during Mr. Jie's tenure are unactionable. For example, the allegations in ¶119 of the complaint merely cite a January 5, 2022 Form 8-K filed with the SEC notifying the SEC of a name change do not say anything about the company. [D.E. 58] **.** Plaintiffs however omit the press release that accompanying the 8-K filing. The press release itself reveals facts that, again, are inconvenient to their case, such as those of expected growth and strategy, including "[t]he formal name change recognizes the Company's significant progress and represents the latest step in aligning the Company's **growth efforts in cyptocurrency and other new markets**." Mahon Aff. **Exhibit GG** (emphasis added). This statement contains no guarantees and classifies the Company's direction as "efforts." Furthermore, the press release contained the requisite forward looking statement language.

The same holds true for the March 28, 2022 press release referenced in ¶120 of Plaintiffs' complaint. Mahon Aff. **Exhibit LL.** Plaintiffs naturally omit from the complaint the "safe harbor" language that appears on the full copy of the press release, or other language contained within the press release. Id. Looking at the entirety of the press release, it is quite clear that the statements are unactionable puffery and statements of the company's goals or beliefs. Plaintiffs try to remove this statement from the protections of the safe harbor provision with a bald statement stating those statements "were false and misleading because the Company neither intended to nor had the capability to meaningfully engage…" Complaint ¶122. [D.E. 58]. However, without more, these

statements are mere conclusory allegations which are insufficient to meet the strict particularity requirements under the PSLRA or even the Supreme Court's pleading jurisprudence set forth by Iqbal, supra. and Twombly, supra.

The allegations in the complaint related to Golden Mainland likewise do not hold water. Complaint ¶¶125-138 [D.E. 58]. Those allegations are not supported by sufficient evidence and are enrobed by mere allegations and conjecture without more, which is also insufficient under Iqbal, supra. and Twombly, supra. Furthermore, the press releases related to the joint venture also contain forward looking statements, as well as puffery and statements of belief. Statements of that nature without more are likewise unactionable under the PSLRA. Plaintiffs' mere labeling of these statements with citation to a hodgepodge of documents are no substitute for **evidence about Golden Mainland's** operations, which could have easily been obtained by confidential witness interviews and pleading confidential witnesses. See,e.g In re Gentiva Secs. Litig, 932 F. Supp.2d 352 (E.D.N.Y. 2013).

As to the allegations related to Thor Miner, these are allegations stemming from a complaint in a litigation that was subsequently settled, and unactionable. See, e.g., RSM Produc. Corp., supra. at 403 ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f) (internal citations omitted"). Taking the allegations related to Thor Miner as elaborated in ¶¶158-169. For example, a comparison of ¶158 of Plaintiff's complaint contains information drawn from ¶¶25-25 of the Complaint in the **now settled** New York State Court Litigation. Mahon Aff. **Exhibit PP** (complaint in SOS litigation). The balance of the allegations related to a world-wide chip shortage which the entire world knew about. To this point, it could also be said that more

than one person was hopeful that the worldwide chip shortage would abate. Thus, the public was already on notice of these facts. Singularity's statements of hope surrounding the alleged misstatements therein were also covered under the PSLRA safe harbor provision as well. The balance of the allegations were admittedly drawn directly from short-seller reports and not sufficient for pleading facts in a complaint. See, Section III, infra. Furthermore, the allegations regarding Rich Trading as set forth in ¶¶190-195 of the complaint [D.E. 58] contain mere conclusory allegations of fraud without sufficient evidence to even meet the strict pleading standard for facts under the PSLRA and Supreme Court precedent. Iqbal, supra.; Twombly, supra. As to other statements made by Singularity, Mr. Jie and Ms. Huang adopt the arguments set forth in Lei Cao's brief in support of his motion to dismiss, as if fully set forth herein.

Taken in combination related to the allegations directly related to Mr. Jie and the alleged omissions or misrepresentations, the Plaintiffs have failed to meet the burden to state a claim. Thus, the instant motion should be granted and the Plaintiffs' complaint should be dismissed with prejudice.

**B. Plaintiffs Have Failed to Plead Loss Causation.**

Mr. Jie and Ms. Huang adopt the arguments in relation to Loss Causation from the brief that Singularity submitted in support of its motion to dismiss as if fully set forth herein.

**C. Plaintiffs Have Failed to State a Claim against Xiaohuan Huang.**

Plaintiffs have failed to plead sufficient facts to show how defendant Ms. Huang is connected to a material misstatement or omission, or any of the other required elements to state a claim under Section 10 of the Exchange Act or Rule 10b-5. Aside from some mere ancillary references to Ms. Huang in the Complaint, the Complaint does not tie Ms. Huang to any of the actions, aside from a conclusory allegation that Ms. Huang "knew" of any actionable

17

misstatements or omissions. "In order to satisfy the pleading requirements of Rule 9(b) and the PSLRA, a plaintiff must allege than an officer or director 'personally knew of, or participated in, the fraud.'" See, In re Citigroup, Inc. Secs. Litig., 330 F. Supp. 2d. 367, 381 (S.D.N.Y. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (emphasis in original). Plaintiffs may not rely on the group pleading doctrine against Ms. Huang to relieve them of their burden either, because "[t]he group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants." In re AstraZeneca Secs. Litig., 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008). Thus, the branch of the Operative Complaint should be dismissed with Prejudice as to Ms. Huang.

### D. Plaintiffs have Failed to Plead Scienter

The PSLRA sets forth exhaustive pleading standards which require a plaintiff to "state 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" In re Sanofi, 155 F. Supp.3d at 405 (citing Dura Pharm, 544 U.S. at 345) (quotations omitted). While the Second Circuit recognizes recklessness as a state of mind for scienter on top of intent, claims "based on recklessness must 'specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation.'" In re Sanofi, supra. at 405 (quoting Novak, 216 F.3d at 308.).

Scienter can be established in two ways, by pleading facts showing either "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009). For claims based on motive and

18

opportunity, there must be allegations that the defendant "benefitted in some concrete and personal way from the purported fraud." Id. (citing Novak, 216 F.3d at 307-08).

A corporation's "desire…to appear profitable and the desire to keep stock prices high to increase officer compensation, do[es] not constitute 'motive' for purposes of this inquiry." Id. To prove motive, plaintiffs must exhibit that "corporate insiders allegedly ma[d]e a misrepresentation in order to sell their shares at a profit." Id. (citing Novak, supra. at 308). If unable to make the motive showing, plaintiffs "could raise a strong inference of scienter under the 'strong circumstantial evidence' prong, 'though the strength of the circumstantial allegations must be correspondingly greater' if there is no motive." Id. (citing Kalnit, 234 F.3d at 142). "At least four circumstances may give rise to the strong inference of the requisite scienter; where the complaint sufficiently alleges that the defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) 'engaged in deliberately illegal behavior'; (3) 'knew facts or had access to information suggesting the public statements were not accurate'; or (4) 'failed to check information they had a duty to monitor.'" ECA, supra. at 198-99 (quoting Novak, 216 F.3d at 311). Of course, any analysis of scienter must also meet the heightened pleading standard set forth in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

In the instant matter, both Plaintiffs' Complaint fails to adequately plead scienter under either the motive test, the opportunity test, or under the "strong inference standard." Here, there was no personal gain for Mr. Jie or Ms. Huang from the sale of stock, or otherwise, a fact neither complaint pleads. Furthermore, it doesn't show that Mr. Jie or Ms. Huang benefited personally, nor does it show that Mr. Jie or Ms. Huang engaged in deliberately illegal behavior by managing a company, nor did he have access to information showing the statements were inaccurate (the information as already public) and nor was there a duty to check information. At most, the

Complaint shows that Singularity's prices were inflated, an argument the Supreme Court rejected in Dura Pharm and the Second Circuit repeatedly rejects. See, e.g. ECA Local 134 IBEW, supra. Furthermore, the Complaint is devoid of any additional information supporting the claims of scienter.

While Plaintiffs attempt to couch their scienter allegations largely in the base of pleadings, government investigations, settled litigations, and leadership changes, those are largely insufficient to support an inference of scienter, let alone a strong inference of scienter. As a primary matter, the allegations regarding Mr. Jie's alleged prior wrongdoing are insufficiently pled, as they stand. See, Section II, supra. Additionally, pleading the mere existence of a government investigation, as Plaintiffs have done, is likewise insufficient to plead a strong inference of scienter. See, e.g., In re Gentiva Secs. Litig., 932 F. Supp. 2d 352 (E.D.N.Y. 2013). Furthermore, the pleading of settlements of the private investor actions and other litigation do not stand to support an inference of scienter, let along a strong inference of scienter in ¶¶244-248 and ¶¶275-276 of the complaint. [D.E. 58] See, e.g., RSM Produc. Corp., supra. at 403 ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)) (internal citations omitted").

Plaintiffs, in the desperate attempt to find some sliver of scienter, further plead leadership changes in Singularity as supporting a strong inference of scienter. "However, '[t]erminations or resignations of corporate executives are insufficient alone to establish an inference of scienter.'" In re Hain Celestial Group Inc. Secs. Litig., No. 16-CV-04581, 2022 WL 18859055 at *30 (E.D.N.Y. 2022) (quoting Woolgar v.Kingstone Comps., Inc., 477 F. Supp. 3d 193, 240 (S.D.N.Y. 2020). Furthermore, for corporate executives' terminations or resignations to serve as a strong

inference of scienter, there must be pleading with facts that the employment change had a connection with the fraud, among other reasons.  Hain Celestial Group, supra.  As a primary matter, the complaint does not plead sufficient facts to show that any of the executives including Cao, Shan, Pan, and Jie[2] were terminated in connection with the fraud at the core of the complaint and connected with allegations relating to cryptocurrency.  Instead, Plaintiffs attempt to use bravado and the circumstances of the termination in an attempt to evade proving facts supporting scienter in connection with those allegations.

Furthermore, the Plaintiffs also set forth allegations of violations of Generally Accepted Accounting Principles ("GAAP").  Complaint ¶¶199-210. [D.E. 58].  Plaintiffs may also attempt to tie these allegations to their frail, or non-existent, scienter argument.  However, alleging mere GAAP violations is also insufficient to prove a scienter claim.  ECA, supra.  Thus, Plaintiffs have failed to meet the heightened pleading requirement to prove even a scintilla of scienter, let alone the "strong inference" required under the PSLRA.  Therefore, Plaintiffs' complaint should the dismissed with prejudice.

### III.    PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON A REPORT OF A SHORT SELLER WITH A BASIS ON INADMISSIBLE FACTS.

#### A.    The Hindenburg Short Seller Report was Based Solely on Unverified Information and Not Sufficient to Premise A Cause of Action.

In Bartesch v. Cook, 941 F. Supp.2d 501 (D. Del. 2013), a news article, similar to the Hindenburg Report, was written by an executive at a company in active litigation with the defendant and subject of the 10b-5 suit involved in a lawsuit over the subject matter of the article. The Court noted the article author's potential bias as disclosed by the Plaintiffs and noted "[t]his

---

[2] While Plaintiffs may argue that Mr. Jie's departure was connected with alleged fraud, the allegations of fraud were previously not sufficiently pled to apply to him.  In fact, the July, 2023 8-K exonerated Mr. Jie.  Mahon Aff. **Exhibit SS.**

concession might suggest that the author has an incentive to disparage [the company] and, at least, suggests that the author does not have inside or personal knowledge of [the company's] business strategy." The court concluded the article was "not sufficiently 'reliable' to meet the pleading requirements of the PSLRA." Id. (internal citations omitted). The court also noted that "articles can form the basis for adequate pleading under the PSLRA if the article were sufficiently detailed to indicate their reliability and are based on an independent investigative effort." Id. (quoting McKesson HBOC, Inc. Sec. Litig., 126 F. Supp.2d 42, 80 (D. Del 2002).

In Harris v. AmTrust Fin Servs., Inc., 135 F. Supp.3d 155 (S.D.N.Y. 2015), the plaintiffs brought suit "[r]elying almost entirely on a negative report published by a short seller." Id. at 159. That court ultimately rejected the reliability of a short-seller report, noting a short seller report can be a corrective disclosure, however, there must be some misstatement or omission that the short-seller report discloses. See, id. at 173, n. 30. Short sellers "operate by speculating that the price of security will decrease." In re Longtop Financial Tech. Sec. Litig., 910 F. Supp.2d 561, 577 (S.D.N.Y. 2012). Short sellers "can perform a useful function by bringing information that securities are overvalued to the market[,]…they have an obvious motive to exaggerate the infirmities of the securities in which they speculate." Long Miao v. Fanhua, Inc., 442 F. Supp.3d 774, 801 (S.D.N.Y. 2020) (quoting Longtop, supra.).

As a primary matter, the Hindenburg Report, which is the root source of all information and documents utilized by plaintiffs, is based heavily on unverified news reports and confidential witnesses, evidence which cannot support a pleading in its current form, Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000), as the news reports relied on by Hindenburg are not "described…with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Furthermore, "plaintiffs have [not] pleaded

enough facts to support their belief" to supplement the allegation in the Hindenburg Report, let alone the frail allegations in the complaint that plaintiffs attempt to sever from the Hindenburg Report. Id. at 314. Here, the complaint suffers the same infirmities as the Hindenburg Report, as complaints based on short-sale reports are ultimately analyzed by the reports themselves and not what is pled in the complaint. See, Long Miao v. Fanhua, Inc., 442 F. Supp. 3d 774, 801-804 (S.D.N.Y. 2020).

### B. Plaintiffs' Counsel Has Not Exhibited An Independent Investigation was Performed, the Complaint was based Solely on Hearsay and therefore the Complaint is Insufficient.

Because of the hearsay nature of the Hindenburg report as rank unverifiable hearsay, this triggered a duty on the part of both Plaintiffs' counsels to independently verify the statements and to plead same independent investigation. Long Miao, supra. at 809 (dismissing a complaint because the plaintiff's counsel "appear[ed] not to have done any independent investigation [of matters in a short seller report], having chosen to piggyback [on the short seller report.]"). Furthermore, the complaint merely pleads insufficient evidence and duplicates the allegations in the Hindenburg report without corroboration of any of the facts alleged by the Hindenburg Report, which is insufficient as a matter of law. In re Draft Kings Sec. Litig., No. 21-cv-5739, 2023 WL 145591 (S.D.N.Y. 2023). Defendant has submitted a report from a China based law firm, Beijing Zhonglun W&D Law Firm (hereinafter the "Zhonglun Firm" (Mahon Aff. **Exhibit RR**), to investigate whether there were pending criminal charges against Mr. Jie. According to the Zonglun Firm's report, that firm's attorneys met with the prosecutorial authorities in China as well as the police investigators and confirmed that Mr. Jie did not commit any crimes, nor were there any charges pending against Mr. Jie. Mahon Aff. **Exhibit RR**. The Zhonglun Firm then goes on to explain that the only legal counsel that ever contacted the prosecutor's office alleged they were

23

from the Securities and Exchange Commission and the New York Stock Exchange.  <u>Id.</u>  The report further states that the prosecutor in China stated that they "could not verify the identity of the other party and replied that he could not provide [the information requested.]" Id.  <u>The report concludes that Mr. Jie was not the subject of any criminal trial, there are no pending charges in China, and that the underlying case is closed.</u> Id.  The conclusion made by the Zhonglun Firm after their investigation was likewise mirrored when Singularity retained their own China based law firm, the Hebei Me Dong Law Firm to perform an independent investigation in China in order about May or June, 2023.  Singularity published the results of that investigation in a July 3, 2023 Form 8-K filing, which states, in pertinent part: "[o]n June 12, 2023, Heibei Me Dong Law Firm issued a report to Registrant with respect to these issues.  In their report, the Chinese counsel concluded after conferring with local officials, that investigation of Mr. Jie conducted by the Baohe District Pollice Bureau of Heifei City was completed, that Mr. Jie was never prosecuted and there was no criminal judgment against Mr. Jie as of the date of the report.  The Chinese counsel also confirmed that no 'Red Notice' was issued for Mr. Jie by the PRC."  Mahon Aff. **Exhibit SS.**

It is apparent that Defense counsel engaged in the type of due diligence that the law requires when faced with hearsay reports from short sellers, like the Hindenburg outfit, which have a financial incentive.  It is in circumstances like this that counsel sees first-hand the danger of relying on rank hearsay.  Therefore, Plaintiffs' should be dismissed with prejudice.

IV.     **THE ALLEGATIONS FOR LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT ARE ALSO INSUFFICIENT BECAUSE THERE IS NO UNDERLYING ADEQUATELY PLED VIOLATION OF SECTION 10 OR RULE 10b-5.**

Here, Plaintiffs have not exhibited any underlying violations under Section 10(b) or Rule 10b-5.  Therefore, "[i]n the absence of a primary violation of Section 10(b) or Rule 10b-5, plaintiffs cannot state a claim for controlling person liability under Section 20(a) of the Exchange Act." <u>In</u>

re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 389 (E.D.N.Y. 2003) (citing Salinger v. Projectavision, Inc., 972 F. Supp. 222, 238 (S.D.N.Y. 1997); Rich v. Maidstone Fin., Inc., No 98-cv-2569, 2001 WL 286757 at *11 (S.D.N.Y. 2001).  Thus, the claims pled under Section 20(a) should also be dismissed.

## CONCLUSION

For the reasons stated herein, Defendant Yang Jie respectfully requests that this Court grant the instant motion in its entirety and dismiss all claims asserted against Mr. Jie with prejudice.

New York, New York  
Dated: November 20,2023

**BECKER & POLIAKOFF, LLP**  
*Attorneys for Defendants Yang Jie and Xiaohuan Huang*

By:     /s/ James J. Mahon  
James J. Mahon, Esq. (JM5405)

/s/ Adam K. Gallagher  
Adam K. Gallagher, Esq. (AG9289)  
45 Broadway, 17th Floor  
New York, New York 10006  
Phone: 212-599-3322  
Fax: 212-557-0295

25