### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

SEN GAO, CONGLI HUO, RUBIN WANG,
LUXIAO XU, individually and on behalf of all
others similarly situated,

       Plaintiffs,

v.

SINGULARITY FUTURE TECHNOLOGY,
LTD. F/K/A SINO-GLOBAL SHIPPING
AMERICA LTD., YANG JIE, LEI CAO,
ZHIKANG HUANG, TUO PAN, XIAOHUAN
HUANG, JING SHAN, TIELING LIU, JING
WANG, LEI NIE, JOHN LEVY, THOR MINER,
INC., and GOLDEN MAINLAND, INC,

       Defendants.

Case No: 22-cv-07499-BMC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LEI CAO'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

PRELIMINARY STATEMENTS ................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 3

    A.  Singularity Transitions from the Shipping Industry to the Cryptocurrency Sector. ........... 3

    B.  Events Between February 2021 to November 2021 .......................................................... 4

    C.  Events After November 1, 2021 ....................................................................................... 7

    D.  Singularity's Crypto Business Fails .................................................................................. 7

    E.  The Hindenburg & Peabody Reports ................................................................................ 8

STANDARD OF REVIEW .............................................................................................................. 9

ARGUMENTS ............................................................................................................................... 10

    I.  PLAINTIFFS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
        GRANTED. ...................................................................................................................... 10

    II.  BOTH PLAINTIFFS GROUPS HAVE FAILED TO PLEAD SUFFICIENT FACTS
        BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON A
        REPORT OF A SHORT SELLER WITH A BASIS ON INADMISSIBLE FACTS. ..... 18

    III.  THE SAC FAILS TO PLEAD CONTROL PERSONAL LIABILITY AGAINST MR.
         CAO. ................................................................................................................................ 18

CONCLUSION .............................................................................................................................. 20

LIVE 13014715v.2

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ..................................................................20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................9, 16, 17, 18

*In re Braskem S.A. Sec. Litig.*,
  246 F. Supp. 3d 731 (S.D.N.Y. 2017) ..................................................................19

*C.D.T.S. v. UBS AG, No. 12 CIV. 4924 KBF*,
  2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester
  Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015) ....................18

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012) ................................................................................12

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
  423 F.Supp.2d 348 (S.D.N.Y.2006) ....................................................................11

*Gissin v. Endres*,
  739 F. Supp. 2d 488 (S.D.N.Y. 2010) ............................................................11, 17

*In re IPO Secs. Litig.*,
  241 F.Supp.2d 281 (S.D.N.Y.2003) ....................................................................19

*Kusnier v. Virgin Galactic Holdings, Inc.*,
  639 F. Supp. 3d 350 (E.D.N.Y. 2022) ................................................................11

*Levitt v. J.P. Morgan Sec., Inc.*,
  710 F.3d 454 (2d Cir. 2013) ..............................................................................13

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ..................................................................17

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015) ....................9, 10

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011) ........................................15

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
  801 F.Supp.2d 41 (E.D.N.Y. 2011) ....................................................................20

iii

*Moshell v. Sasol Ltd.*,
    481 F. Supp. 3d 280 (S.D.N.Y. 2020) ................................................................... 17

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ....................................................................... 10, 16

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) .................................................................. 18

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ........................................................................ 19

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,
    Inc.*,
    75 F.3d 801 (2d Cir.1996) ........................................................................... 12

*In re Sanofi Securities Litig.*,
    155 F. Supp.3d 386 (S.D.N.Y. 2016) ................................................................. 16

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................................ 19

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007) ............................................................... 16

*Thesling v. Bioenvision, Inc.*,
    374 Fed.Appx. 141 (2d Cir.2010) .................................................................... 13

**Statutes**

15 U.S.C.A. § 78u–4(b)(1) .................................................................................. 14

10 U.S.C. § 78t .............................................................................................. 1

15 U.S.C. § 78j(b) ........................................................................................... 1

15 U.S.C. § 78u-5(i)(1) ..................................................................................... 11

15 U.S.C. § 78u-5(c)(1) ..................................................................................... 11

Exchange Act Section 10(b) ......................................................................... *passim*

Exchange Act Section 20(a) .......................................................................... 1, 18

Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act 15 U.S.C. §
    78u-4 ..................................................................................................... 1

Private Securities Litigation Reform Act's (PSLRA) ......................................... 11, 16

LIVE 13014715v.2

## INTRODUCTION

Before the Court is Defendant Lei Cao's Motion to Dismiss with prejudice the Second Amended Complaint ("SAC") of the Plaintiffs Sen Gao, Congli Huo, Ruibin Wang, Luxiao Xu (collectively the "plaintiffs"), and the purported putative class pursuant to Fed. R. Civ P. 12(b)6), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act (the "PSLRA") 15 U.S.C. § 78u-4.  The Complaint is a two-count complaint brought by the plaintiff group alleging violations, allegedly on behalf of a purported putative class, of (i) 15 U.S.C. § 78j(b) (commonly known as Section 10(b) of the Exchange Act) and the accompanying regulation implemented as 17 C.F.R. § 240.10b-5 (commonly known as "Rule 10b-5"), and (ii) 10 U.S.C.  § 78t (commonly known as "Section 20A of the Exchange Act").  Based on the defects and deficiencies in Plaintiffs' Second Amended Complaint, Mr. Cao respectfully requests that this Court grant the instant motion and dismiss the instant Complaint with Prejudice.

## PRELIMINARY STATEMENTS

Plaintiffs have filed a two-count complaint against Defendant Singularity Future Technology, Ltd. ("Singularity") and the Individuals Defendants related to violations of Section 10(b) and Rule 10b-5, and violations of Section 20(a) of the Exchange Act against the Individual Defendants.  The Second Amended Class Action Complaint must be dismissed as to Defendant Lei Cao because Plaintiffs have utterly failed to satisfy their pleading standard.  The claims are not based on any factual allegations, but rather "information and belief" gathered principally from Singularity's SEC filings and "press releases and media reports;" "publicly available information concerning" Defendants; "consultation with [undisclosed] experts;" "review and analysis of analyst reports" by Hindenburg Research and Peabody Street Research; and "court filings" in other, unrelated cases.  (*See* SAC, p. 1.)  To the extent Plaintiffs allege that they also relied on "interviews of confidential witnesses in the U.S. and China," the SAC makes no reference to any

actual confidential witness statements, nor does it contain any witness statements or materials that corroborate Plaintiffs' allegations against Mr. Cao—or any Defendants, for that matter.

This reliance on uncorroborated public filings and reports concerning Mr. Cao, without more, do not set forth a *prima facie* claim.  The allegations fail to demonstrate any false statement was made or withheld, or that Mr. Cao acted with the requisite scienter.  Plaintiffs cannot rely on such conclusory allegations and information that was publicly available during the class period to meet their heightened pleading standard. Plaintiffs have also failed to demonstrate any loss causation attributable to Singularity's volatile stock price.  The SAC does not address the history of Singularity's stock or the intervening causes that effected performance and operations.

To the extent the SAC alleges misconduct by Singularity and the Individual Defendants after November 1, 2021, those allegations cannot relate to Mr. Cao because these events would have occurred after Mr. Cao resigned from his position at Singularity. The SAC does not (and cannot) allege that Mr. Cao had any role in the alleged misrepresentations and omission with regard to such events.

For the foregoing reasons, Defendant Lei Cao respectfully requests that the Court grant this Motion and dismiss Plaintiffs' Second Amended Complaint and grant Defendant such other relief as this Court deems just and appropriate.

LIVE 13014715v.2

## STATEMENT OF FACTS

**A. Singularity Transitions from the Shipping Industry to the Cryptocurrency Sector.**

Singularity was previously a non-asset, global shipping and freight logistical integrated solutions provider that had been in operation since 2001.  (*See* SAC, ¶¶ 4, 45, 102.)  It provided tailored solutions and value-added services to its customers to drive efficiency and control throughout the shipping and freight logistics chain.  (*Id.* at ¶ 4.)

Unfortunately, Singularity's legacy shipping logistics operations was proving not to be lucrative for its shareholders.  It had been in decline well before the start of 2021 due to razor-thin margins and a small client base.  (*Id.* at ¶ 5; *see also* Motion to Dismiss of Defs' Yang Jie and Xiaohuan Huang, Affirmation of James J. Mahon, ¶¶ 17-19, 112 (discussing Singularity's "storm warnings").)  In addition, the effects of COVID-19 materially and adversely impacted the business.[1]  In response, in early 2021 Singularity decided it would turn its operations from the logistics space to the booming crypto market.  (*Id.* at ¶ 102.)  Specifically, Singularity sought to enter the Bitcoin "mining" sector.[2]  (*Id.*)

At the time of Singularity's decision, the price of Bitcoin had been increasing exponentially.  In 2020, Bitcoin increased in value 300%, from $7,194.89 per Bitcoin to $29,001.72.[3]  These numbers continued to increase into 2021.  (*See* Motion to Dismiss of Defs'

---

[1] Singularity's revenue and gross margin dropped significantly in the years 2019 and 2020.  *See, e.g.*, Sino-Global Shipping America, Ltd. Annual Report (Form 10-K), https://www.sec.gov/Archives/edgar/data/1422892/000121390 020031118/f10k2020_sinoglobalshipping.htm.

[2] "Mining" cryptocurrency refers to the digital process of validating transaction information. *See* Jake Frankenfield, *What Is Bitcoin Mining?*, Investopedia (Nov. 17, 2023),  https://www.investopedia.com/terms/b/ bitcoin-mining.asp.

[3] *Compare Bitcoin (BTC-USD), Historical Data*, Yahoo! Finance (last accessed Nov. 20, 2023), finance.yahoo.com/quote/BTC-USD/January-1-2020, *with* finance.yahoo.com/quote/BTC-USD/December-31-2020.

Singularity and Zhikang Huang, Declaration of Alexander G. Malyshev, Exhibit B.) By the end of January 2021, Bitcoin continued its rise to $33,114.36.[4]

A few days later, Singularity first announced its intentions to transition to the cryptocurrency sector in its Form 8-K filed with the SEC on February 3, 2021. (*See* SAC, ¶ 102.) Several other press releases and public filings followed this announcement addressing Singularity's operations, goals, and transactions.  Singularity also made the public aware that its transformation into crypto mining was not guaranteed to be successful. For example, in a press release published on October 4, 2021 and signed by Mr. Cao, Singularity outlined the challenges that Singularity would face while pursuing their goal of fulfilling a need in the marketplace: "Recent crypto policy changes combined with ongoing global component shortages have served to remove valuable digital mining capacity. We intend to fill that vacuum and plan to move aggressively as we build greater value for [Singularity] and all shareholders."  (*Id.* at ¶ 147.)

### B.  Events Between February 2021 to November 2021

The SAC takes issue with several of Singularity's disclosures related to Singularity's transition into the cryptocurrency industry between February and November of 2021.

#### a.  Allegations Related to Mr. Jie

The SAC makes a myriad of allegations about Singularity's hiring and eventual promotion to CEO of Defendant Yang Jie. It specifically takes issue with his alleged "personal and professional background," which Plaintiffs claim should have been disclosed by Singularity. (*See* SAC, Sec. IV.)  This information had been available via public sources at the time of disclosure, including via online articles (*see* SAC*,* ¶¶ 58-62,) and US court filings (*id.* at ¶¶ 63-69). For example, it outlines Jie's "alleged criminal history" in China.  (*Id.* at Sec. IV.A.2.b.)  However,

---

[4] *Bitcoin (BTC-USD), Historical Data*, Yahoo! Finance (last accessed Nov. 20, 2023), finance.yahoo.com/quote/BTC-USD/January-31-2021.

the SAC does not accuse Mr. Jie of being prosecuted for any crime, let alone convicted for any past conduct.

### b.  Allegations Related to Singularity's Operations

Plaintiffs also dispute several purchase agreements Singularity entered into with investors for the purchase of registered and unregistered shares of Singularity.  Plaintiffs cite a February 9, 2021 press release incorporated into a Form 8-K (*id.* at ¶ 104), a February 10, 2021 prospectus (*id.* at ¶ 106), and two other Form 8-Ks filed on February 10th and 11th of 2021 (*id.* at ¶¶ 107-108), which describe these transactions.  In addition, on February 16, 2021, Singularity filed a Registration Statement bearing Mr. Cao's signature, regarding Singularity's plan to offer and sell more securities "having an aggregate initial offering price not exceeding $200,000,000."[5] (*Id.* at ¶ 111.)

Plaintiffs allege that these investment activities were procured through false or misleading representations because "Singularity's cryptocurrency transformation was little more than a series of sham transactions."  (*Id.* at ¶ 105.)  However, in making these accusations, Plaintiffs do not rely on corroborated facts or signed witness affidavits or statements.  Rather, they exclusively rely on uncorroborated allegations from the complaints filed by the entities that agreed to purchase the shares.  (*Id.* at ¶¶ 244-258.)  These cases were all settled and dismissed.  (*Id.* at ¶¶ 258, 276.)

The SAC also identifies sales transactions Singularity entered into prior to November 1, 2021.  For example, a March 3, 2021 Form 8-K signed by Mr. Cao, incorporating a press release which announced Singularity's "purchase of 2,783 digital currency operation servers."[6]  (*Id.* at ¶ 114.)  The SAC specifically points to the following statement from the press release:

---

[5] Sino-Global Shipping America, Ltd., Registration Statement (Feb. 16, 2021), https://www.sec.gov/Archives/edgar/data/1422892/000121390021009665/ea135668-s3_sinoglobal.htm.

[6] Sino-Global Shipping America, Ltd., Press Release (Mar. 3, 2021), https://www.sec.gov/Archives/edgar/data/1422892/000121390021013073/ea136933ex99-1_sinoglob.htm.

LIVE 13014715v.2

> We are excited to announce the purchase order, which demonstrates the efficiency of our management team's ability to pivot and execute a new venture into cryptocurrencies. To provide transparency on the mining operations and daily probabilities to our shareholders, the Company will disclose the digital currency wallet addresses once they are available. We are confident with the opportunity presented to us from the digital currency industry and our capability to capture the growth in furtherance of our strategy to maximize our shareholder value.

(*Id*.)

In addition, the SAC describes a joint venture Singularity entered into HighSharp (Shenzhen Gaorui) Electronic Technology Co., Ltd. to form Thor Miner, Inc. ("Thor Joint Venture") for the sale of crypto mining computers or "rigs". (*Id*. at ¶¶ 145, 147.) A press release was issued on October 4, 2021 announcing the venture and its "potential for significant long-term financial benefit" and the project's goal of "address[ing] unmet demand for high-quality, reliable digital mining machines." (*Id*. at ¶ 147.) At the time this transaction was entered into, it was known that there was a global semiconductor chip shortage, which would pose a challenge for the parties to overcome. (*Id*. at ¶ 154.) Plaintiffs do not identify any actual sales from the Thor Joint Venture that occurred while Mr. Cao was CEO of Singularity. (*Id*. at ¶ 157.)

Finally, Plaintiffs also take issue with the information Singularity disclosed about its "internal controls" process. (*Id*. at ¶¶ 199-211.) The SAC references three filings that bear Mr. Cao's signature: (i) a February 12, 2021 Form 10-Q; (ii) May 13, 2021 Form 10-Q; and (iii) a September 29, 2021 Annual Report. (*Id*. at ¶¶ 201-05.) Plaintiffs acknowledge that each of these filings disclosed the deficiencies within Singularity's internal controls from the beginning of the Class Period, including by candidly stating an investigation "concluded that our disclosure controls and procedures . . . were not effective and adequately designed to ensure that information required to be disclosed by us" would be properly reported. *Id*. at ¶ 201 (February 12, 2021 form); *see also*

6

*id.* at ¶ 203 (May 13, 2021 form notes that "disclosure controls and procedures . . . were not effective" and "lack of segregation of duties for accounting personnel"); *id.* at ¶ 205 (September 29, 2021 report identifies "lack of management control reviews of the budget against actual" and "material weakness . . . in internal control over financial reporting").)[7]

Plaintiffs cite all of the above events as evidence of Plaintiffs attempts to inflate Singularity's stock price. However, the SAC ignores the fluctuation in Singularity's stock price during this time period and fails to mention that its stock decreased following several of these events. (*See* Defs' Singularity and Huang's Br., Point I.) Moreover, Plaintiffs do not allege any personal benefit or gain Mr. Cao received from these activities or any sale of stock made by him during the Class Period.

### C.  Events After November 1, 2021

Mr. Cao resigned as CEO of Singularity on November 1, 2021. (*See* SAC, ¶ 7.) He was succeeded by Mr. Jie. (*Id.* at ¶ 48). The SAC identifies additional transactions Singularity agreed to *after* Mr. Cao's resignation. The SAC does not allege Mr. Cao had any involvement in the alleged conduct that occurred after he resigned on November 1, 2021.

### D.  Singularity's Crypto Business Fails

Despite the initial optimism and excitement, Singularity's crypto venture was not the successful business the company had envisioned. The general volatility and significant plummet in value of the overall cryptocurrency market in 2022,[8] coupled with the impacts of the COVID-

---

[7] Plaintiffs cite additional filings and reports submitted after November 1, 2021. These reports similarly disclose internal control issues at Singularity. *See, e.g.*, SAC, ¶ 207 (November 12, 2021 form provides that internal controls were "not effective and adequately designed"); *id.* at ¶ 209 (February 12, 2022 form).

[8] Bitcoin's price shrunk 64% in 2022, from $46,311.75 on January 1, 2022 to $16,547.50 by December 31, 2022.[8] *Compare Bitcoin (BTC-USD), Historical Data*, Yahoo! Finance (last accessed Nov. 20, 2023), finance.yahoo.com/quote/BTC-USD/January-1-2022, *with* finance.yahoo.com/quote/BTC-USD/December-31-2022.

19 Pandemic, the global chip shortage, and complications from supply chain issues ultimately caused the quick demise of Singularity's new business venture. (*Id.* at ¶ 274.)

These intervening causes are discussed in the SAC. (*Id.* at ¶ 8 ("continuing lockdowns in China and the global semiconductor shortage" contributed to making it "unlikely, if not impossible for Singularity to deliver on the transition"); *id.* at ¶ 147 ("[r]ecent crypto policy combined with ongoing global component shortages have served to remove valuable digital mining production capacity"); *id.* at ¶ 172 (delays in obtaining bitcoin mining machines "due to a worldwide chip shortage and difficulty in obtaining the necessary parts amid COVID lockdowns in China"); *id.* at ¶ 182 (quoting Singularity's Form 10-Q for Q1 2023, which states that Singularity's "business, results of operations, and financial condition have been adversely affected" by COVID-19 and its lockdowns). These challenges were present during the majority of the Class Period (February 2, 2021 to February 24, 2023).

### E.  The Hindenburg & Peabody Reports

In addition to public SEC filings and court documents, Plaintiffs' allegations also rely on two short seller reports criticizing Singularity, titled the "Hindenburg" and "Peabody" Reports. (*Id.* at ¶ 213-214.)  Plaintiffs allege that these "bombshell reports expose substantial fraud by Defendants." (*Id.* at Sec. V.A.)  However, these reports solely rely on publicly accessible information obtained from websites and public records (*id.* at ¶¶ 219, 222-224, 227), "Chinese media articles" (*id.* at ¶ 216), and lawsuits filed with the New York Supreme Court (*id.* at ¶ 217). These reports are merely an amalgamation of already public information about the allegations related to Mr. Jie and the transactions discussed above.  They also primarily address events occurring after Mr. Cao's resignation. (*Id.* at Sec. V.)

LIVE 13014715v.2

## STANDARD OF REVIEW [9]

To plead securities fraud under Section 10(b) of the 1934 Act and Rule 10b–5, "plaintiffs must adequately allege each of the following elements: (1) that the defendants either made one of more misstatements of material fact, or omitted to state a material fact that the defendants had a duty to disclose (2) with scienter (3) in connection with the purchase or sale of securities; (4) that one or more plaintiffs relied upon the misstatement or omission; and (5) that such reliance was the proximate cause of a plaintiffs loss (loss causation)." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015).  Significantly, plaintiffs "must plead with particularity not only which statement(s) were fraudulent, but also when and where the statements were made, why the statements were fraudulent, and the maker of the statement." *Id*; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss.")

---

[9] Defendant Mr. Cao adopts the standard of review set forth in Singularity's, and Mr. Jie and Ms. Huang's respective Memorandum of Law in Support of their Motions to Dismiss as if fully set forth herein.

LIVE 13014715v.2

## ARGUMENTS

### I.   PLAINTIFFS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The SAC fails to state a claim for Securities Fraud under Section 10(b) of the 1934 Act and Rule 10b-5 as Plaintiffs cannot establish the requisite elements of material misstatement or omission, duty to disclose, scienter, or loss causation.  For the reasons set forth herein, as well as the reasons in Co-Defendants' Motions, which Mr. Cao incorporates by reference and relies on, Plaintiffs' Second Amended Complaint must be dismissed.

#### a.   The SAC Fails to Identify with Particularity An Actionable Misstatement or Omission Made By Mr. Cao During His Tenure With Singularity.

Plaintiffs cite to various SEC filings of Singularity that were signed by Mr. Cao and filed prior to November 1, 2021 as evidence that he made a material misstatement to "artificially inflate or maintain the price of Singularity's common stock."  *See* SAC ¶¶ 7, 113, 291, 293, 297, 314-15, 321.  These arguments must fail because the filings are insufficient to attribute any actionable statement to Mr. Cao.

The first element of a securities fraud claim requires either a material misstatement or material omission.  *See Lululemon*, 14 F. Supp. 3d at 571.  To meet the definition of a material misstatement, the statement must be "false at the time it was made." *Id*. (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812–13 (2d Cir.1996).  It is not enough if the statement was "believed [by the party making it] to be true at the time when made, but later shown by to false."  *See Lululemon*, 14 F. Supp. 3d at 571.

"[R]osy predictions, or statements that are loosely optimistic regarding a company's well-being, have been found to be too vague and general to be actionable." *Lululemon*, 14 F. Supp. 3d at 572; *see also Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (indicating "statements

10

containing simple economic projections, expressions of optimism, and other puffery are insufficient" to allege securities fraud).

Forward-looking statements are also protected by the Private Securities Litigation Reform Act's (PSLRA) safe harbor provision, so long as it is (i) identified as such and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement;" (ii) immaterial; *or* (iii) if the plaintiff fails to prove that it was "made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 371 (E.D.N.Y. 2022). Forward-looking statements include "a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer," and "a statement of future economic performance." 15 U.S.C. § 78u-5(i)(1).  Statements that are "merely vague expressions of optimism or puffery" are immaterial and not actionable. *See Gissin*, 739 F. Supp. 2d at 502; *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 371 (E.D.N.Y. 2022) (indicating "statements that refer to a company being 'presently on track' with goals" constitute forward-looking statements under the PSLRA); *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F.Supp.2d 348, 358 (S.D.N.Y.2006) (finding statements in SEC filings such as "Wholesale Banking is in very good shape as it moves into its next stage of development" to be "inactionable as general statements of optimism").

The "loosely optimistic" statements Plaintiffs cite about Singularity's management's plans and objectives for future operations and opportunities in the cryptocurrency business constitute non-actionable puffery.  For example, the statements in Singularity's February 3, 2021 Form 8-K about its "new executive leadership to drive bitcoin mining and operations expansion," as well as

11

the optimism of the management "to expand on Bitcoin mining" (*see* SAC ¶ 102), are plainly statements of opinion and belief and cannot form the basis of a security fraud allegation.

In addition, Statements contained in the September 21, 2021 press release concerning Singularity's "plan to switch to a direct mining business rather than contracting with third parties in order to have greater control over this growth segment and to optimize our gross margin" also qualify as forward-looking statements, as they discuss the company's "plan" and strategy for "growth." (*See* SAC ¶ 116.) Moreover, discussions of Singularity's plan to capitalize its "new cryptocurrency initiative" in the February 10, 2021 Prospectus supplement are also forward-looking statements that were caveated by detailed risk factors and cautionary language. (*See id*. ¶ 106.)

Likewise, statements about Singularity's plan to sell unregistered securities also constitute forward-looking statements. (*See* SAC, ¶¶ 107-08, 111 (stating Singularity's plan to "vastly accelerate its efforts to raise cash based on its cryptocurrency transformation and sell securities "having an aggregate initial offering price not exceeding $200,000,000"). The enthusiasm contained in these forward-looking statements about the company's "new cryptocurrency initiative" do not make them false or misleading. *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) (holding plaintiffs failed to "allege[] circumstances to show that the defendants lacked a reasonable basis for their optimistic, but qualified, predictions as to the company's future performance"); *City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (dismissing Section 10(b), Rule 10b–5, and Section 20(a) claims based on opinion statements where the complaint was "devoid even of conclusory allegations that defendants did not believe

in their statements of opinion," and stating allegations that defendants "should have" been aware of facts contradicting their opinions "alone would not suffice to state a securities fraud claim").

In sum, the SAC fails to identify any actionable statements or omissions made by Mr. Cao. The SAC entirely relies on Singularity's public filings, which merely set forth statements of mere puffery or forward-looking ones meant to describe Singularity's future plans. At to other statements made by Singularity, Mr. Cao adopts the arguments set forth in Mr. Jie and Ms. Huang's brief in support of their Motion to dismiss as if fully set forth herein.

### b.  Plaintiffs' Fail to Identify any Duty to Disclose Information.

A material omission is only actionable when subject to an underlying duty to disclose.  *See Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (quoting *Basic v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).   The duty to disclose does not automatically attach to every statement concerning material information "simply because it may be relevant or of interest to a reasonable investor." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) (quoting *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir.2002)).  A duty arises only when "(1) expressly pursuant to an independent statute or regulation; or (2) as a result of the ongoing duty to avoid rendering existing statements misleading by failing to disclose material facts." *Thesling v. Bioenvision, Inc.*, 374 Fed.Appx. 141, 143 (2d Cir.2010) (citing 17 C.F.R. § 240.10b–5(b)).

### i.  There Was No Duty to Disclose with Respect to the Private Offerings.

Plaintiffs do not allege a specific statutory or regulatory duty to disclose by Mr. Cao or Singularity. The SAC instead argues that statements in connection with "Singularity's announcement regarding the private investments was false and misleading" gave rise to a duty to disclose because they omitted the fact that Defendants "had induced the accredited investors to

13

make the investments on the basis of false claims that Singularity expected substantial growth based on its new cryptocurrency business." (*See* SAC, ¶ 109.)  However, Plaintiffs fail to offer any reason why such statements concerning private offerings is misleading, other than to make conclusory accusations that Defendants "procured" the investments "through false and misleading statements regarding the Company's sham cryptocurrency business."  (*See* SAC ¶¶, at 106-113.) These allegations are insufficient to give rise to a duty to disclose.

Moreover, these allegations are also improper because they rely on uncorroborated statements from third-party complaints. (*See* SAC ¶¶ 243-258.)  The SAC alleges misconduct by Mr. Cao in relation to the investment procured from Hexin Global Limited and Viner Total Investments Fund.  These third-parties claimed in a complaint that "they were introduced to Cao and Jie to discuss potential investments in Singularity" and "Cao and Jie told their representatives that Singularity was on the verge of incredible growth because it was about to pursue a new line of business focusing on blockchain technologies." (*See* SAC ¶ 246.) These allegations were never corroborated by witness testimony, documentary evidence, or any findings by a court, and Plaintiffs have done nothing to investigate their veracity.

Plaintiffs cannot satisfy the heightened pleading standards by relying on such conclusory allegations made by third parties in unrelated litigations, without independent investigation into the veracity of such statements. *See* 15 U.S.C.A. § 78u–4(b)(1) (plaintiff is required pursuant to the heightened pleading requirements to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

### ii. *Singularity Properly Disclosed Information About Internal Controls.*

Further, Plaintiffs cannot allege Defendants failed to disclose Singularity's internal control issues because these were repeatedly disclosed in Singularity's forms and reports.  Each filing Plaintiffs cite adequately disclosed the deficiencies in Singularity's internal controls.  (*See, e.g.*, *id.* at ¶ 201 ("conclud[ing] that our disclosure controls and procedures . . . were not effective and adequately designed to ensure that information required to be disclosed by us" would be properly reported; *id*. at ¶ 203 (noting "disclosure controls and procedures . . . were not effective" and "lack of segregation of duties for accounting personnel"); *id*. at ¶ 205 (reporting "lack of management control reviews of the budget against actual" and "material weakness . . . in internal control over financial reporting").).

Plaintiffs allegation that these statements "downplayed" issues is buttressed by the statements themselves. In any event, the statements sufficiently disclosed Singularity's internal controls.  Section 10(b) and Rule 10b-5 does not impose "an affirmative duty to disclose any and all material information" on an issuer.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45, 131 S. Ct. 1309, 1322, 179 L. Ed. 2d 398 (2011) ("Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market").  Plaintiffs cannot be allowed to improvise their own standard.

At to other statements made by Singularity, Mr. Cao adopts the arguments set forth in Mr. Jie and Ms. Huang's brief in support of their Motion to dismiss as if fully set forth herein.

### c.  **Plaintiffs Have Failed to Plead Scienter.**

The SAC must also be dismissed as to Mr. Cao for the independent reason that it fails to plead a strong inference of scienter.  Scienter requires a showing of intent to "deceive, manipulate,

or defraud," or reckless conduct. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The PSLRA sets forth exhaustive pleading standards which require a plaintiff to "state 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" In re Sanofi Securities Litig., 155 F. Supp.3d 386, 405 (S.D.N.Y. 2016) (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 345 (2005)). A plaintiff must allege a defendant's "knowledge of facts or access to information contradicting their public statements" to demonstrate they knew or should have known of their misrepresentations. Id.

"[T]o raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiffs must allege that [defendant] or its officers 'benefitted in some concrete and personal way from the purported fraud.'" *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (noting this requirement to be "generally met when corporate insiders were alleged to have misrepresented to the public material facts about the corporation's performance or prospects in order to keep the stock price artificially high *while they sold their own shares at a profit*") (emphasis added). In addressing a plaintiff's allegations of scienter, a court must "consider plausible, nonculpable explanations for the defendant's conduct" as well as "take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310, 127 S. Ct. 2499, 2502 (2007).

The SAC does not plead any inference of scienter. Other than identifying Mr. Cao as the signatory to certain SEC filings made by Singularity between February 2, 2021 and November 1, 2021 (before Mr. Cao retired as CEO), the SAC does not contain any indication that Mr. Cao made any alleged material misstatements or omissions with the requisite level of scienter.

The SAC is devoid of any particularized allegation that Mr. Cao had "both motive and opportunity to commit the fraud," nor does it present any "strong circumstantial evidence of

16

conscious misbehavior or recklessness," which are typically required to satisfy the scienter element. *See ATSI*, 493 F.3d at 99. Moreover, the SAC fails to establish that those statements were made or approved by Mr. Cao with actual knowledge that they were false or misleading at the time they were made. *See, e.g., Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 289 (S.D.N.Y. 2020) (to preclude application of the safe harbor protection, "plaintiff must plead facts supporting a strong inference of scienter that is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent'"); *Gissin v. Endres*, 739 F. Supp. 2d 488, 502 (S.D.N.Y. 2010) ("Liability under the actual knowledge prong of the safe harbor 'attaches only upon proof of knowing falsity'—a showing of recklessness is insufficient").

The challenged statements found in Singularity's securities filings bearing Mr. Cao's signature exhibit nothing more than "general motives [and desire] common to most corporate officers . . . for the corporation to appear profitable and . . . to keep stock prices high." *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 160 (S.D.N.Y. 2015). This is insufficient to show Mr. Cao acted with the requisite level of knowledge in approving or signing Singularity's public filings or that Mr. Cao obtained any form of financial gain, for example, by selling his Singularity shares—even though the SAC makes repeated references to "artificially inflated prices" of Singularity stock. *See* SAC ¶¶ 7, 113, 291, 293, 297, 314-15, 321.

Plaintiffs' remaining allegations related to government investigations and uncorroborated statements made in separate lawsuits are similarly insufficient to demonstrate that Mr. Cao knew or should have known of any material misstatements or omissions. Further, the allegation with regards to Singularity's affirmative misrepresentation in an October 23, 2020 Form 8-K about Defendant Ms. Xiaohuan Huang's employment history must fail for the independent reason that the SAC does not plead that Mr. Cao or Singularity had knowledge that such information was false

or incomplete.  *See C.D.T.S. v. UBS AG, No. 12 CIV. 4924 KBF*, 2013 WL 6576031, at *3

(S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F.

App'x 5 (2d Cir. 2015) (holding "'misapprehension, misunderstanding, or mistake' on the part of

the speaker does not make the underlying statement actionable").

### d.  Plaintiffs Have Failed to Plead Loss Causation.

Mr. Cao adopts the arguments in relation to loss causation from the brief that Singularity

submitted in support of its motion to dismiss as if fully set forth herein. *See* Defs' Singularity and

Huang's Br., Point I.

### II.   BOTH PLAINTIFFS GROUPS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON  A REPORT OF A SHORT SELLER WITH A BASIS ON INADMISSIBLE FACTS.

Mr. Cao adopts the arguments in relation to Plaintiffs' failure to perform a proper

independent investigation from the brief that Defendants Yang Jie and Xiaohuan Huang submitted

in support of their motion to dismiss as if fully set forth herein.  *See* Defs' Jie and Huang's Br.,

Point III.

### III.   THE SAC FAILS TO PLEAD CONTROL PERSONAL LIABILITY AGAINST MR. CAO.

Plaintiffs cannot establish control person liability in the absence of a primary violation by

Singularity.  *See ATSI*, 493 F.3d at 108 ("[The plaintiff] fails to allege any primary violation; thus,

it cannot establish control person liability.")  Moreover, the SAC fails to establish that Mr. Cao

had the requisite level of power or authority to exert actual control over Singularity to be subject

to Section 20(a) liability.  *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y.

2007) (to sufficiently plead control person liability, plaintiffs must allege "control by the defendant

of the primary violator" in addition to primary violation).  For purposes of Section 20(a), control

may be established by showing that the defendant possessed "the power to direct or cause the

direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b–2).

To the extent Plaintiffs' allegations rely on limited SEC filings containing Mr. Cao's signature, those allegations are insufficient to plead control person liability as they "focus exclusively" on Mr. Cao's status as the former CEO of Singularity "rather than [his] exercise of actual control over the matters at issue." *See, e.g., In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017) (finding allegation that executive board members of company were all responsible for all necessary corporate functions, including public filings, was insufficient to plead that former CEO had control over company's allegedly false and misleading SEC filings, absent any concrete allegations regarding CEO's actual control of, or role with respect to, SEC filings); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (rejecting allegations that CEO of accompany had control over putative violators and their misstatements "by virtue of his high-level positions," his "awareness of [defendants'] operations," and his "intimate knowledge of the statements filed . . . with the SEC" where the complaint contained no allegations that the CEO "signed, drafted, approved, or confirmed a misleading statement," or that he "ordered or encouraged" putative defendants to sign a misleading statement); *In re IPO Secs. Litig.*, 241 F.Supp.2d 281, 352 (S.D.N.Y.2003) ("A plaintiff is required to prove actual control, not merely control person status.").

Further, because Mr. Cao resigned from his CEO position on November 1, 2021, he was not involved in any of Singularity's SEC filings submitted after that date, nor did his signature appear on those subsequent filings.  Therefore, Mr. Cao cannot be held liable for those filings, including alleged misstatement or omission contained therein relating to the Thor Joint Venture,

19

the Mainland JV, dealings with Rich Trading, among other things.  *See Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F.Supp.2d 41, 61 (E.D.N.Y. 2011) (corporate officers "cannot be liable as control persons for the period after they left the Company"); *In re Alstom SA*, 406 F. Supp. 2d 433, 495 (S.D.N.Y. 2005) (finding former CEO "cannot be liable as control person" even though "he remained chair of the board . . . mere status as a board member is not enough to demonstrate actual control over the company and the transaction in question").

## **CONCLUSION**

For the foregoing reasons, Defendant Lei Cao respectfully requests that the Court grant this Motion and dismiss Plaintiffs' Second Amended Complaint and grant Defendant such other relief as this Court deems just and appropriate.

DATED: New York, New York
      November 20, 2023

Respectfully Submitted,

KING & WOOD MALLESONS, LLP

By: */s/ Aaron T. Wolfson*
Aaron T. Wolfson (AW7218)
King & Wood Mallesons
500 Fifth Avenue, 50th Floor
New York, NY 10110
aaron.wolfson@us.kwm.com

*Attorneys for Defendant Lei Cao*

LIVE 13014715v.2

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 20, 2023, a true and correct copy of the foregoing

Memorandum in Support of Defendant Lei Cao's Motion to Dismiss was electronically filed with

the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.


<u>/s/ Aaron T. Wolfson</u>
Aaron T. Wolfson