## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

SEN GAO, CONGLI HUO, RUBIN WANG, LUXIAO XU, Individually, and on behalf of all others similarly situated, :    Civil Case No. 22-cv-07499-BMC

:

Plaintiffs, :    <u>Electronically Filed</u>

:

v. :

:

SINGULARITY FUTURE TECHNOLOGY, LTD F/K/A SINO-GLOBAL SHIPPING AMERICA LTD, YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIAOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., AND GOLDEN MAINLAND, INC., :

:

Defendants. :

:

------------------------------------------------------------- x

## MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS YANG JIE AND XIAOHUAN HUANG IN FURTHER SUPPORT OF MOTION TO DISMISS

**BECKER**
James J. Mahon (JM5405)
Adam K. Gallagher (AG9289)
45 Broadway, 17th Flr.
New York, New York 10006
Phone: 212-599-3322
Fax:     212-557-0295
jmahon@beckerlawyers.com
agallagher@beckerlawyers.com

*Attorneys for Defendants*
Yang Jie and Xiaohuan Huang

24540496v.5

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

LEGAL ARGUMENT................................................................................................................2

    I.     PLAINTIFFS' COMPLAINT FAILS TO STATE A VIABLE CLAIM FOR RELIEF  2

         A.    Plaintiffs Have Alleged an Actionable Material Misstatement or Omission...........2

         B.    Plaintiffs Have Not Established any Duty to Disclose ...........................................4

         C.    There was No Duty to Disclose Jie's Alleged Uncharged Criminal Conduct.........5

         D.    Plaintiffs Have Not Pled Facts to Trigger A Duty to Disclose Other Allegations of Criminality ..........................................................................................................7

    II.    PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON REPORTS OF SHORT SELLERS WITH A BASIS ON INADMISSIBLE FACTS ............................8

         A.    The Hindenburg Short Seller Report was Based Solely on Unverified Information and Not Sufficient to Premise A Cause of Action ....................................................8

    III.    THE ALLEGATIONS FOR LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT ARE ALSO INSUFFICIENT BECAUSE THERE IS NO UNDERLYING ADEQUATELY PLED VIOLATION OF § 10 OR RULE 10b-5.......9

CONCLUSION..........................................................................................................................10

i

24540496v.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Bank of America AIG Discl. Secs. Litig.,
  80 F. Supp.2d 564 (S.D.N.Y. 2013)....................................................................................5

Bartesch v. Cook,
  941 F. Supp.2d 501 (D. Del. 2013).....................................................................................8

Basic, Inc. v. Levinson,
  485 U.S. 224 (1988).............................................................................................................2

In re Forcefield Energy Secs. Litig,
  2017 WL 1319802 (S.D.N.Y. 2017)....................................................................................3

Ganino v. Citizens Utilities Co.,
  228 F.3d 154 (2d Cir. 2000).................................................................................................2

Harris v. AmTrust Fin Servs., Inc.,
  135 F. Supp.3d 155 (S.D.N.Y. 2015)...................................................................................8

In re ITT Educ. Servs, Inc.,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012)..................................................................................5

In re Keyspan Corp. Sec. Litig.,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................................................9

In re Keyspan Secs. Litig.,
  383 F. Supp. 3d 358 (E.D.N.Y. 2003) ..............................................................................4, 5

Kronenfeld v. Transworld Airlines, Inc.,
  832 F.2d 726 (2d Cir. 1987).................................................................................................5

Lau v. Opera, Ltd.,
  527 F. Supp.2d 537 (S.D.N.Y. 2021)...................................................................................5

Lipow v. Net1 UEPS Techs., Inc.,
  131 F.Supp.3d 144 ...............................................................................................................5

Lipsky v. Commonwealth United Corp.,
  551 F.2d 887 (2d Cir. 1976).................................................................................................7

In re Livent, Inc. Secs. Litig.,
  151 F. Supp.2d 371 (S.D.N.Y. 2001)...................................................................................1

ii

24540496v.5

Long Miao v. Fanhua, Inc.,
    442 F. Supp.3d 774 (S.D.N.Y. 2020)..................................................................8, 9

Major Energy Elec. Servs. LLC v. Horowitz,
    2020 WL 4432121 (S.D.N.Y. 2020)........................................................................7

In re Marsh & McLennan Companies, Inc.,
    501 F. Supp.2d 452 (S.D.N.Y. 2006)....................................................................2, 4

Miller v. Thane Int'l,
    519 F.3d 879 (9th Cir. 2008) ...................................................................................5

Mucha v. Volkswagen Aktiengellschaft,
    540 F. Supp.3d 269 (E.D.N.Y. 2021) ......................................................................6

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000)....................................................................................3

Nutriband, Inc. v. Kalmar,
    2020 WL 4059657 (E.D.N.Y. 2020)........................................................................3

RSM Prod. Corp. v. Fridman,
    643 F. Supp. 2d. 382 (S.D.N.Y. 2009)....................................................................7

In re Time Warner Secs. Litig.,
    9 F.3d 259 (2d Cir. 1993)........................................................................................4

UPS Store, Inc. v. Hagan,
    99 F. Supp. 3d 427 (S.D.N.Y. 2015)........................................................................6

Zhou v. NextCure, Inc.,
    2023 WL 4493541 (S.D.N.Y. 2023)........................................................................7

**Statutes**

17 CFR § 240.10b-5...........................................................................................1, 2, 3, 9

15 U.S.C. § 78j...........................................................................................................1

15 U.S.C. § 78t-1 .....................................................................................................1, 9

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.......................................7, 8

**Other Authorities**

Fed. R. Civ. P. 12(f)....................................................................................................7

iii

24540496v.5

## PRELIMINARY STATEMENT

This case exhibits the hallmarks of a "strike suit of dubious merit" by a disgruntled group of investors and was plainly intended to extract a speedy settlement. See, e.g., In re Livent, Inc. Secs. Litig., 151 F. Supp.2d 371, 418 (S.D.N.Y. 2001).  Defendants Yang Jie and Xiaohuan Huang[1] refused that invitation and have instead moved this Court for dismissal.  As the motion record reflects,  Plaintiffs cannot state a viable claim for relief. Thus, the claims must be dismissed.

Specifically, Plaintiffs have failed to plead any of the requisite elements to support a violation of Rule 10b-5 of the Securities Exchange Act of 1934.  Plaintiffs have not articulated: (i) scienter; (ii) any alleged omissions or misrepresentations; or (iii) proximate causation of any economic loss. Furthermore, Plaintiffs, through their counsel, have acknowledged that no independent investigation was performed prior to initiating this strike suit.  Simply put, the requisite due diligence required to support a cognizable claim of securities fraud was never completed.

In fact, as the Plaintiffs know, defense counsel for Mr. Jie incurred the expense of retaining a China based law firm to investigate the truth of any of the allegations made in the Hindenburg Report and render a Report regarding same.  The China law firm's Report undermines the allegations made in Plaintiffs' Complaint and demonstrates the dangers of relying on rank hearsay to initiate a lawsuit.

Because Plaintiffs have not pleaded – a viable cause of action under § 10(b) or Rule 10b-5 of the Securities Act, any derivative claim for individual liability under § 20 must also fail.

For these reasons, individual defendants Jie and Huang respectfully submit that this Court should grant their motion to dismiss Plaintiffs' complaint with prejudice.

---

[1] Defendants Yang Jie and Xiaohuan Huang incorporate by reference and rely upon the arguments made in Singularity's and Lei Cao's respective Motions to Dismiss and reply briefs.

1

24540496v.5

**LEGAL ARGUMENT**

**I.    PLAINTIFFS' COMPLAINT FAILS TO STATE A VIABLE CLAIM FOR RELIEF**

   **A.    Plaintiffs Have Alleged an Actionable Material Misstatement or Omission.**

"At the pleading stage, a plaintiff satisfies the materiality requirement rule of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000) (internal citations omitted). Courts in this Circuit have "consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation." In re Marsh & McLennan Companies, Inc., 501 F. Supp.2d 452, 468 (S.D.N.Y. 2006) (citing Ganino, supra. at 162 (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)). When analyzing alleged omissions, the Supreme Court has set forth a test that "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic, Inc. v. Levinson, 485 U.S. 224, 231 (1988) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976)).

In analyzing where a material misrepresentations or omission under §10b-5 is actionable, a reviewing Court must determine: (1) whether the misstatement or omission was material; and (2) whether there was a duty to disclose. In re Marsh & Mclennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452 (S.D.N.Y. 2006). "As the Supreme Court has made clear[,]…the concepts of materiality and duty to disclose are different." Id. (quoting Glazer v. Formica Corp., 964 F.2d 149, 156 (2d Cir. 1992) (alternations in original); In re Time Warner Inc. Sec. Litig., 9 F.3d 159, 267 (2d Cir. 1993)). "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." In re Marsh & Mclennan, supra. at 469 (quoting Chiarella v. United States, 445 U.S. 222, 235 (1980).

2

24540496v.5

As noted extensively in Defendants' opening brief, Plaintiffs have alleged no misstatements or omissions relating to: (i) a failed reverse merger and a discrepancy over a $3.5 Million in a lawsuit that was dismissed before the instant litigation; or (ii) criminality in China. These facts were extensively analyzed and conceded in the complaint as public knowledge. (See, gen., Complaint [D.E. 58]. Thus, there were no predicate material misstatement(s) or omission(s).

Rather, the Complaint relies on statements of opinion (e.g. "Mr. Jie has been nominated to serve because of his business management experience"), that are neither actionable under § 10b-5 nor trigger any duty to disclose. Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000).

In response, Plaintiffs argue that an executive has a duty to disclose everything in their consciousness. That is not the law in this Circuit and the cases cited by Plaintiffs in support of their argument are easily distinguishable.

For example, in Nutriband, Inc. v. Kalmar, 2020 WL 4059657 (E.D.N.Y. 2020), the defendant Kalmar exchanged numerous emails and provided the functional equivalent of a curriculum vitae, replete with statements regarding his team, including a representation about allegedly fictional past deals and personnel.

Similarly, in In re Forcefield Energy Secs. Litig, 2017 WL 1319802 (S.D.N.Y. 2017), an unpublished decision, a robust disclosure of executives' background was made.

Here, by contrast, the 8-K filing at issue contains three sentences regarding Mr. Jie: (1) Mr. Jie's age and then current position with Singularity; (2) Mr. Jie's start date with Singularity; and (3) the calendar years Mr. Jie worked with China Commercial Credit, along with his job title as general manager. Thus, the 8-K here is easily distinguishable from the cases cited by Plaintiffs and contains no actionable misrepresentation.

3

### B.      Plaintiffs Have Not Established any Duty to Disclose.

Even if the information were material -- and it is not -- its nondisclosure "is insufficient to state an actionable misrepresentation absent a duty to disclose." In re Marsh & McLennan Companies, supra at 469. Disclosure of a fact "is not required…merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." In re Time Warner Secs. Litig., 9 F.3d 259, 267 (2d Cir. 1993) (citing Basic, Inc., supra.; Glazer, supra.).

The centerpiece of Plaintiffs' position is the Hindenburg Report's amplification of *uncharged* criminal allegations relating to Mr. Jie's business ventures in China. Plaintiffs further allege that the unverified and uncharged criminal activity from China should have been reported on Singularity's Form 8-K. However, these arguments fail for several reasons: (i) there was no statutory, contractual, or common law duty to disclose; (ii) Plaintiffs have failed to plead a duty to disclose the uncharged criminal conduct; (iii) the facts relating to the uncharged criminal conduct were in the public domain; and (iv) even if there were a duty to disclose, the Complaint fails for not pleading essential facts.

It is settled law that there is generally no duty to disclose publicly available information. In fact, "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain, the Second Circuit has found that a defendant may not be held liable for failing to disclose this information." In re Keyspan Secs. Litig., 383 F. Supp. 3d 358, 377 (E.D.N.Y. 2003) (citing Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978)).

Here, Plaintiffs argue that the information regarding Mr. Jie was not publicly available because the Chinese language documents could not be utilized to place the world on notice.

In support of this argument, Plaintiffs point to three cases that undermine their position.

4

24540496v.5

First, under <u>Lipow v. Net1 UEPS Techs., Inc.</u>, 131 F.Supp.3d 144, 168-69, a party is relieved of a duty to disclose information "where [the information] is equally available" to both parties.  Next, Plaintiffs cite <u>Miller v. Thane Int'l</u>, 519 F.3d 879, 887 (9th Cir. 2008), which concerned previous drafts of SEC filing – clearly not at issue here. Plaintiffs also cite <u>Kronenfeld v. Transworld Airlines, Inc.</u>, 832 F.2d 726 (2d Cir. 1987), a 1987 case which debated whether an SEC filing would place the public on notice of information in the market.  Plaintiffs present a narrow interpretation of <u>In re Keyspan Secs. Litig.</u>, <u>supra.</u> to suggest that English language electronic court filings cannot be considered publicly available information.  However, other courts have not viewed <u>Keyspan</u> in such a dogmatic manner.  See, e.g., <u>Lau v. Opera, Ltd.</u>, 527 F. Supp.2d 537 (S.D.N.Y. 2021); <u>In re Bank of America AIG Discl. Secs. Litig.</u>, 80 F. Supp.2d 564 (S.D.N.Y. 2013).  To the contrary, publicly available court documents constitute publicly available information and thus, there was no duty to disclose documents already in the public domain.

**C.      There was No Duty to Disclose Jie's Alleged Uncharged Criminal Conduct**

"[T]he securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct."  <u>In re ITT Educ. Servs, Inc.</u>, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (quoting <u>In re Marsh & Mclennan, Inc.</u>, <u>supra.</u> at 469). Pointedly, to allege that a defendant's unlawful conduct supports a claim that a statement is false or misleading, a plaintiff must plead facts to demonstrate that the predicate conduct is, in fact, unlawful:

> Additionally, where plaintiffs allege that a defendant's unlawful conduct renders a statement false or misleading, they must plead facts supporting the conclusion that the conduct, in fact, was unlawful. See, <u>Das</u>, 332 F. Supp.3d at 803 (holding that where "securities fraud claims are based on failure to disclose uncharged illegal conduct, 'the complaint must state a plausible claim that the underlying conduct occurred.' ") (quoting <u>Menaldi v. Och-Ziff Capital Mgmt. Group LLC</u>, 164 F. Supp.3d 568, 578 (S.D.N.Y. 2016)); <u>In re Axis Capital Holdings, Ltd. Sec. Litig.</u>, 456 F. Supp.2d 576, 585 (S.D.N.Y. 2006) (holding that, in such cases, "[i]f the

5

> complaint fails to allege facts[,] which would establish such an illegal scheme, then the securities law claims premised on the nondisclosure of the alleged scheme are fatally flawed.") (emphasis omitted); In re FBR Inc. Sec. Litig., 544 F. Supp.2d 346, 354 (S.D.N.Y. 2008) ("[I]n order to state a claim that defendants violated the securities laws because they failed to disclose the insider trading scheme, plaintiffs must plead the alleged trading scheme with particularity.").

Mucha v. Volkswagen Aktiengellschaft, 540 F. Supp.3d 269, 293 (E.D.N.Y. 2021).

Here, as the complaint reflects, Plaintiffs have failed to "state a plausible claim that the underlying conduct occurred." Mucha, supra. (quoting Menaldi, 164 F. Supp. 3d at 578). Plaintiffs "have not identified any specific laws Defendants violated or explained how [Defendants'] conduct ran afoul of those laws." Mucha, supra.

Plaintiffs recognize the fatal defect in their claims: "the SAC [does not] allege[] that Defendants were obligat[ed] to disclose Jie's violation of any particular criminal law." (Pb19). Plaintiffs assert no facts, under Mucha, to support their thesis that uncharged criminal violations can support a securities litigation. Furthermore, they provide no rebuttal to excuse their duty to independently investigate. See, infra. Instead, they reference numerous unauthenticated[2] documents and documents gathered from links within the short-seller reports, including documents related to alleged red-notices. Putting aside the propriety of this exercise, these documents, including the alleged statement that allegedly originated with the Economic Crime Investigation Squad, appear to originate from a Chinese media website. The authenticity of these documents are in dispute, therefore they may not be considered. UPS Store, Inc. v. Hagan, 99 F. Supp. 3d 427, 434-35 (S.D.N.Y. 2015) (a challenge to authenticity prevents a court from considering documents attached to or detailed in a Complaint).

---

[2] Mr. Jie and Ms. Huang are, first and foremost, challenging the authenticity of the uncertified Chinese language documents that Plaintiffs purportedly assert and rely upon in their complaint.

6

**D.**     **Plaintiffs Have Not Pled Facts to Trigger A Duty to Disclose Other Allegations of Criminality**

In addition to the Chinese documents, Plaintiffs rely upon documents or complaints containing unproven allegations from other litigations. Critically, Plaintiffs have failed to present any facts other than those drawn from pleadings containing unproven allegations, which "do not, on their own, constitute factual allegations to survive a motion to dismiss." Zhou v. NextCure, Inc., NO. 20-CV-07772, 2023 WL 4493541 at *11 (S.D.N.Y. 2023) (citing In re CRM Holdings, Ltd. Sec. Litig., No. 10-CV-975, 2012 WL 1646888 at *26 (S.D.N.Y. 2012). "Second Circuit Case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have…not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d. 382, 403 (S.D.N.Y. 2009) (citing Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894-94 (2d Cir. 1976).

Plaintiffs, opposing this branch of the motion to dismiss related to allegations underlying the private investor actions, Thor Miner actions, and references to other unadjudicated litigation, exclusively cites cases where the allegations in each case were drawn from SEC or government complaints that were the produce of extensive SEC or governmental investigations. E.g., Major Energy Elec. Servs. LLC v. Horowitz, 2020 WL 4432121 (S.D.N.Y. 2020). Here, by contrast, Plaintiffs seek utilize unproven allegations from private investor actions - - a practice that is prohibited by the case law recited by Lipsky, supra. and repeated in recent cases, e.g., RSM Prod. Corp., supra.

Lastly,, Defendants rely  and rest upon those portions of their moving submission that relate to: (i) the safe harbor provisions of the PSLRA; (ii) Loss Causation; and (iii) Plaintiffs' failure to adequately plead scienter.

7

24540496v.5

II.    **PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON REPORTS OF SHORT SELLERS WITH A BASIS ON INADMISSIBLE FACTS**

A.    **The Hindenburg Short Seller Report was Based Solely on Unverified Information and Not Sufficient to Premise A Cause of Action.**

As identified by the Plaintiffs in their motion papers, Plaintiffs rely on the Hindenburg and Peabody reports. As a primary matter, Defendants are contesting the Operative Complaint's reliance on both reports.

In Bartesch v. Cook, 941 F. Supp.2d 501 (D. Del. 2013), a news article, like the Hindenburg Report, was written by an executive at a company in active litigation with the defendant and subject of the 10b-5 suit involved in a lawsuit over the subject matter of the article. The Court noted the article author's potential bias as disclosed by the Plaintiffs and noted "[t]his concession might suggest that the author has an incentive to disparage [the company] and, at least, suggests that the author does not have inside or personal knowledge of [the company's] business strategy." The court concluded the article was "not sufficiently 'reliable' to meet the pleading requirements of the PSLRA." Id. (internal citations omitted).  See also, Harris v. AmTrust Fin Servs., Inc., 135 F. Supp.3d 155 (S.D.N.Y. 2015).

Short sellers "can perform a useful function by bringing information that securities are overvalued to the market[,]…they have an obvious motive to exaggerate the infirmities of the securities in which they speculate." Long Miao v. Fanhua, Inc., 442 F. Supp.3d 774, 801 (S.D.N.Y. 2020) (quoting Longtop, supra.).  Of course, when a Plaintiff relies on a short seller report, the short seller report itself must be analyzed to ascertain if the details within the short-seller report would sustain a cause of action. See, e.g. Id.

8

Here, the Hindenburg report (which the plaintiffs apparently rely on to confirm facts) alleges: "[a] Hindenburg representative called Chinese authorities and spoke with a person involved in the investigation, who told us that an arrest warrant had been issued."

Of course, this statement alone is not sufficient to meet a threshold burden of a sufficient confidential witness statement. See, e.g., Long Miao, supra., requiring: 1) independent well-pled allegations corroborating the confidential witness statement, 2) a description of the confidential witness's position and responsibility, 3) timeliness of the statement, and 4) sufficient particularity.

Furthermore, the footage that is linked in the Hindenburg report is not linked to an original media source. Instead, the links related to media reports lead to Hindenburg Research's YouTube Channel.  Furthermore, those documents claiming that red notices were issued were linked to one Chinese language media outlet www.jpm.cn.  This hardly constitutes the type of reliable information that arises out of an investigation that the Plaintiffs advocate the Hindenburg and Peabody Reports allege.  Therefore, the short-seller reports are completely insufficient.  As to the remaining allegations, no independent investigation was done.

### III.   THE ALLEGATIONS FOR LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT ARE ALSO INSUFFICIENT BECAUSE THERE IS NO UNDERLYING ADEQUATELY PLED VIOLATION OF § 10 OR RULE 10b-5.

Here, Plaintiffs have not exhibited any underlying violations under Section 10(b) or Rule 10b-5.  Therefore, "[i]n the absence of a primary violation of Section 10(b) or Rule 10b-5, plaintiffs cannot state a claim for controlling person liability under Section 20(a) of the Exchange Act." In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 389 (E.D.N.Y. 2003).

9

## CONCLUSION

For the reasons stated herein, Defendant Yang Jie respectfully requests that this Court grant

the instant motion in its entirety and dismiss all claims asserted against Mr. Jie with prejudice.


New York, New York
Dated: January 26, 2024

**BECKER**

By:    */s/ James J. Mahon*
James J. Mahon, Esq. (JM5405)

*/s/ Adam K. Gallagher*
Adam K. Gallagher, Esq. (AG9289)
45 Broadway, 17th Floor
New York, New York 10006
Phone: 212-599-3322
Fax:    212-557-0295
jmahon@beckerlawyers.com
agallagher@beckerlawyers.com

*Attorneys for Defendants*
Yang Jie and Xiaohuan Huang


10