**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEN GAO, CONGLI HUO, RUIBIN WANG, LUXIAO XU, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIAOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., and GOLDEN MAINLAND, INC.,<br><br>Defendants. | Case No: 22-cv-07499-BMC |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
SINGULARITY FUTURE TECHNOLOGY, LTD.'S AND ZHIKANG HUANG'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

11260598.14

**TABLE OF CONTENTS**

**Page(s)**

ARGUMENT ...................................................................................................................... 1

POINT I - PLAINTIFFS' FAILURE TO DISAGGREGATE MARKET-WIDE
PHENOMENA AND INTERVENING CAUSES DOOMS THEIR CLAIMS ................ 1

POINT II - THE CORRECTIVE DISCLOSURE THEORY ALSO FAILS BECAUSE (1)
THE INFORMATION DISCLOSED WAS ALREADY PUBLIC AND (2)
MUCH OF THE STOCK PRICE DROP IS UNCONNECTED TO THE
ALLEGED DISCLOSURES .......................................................................... 5

POINT III - PLAINTIFFS RELY ON GROUP PLEADING AND CONCLUSORY
ALLEGATIONS FOR ZHIKANG'S LIABILITY UNDER SECTIONS 10(B)
AND 20(A) ............................................................................................ 8

CONCLUSION ................................................................................................................ 10

11260598.14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*60223 Trust v. Goldman Sachs & Co.*,
    540 F.Supp.2d 449 (S.D.N.Y. 2007)..................................................................................3, 5

*In re Arcimoto Inc.*,
    2022 WL 17851834 (E.D.N.Y. Dec. 22, 2022) .......................................................................5

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F.Supp.3d 600 (S.D.N.Y. 2017)........................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................8

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
    543 Fed. Appx. 72 (2d Cir. 2013).......................................................................................3, 5

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) .........................................................................6

*In re China Organic Sec. Litig.*,
    2013 WL 5434637 (S.D.N.Y. Sept. 30, 2013)..........................................................................6

*City of Pontiac Gen. Empls' Ret. Sys. v. Lockheed Martin Corp.*,
    875 F.Supp.2d 359 (S.D.N.Y. 2012)......................................................................................10

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    928 F.Supp.2d 705 (S.D.N.Y. 2013)........................................................................................2

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................................1, 8

*Ganino v. Citizens Util Co.*,
    228 F.3d 154 (2d Cir. 2000)......................................................................................................6

*George v. China Auto. Sys., Inc.*,
    2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) ......................................................................4, 7

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..............................................................................................................8, 9

*King County, Wash. v. IKB Deutsche Industriebank AG*,
    708 F.Supp.2d 334 (S.D.N.Y. 2010).....................................................................................3, 4

ii

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005)..................................................................... *passim*

*Levy v. Maggiore*,
   48 F.Supp.3d 428 (E.D.N.Y. 2014) ........................................................10

*In re Manulife Financial Corp. Sec. Litig.*,
   276 F.R.D. 87 (S.D.N.Y. 2011) ..............................................................7

*In re Omnicom Group, Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010).....................................................................5

*Orlan v. Spongetech Delivery Sys., Inc. Sec. Litig.*,
   2012 WL 1067975 (E.D.N.Y. Mar. 29, 2012) .........................................9

*Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ..................................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2019 WL 30001084 (S.D.N.Y. July 10, 2019) .......................................7

*Stratte-McClure v. Morgan Stanley*,
   598 Fed. Appx. 25 (2d Cir. 2015)........................................................2, 5

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).........................................9

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   195 F.Supp.3d 528 (S.D.N.Y. 2016)........................................................9

*Xu v. Gridsum Holding, Inc.*,
   624 F.Supp.3d 352 (S.D.N.Y. 2022)........................................................9

iii

Plaintiffs obtained leave to file a 60-page omnibus opposition ("Pl. Br."),[1] but spend virtually none of it dealing with Singularity's case-dispositive loss causation arguments. Nor do they seriously deal with Zhikang's arguments as to his individual liability. Instead, Plaintiffs spend the bulk of their brief knocking down straw-man arguments directed at other elements of securities fraud argued by the co-defendants. Those arguments are addressed in those co-defendants' replies, which Singularity incorporates by reference. But to plead securities fraud, Plaintiffs must allege *each* of the elements of the claim, including loss causation, with the particularity required by the PSLRA and controlling case law. Thus, even if Plaintiffs were successful in overcoming those co-defendants' arguments, their failure to deal with Singularity's loss causation arguments would still be fatal. For those reasons, the SAC must be dismissed.

## ARGUMENT

### POINT I
### PLAINTIFFS' FAILURE TO DISAGGREGATE MARKET-WIDE PHENOMENA AND INTERVENING CAUSES DOOMS THEIR CLAIMS

Plaintiffs' failure to acknowledge, let alone disaggregate, the "marketwide phenomenon," to which Singularity's stock correlated during the Class Period, is fatal to their claims. Singularity Br. 8-18. Nevertheless, Plaintiffs treat loss-causation as an afterthought, devoting six pages of their 60-page brief to it, while failing to address Singularity's argument head-on. *See* Pl. Br. at 52-58. Plaintiffs' choice to *ignore* market-wide forces and intervening causes is a concession that they failed to plead a necessary element of securities fraud. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) (plaintiffs must account for "the tangle of factors affecting price" because stock price drops also reflect market-wide, industry-wide, "or other events"); *Lentell v.*

---

[1] All terms and definitions from Singularity's and Zhikang's initial memorandum of law in support of their motion to dismiss are incorporated by reference ("Singularity Br.", ECF #62-5).

*Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005) (same).

Plaintiffs were put on notice of this issue before they amended the complaint, and their attempt to minimize their burden to do so at the pleading stage is unavailing. *See* Pl. Br. at 52. While "[l]oss causation is a fact-based inquiry," the Second Circuit is clear that it must still be *pleaded* as "affected by circumstances" in the case. *Lentell*, 396 F.3d at 174. And "'when the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors,'" the plaintiff must "'adequately ple[a]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Id.* (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)). Here, Singularity's stock volatility, including drops in price, coincided with the rise and fall of both the crypto market and crypto mining companies generally, and were frequently unconnected to the events complained of in the SAC. *See* Singularity Br. at 10-17. As one court observed, a complaint is "remarkably misleading" when pleading loss causation by noting a stock price drop without the coinciding market-wide event and omitting that "[t]he entire market dropped precipitously" thereafter. *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F.Supp.2d 705, 714-15 (S.D.N.Y. 2013) (noting that under those circumstances, "plaintiff was obliged to allege factual matter sufficient to" disaggregate any losses caused by the market-wide event). Such misleading pleading warranted dismissal in the *City of Westland* case, and the same result is warranted here.

Plaintiffs also failed to plausibly plead loss causation because they "fail[ed] . . . to account for the price-volatility risk" in Singularity's stock. *See Lentell*, 396 F.3d at 176. That includes a coinciding "marketwide phenomenon," *id.* at 174, and other intervening causes coinciding with declines in stock price. *See Stratte-McClure v. Morgan Stanley*, 598 Fed. Appx. 25, 29 (2d Cir. 2015) (loss causation inadequately pled when plaintiffs failed to allege that a "drop in stock price

2

was not caused by the intervening market deterioration throughout the financial services industry"); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 Fed. Appx. 72, 76 (2d Cir. 2013) (loss causation inadequately pled when plaintiffs failed to disaggregate known risks of defendant's insolvency); *60223 Trust v. Goldman Sachs & Co.*, 540 F.Supp.2d 449, 461 (S.D.N.Y. 2007) (loss causation inadequately pled when complaint did "not even refer to the phenomenon of the gradual loss of the stock's value, much less attempt to explain it as related to loss causation").

And there is a world of difference between requiring Plaintiffs to eliminate all intervening causes (Pl. Br. at 54-56), and the SAC recognizing (and dealing with) market-wide phenomena and known risks (Singularity Br. at 10-18).  It is not enough for Plaintiff to argue (without support in the SAC) that their losses are "at least in part" due to the alleged conduct.  Pl. Br. at 54.  That is exactly the problem: because the SAC *doesn't* attempt to account for market-wide phenomena and intervening causes, it *doesn't* allege that at least some of the losses are due to the alleged conduct.

Plaintiffs are simply wrong in arguing that "the existence of other market-wide stock price declines is irrelevant to the analysis of whether the revelation of Defendants' misstatements caused the specific declines alleged by Plaintiffs."  Pl. Br. at 54.  The Second Circuit was clear that "a plaintiff's claim fails when it has not adequately pled facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events." *Lentell*, 396 F.3d at 174 (internal quotations and alterations omitted).  Plaintiffs cannot side-step this by cherry-picking language from *King County, Wash. v. IKB Deutsche Industriebank AG*, 708 F.Supp.2d 334, 343 (S.D.N.Y. 2010), which merely stands for the proposition that a market-wide phenomenon does not necessarily "eliminate" a connection between another cause and the loss. While it is true that a plaintiff need not plead "that *no other possible* event could have caused

3

11260598.14

plaintiffs' losses," *id*. at 343, it must still account for coinciding market-wide phenomena, which could potentially "break the chain of causation." *Id.* at 343 n.64. *King County*, a trial-court decision, does not stand for the proposition that Plaintiffs can ignore other causes and survive the pleading stage under *Lentell*.

Plaintiffs' other case, *George v. China Auto. Sys., Inc.*, actually *supports* Defendants' argument because it noted that "[c]ourts granting motions to dismiss based upon the plaintiff's failure to plead loss causation due to a coinciding 'marketwide phenomenon,' did so *when the stock of the defendant-company was 'clearly linked' to a large-scale market event.*" 2012 WL 3205062, *12 (S.D.N.Y. Aug. 8, 2012) (quoting *Kuriakose v. Fed. Home Loan Mortg. Corp.,* 2011 WL 1158028, *13-14 (S.D.N.Y. Mar. 30, 2011)) (emphasis added). Here, Singularity's stock was clearly linked to the 2022 crypto market crash. And, unlike the factual scenario in *George*, the downward trend in Singularity's stock price *preceded* any alleged corrective disclosures. *Id.* at *11.

Finally, Plaintiffs try to dodge the disaggregation requirement by framing *Lentell* as only requiring plaintiffs to account for intervening causes when they fail to plead a corrective disclosure theory of loss causation. *See* Pl. Br. at 55-56 (citing *Lentell*, 396 F.3d at 174-75). But the Second Circuit did not limit *Lentell* in such a way. Plaintiffs misleadingly argue that "the Second Circuit found it 'fatal' that the plaintiffs made 'no allegation that the market reacted negatively to a corrective disclosure.'" Pl. Br. at 55 (quoting *Lentell*, 396 F.3d at 175). But the language in *Lentell* regarding the "fatal" defects in the complaint comes at the end of a paragraph where the Second Circuit also stated that "[t]o plead loss causation, the complaints must allege facts that . . . plaintiffs would have been spared all or *an ascertainable portion of that loss* absent the fraud," and that the plaintiffs did not allege that the company "misstated or omitted risks that did lead to the loss." *Lentell*, 396 F.3d at 175. Thus, the disaggregation mandate is not linked to either loss causation

4

theory. And this makes sense since disaggregation deals with intervening causes, which analytically come only *after* an initial casual connection is established between a statement and a loss. To plausibly plead loss causation, Plaintiffs must account for those intervening or coinciding causes. *Lentell*, 396 F.3d at 174; *see also Stratte-McClure*, 598 Fed. Appx. at 29; *Cent. States*, 543 Fed. Appx. at 76; *60223 Trust*, 540 F.Supp.2d at 461. Plaintiffs do not, and therefore the SAC should be dismissed.

**POINT II**
**THE CORRECTIVE DISCLOSURE THEORY ALSO FAILS BECAUSE (1) THE INFORMATION DISCLOSED WAS ALREADY PUBLIC AND (2) MUCH OF THE STOCK PRICE DROP IS UNCONNECTED TO THE ALLEGED DISCLOSURES**

Even accepting Plaintiffs' flawed theory that they could avoid addressing other intervening causes because they have relied on a corrective disclosure theory, the SAC must still be dismissed because Plaintiffs fail to plausibly plead it. First, the alleged corrective disclosures merely put a negative spin on already-public information. *See In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.").[2] Second, the Class Period spans from February 2, 2021 to February 24, 2023, but the alleged corrective disclosures occurred between May 2022 and November 2022.[3] Plaintiffs make no attempt to explain how they pleaded loss causation for any losses caused by stock price decreases unconnected to the handful of alleged corrective disclosures. *See* Pl. Br. at 52-58. Corrective disclosures must reveal previously undisclosed information and, if they are the sole basis for loss causation, they must explain every alleged stock drop that forms the basis for economic loss. *See*

---

[2] Plaintiffs attempt to limit *Omnicom* to summary judgment motions, *see* Pl. Br. at 58, but courts have relied on it at the motion to dismiss stage. *See, e.g., In re Arcimoto Inc.*, 2022 WL 17851834, at *6-7 (E.D.N.Y. Dec. 22, 2022) (dismissing claim that was "on all fours with *Omnicom*").

[3] This creates a separate reliance issue for those proposed class members who purchased after the reports came out.

5

*In re China Organic Sec. Litig.*, 2013 WL 5434637, *7 (S.D.N.Y. Sept. 30, 2013) (plaintiff must connect his losses to the fall of a stock price that occurred after corrective information is revealed).

Plaintiffs mischaracterize Singularity's argument, that the information disclosed was already public, as a "truth-on-the-market" defense, and argue that it is too fact-intensive to be decided at the pleading stage. *See* Pl. Br. at 56-57. But these are two different arguments—a truth-on-the-market defense concerns whether a court should disregard an affirmative misrepresentation because the contrary information was already known. *See Ganino v. Citizens Util Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("A defendant may rebut the presumption that *its misrepresentations* have affected the market price of the stock by showing that the truth of the matter was already known"). That is not Singularity's argument. Rather, Singularity has argued that the information contained *in the alleged corrective disclosures* was already public, and thus the alleged corrective disclosures were not in fact corrective disclosures. *See* Singularity Br. at 18-22.

In attempting to rebut that the alleged corrective disclosures did not in fact disclose anything, Plaintiffs argue that Chinese-language sources are insufficient to be considered publicly available information. *See* Pl. Br. at 57. This is a puzzling argument. Singularity is a Chinese company, and the relevant investors are Chinese. For example, the Lead Plaintiffs each signed certifications from China and can reasonably be expected to understand information conveyed in Chinese new reports and from the Chinese government. *See* ECF No. 12-1 at 2, 4, 7, 9.

Plaintiffs attempt to overcome the weakness of their pleading by arguing that the short seller reports are a "third party's analysis of a company's already-public . . . information" which can "contribute new information to the marketplace." Pl. Br. at 57-58 (quoting *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, *7 (S.D.N.Y. Mar. 23, 2020)). This is a narrow exception, and the information in this case was not the same type of information discussed

11260598.14

in *Chicago Bridge*. 2020 WL 1329354 at *7 (third party analysis qualified as a corrective disclosure when the already-public information was "complex economic data understandable only through expert analysis [that] may not be readily digestible by the marketplace" (quoting *Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014))).[4] Plaintiffs do not allege that the short-seller reports in this case deciphered complicated financials or raw data.

Plaintiffs have also failed to adequately plead a corrective disclosure theory because the SAC fails to connect much of the drop in Singularity's stock price during the Class Period to the alleged corrective disclosures, leaving many of the time periods where the stock price fell as "unexplained gaps." *See In re Manulife Financial Corp. Sec. Litig.*, 276 F.R.D. 87, 103-04 (S.D.N.Y. 2011) (dismissing a complaint for failure to plead loss causation when the plaintiffs failed to tie a corrective disclosure to various periods of stock price drops during the class period). Most significantly, Plaintiffs offer no plausible explanation for Singularity's stock price dropping 65%, or $13.03 per share, in the weeks *before* the first alleged corrective disclosures in the Hindenburg and Peabody reports. *See also George*, 2012 WL 3205062, at *12 (noting that a defendant's "cherrypicking" argument can lead to dismissal on loss causation grounds when plaintiffs "failed to tie certain of the alleged corrective disclosures to drops in stock price . . . as well as left 'wide periods unaccounted for'") (quoting *In re Security Capital Assurance, Ltd.*, 729 F.Supp.2d 569, 802 (S.D.N.Y. 2010)).[5] Nor do they explain why subsequent drops are

---

[4] *See also Pub. Emples. Ret. Sys. of Miss.*, 769 F.3d at 323 (news article analyzed publicly available Medicare records in order to have been deemed to inject new information into the marketplace); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 30001084, *17 (S.D.N.Y. July 10, 2019) (third party analyzed the defendant's underlying business based on raw data of "increasing bankruptcy figures for [defendant's] borrowers").

[5] At the same time Plaintiffs fail to connect the 65% stock price drop to any corrective disclosure, Plaintiffs focus on one example where Defendants noted that Singularity's stock price increased following the short seller reports. *See* Singularity Br. at 13-15. Rather than, as Plaintiffs interpret, serve as an argument that a stock price increase following an alleged corrective disclosure is relevant to the loss causation analysis from one disclosure, *see* Pl. Br. at 55, the information about Singularity's stock price increasing after the alleged corrective disclosures was included to demonstrate that the stock price was volatile and correlated with a volatile crypto market.

11260598.14

unconnected to that earlier trend (as opposed to the subsequent alleged corrective disclosure).

Additionally, Plaintiffs cite to Singularity stock price increases early in the Class Period but ignore significant price drops. *See* Singularity Br. at 12 (noting the SAC indicates share price increases in the beginning of the Class Period to $8.57 and highlighting that the SAC is devoid of an explanation for the subsequent price drop over the next six months to $2.50). Stock price inflation alone, without noting a link to a price decrease caused by some materialization of risk or corrective disclosure, can't satisfy loss causation. *See Dura Pharms.*, 544 U.S. at 346-47.

At the back end of the Class Period, Plaintiffs discuss only five dates linked to corrective disclosures, with the last one being on November 17, 2022. Pl. Br. at 52; SAC ¶ 294. As a result, Plaintiffs *make no attempt* to plead loss causation for any alleged class member who purchased Singularity stock after the alleged corrective disclosures. And Plaintiffs simply ignore the unexplained gaps during which the stock price declined. Accordingly, even if Plaintiffs could avoid disaggregating intervening causes under a corrective disclosure theory, the SAC would still need to be dismissed because Plaintiffs have failed to allege such a theory.

### POINT III
### PLAINTIFFS RELY ON GROUP PLEADING AND CONCLUSORY ALLEGATIONS FOR ZHIKANG'S LIABILITY UNDER SECTIONS 10(B) AND 20(A)

The SAC impermissibly relies on group pleading for alleging Zhikang both (1) made any statements, and (2) acted with scienter. First, despite Plaintiffs' claims that the group pleading doctrine is permissible, more recent case law holds that group pleading did not survive *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Additionally, conclusory allegations cannot support attributing statements or control person liability. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaints cannot rely only on "labels and conclusions").

11260598.14

Group pleading is *not* "alive and well," as Plaintiffs claim. Pl Br. at 30-31 (citing *City of Pontiac Gen. Empls' Ret. Sys. v. Lockheed Martin Corp.,* 875 F.Supp.2d 359, 374 (S.D.N.Y. 2012); *In re Barrick Gold Sec. Litig.*, 2015 WL 3486045, *2 (S.D.N.Y. June 2, 2015)). Later cases find that *Janus* effectively ended group pleading in the statement attribution context. *See Xu v. Gridsum Holding, Inc.*, 624 F.Supp.3d 352, 364-65 (S.D.N.Y. 2022) (finding after *Janus* "group-pleading doctrine is no longer viable"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F.Supp.3d 600, 641 (S.D.N.Y. 2017) (finding that "the group-pleading/group-published documents doctrine is insufficient to meet the requirements of *Janus*, and is thus no longer viable"); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, *10 (S.D.N.Y. Sept. 28, 2012) (finding "a theory of liability premised on treating corporate insiders as a group cannot survive a plain reading of the *Janus* decision").

Group pleading has been prohibited as the basis for alleging scienter against an individual defendant for even longer. *See* Singularity Br. at 24-25; *see also Orlan v. Spongetech Delivery Sys., Inc. Sec. Litig.*, 2012 WL 1067975, *11 (E.D.N.Y. Mar. 29, 2012) ("It is well-settled that: [t]he group pleading doctrine has no effect on the PSLRA's scienter requirement. . . . It does not permit plaintiffs to presume the state of mind of those defendants [in the group] at the time the alleged misstatements were made.").[6] Plaintiffs offer no argument to the contrary and do not even attempt to argue that they plausibly pled that Zhikang individually acted with scienter. Tellingly, the *entire* section of Plaintiffs' brief addressing individual scienter *does not mention* Zhikang once—just as the SAC names Zhikang sparsely. *See* Pl. Br. at 37-51. This is plainly deficient.

Plaintiffs only address whether any statements can be attributed to Zhikang. *See* Pl. Br. at 30-32, 60. The only statement that is alleged to be attributable to him directly is one SEC filing

---

[6] For the same reason the section 20(a) claims are deficient: the "culpable participant" element is akin to scienter in the section 10(b) context. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F.Supp.3d 528, 542 (S.D.N.Y. 2016).

9

covering only four months of the Class Period—which Zhikang signed with other Individual Defendants. But that filing *disclosed* internal controls deficiencies. The SAC does not allege any other aspect of that filing as a material misstatement. *See* SAC ¶¶ 204-05. Simply put, no *material misstatement* is alleged specifically to be attributed to Zhikang.

Even taking Plaintiffs' group pleading argument at its face does not save the SAC. It consists of conclusory allegations about Zhikang's role as a control person involved in the everyday business, relying solely on his titles and generic statements of his responsibilities at Singularity. *See* SAC ¶¶ 29, 37. Plaintiffs' own cases make clear this is insufficient. *See City of Pontiac*, 875 F.Supp.2d at 374 (noting that "conclusory pleading that each defendant had 'ultimate authority' over the statements" would be insufficient); *Levy v. Maggiore*, 48 F.Supp.3d 428, 451 (E.D.N.Y. 2014) (plaintiffs cannot "rely solely on [an individual defendant's] title" without "directly alleg[ing] or provid[ing] facts supporting the finding that" the title is high-level). Thus, in addition to failing to adequately plead scienter for Zhikang, Plaintiffs also fail to attribute any misstatements to him or allege he was a control person. For those reasons, the claims against Zhikang should be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the concurrent motions to dismiss of Defendants Yang Jie, Xiaohuan Huang, and Lei Cao, the SAC should be dismissed, with prejudice.

10

11260598.14

Dated:  January 26, 2024
      New York, New York

           CARTER LEDYARD & MILBURN LLP

           */s/ Alexander G. Malyshev*
           Alexander G. Malyshev
           Madelyn K. White
           28 Liberty Street, 41st Floor
           New York, NY 10005
           Tel: (212) 238-8618
           Email: malyshev@clm.com
                     white@clm.com

           *Counsel for Defendants Singularity Future*
           *Technology Ltd. and Zhikang Huang*

11

11260598.14