**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SEN GAO, CONGLI HUO, RUBIN WANG, LUXIAO XU, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIAOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., and GOLDEN MAINLAND, INC,<br><br>       Defendants. | Case No: 22-cv-07499-BMC |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT LEI CAO'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

LIVE 13162145v.2

# TABLE OF CONTENTS

**I.      PLAINTIFF CANNOT ALLEGE ANY MATERIAL MISSTATEMENTS SUFFICIENT TO SATISFY A CLAIM FOR SECURITIES FRAUD.** .................................. 1

    **a.  Plaintiffs' Conclusory Allegations about Private Offerings Do Not Demonstrate that Any Such Statements Were Materially Misleading.** ....................................................... 2

    **b.  Plaintiffs Fail to Identify Any Materially Omitted Information Related to Singularity's Internal Controls.** .................................................................................. 3

    **c.  The Statements Related to Singularity's Cryptocurrency Initiative and Mainland JV Are Not Actionable Against Mr. Cao.** ...................................................................... 5

**II.     PLAINTIFFS HAVE NOT SHOWN SCIENTER.** ....................................................... 8

**CONCLUSION** ............................................................................................................................ 10

ii

LIVE 13162145v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................................3, 9

*Caiola v. Citibank, N.A., N.Y.*,
   295 F.3d 312 (2d Cir. 2002)......................................................................................................5

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012).......................................................................................................7

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010).......................................................................................9

*Kusnier v. Virgin Galactic Holdings, Inc.*,
   639 F. Supp. 3d 350 (E.D.N.Y. 2022) ...................................................................................5, 7

*Levitt v. J.P. Morgan Sec., Inc.*,
   710 F.3d 454 (2d Cir. 2013)......................................................................................................3

*Liberty Ridge LLC v. RealTech Sys. Corp.*,
   173 F. Supp. 2d 129 (S.D.N.Y. 2001).......................................................................................3

*Lipow v. Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015).....................................................................................10

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015) ...........................2

*Maverick Fund, L.D.C. v. Converse Tech., Inc.*,
   801 F.Supp.2d 41 (E.D.N.Y. 2011) ..........................................................................................5

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013)......................................................................................8

*Moshell v. Sasol Ltd.*,
   481 F. Supp. 3d 280 (S.D.N.Y. 2020).......................................................................................9

*P. Stolz Fam. P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004)........................................................................................................8

*In re Sanofi Securities Litig.*,
   155 F. Supp.3d 386 (S.D.N.Y. 2016)........................................................................................9

LIVE 13162145v.2

*Thesling v. Bioenvision, Inc.*,
    374 Fed.Appx. 141 (2d Cir.2010) ..................................................................................4

**Statutes**

15 U.S.C. § 78u-5(i)(1) ..................................................................................................7

15 U.S.C. § 78u-5(c)(1) .................................................................................................5

PSLRA ........................................................................................................................3, 9

iv

## ARGUMENTS

Plaintiffs' Motion should be dismissed because they have failed to plead any of the necessary elements of securities violations.  As addressed in Defendant Lei Cao's Motion to Dismiss, as well as the respective motions of the co-Defendants (which are incorporated herein by reference), Plaintiffs have not established scienter, omissions or misstatements, or loss causation. Nor has their counsel demonstrated that they performed an independent investigation necessary to maintain their claims.

Plaintiffs' Opposition does nothing to address these deficiencies.  Instead, Plaintiffs rely on their conclusory allegations contained in the Second Amended Complaint.  Most notably by repeating *ad nauseum* that Singularity's transition into the cryptocurrency industry was a "sham." The SAC is devoid of any allegations supporting this assertion.

As to Defendant Lei Cao specifically, to the extent the SAC alleges misconduct by Singularity and the Individual Defendants after November 1, 2021, those allegations cannot relate to Mr. Cao because they would have occurred after he resigned as CEO of Singularity. The SAC does not (and cannot) allege that Mr. Cao had any role in the alleged misrepresentations and omission with regard to such events.

Because Plaintiffs have failed to plead any of the elements to sustain causes of action for violations of Section 10(b) or Rule 10b-5, the Second Amended Complaint should be dismissed with prejudice.

### I.    PLAINTIFF CANNOT ALLEGE ANY MATERIAL MISSTATEMENTS SUFFICIENT TO SATISFY A CLAIM FOR SECURITIES FRAUD.

Plaintiffs' Opposition identifies three categories of statements related to Singularity's private offerings and internal controls which they argue evidence material misstatements by Mr. Cao.  *See* Pls' Opp., II.B.1-3.  However, Plaintiffs fail to explain why these statements are

actionable. Plaintiffs' arguments largely fall into the same tired routine of concluding any statement was misleading because Singularity's cryptocurrency business was a "sham." *See, e.g.*, Pl's Opp., p. 23, 26, 29. Thus, Plaintiffs argue, any statement related to Singularity's transition must have been a misstatement. The SAC is riddled with these conclusory allegations which are insufficient to satisfy the pleading requirements.

The first element of a securities fraud claim requires either a material misstatement or material omission. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015). To meet the definition of a material misstatement, the statement must be "false at the time it was made." *Id*. (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812–13 (2d Cir.1996). It is not enough if the statement was "believed [by the party making it] to be true at the time when made, but later shown by to false." *See Lululemon*, 14 F. Supp. 3d at 571.

### a. Plaintiffs' Conclusory Allegations about Private Offerings Do Not Demonstrate that Any Such Statements Were Materially Misleading.

Plaintiffs' take issue with Mr. Cao's statements that Singularity had entered into a securities sales agreements with investors to sell unregistered shares (*see* SAC ¶¶ 104, 106) and that it sought to sell "any combination of debt securities, shares of common stock, preferred stock, warrants, rights share purchase contracts, share purchase units or units having an aggregate initial offering price not exceeding $200,000,000" (*see id.* at ¶ 111). *See* Pl's Opp., p. 23. Plaintiffs cannot demonstrate that these statements were misleading or gave rise to a duty to disclose simply by claiming that the investments were "procured through false and misleading statements regarding the Company's sham cryptocurrency business." *See* Cao's Br., p. 14 (citing SAC ¶¶ 106-113). Yet, this is exactly what Plaintiffs attempt to do.

LIVE 13162145v.2

Plaintiffs' *sole* argument is that the cited statements above were materially misleading because, "unbeknownst to investors, [Singularity's cryptocurrency business] was nothing more than a sham fabricated to raise funds and inflate the Company's stock price." *See* Pl's Opp., p. 23 (citing SAC ¶¶ 109, 113). This conclusory statement is insufficient to demonstrate Plaintiffs' claim. It is devoid of any explanation or support, such as through corroborating or facts or signed witness statements. Plaintiffs cannot satisfy the particularized pleading requirement simply by crying "sham."[1] *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Accordingly, Plaintiffs' bare allegations related to Singularity's private offerings are insufficient to support Plaintiffs' securities fraud claims.

### b. Plaintiffs Fail to Identify Any Materially Omitted Information Related to Singularity's Internal Controls.

It is undisputed that Singularity's filings consistently identified the internal control deficiencies it faced. The SAC acknowledges this, citing the numerous statements that detailed such deficiencies. *See, e.g.*, SAC ¶¶ 201, 205, 207. Plaintiffs take issue with these disclosures by arguing that the statements omitted two details. This argument is without basis.

A material omission is only actionable when subject to an underlying duty to disclose. *See Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (quoting *Basic v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). The duty to disclose does not automatically attach to every statement concerning material information "simply because it may

---

[1] Plaintiffs' Opposition misrepresents the facts and findings of *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129, 138 (S.D.N.Y. 2001). *See* Pls' Opp., p. 23. In *Liberty Ridge*, a defendant-company told investors that investments funds would be used to shift the company's focus and "expand [its] business presence in the service provider market." *Liberty Ridge*, 173, F. Supp. 2d at 133, 137. However, the funds were not used for this purpose. *Id.* Instead, the investors claimed their funds were used two weeks later to make a $3million payment for a past-due account that had nothing to do with the "service provider market." *Id.* The court found that this misstatement, along with misstatements about the company's financial condition (e.g, claiming the company was "doing well," when it was losing money), provided "sufficient particularity to satisfy Rule 9(b) and the PSLRA." *Id.* at 137-38. The SAC falls woefully short of providing this level of specificity. Plaintiffs do not identify any supporting allegations, but simply call Singularity's crypto initiative a "sham."

3

be relevant or of interest to a reasonable investor." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) (quoting *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir.2002)).  A duty arises only when "(1) expressly pursuant to an independent statute or regulation; or (2) as a result of the ongoing duty to avoid rendering existing statements misleading by failing to disclose material facts." *Thesling v. Bioenvision, Inc.*, 374 Fed.Appx. 141, 143 (2d Cir.2010) (citing 17 C.F.R. § 240.10b–5(b)).

First, Plaintiffs claim the statements did not disclose that "the Company fully remediated the identified weaknesses and, as a result, its internal controls continued to be ineffective through June 30, 2023." *See* Pls' Opp., p. 24.  This is illogical.  Singularity would not have a duty to disclose "full[] remediation" until this actually occurred—not before.  By consistently informing the public of the internal control problems, Defendants satisfied any duty to disclose.

Plaintiffs' own case law demonstrates the insufficiency of their argument.  In *Mulderrig v. Amyris*, the court found a misstatement was made because a company that had previously disclosed it had financial reporting issues, later stated that "[t]here were no changes in our internal control over financial reporting . . . that have materially affected or are reasonably likely to materially affect, our internal control over financial reporting."  492 F. Supp. 3d 999, 1023 (N.D. Cal. 2020). "Contrary to [these] representations," the company's accounting department was "deteriorating further" because "the accounting department . . . was experiencing near constant turnover; was staffed predominantly by inexperienced temporary employees in both regular staff and senior management positions; and was struggling to function."  *Id.* at 1023-24. Here, Singularity's statements, including those made by Mr. Cao, made no such representation that internal control problems were resolved before they actually were. Rather, they consistently identified internal control issues to be addressed.

4

Second, Plaintiffs argue the internal control issues "were more serious than represented," but fail to provide any explanation for this assertion. Unlike the Plaintiffs in *Mulderig*, Plaintiffs do not identify omitted internal control issues or misrepresented internal control issues. 492 F. Supp. 3d at 1023. Plaintiffs also characterize Singularity's press releases and statements as disclosing "minor" internal control issues (*see* Pls' Opp., p. 24), but this word does not appear in the statements themselves and Plaintiffs provide no explanation of what "major" issues were seemingly omitted. It is evident from reviewing the statements that they "accurate[ly] and complete[ly]" disclosed all issues related to its internal controls. *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 331 (2d Cir. 2002).

### c. The Statements Related to Singularity's Cryptocurrency Initiative and Mainland JV Are Not Actionable Against Mr. Cao.

Finally, Plaintiffs cite paragraphs 102, 106-08, 111, 114, 116, and 119-120 of the SAC and the Mainland JV press release, alleging these constitute material misstatements.

Remarkably, Plaintiffs' Opposition again fails to allege that any of these challenged statements were made by Mr. Cao with actual knowledge that they were false or misleading. *See* 15 U.S.C. § 78u-5(c)(1); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 371 (E.D.N.Y. 2022). In addition, at least two of the statements were made in a Form 8-K and a press release issued by Singularity on January 5, 2022 and March 28, 2022, after Mr. Cao's resignation from the CEO position. *See* SAC ¶¶ 119-120. Mr. Cao cannot be held liable for allegedly misleading statements made by the Company after his resignation. *See Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F.Supp.2d 41, 61 (E.D.N.Y. 2011).

Plaintiffs now argue that "most of the statements in the identified paragraphs discussing Singularity's cryptocurrency initiatives [were] not forward-looking" because the underlying SEC filings also discussed events or transactions that had already taken place at the time those filings

5

were made, for example, "execution and restructuring of a purchase order agreement" (SAC ¶¶ 114 and 116); "the Company's expansion into Bitcoin mining" (SAC ¶ 102); and "the closing of private offerings" (SAC ¶¶ 107-08). *See* Pls' Opp. at 25-26. However, the SAC does not suggest that Singularity misrepresented the actual occurrence of those events or transactions. To be clear, Mr. Cao's Motion does not deny that those SEC filings discussed business matters of the Company that recently took place—after all, that is the very purpose of periodic SEC filings. Rather, the Motion takes issue with the direct quotations in the above-referenced paragraphs, which largely contain forward-looking statements made in the context of the events and transactions that took place. *See, e.g.*, SAC ¶ 102 ("[a]s Sino-Global evaluates its strategy for 2021 and beyond, the planned Bitcoin mining expansion follows a series of steps in preparation. . . Given the Company's plan to enhance the traditional logistics service platform through leveraging innovative technologies, the Company is excited to explore opportunities created by current market conditions and enter the cryptocurrency sector. . . We believe that Sino-Global is well-positioned to continue growing its core business while expanding to Bitcoin mining operations)";[2] *id.* at ¶ 114 ("We are confident with the opportunity presented to us from the digital currency industry and our capability to capture the growth"); *id.* at SAC ¶ 116 ("we plan to switch to a direct mining business rather than contracting with third parties in order to have greater control over this growth segment and to optimize our gross margin").

These are axiomatic examples of forward-looking statements and expressions of opinion or puffery where Singularity discussed its strategies and plans for future operations and business opportunities in the cryptocurrency space and the management's optimism in the prospects of the

---

[2] The Opposition's categorical denial of the forward-looking nature of these statements quoted in paragraph 102 on the mere basis that they were made "in the present tense," is a red herring. *See* Opp. at 26. The fact that the filing discusses the Company's expansion into Bitcoin mining business and the optimism surrounding the future prospects of its business does not make it any less forward-looking.

6

Company.  *See* 15 U.S.C. § 78u-5(i)(1); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 371 (E.D.N.Y. 2022).  Whether these predictions later turned out to be overly enthusiastic does not make them false or misleading at the time.  *See City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012).

Plaintiffs also disingenuously argue that these forward-looking statements were accompanied by "general warnings," which were insufficient to expressly warn investors. First, both the February 10, 2021 Prospectus[3] (*see* SAC ¶ 106) and the February 16, 2021 Registration Statement[4] (*id.* at ¶ 111) contain a detailed section on "Risk Factors," with subsections discussing "Risks Related to The Coronavirus Pandemic," "Risks Related to Our Business," "Foreign Operational Risks," and "Risks Related to This Offering."  In particular, the Registration Statement is accompanied by sufficient cautionary warnings identifying risks specific to the cryptocurrency mining business:

> In early 2021, we decided to enter the cryptocurrency mining business. There are various risks related to these efforts, including the risk that these efforts may not provide the expected benefits in our anticipated time frame, if at all, and may prove costlier than expected. . .
>
> As cryptocurrency assets may become more widely available, we expect the services and products associated with them to evolve. In order to stay current with the industry, our business model may need to evolve as well. From time to time, we may modify aspects of our business model relating to our strategy. We cannot offer any assurance that these or any other modifications will be successful or will not result in harm to our business. We may not be able to manage growth effectively, which could damage our reputation, limit our growth and negatively affect our operating results. Further, we cannot provide any assurance that we will successfully identify all emerging trends and growth opportunities in this business sector and we may lose out on those opportunities. Such circumstances

---

[3] Sino-Global Shipping America, Ltd., Prospectus Supplement (Feb. 10, 2021), https://www.sec.gov/Archives/edgar/data/1422892/000121390021008067/ea135095-424b5_sinoglobal.htm.
[4] Sino-Global Shipping America, Ltd., Registration Statement (Feb. 16, 2021), https://www.sec.gov/Archives/edgar/data/1422892/000121390021009665/ea135668-s3_sinoglobal.htm.

LIVE 13162145v.2

could have a material adverse effect on our business, prospects or operations.

*See* Sino-Global Shipping America, Ltd., Registration Statement (Feb. 16, 2021), https://www.sec.gov/Archives/edgar/data/1422892/000121390021 009665/ea135668-s3_sinoglobal.htm, at 3-5.

Contrary to Plaintiffs' suggestion, these warnings expressly warn potential investors of the risks specific to the cryptocurrency industry and convey "substantive information" about the risk at issue—such as the evolving and volatile nature of the cryptocurrency services and products, the potential modifications in Singularity's business that may be necessitated by such volatility, and the possibility that it may not be able to identify "emerging trends and growth opportunities" given it was a new player in the industry. *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 304 (S.D.N.Y. 2013) (finding cautionary language protects defendants from liability where it is "prominent and specific" and "directly address[es] exactly the risk that plaintiffs claim was not disclosed"); *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 98 (2d Cir. 2004) (granting motion to dismiss where prospectus "caution[ed] prospective investors that future financing was tenuous" and that it was "a speculative investment which could result in the loss of the investment in its entirety"). These prominent and specific warnings, coupled with the market-wide phenomena and known risks associated with the cryptocurrency business (as addressed in Singularity and Defendant Huang's Motion to Dismiss), further refute Plaintiffs' allegation that the investors were equipped with adequate information when they made the informed decision to invest in Singularity's cryptocurrency initiative.

## II.    **PLAINTIFFS HAVE NOT SHOWN SCIENTER.**

Scienter requires a showing of intent to "deceive, manipulate, or defraud," or reckless conduct. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The PSLRA

8

sets forth exhaustive pleading standards which require a plaintiff to "state 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *In re Sanofi Securities Litig.*, 155 F. Supp.3d 386, 405 (S.D.N.Y. 2016) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)). A plaintiff must allege a defendant's "knowledge of facts or access to information contradicting their public statements" to demonstrate they knew or should have known of their misrepresentations. *Id.*

Having failed to adequately plead scienter against Mr. Cao in the SAC, Plaintiffs now rely on circumstantial evidence as inference of scienter of the Company. Plaintiffs do not refute that there are no "particularized facts" that Mr. Cao had the motive or opportunity to commit fraud, or that give rise to a *strong* inference that Mr. Cao made or approved any material misstatements or omissions with actual knowledge that they were false or misleading at the time they were made. *See, e.g., Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 289 (S.D.N.Y. 2020) (to preclude application of the safe harbor protection, "plaintiff must plead facts supporting a strong inference of scienter that is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent'"); *Gissin v. Endres*, 739 F. Supp. 2d 488, 502 (S.D.N.Y. 2010) ("Liability under the actual knowledge prong of the safe harbor 'attaches only upon proof of knowing falsity'—a showing of recklessness is insufficient").

The challenged statements found in Singularity's securities filings bearing Mr. Cao's signature exhibit nothing more than "general motives [and desire] common to most corporate officers . . . for the corporation to appear profitable and . . . to keep stock prices high." *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 160 (S.D.N.Y. 2015). This is insufficient to show Mr. Cao acted with the requisite level of knowledge in approving or signing Singularity's public filings or that Mr. Cao obtained any form of financial gain, for example, by selling his Singularity

9

shares—even though the SAC makes repeated references to "artificially inflated prices" of Singularity stock. *See* SAC ¶¶ 7, 113, 291, 293, 297, 314-15, 321.

Plaintiffs also argue that it is "reasonable to infer" Mr. Cao's knowledge that the crypto transformation and related transactions were a "sham" because he made statements about the matters. *See* Pls' Opp., p. 40-41. Plaintiffs primarily take issue with the fact that the transformation was "impractical" due to factors such as the global chip shortage. *See* Pls' Opp., p. 41. However, Singularity's public filings, including those signed by Mr. Cao, identified to the public the difficulties that would need to be overcome in relation to the transformation as a whole, including specifically the global chip shortage. *See, e.g.*, SAC ¶ 154.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the concurrent motions to dismiss of Defendants Singularity Future Technology, Ltd., Zhikang Huang, Yang Jie, and Xiaohuan Huang, Defendant Lei Cao respectfully requests that the Court grant this Motion, dismiss Plaintiffs' Second Amended Complaint.

DATED: New York, New York
      January 26, 2024               Respectfully Submitted,


           **KING & WOOD MALLESONS, LLP**

           By: */s/ Aaron T. Wolfson*
           Aaron T. Wolfson (AW7218)
           King & Wood Mallesons
           500 Fifth Avenue, 50th Floor
           New York, NY 10110
           aaron.wolfson@us.kwm.com

           *Attorneys for Defendant Lei Cao*

LIVE 13162145v.2