# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SEN GAO, CONGLI HUO, RUIBIN WANG, LUXIAO XU, Individually and on behalf of all others similarly situated, | Case No: 1:22-cv-07499-BMC |
| Plaintiff, |  |
| v. | **STIPULATION AND [PROPOSED] ORDER FOR THE EXCHANGE OF ELECTRONICALLY STORED INFORMATION** |
| SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., and GOLDEN MAINLAND, INC., |  |
| Defendants. |  |

Lead Plaintiffs Sen Gao, Congli Huo, Ruibin Wang, and Luxiao Xu ("Plaintiffs") and Defendants Singularity Future Technology, Ltd. (f/k/a Sinoglobal Shipping America Ltd.) and Yang Jie (collectively, "Defendants," and together with Plaintiffs, the "Parties") agree that this Stipulation will govern the conduct of electronic discovery in the above-captioned case (the "Action").

Discovery requests and subpoenas served in this Action may call for the production of Electronically Stored Information ("ESI"). Accordingly, the Parties to the Action, through their counsel, hereby stipulate to and petition the Court to enter this Stipulation and Order for the Exchange of Electronically Stored Information ("Stipulation"). This Stipulation is intended to serve as a supplement to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), the Federal Rules of Civil Procedure, and/or other applicable statutes, laws, or rules. The Parties specifically reserve all of their rights and objections to any discovery that may be served upon them in this matter.

The procedures and protocols set forth in this Stipulation shall govern the production format of ESI in this Action. Nothing in this Stipulation is intended to enlarge, reduce, or otherwise modify the scope of discovery in this litigation. Nothing in this Stipulation is intended to expand or limit the Parties' obligations under the Federal Rules of Civil Procedure. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is no good cause for the

1

documents' production. Nothing in this Stipulation is intended to narrow, expand, or affect the rights of the Parties or third parties to object to a subpoena or discovery request. It is not intended for this Stipulation to impose requirements related to the scope of responsive data or documents, methods for culling or reviewing data or documents, the selection of custodians, or applicable keyword search terms. Nothing in this Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery in the Action.

The production specifications in this Stipulation apply to documents that are produced in the first instance in this Action. To the extent any Party is required or agrees to re-produce documents in this Action that originally were produced in other proceedings, such as litigation or government investigations, such documents may be produced in the same format in which they originally were produced if the original production included substantially the same metadata identified in this Stipulation. If such documents originally were not produced with substantially the same metadata identified in this Stipulation, the Parties shall meet and confer to discuss whether production of a metadata overlay or supplemental metadata production for those documents is necessary, feasible, and proportional to the needs of this case. The Parties agree that this is not a request to produce the same ESI or documents in more than one form; rather, it is a process for identifying potential supplemental information that does not require reproduction of previously produced documents.

The Parties do not waive any objections including to the responsiveness, production, discoverability, possession, custody, control, or confidentiality of documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of any document requests, or any other objection under the Local Rules or Federal Rules of Civil Procedure. Nothing in this Stipulation shall be interpreted to require the disclosure of information that is otherwise not

discoverable under the Local Rules, Federal Rules of Civil Procedure, or other applicable statutes, laws, or requirements. The Parties shall meet and confer in good faith in an effort to resolve any disputes that may arise under this Stipulation, prior to seeking assistance from the Court.

**IT IS hereby ORDERED that**:

1. <u>**Preservation of ESI.**</u> The Parties will take reasonable and proportionate steps to preserve unique ESI that is within their respective possession, custody, or control and is subject to discovery pursuant to all applicable provisions of law. By preserving or producing information for the purposes of this litigation, the Parties are not conceding that such material is discoverable or admissible.

2. <u>**Parameters of ESI Disclosures.**</u> By dates to be agreed upon by the Parties, the Parties shall exchange the following information:

a. <u>Custodians</u>. The names of the custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, and connection to the instant litigation;

b. <u>Non-Custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, likely to contain relevant discoverable ESI;

c. <u>Search Terms</u>. A producing Party shall disclose what search terms, if any, it plans to use to narrow the collection(s) to ESI likely to contain discoverable information. If the producing Party does not anticipate using search terms, it shall disclose the methodology used to locate ESI likely to contain discoverable information. The Parties shall meet and confer to attempt to reach agreement on search terms before review and production of documents. The Parties hereby agree that negotiations regarding search terms and other limiters are intended to be a cooperative and iterative process, involving a good faith exchange of information and proposals to facilitate

3

the negotiations. Any search methodology used by a producing party to search for responsive documents will search any associated attachments and embedded files; and

> d.      Additional Custodians or Data. The Parties reserve the right to request inclusion of additional custodians or non-custodial data sources whose identity was discovered via documents or data produced, or testimony given, or for other good cause shown, within a reasonable time of such discovery. If the producing party objects to the inclusion of such sources, the parties will meet and confer to resolve the matter. If the parties cannot reach resolution, the requesting party may move the Court to compel the producing party to supplement the production to include the discovered sources.

3.      **Other Search Methodology.** The Parties agree that nothing in this protocol prevents the Parties from using technology-assisted review ("TAR"), including continuous active learning, or other e-discovery tools or techniques to identify ESI likely to contain discoverable information insofar as their use improves the efficiency of discovery and minimizes the Parties' burden. The Parties agree to meet and confer in good faith with ample time to reach a mutually agreeable protocol for the use of such technologies. A reasonable time prior to any meet and confer regarding the use of TAR, the Party proposing to use TAR shall provide the other Party with details regarding the tool or technique that will be used to allow that Party time to be familiar with the tool or technique prior to the meet and confer. The Parties agree not to use TAR on paper documents that cannot be reliably OCR'd or on structured data types. The Parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing documents for review. If the Parties are unable to agree on the TAR and/or advanced analytics technology and methods being proposed after meeting and conferring in good faith, the Parties may move the Court to decide whether TAR is available and the protocol the Party must use if it is.

4.    **Format for ESI Production.** The Parties agree to the following formats for ESI production:

a.    TIFFs. ESI will be produced in TIFF format, with a data load file, including page break information in a load file identifying document start and end.

b.    Color. Documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving Party to request production of certain documents in color, the receiving Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing Party shall not unreasonably deny such requests. If the Parties are unable to agree as to the production of the requested documents in color format, the Parties may submit the matter to the Court.

c.    Database Load Files. The Parties shall produce ESI in both image and text file format as well as metadata load files consistent with Concordance-style delimiters and compatible with the Relativity eDiscovery Software platform or Nuix Discover eDiscovery Software platform.

d.    Text Files. For each document, whether produced in TIFF or native format, a document-level text file should be provided in addition to the TIFFs thereto in the load file. The text of native files, if any, should be extracted directly from the native file. Documents for which text cannot be extracted and redacted documents will be produced with OCR. Document-level OCR text files will be provided. Each file will be named using the Bates number of the first page of the document (*e.g.*, a four-page document that starts with ABC0000001 will bear the name ABC0000001.TXT). Extracted text shall include all comments, track changes, user-modifiable

fields, speaker's notes, author comments, contacts, calendars, and all other hidden content including, but not limited to, worksheets, columns, rows, etc.

      e.      <u>Embedded Objects</u>.

      i.      With the exception of embedded Microsoft Excel, Microsoft Word, Microsoft PowerPoint, or other similar application files, which are each to be extracted as standalone documents, the Parties agree that other embedded objects and images, including, but not limited to, logos, icons, emoticons, signature blocks, and footers need not be produced as separate documents by a producing Party (*i.e.*, such embedded documents will be produced within the document itself, rather than as separate attachments). Notwithstanding the aforementioned, the Parties agree that they are not required to collect documents on the other side of the embedded link.

      ii.      If it appears to the receiving Party that content contained in an embedded object is not contained and/or visible within a parent document, the receiving Party may make reasonable requests to the producing Party and identify those documents by Bates number; the producing Party shall then undertake reasonable efforts to reproduce the identified documents with the extracted embedded objects treated as attachments to the parent document, except if those documents are held by third-parties rather than the producing Party.

      iii.      Files referenced in embedded hyperlinks, such as those created by Microsoft Office's "Share Documents Via Link" feature or by other third-party document sharing platforms, shall be produced upon reasonable request.

      f.      <u>Native Format</u>. The Parties have agreed that Microsoft Excel files and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, Microsoft PowerPoint and other presentation files, and audio/video files will be produced in

6

native format to the extent possible unless they require redactions or unless production in native format would otherwise be impracticable in which case they may be produced as a TIFF image. For spreadsheets that the Parties have agreed to produce in native form, all redactions shall be made to the native form of the document. If the native document (including its metadata) cannot be adequately redacted, a redacted TIFF image of the document may be produced as provided for hereinbelow. The Parties agree to meet and confer if TIFF redaction would render a document not reasonably usable. The native file will be accompanied by a slip sheet that includes the Bates number and confidentiality designation. Files produced in native format shall be given file names identical to the Bates number and should include the confidentiality designation (*e.g.*, ABC0000001_CONF.xlsx). If good cause exists for the receiving Party to request production in native format of certain documents not produced in native format, the receiving Party may request production of such documents in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for production in native format. The producing Party shall not unreasonably deny such requests. If the Parties are unable to agree as to the production of the requested documents in native Format, the parties may submit the matter to the Court.

g.      Redactions. Each redaction on a document shall be endorsed with the word "Redacted" or "Redaction" along with the basis for such redaction. With respect to documents containing redacted text, no extracted text will be provided for the redacted portion and the following metadata fields shall not be produced if redacted: Email Subject, Hash Value, Filename, and Doc Title. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this Paragraph.

h.      Unique IDs. Each image should have a unique file name which will be the Bates number of that page. Bates numbering should be zero-padded and be numerically sequential within a given document. All attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in this Action. The Bates number must appear on the face of the image in the lower right corner or other location if such placement is not practical (*e.g.*, ABC0000001.TIF).

i.      Duplication Minimization. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. With regard to ESI, the Parties may de-duplicate globally or across more than one custodian. Duplicate e-mails or files held in different file path locations and/or by different custodians may be excluded. If duplicates are excluded, the load file must include the de-duplication table metadata that shows each custodian and full file path from which a copy of the produced document was excluded. De-duplication shall not break apart families and shall be performed at a family level. The producing Party agrees that the presence of a custodian's name contained in "All Custodians" in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file. The Parties shall make reasonable efforts to reach agreement on any de-duplication criteria to be used.

j.      Email Threading. A Party is only required to produce the most inclusive emails in an email thread, and a producing Party may, but is not required to, remove non-inclusive emails from its production. A non-inclusive email is defined as any email whose text and attachments are fully contained in another (inclusive) email. This analysis must be performed on a family level, taking into account the existence of attachments or embedded items. A producing

8

Party shall produce specific non-inclusive emails in its possession upon reasonable request from a receiving Party.

k.      Unitizing of Documents. Absent undue burden, a producing Party shall, when scanning paper documents, avoid merging distinct documents into a single record, and avoid splitting single documents into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the document behind each tab should be scanned separately, but any document or family relationship among the scanned documents in the compilation should be reflected in the data load file at the appropriate standard fields. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages containing post-it notes or other detachable notes that obscure the underlying document should be scanned once with the detachable note intact, and then again without it, and made part of the same document.

l.      Databases, Structured, Aggregated, or Application Data. To the extent responding to a discovery request requires production of ESI contained in a database, the Parties will meet and confer to determine whether the producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database. To the extent available, the producing party will produce a data dictionary for the fields provided and will answer reasonable requests to explain any codes or abbreviations contained in the structured data through a meet-and-confer process.

m.      Metadata Fields. Where available, the Parties will produce Metadata Fields in a DAT file. The Metadata Fields set forth in Table 1 should be provided if available for a document. For ESI other than email and e-docs that do not conform to the metadata set forth in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

n.      Non-Convertible Files. Certain types of files such as system, program, video, and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the same format as other Native Files, as addressed herein, accompanied by a slip-sheet placeholder TIFF image.

o.      Inaccessible ESI. Contingent upon each Party's compliance with the obligations set forth in this document, the Parties agree that the circumstances of this case do not warrant the preservation, review, or production of ESI that is not reasonably accessible because it is unlikely that significant relevant information would be located in those sources that is not otherwise available in reasonably accessible sources. Moreover, that remote possibility is substantially outweighed by the burden and cost of preservation and/or review and production of ESI from these sources. The Parties agree that the following ESI is not reasonably accessible: backup tapes; legacy data from systems no longer in use that are not readable by any system currently in use; residual, fragmented, damaged, permanently deleted, slack, and unallocated data, or other data only accessible by forensics; random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; on-line access data such as temporary internet files, history, cache, cookies, and the like; data in metadata fields that are frequently updated automatically, such as last-opened dates; server, system, or network logs; voicemails (other than those included as attachments to parent emails or otherwise

10

preserved within a custodian's files); and call logs. Nothing herein shall prevent a Party from subsequently requesting that documents from the sources identified above be preserved and produced if specific facts demonstrate a particular need for such documents that justifies the burden of preservation and retrieval.

p.  Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent document) must be preserved, excepting (i) junk files and non-user-created content routinely excluded during processing; and (ii) embedded objects, as described above in § 4(e). A document should be produced together with its entire document family, and the Parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced. The child-document should be consecutively produced immediately after the parent-document.

q.  Costs. Each Party shall bear its own costs of preservation, collection, review, and production of ESI. The Parties, however, reserve their right to seek burden-shifting or reimbursement for such costs by motion.

r.  Non-English Documents. To the extent that documents are produced that contain languages other than English, in whole or in part, the producing party shall produce each such document, along with its metadata, in the original language or languages in which it was written and collected. Such documents should be delivered with the correct encoding to enable the preservation of the document's original language. The producing party has no obligation to provide a translation of the documents or ESI or any portion thereof.

s.  Time and Date. The time zone in which the data was processed will be disclosed by the producing party. When processing unprocessed ESI, UTC should be selected as the time zone. When a metadata field includes a date and/or time, it shall be provided in the

11

following format: mm/dd/yyyy HH:mm:ss. ESI items shall be processed so as to maintain the date/time in the document's metadata as it was last saved by the custodian or end user, not the date of collection or processing (*i.e.*, shall force off Auto Date).

5.    **Privilege Logs.** The Parties agree that each shall produce a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5), and that the Parties shall meet and confer regarding the format of such log(s). The Parties agree that they need not exchange the text of litigation hold/retention instructions issued in this litigation but reserve the right to make such a request. Privilege logs shall be provided in searchable Adobe PDF format and native Excel format. The following categories of documents may be excluded from identification in the privilege log (so long as no third party was included on the communication and/or the document does not appear on its face to have been transmitted to any third party): (a) work product created by trial counsel, or by an agent of such counsel, concerning this action; (b) communications exclusively between any Party and their counsel on or after December 9, 2022, the date this action was filed, concerning this litigation or representation in this litigation; (c) internal communications within a law firm; and (d) communications solely between in-house counsel.

6.    **Cross-Border Data Protection.** The Parties maintain that a significant portion of the discovery that may be relevant to this action is located in the People's Republic of China (including in the Hong Kong SAR) and that such discovery may implicate foreign data and privacy laws that restrict the cross-border production of information, including but not limited to the Data Security Law of the People's Republic of China, the Personal Information Protection Law of the People's Republic of China, the Securities Law of the People's Republic of China, and any analogues under Hong Kong law. To the extent that such concerns can be adequately ameliorated through redactions, the Parties shall produce such documents with redactions. The Parties also

agree to provide an affidavit from foreign counsel regarding the information withheld under foreign law. The Parties agree to meet and confer about the information to be contained in the affidavit.

7.      **Claw back Mechanisms for ESI Privileged or Protected Disclosure.** The Parties agree that disclosure of privileged or protected documents/information will not constitute a waiver of any such privilege or protection and will apply the following procedures:

a.      Notice. Within ten business days from the date on which a disclosing Party discovers a disclosure of privileged/protected ESI, it will notify the receiving Party by written Notice (conveyed via email) identifying the disclosure(s) and directing the receiving Party to promptly return, destroy, and/or make inaccessible the disclosed information/documents and all copies thereof.

b.      Parties' Obligations. Within five (5) days of receipt of the Notice, the receiving Party will inform the disclosing Party that compliance will be effectuated or challenge the Notice in a formal responsive writing. If the Notice is not challenged, the receiving Party will endeavor in good faith to destroy, return, and/or disable all access to the specified documents/information within fourteen (14) days or as agreed by the Parties.

i.      Where the disclosure is in the form of a disc or access to a password protected server, the producing Party must provide, upon receipt of intent to comply with the Notice, a replacement of the production containing all documents/information but for those identified in the Notice.

ii.      The receiving Party will endeavor in good faith to retrieve any copies of the identified documents/information to return, destroy, or otherwise dispose of the materials, and take all reasonable steps necessary to prevent further sharing of those materials.

13

Any use of the identified disclosures prior to receipt of the Notice is not a violation of this ESI Stipulation but may be subject to the provisions of the Parties' Protective Order and Rule FRE 502(d) Order.

     iii.  If the receiving Party challenges the Notice, it will return, destroy, or disable all copies of the documents/information, but may retain one (1) copy for the purpose of challenging the designation of privilege/protection of the disclosure.

     iv.  The Parties will meet and confer within three (3) days to resolve the dispute if the Notice is challenged, and, if not resolved, the Parties shall jointly request a conference with the Court to devise a plan for resolving the challenges.

     v.  Under all circumstances, the disclosing Party must preserve all documents/information subject to the Notice until any dispute has been resolved by the Parties' agreement or court order.

    c.  <u>Receiving Party's Affirmative Obligation</u>. A receiving Party that discovers privileged or protected documents/information will inform the disclosing Party in writing within seven days regardless of whether a challenge to such privilege or protection is anticipated.

  8.  **<u>Right to Request Additional Information</u>.** The agreements set forth herein are without prejudice to the right of a requesting Party to request additional information about specific ESI if that Party reasonably believes that material, relevant, and responsive information that is not otherwise cumulative or duplicative of information already produced can only be found through such additional efforts. The Parties will negotiate in good faith with regard to whether such additional efforts are reasonably required, with the Court to resolve such disputes if agreement cannot be reached.

14

9. **Corrections to ESI Productions.** Each producing Party will make reasonable and prompt efforts to correct or supplement any technical issues with respect to an ESI document production that have been identified by the other Party, and to notify the other Party of any technical issues as to a document production in a timely manner once known by the producing Party.

10. **Confidentiality Designations.** The Parties will designate documents as confidential, highly confidential, or otherwise according to the terms of the Protective Order agreed upon by the Parties and entered by the Court.

11. **ESI from Other Individuals/Entities.** A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the Action have requested that third parties produce Documents in accordance with the specifications set forth herein. The Issuing Party shall promptly notify the other Parties when it receives non-party productions and shall provide copies of such productions to the other parties in the format in which they were received from the third-party within five (5) days. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to requesting parties. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third Parties to object to a subpoena.

12. This Stipulation may be changed by further order of this Court and is without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional provisions related to the production of ESI.

IT IS SO ORDERED.

DATED: _____    _____

                                           THE HONORABLE BRIAN M. COGAN
                                           UNITED STATES DISTRICT COURT JUDGE

Dated: February 24, 2025

**BERGER MONTAGUE PC**

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo (*pro hac vice*)
Alex B. Heller (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: mdellangelo@bm.net
       aheller@bm.net

*Lead Counsel for Lead Plaintiffs*

**KIRBY McINERNEY LLP**
Ira M. Press
Sarah Flohr
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: ipress@kmllp.com
       sflohr@kmllp.com

*Local Counsel for Lead Plaintiffs*

**HUNTER TAUBMAN FISCHER & LI LLC**

*/s/ Jenny Johnson-Sardella*
Mark David Hunter, Esquire
New York Bar No. 4017331
Jenny Johnson-Sardella, Esquire
New York Bar No. 4225850
848 Brickell Avenue, Suite 200
Miami, FL 33131
Tel:   (305) 629-1180
Fax:  (305) 629-8099
Email:mhunter@htflawyers.com
       jsardella@htflawyers.com

*Counsel for Defendant Singularity
Future Technology Ltd.*

**BECKER NEW YORK, P.C.**

*/s/ Samantha Lesser*
James J. Mahon
Samantha Lesser
45 Broadway, 17th Floor
New York, NY 10006
Tel: (212) 599-3322
Email: jmahon@beckerlawyers.com
       salesser@beckerlawyers.com

*Counsel for Defendant Yang Jie*

16

**TABLE 1: METADATA FIELDS[1]**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |

---

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced.

1

| Field Name | Example / Format | Description |
|---|---|---|
| **MEETING START DATE** | MM/DD/YYYY | Start date of calendar entry. |
| **MEETING START TIME** | HH:MM | Start time of calendar entry. |
| **MEETING END DATE** | MM/DD/YYYY | End date of calendar entry. |
| **MEETING END TIME** | HH:MM | End time of calendar entry. |
| **FILEPATH** | *i.e.*, /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| **FILEPATH-DUP** | *i.e.*, /JSmith.pst/Inbox/Network Share/Accounting/…/TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e- files and separated by semicolons. |
| **AUTHOR** | jsmith | The author of a document from extracted metadata. |
| **LASTEDITEDBY** | jsmith | The name of the last person to edit the document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |

2

| Field Name | Example / Format | Description |
| --- | --- | --- |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de- |

3

| Field Name | Example / Format | Description |
|---|---|---|
| | | duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together email threads. |
| **REDACTED** | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

4