EXHIBIT A

*Crivellaro v. Singularity Future Technology Ltd. et al.,*
No. :22-cv-07499-BMC (E.D.N.Y.)

## SETTLEMENT TERM SHEET

1.      This term sheet sets forth all of the material deal points associated with the resolution of the above-captioned case (the "Action"). The Parties[1] recognize that a formal, final settlement agreement will be drafted and executed by the Parties, but the Parties concur that all material settlement deal points are set forth herein and that this Term Sheet is intended to be binding and enforceable.

2.      Subject to Court approval, this case will be settled as a class action. Absent Court approval of the settlement, there is no settlement.

3.      **Settlement Payment Component:**

a.      Defendants agree to pay, or cause to be paid, $3,000,000 in cash ("Cash Settlement Amount"), of which $250,000 ("Administration Tranche") may be utilized to pay for claims administration (any portion of the Administration Tranche not used for claims administration, escrow agent, and related settlement and administration expenses shall be allocated to the settlement fund and does NOT revert to the Defendant), and Singularity agrees to pay 6,500,000 freely tradable shares (pursuant to Section 3(a)(10) of the Securities Act of 1933) of Singularity common stock ("Settlement Shares"; and together with the Cash Settlement Amount, and the put option described below, the "Settlement Amount") to settle the Action based on the Settlement Class Period set forth below. In the event of a reverse stock split prior to the Effective Date of the Settlement (as will be defined in the Stipulation), the number of Settlement Shares and/or the put option purchase price (described below) shall be reformulated so that the value of the Settlement Shares/Put Option shall not be less than $5,850,0000[2] as of the Effective Date.

b.      **Investment of "Cash Settlement Amount" and "Escrow Component".** The Cash Settlement Amount as well as the Escrow Component shall be paid into an interest-bearing escrow accounts established for the settlement controlled by the Escrow Agent, subject to the authority of the Court, within fourteen (14) calendar days after the later of: (i) the Parties' full execution of this Term Sheet, or (ii) Defendants having received the information necessary to effectuate a transfer of funds to the escrow accounts, including wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Settlement Amount is to be deposited. The Cash Settlement Amount will be paid directly into the escrow

---

[1] The "Parties" refers to Plaintiffs and Defendants. "Lead Plaintiffs" collectively refers to Lead Plaintiffs Lead Plaintiffs Ruibin Wang, Sen Gao, Luxiao Xu, and Congli Huo ("Lead Plaintiffs" or "Plaintiffs"). "Defendants" collectively refer to Singularity Future Technology, Ltd. f/k/a Sino-Global Shipping America Ltd. ("Singularity" or the "Company"), Yang Jie, Lei Cao, Zhikang Huang, Tuo Pan, Xiaohuan Huang, Jing Shan, Tieling Liu, Jing Wang, Lei Nie, John Levy. "Lead Counsel" refers to the law firm of Berger Montague PC.

[2] Calculated as 6,500,000 shares at $0.90/share.

1

account. The Escrow Component will be paid directly into a separate escrow account maintained by the Escrow Agent.

c.     **Delivery of Settlement Shares.** Within ten (10) business days: (a) after entry of an order granting final approval of the proposed settlement, and the Parties achieve compliance with Section 3(a)(10) of the Securities Act of 1933 regard to the Settlement Shares; or (b) after the date Defendants' Counsel receives written instruction from Lead Counsel identifying the brokerage account ("Settlement Brokerage Account") and all necessary information for transferring the Settlement Shares to the Settlement Brokerage Account, whichever is later, Singularity agrees to deliver the Settlement Shares to the Settlement Brokerage Account in accordance with the written instructions of Lead Counsel. The Settlement Brokerage Account will be controlled by the broker-dealer affiliate of the Escrow Agent. Separate from the "Cash Settlement Amount" and "Escrow Component," Defendants will be responsible for "Settlement Share Disposition Costs," namely, all costs and expenses associated with the issuance and disposition of the Settlement Shares, including without limitation, (i) all costs related to the transfer of the Settlement Shares to the Settlement Brokerage Account; and (ii) all costs related to the issuance and disposition of Settlement Shares from the Settlement Brokerage Account, including the sale of Settlement Shares and/or exercise of the Put Option.

d.     **Put Option Component.** It is Lead Counsel's intention to sell the Settlement Shares via the broker-dealer affiliate of the Escrow Agent and then distribute the proceeds along with the Cash Settlement Fund (defined below) to the Settlement Class. In order to facilitate this sale, and to eliminate the downside risk to the Settlement Class, Singularity will offer a put option to the Settlement Class, that may be exercised by Lead Counsel in its sole discretion, pursuant to which the Settlement Class can sell all or a portion of the unsold Settlement Shares back to Singularity at $0.85 per share if the 10-trading day average closing price immediately prior to the exercise of the Put Option falls below $0.85 (as determined by Bloomberg) before Lead Counsel sells the Settlement Shares pursuant to the formula set forth in paragraph 3(e) ("Put Option Component"). To mitigate the risk that Singularity is unable to satisfy the Put Option Component, Singularity agrees to maintain a cash balance $3,250,000 in a dedicated escrow account held by Citibank for the benefit of the proposed settlement class until the later of (i) the final sale of the Settlement Shares or (ii) the Court enters an order granting final approval of the Settlement (the "Escrow Component"). In the event Singularity files for bankruptcy before either the Effective Date or the delivery of the full amount of consideration (cash, stock and put option) described herein, Lead Plaintiff may elect to terminate this settlement subject to the terms of Paragraph 16 herein. In the event Singularity is delisted from NASDAQ, the put option shall be immediately exercisable with respect to all unsold Settlement Shares. In the event Singularity is unable, or otherwise fails, to fulfill its obligations pursuant to the put option, Defendants will have the option to make any such payment within fifteen (15) business days of Lead Counsel exercising the put option, and, if they elect not to do so, Lead Counsel may terminate the settlement subject to the terms of Paragraph 24 herein.

e.     **Sale of Settlement Shares.** Defendants agree that Lead Counsel shall direct the Escrow Agent to sell the Settlement Shares at any time after delivery of the Settlement Shares to generate and distribute cash rather than having to distribute Settlement Shares to the Settlement Class. The number of Settlement Shares that can be sold in a single day shall be limited to the greater of 15% of the three-month trailing average of the stock's trading volume or 15% of the

actual trading volume on the prior trading day, both of which will be determined by Bloomberg. The number of Settlement Shares subject to the Put Option Component described above shall reduce *pro rata* as the Settlement Shares are sold. In addition, the amount of the Escrow Component shall be reduced *pro rata* as the Settlement Shares are sold. Lead Counsel may direct the Escrow Agent to sell the Settlement Shares or exercise the Put Option Component at any time following their deposit into the Settlement Brokerage Account, provided, however, that if the sale happens prior to the Effective Date, all such proceeds will be deposited in the Settlement Fund. If the Effective Date does not occur, Lead Counsel will return to Singularity (or any persons or entities providing the Settlement Shares) the proceeds of any stock sale in lieu of returning Settlement Shares that have been sold.

f.    **Definition of Settlement Fund.** The Cash Settlement Amount plus any interest accrued thereon while in the escrow account (the "Cash Settlement Fund"), plus the Settlement Shares (and/or any money generated from the sale of the Settlement Shares, including interest earned thereon), shall be referred to as the "Settlement Fund." The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-1.

g.    **Limitations on Transactions in Singularity Stock.** Lead Plaintiffs, Lead Counsel and/or their employees or agents shall not engage in any transactions involving the Company's securities (including, but not limited to, short sales) until after all Settlement Shares are sold.

4.    **Lead Counsel's Fees and Cost Component:** From the above-referenced Settlement Fund, Lead Counsel intend to apply to the Court for a fee award, plus expenses and costs incurred, including the interest earned thereon. It is understood that whatever amount is awarded by the Court is within the sole discretion of the Court, and if the award is less than the amount sought by Lead Counsel, this will not affect the validity or finality of the settlement. The Parties also agree that Lead Counsel's fees and expenses shall be paid to them upon award, notwithstanding the existence of any objections thereto or potential for appeal therefrom. Defendants shall take no position on Lead Counsel's fee and expense application. Defendants shall have no responsibility whatsoever for any plaintiffs' attorneys' fees or costs (including out-of-pocket costs) nor payment to Lead Plaintiffs for their time and expenses in connection with the Action.

5.    **Settlement Documentation Component:** Lead Counsel will prepare the first draft of the settlement documents, and the Parties will use their best efforts to ensure that the settlement documentation is drafted, finalized and executed within sixty (60) calendar days of executing this Term Sheet. Lead Plaintiffs will use their best efforts to file a motion for preliminary approval of the settlement within seven (7) calendar days thereafter. It is understood that the final settlement documentation will include other standard terms of settlement such as no admission of liability, but there has not been an effort to set forth in this Term Sheet all such terms. Lead Plaintiffs will prepare the first draft of the Stipulation and Agreement of Settlement and supporting papers.

6.    **Class Certification Component:** Defendants will stipulate for settlement purposes only to certification of the following Settlement Class: All persons and entities who purchased or otherwise acquired Singularity securities between February 2, 2021 and February 24, 2023,

inclusive (the "Class Period"), and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants and members of their immediate families; (ii) the officers and directors of the Company, at all relevant times, and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant has or had a controlling interest. Defendants will further stipulate for settlement purposes only to the appointment of Lead Plaintiffs as the Class Representatives, and to the appointment of Lead Counsel as Class Counsel.

7.      **Claims Administrator and Plan of Allocation:** Defendants will not have any responsibility for, or involvement in, the selection of the claims administrator, the plan of allocation, the administration process, or the allocation of the settlement proceeds among members of the Settlement Class. The Claims Administrator and Escrow Agent shall be selected solely by Lead Plaintiffs, subject to Court approval. The plan for allocating the settlement proceeds will be proposed solely by Lead Plaintiffs, subject to Court approval. The plan of allocation is separate from the Settlement, and any issues, problems, objections, or appeals with respect to the plan of allocation will not affect the validity or finality of the Settlement (including the releases therein). Any order of the Court modifying or rejecting the proposed plan of allocation will not operate to terminate the Settlement or affect the finality or binding nature of the Settlement.

8.      **Costs of Notice and Claims Administration:** All costs and expenses of providing notice to the Settlement Class and the administering of the Settlement shall be paid solely from the Settlement Fund. In the event that the Settlement is not consummated, money reasonably paid or costs reasonably incurred for this specific purpose, including any related fees, shall not be returned or repaid to Defendants and/or such other persons or entities who have funded the Settlement Amount.

9.      **Plaintiffs' Release:** Upon the Effective Date (as will be defined in the Stipulation of Settlement ("Stipulation")), Plaintiffs and the other members of the Settlement Class will release as against Defendants' Releasees (as defined below), all claims and causes of action of every nature and description, whether known or unknown, including Unknown Claims (as defined below), whether arising under federal, state, common or foreign law, that Plaintiffs or any other member of the Settlement Class: (i) asserted in the operative complaint (the "Complaint"); or (ii) could have asserted in any forum, that both arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or any previous complaint filed in the Action and that relate to the purchase or acquisition of Singularity securities during the Settlement Class Period ("Released Plaintiffs' Claims"). Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or that submits a request for exclusion that is accepted by the Court.

10.     **Defendants' Release:** Upon the Effective Date (as will be defined in the Stipulation), Defendants' Releasees will release as against Plaintiffs' Releasees (as defined below), all claims and causes of action of every nature and description, whether known claims or Unknown Claims (as defined below), whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants ("Released Defendants' Claims"). Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any

4

person or entity who or that submits a request for exclusion from the Settlement Class that is accepted by the Court.

11.     **Plaintiffs' Releasees:** "Plaintiffs' Releasees" means Plaintiffs, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

12.     **Defendants' Releasees:** "Defendants' Releasees" means Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, insurers, reinsurers, employees, and attorneys, in their capacities as such.

13.     **Unknown Claims:** "Unknown Claims" means any Released Plaintiffs' Claims that Plaintiffs or any other Settlement Class Member do not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, that, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the entry of a final judgment in this Action, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

14.     **No Applicable Insurance Coverage:** Defendants represented that no applicable directors & officers' liability insurance exists that either covers or would potentially cover the claims asserted in this Action.

15.     **Failure to Fund:** If Defendants fail to cause the Settlement Amount, or any portion thereof, to be paid in accordance with the terms of the Stipulation, (a) Defendants cannot terminate the Settlement; and (b) Lead Plaintiffs may apply to the Court to enforce the terms of the Settlement, and further request that the Court order Defendants to pay interest on the unfunded portion of the Settlement Amount for which it is obligated to fund at the Compounded Daily Secured Overnight Financing Rate ("SOFR"), plus 2%, from the time funding was due. In the

event the payment is more than forty-five (45) calendar days late, the interest rate shall be SOFR, plus 8%, from the time funding was due.

16.    **Mutual Releases and Dismissal Component:** In connection with the execution of the above-referenced settlement documentation, the Parties will also execute mutually agreeable releases and dismissals with prejudice of all claims at issue in this litigation.

17.    **Opt-Out:** In connection with the execution of the above-referenced settlement documentation, the Parties also agree to a so-called "blow" provision. Specifically, Defendants shall have the unilateral right to withdraw from and terminate the Settlement in its entirety and to render the Stipulation null and void if Settlement Class Members who, during the Settlement Class Period, collectively purchased shares of Singularity common stock eligible to participate in the Settlement that represent more than 10% of the total number of shares in the trading float of Singularity common stock during the Settlement Class Period (the "Opt-Out Threshold") properly elect to exclude themselves from the Settlement Class in accordance with the requirements for requesting exclusion provided in the Notice.

18.    **Not a Claims Made Settlement:** The Settlement will be non-recapture, *i.e.*, it is not a claims-made settlement. Defendants have no ability to get back any of the Settlement Amount unless the Settlement does not become effective. Should the Settlement ultimately not become effective, the monies paid by Defendants shall be returned to the respective funding source in full. However, Defendants shall have no right to recoup from the Settlement Fund reasonable and necessary costs paid or owed to the Claims Administrator or Escrow Agent in the event the Settlement does not become effective.

19.    **Singularity's Shareholder List:** For the purposes of identifying and providing notice to the Settlement Class, Defendants shall make reasonable efforts to provide or cause to be provided to the claims administrator within seven (7) calendar days of the date of entry of the preliminary approval order, lists of Singularity shareholders of record during Class Period, where such lists are within Defendants' possession, custody, or control. Any such lists shall be provided at no cost to the Settlement Fund, Lead Counsel or the claims administrator and in electronic form, to the extent feasible.

20.    **CAFA Notice:** Defendants shall be responsible for sending notices required by the Class Action Fairness Act (28 U.S.C. § 1715) and for all costs and expenses related thereto.

21.    **Stay of Proceedings:** Upon the execution of this Term Sheet, the Parties shall promptly request that the current court and discovery proceedings be suspended.

22.    **Good Faith:** Lead Plaintiffs, Defendants, and their counsel shall not make any applications for sanctions, pursuant to Fed. R. Civ. P. 11 or other court rule or statute, with respect to any claims or defenses in this action. While retaining their right to deny liability, Defendants will agree that, based upon the publicly available information at the time, this action was filed in good faith and with an adequate basis in fact, was not frivolous, and is being settled voluntarily by Defendants after consultation with competent legal counsel. The proposed Final Judgment shall also contain such a finding.

23.     **No Admission of Liability:** The Settlement shall not be deemed an admission by any Party as to the merits of any claim or defense. The Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim or defense; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the parties; or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Lead Plaintiffs were not valid or that the amount recoverable was not greater than the Settlement amount, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

24.     **Termination:** If the Settlement outlined in this Term Sheet is not approved by the Court, or the Settlement is terminated for any reason, this Term Sheet and the Settlement shall be a nullity, and none of its terms shall be effective or enforceable, and the Settlement Amount shall be returned to the respective funding sources in full consistent with Paragraph 3(d) above. Additionally, the Parties shall revert to their litigation positions immediately prior to the execution of this Term Sheet, and the fact and terms of the Settlement shall not be admissible in any trial or otherwise used against any Party.

25.     **Governing Law:** This Term Sheet is governed by the laws of the State of New York, without regard to any principles of conflicts of laws.

26.     **Authority:** Each person signing this Term Sheet hereby represents and warrants that he or she is authorized to sign this term sheet on behalf of the applicable Party or Parties listed below.

27.     **Headings:** The headings set forth in this Term Sheet have been inserted for convenience of reference only. Such headings shall not be considered a part of this Term Sheet, and neither shall they limit, modify, or affect in any way the meaning or interpretation of this Term Sheet.

28.     **Counterparts:** This Term Sheet may be executed in one or more counterparts, and facsimile or scanned signatures shall have the same force and effect as original signatures, and the exchange of fully executed copies of this term sheet may similarly be effectuated by facsimile or pdf/email to the facsimile numbers or email addresses shown below for the Parties' respective counsel.

29.     **ADR Component:** Subject to the authority of the Court, if any disputes arise out of the finalization of the settlement documentation or relating to the settlement itself, those disputes will be resolved by Robert Herschman, Esq., first by way of expedited telephonic mediation and if unsuccessful, then by way of final, binding, non-appealable resolution by Mr. Herschman.

*- the rest of the page is intentionally left blank -*

7

Dated: May 29, 2025                                    **BERGER MONTAGUE PC**

*Michael Dell'Angelo*

Michael Dell'Angelo
*Counsel for Lead Plaintiffs and the Class*

Dated: May 29, 2025                                    **HUNTER TAUBMAN FISCHER & LI LLC.**

*Mark David Hunter*

*Mark D. Hunter*
*Counsel for Defendant Singularity*
*Future Technology, Ltd.*

8