**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEN GAO, CONGLI HUO, RUIBIN WANG, LUXIAO XU, Individually and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br><br>v.<br><br><br>SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIAOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., and GOLDEN MAINLAND, INC.,<br><br><br>Defendants. | Case No.: 1:22-cv-07499-BMC<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR DEFENDANT SINGULARITY TO SHOW CAUSE WHY THE COURT SHOULD NOT ENTER A MONEY JUDGMENT OR ALTERNATIVE REMEDY TO ENFORCE CLASS ACTION SETTLEMENT AGREEMENT**

Table of Contents

Page

I.      POSTURE OF THE SETTLEMENT..............................................................................1

II.     IRELEVANT BACKGROUND....................................................................................4

III.    ARGUMENT................................................................................................................8

        A.     Entry of Judgment is the Proper Remedy for Singularity's
               Breach of the Settlement Agreement.................................................................8

        B.     The Posture of the Settlement Does Not Affect the
               Court's Ability to Enter a Judgment to Remedy
               Singularity's Breach of the Settlement Agreement. ..........................................11

               a.     The Settlement Agreement Can (and Has Been)
                      Breached Prior to Court Final Approval of the
                      Proposed Class Action Settlement. ..........................................................11

               b.     The Court Can Order a Money Judgment That
                      Gives Full Relief to the Settlement Class Without
                      the Court Already Finally Approving the Settlement. ...............................13

               c.     The Court Alternatively May Fashion Appropriate
                      Equitable Relief.......................................................................................15

        C.     The Settlement Class Already Has Been Injured by
               Singularity's Breach of the Settlement Agreement,
               and the Injury is Continuing and Compounding. ..............................................16

## Table of Authorities

Page(s)

Cases

*BCM Development, LLC v. Oprandy,*
  490 Fed. Appx. 409 (2d Cir. 2013)......................................................................... 8, 9

*Dunston v. 243 DeKalb Ave. LLC,*
  764 F. Supp. 3d 54 (E.D.N.Y. 2025)..................................................................... 8, 11

*Governor Clinton Co. v. Knott,*
  120 F.2d 149 (2d Cir. 1941) ........................................................................................ 8

*Hallock v. State,*
  64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984) ...................................... 9

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.,*
  889 F.2d 1274 (2d Cir. 1989) ...................................................................................... 8

*Janneh v. GAF Corp.,*
  887 F.2d 432 (2d Cir.1989) ......................................................................................... 8

*Meetings & Expositions, Inc. v. Tandy Corp.,*
  490 F.2d 714 (2d Cir. 1974) ........................................................................................ 9

*Morales v. Fine Design Masonry, Inc.,*
  2024 WL 4120403 (E.D.N.Y. June 25, 2024) ........................................................... 16

*NML Capital, Ltd v Republic of Argentina,*
  699 F.3d 246 (2d Cir. 2012) ...................................................................................... 15

*Reich v. Best Built Homes, Inc.,*
  895 F. Supp. 47 (W.D.N.Y.1995)................................................................................. 8

*Rexnord Holdings, Inc. v. Bidermann,*
  21 F.3d 522 (2d Cir. 1994) .......................................................................................... 8

Statutes

28 U.S.C. § 1961(a) ...................................................................................................... 16

Rules

Fed. R. Civ. P. 23(a) and 23(b)(3) ................................................................................. 5
Fed. R. Civ. P. 60(4), (5), or (6) .................................................................................. 14
Fed. R. Civ. P. 69(a) ...................................................................................................... 8
N.Y. C.P.L.R. § 5004...................................................................................................... 16

ii

Lead Plaintiffs Ruibin Wang, Sen Gao, Luxiao Xu, and Congli Huo, respectfully submit this memorandum in support of their motion to require defendant Singularity Future Technology, Ltd. f/k/a Sino-Global Shipping America Ltd. ("Singularity") to show cause why the Court should not enter judgment in the amount of $8,525,000, plus interest, in favor of Lead Plaintiffs (on behalf of the Settlement Class) and against Singularity, or enter another appropriate remedy, to cure Singularity's breach of the Settlement Agreement by failing to fund the settlement escrow accounts.

The fact of Singularity's breach of the Settlement Agreement ("Settlement Agreement" or "SA") is undisputed. The applicable law is unambiguous. The injury already incurred by the Settlement Class is indisputable. Absent entry of judgment to cure Singularity's breach, or another appropriate remedy, final approval of the settlement (which the Court already has preliminarily approved) cannot occur.[1]

## I.    POSTURE OF THE SETTLEMENT

Lead Plaintiffs and Singularity entered into the written and fully executed Settlement Agreement. The Court preliminarily approved a settlement of the litigation in accordance with the terms of the Settlement Agreement. And the Court-approved Claims Administrator has launched a notice program to inform Settlement Class members of the terms of the settlement and their right to file a claim, opt out of the settlement, or object to the settlement.

Singularity has failed to perform a critical part of the settlement process. Singularity has not funded the settlement escrow accounts as required by the Settlement Agreement. Singularity agreed to provide consideration for the releases it will receive in the settlement in three

---

[1] As of this filing: Singularity has not funded the settlement; provided Lead Counsel a date by which it will fund the settlement; or, provided any evidence that it intends to fund the settlement.

components. The **first** component is $3 million, referred to as the Cash Settlement Amount. SA ¶ 1(e). The **second** component is $3.25 million, referred to as the Escrow Amount, which was intended to act as minimum guarantee against the third component. SA ¶¶ 1(s), 15. The **third** component of consideration is 6.5 million shares of Singularity stock, referred to as the Settlement Shares. SA ¶¶ 1(uu), 11.

The Escrow Amount and the Settlement Shares are related to each other in the context of the overall mix of consideration Singularity agreed to provide. After final approval of the settlement, Singularity was required to deliver the Settlement Shares for Lead Counsel to sell to the public, and to transfer the proceeds of the sale of the Settlement Shares to the Escrow Agent for distribution to the Settlement Class. The sale of the Settlement Shares is a means to raise funds in addition to the Cash Settlement Amount to deliver to the Settlement Class. The Escrow Amount ($3,250,000) exists as a form of insurance to protect the interests of the Settlement Class. Specifically, the Escrow Amount is designed to protect the Settlement Class against two possible scenarios. The first scenario would be Singularity's failure to deliver the Settlement Shares for any reason (for example, if its stock were delisted, or such other eventuality impacting the ability to sell the Settlement Shares). The second scenario would be that the Settlement Shares are delivered but Lead Counsel is unable to sell them for a minimum average price of $0.85 per share, SA ¶ 1 (mm), for a total of at least $5,525,000. Singularity agreed to deposit the Escrow Amount against which Lead Counsel could draw to make up any shortfall up to $3,250,000.[2] The Escrow Amount assures the availability of funds – up to $3,250,000 – if for any reason Lead Plaintiffs do not receive

---

[2] Singularity's shares were trading at approximately $0.96 per share at the time that the parties entered into the Term Sheet.

or are unable to dispose of the shares for minimum average share price of $0.85 cents. Thus, the expected total settlement amount is $8,525,000, with a minimum total value of $6,250,000.

The Settlement Agreement provides necessary sequencing for Singularity to provide these three components of consideration. Singularity agreed to transfer the Cash Settlement Amount and Escrow Amount after the execution of the Settlement Agreement and receipt of wire instructions. SA ¶ 10. It is typical in class action settlements for defendants to provide consideration to be held in escrow before the court considers whether to grant final approval of a settlement. It also is necessary, as defendants' consideration held in escrow typically is used to pay the expenses of the program to notify settlement class members of the terms of the settlement and the process to submit a claim, opt-out, or object, even if the court does not grant final approval of the settlement, or in the event of termination of the settlement. In this case, the Court authorized $250,000 of the Cash Settlement Amount to be used to pay the expenses of the Claims Administrator. SA ¶ 22.

Singularity failed to provide the Cash Settlement Amount and the Escrow Amount to the Escrow Agent as required under the Settlement Agreement.[3] Singularity did not request an extension of the deadline to fund the settlement, nor has it provided a date by which it will cure. Under these circumstances, the entire settlement is at risk. Lead Plaintiffs are compelled to protect the interests of the Settlement Class by seeking the Court's intervention. The proper remedy to cure Singularity's breach of the Settlement Agreement is the entry of a judgment for $8,525,000 - - an amount equivalent to the bargain Lead Plaintiffs negotiated for the benefit of the Settlement Class. Alternatively, the Court can order specific performance and require Singularity immediately to fund the settlement escrow accounts in the amount of $6,250,000, the sum of the Cash

---

[3] The Settlement Agreement requires Singularity to provide the Settlement Shares after final approval of the settlement. SA ¶ 11. Because the deadline for Singularity to provide the Settlement Shares has not occurred, Singularity has not breached that provision of the Settlement Agreement.

Settlement Amount and the Escrow Amount, which Singularity failed to transfer to the Escrow Agent on August 14, 2025, plus interest. Either a judgment or specific performance will protect the interests of the Settlement Class while the litigation proceeds to a final approval hearing for the settlement.

## II.    IRELEVANT BACKGROUND

On June 2, 2025, Lead Plaintiffs informed the Court that this matter was settled on a class-wide basis, subject to Court approval. ECF No. 108. On July 13, 2025, Lead Plaintiffs and Singularity executed a written settlement agreement. *See* EFC No. 119-3.

The Settlement Agreement requires Singularity to transfer the Cash Settlement Amount ($3,000,000) and the Escrow Amount ($3,250,000) (as defined by Paragraph Nos. 1(e) and (s) of the Settlement Agreement, respectively) to the Escrow Agent, Citibank, N.A., "no later than fourteen (14) calendar days after Singularity's Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of the finds to the Escrow Account (which includes Court approval of the Escrow Agent) . . . ." SA ¶ 10.

The Escrow Agent is required to invest the escrowed funds "exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government." SA ¶ 18. The Escrow Agent is further required to "reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates." *Id.*

The Settlement Agreement provides that, upon the Court's preliminary approval of the settlement, "Lead Counsel may pay up to $250,000 from the Settlement Fund, without further approval from Singularity or further order of the Court, all Escrow Agent Costs and Notice and Administration Costs actually incurred and paid or payable." SA ¶ 22. As discussed below, Notice Costs already are accruing.

As described further below, if the Court does not grant final approval of the settlement, the settlement funds held by the Escrow Agent, less any notice, administration costs, and taxes incurred, are to be returned to Singularity. SA ¶ 41.

On July 25, 205, Lead Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, with supporting declarations and exhibits. ECF No. 119. The Court granted Lead Plaintiffs' motion on July 30, 2025. ECF No. 120. In its Order, the Court: (a) approved the Settlement Agreement upon a preliminary finding that its terms are fair, reasonable adequate, and in the best interests of the settlement class; (b) confirmed that it will likely find that Lead Plaintiffs have satisfied the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) with respect to the proposed settlement class for purposes of settlement and judgment; and (c) and approved in form and substance Lead Plaintiffs' proposed notice plan, among other things.

On July 31, 2025, Lead Plaintiffs provided Singularity the information required under the Settlement Agreement to start the fourteen-day clock for Singularity to fund the Escrow Accounts pursuant to Paragraph No. 10 of the Settlement Agreement. *See* Email from Joel M. Sweet to Mark D. Hunter and Jenny Sardella, dated July 31, 2025, attached as Exhibit A. Singularity understood its payment obligations, as reflected in an email dated August 2, 2025, in which Singularity's counsel confirmed that he had received the payment information and that the "Settlement Agreement calls for the two wires to be sent within 14 calendar days. That would be Thursday,

5

August 14, 2025." *See* Email from Mark D. Hunter to Joel M. Sweet, dated August 2, 2025, Exhibit B.

In accordance with the Court-approved notice plan, on August 12, 2025, Simpluris, the Claims Administrator, initiated notice to the Settlement Class by establishing an interactive voice response system, which is a toll-free number with a pre-recorded phone message and the ability to connect callers to live agents to provide information about the settlement. On August 13, 2025, the Claims Administrator also launched a settlement website (https://singularitysecuritiessettlement .com/) to notify Settlement Class members of the proposed settlement. On the same day, the Claims Administrator mailed letters to approximately 3,650 securities brokers to inform them of the settlement so that they can inform their clients. Digital notice announcing the settlement, including online advertisements, began on August 15. Press releases were distributed on August 18, and print ads are scheduled to be published on August 25.

On August 14, 2025 – the deadline for Singularity to transfer funds to the Escrow Agent – Lead Counsel contacted Singularity's counsel to confirm that the transfer of funds would be made timely and to ensure that Singularity had all necessary information. *See* Email from Joel M. Sweet to Mark D. Hunter and Jenny Sardella, dated August 14, 2025, attached as Exhibit C. Singularity's counsel did not respond to Lead Counsel's outreach.

Without prior notice or a request for an extension of the funds transfer deadline – Singularity simply failed to transfer any funds. Only the next day, August 15th, did Singularity's counsel respond and offer an explanation for Singularity's failure to transfer the settlement funds to the Escrow Agent. Singularity's explanation was not emergent but rather related to an already pending judgment against the company. Singularity was well aware since at least June 25, 2025, *see* ECF No. 110, if not much longer, of the problem and its potential to interfere with Singularity's

6

settlement funding obligations. On July 16th, almost a month before the funding deadline, Singularity's counsel represented that Singularity intended to resolve the issue in a way that would not prevent this settlement from moving forward. *See* Email from Mark D. Hunter to Michael Dell'Angelo, dated July 16, 2025, Exhibit D. On August 17th, Singularity's counsel reiterated the explanation provided on August 15th, but did not provide a firm commitment or date by which Singularity would cure.

Singularity readily admits its failure to transfer the funds. *See* Letter of Mark D. Hunter to the Court, dated August 19, 2025, ECF No. 122. As of the filing of this motion, Singularity has not transferred the settlement funds and, therefore, remains in material breach of the Settlement Agreement.

On August 18, 2023, Lead Plaintiffs submitted a pre-motion letter requesting a conference concerning their anticipated motion seeking a remedy for Singularity's breach of the Settlement Agreement. ECF No. 121. Singularity responded the following day with a letter to the Court. ECF No. 122. On August 19, 2025, the Court denied Lead Plaintiffs' request for a conference as unnecessary and granted leave to Lead Plaintiffs to file this motion. In the Court's Docket Order, the Court instructed Lead Plaintiffs to address: (1) whether the settlement can be breached prior to this Court's approval of the proposed class action settlement; and (2) if so, how the Court can order a money judgment that gives full relief to the class without having approved the settlement.[4]

---

[4] The Court also instructed Lead Plaintiffs to address whether they are seeking a temporary restraining order or a preliminary injunction, or both, and what bond obligation the Court should impose on Lead Plaintiffs. These questions relate to Lead Plaintiffs' anticipated second motion, which will seek injunctive relief concerning Singularity's proposed merger (after which Singularity will no longer exist as an entity), and the threatened dissipation of Singularity's assets. Lead Plaintiffs intend to address those issues in other motion papers. Plaintiffs do not seek injunctive relief in this motion.

The final approval hearing is scheduled for December 17, 2025, approximately four months from now. ECF No. 119 at ¶ 21(f).

### III.    ARGUMENT

The Court should enter judgment as a matter of law against Singularity in the amount of $8,525,000, plus interest, as a remedy for Singularity's breach of the Settlement Agreement. Such a judgment, with the funds being deposited with the Court-approved Escrow Agent, is necessary to keep the settlement on track for final approval and to protect the interests of the members of the Settlement Class.

### A. Entry of Judgment is the Proper Remedy for Singularity's Breach of the Settlement Agreement.

The material facts are not disputed, and the relevant law is unambiguous. "A settlement, once reached, is a binding contract." *Reich v. Best Built Homes, Inc.*, 895 F. Supp. 47, 49 (W.D.N.Y.1995) (citing *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir.1989), *cert. denied*, 498 U.S. 865 (1990). A "settlement agreement is to be construed according to general principles of contract law." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). If the language of the contract is clear and unambiguous, a court can interpret the contract as a matter of law. *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

Where a defendant breaches a settlement agreement by failing to pay money owed under the settlement agreement, as this Court held in *Dunston v. 243 DeKalb Ave. LLC*, 764 F. Supp. 3d 54 (E.D.N.Y. 2025) (Cogan, J.), the remedy is a money judgment in the amount owed under the settlement agreement. *Id.* at 55 (citing *Governor Clinton Co. v. Knott*, 120 F.2d 149, 153 (2d Cir. 1941)). Once the judgment is entered, the plaintiff can proceed to execute the judgment like any other judgment creditor with a writ of execution or under Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. Article 52. *Id.*

8

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *BCM Development, LLC v. Oprandy*, 490 Fed. Appx. 409 (2d Cir. 2013) (quoting *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (citation omitted). "Stipulations of settlement are favored by the courts and not lightly cast aside." *Id.* (quoting *Hallock v. State*, 64 N.Y.2d 224, 230, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984)). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." *Id.*

Singularity's explanation for its breach – its contention that a creditor caused the imposition of restraints on Singularity's bank accounts, *see* ECF No. 122 – does not excuse the breach and was known to Singularity at the time that it entered into the Settlement Agreement. Specifically, the creditor's judgment entered April 21, 2025, *see* EFC Nos. 110, 110-1, precedes by months the parties' agreement to settle this case, which Lead Plaintiffs reported to the Court on June 2, 2025. ECF No. 108. Lead Plaintiffs entered into the Settlement Agreement in good faith and with the expectation that Singularity would perform its obligations under the Settlement Agreement.

Singularity has the resources to satisfy its $8,525,000 obligation under the Settlement Agreement. Singularity's most recently filed SEC Form 10-Q (for the quarter ended March 31, 2025), reflects that it holds $14,900,000 in unrestricted cash.[5] Singularity has sufficient resources to pay a $8,525,000 judgment *and* to satisfy the other creditor, which the creditor's counsel has represented is for $468,956.75 plus interest. ECF No. 110.

---

[5] *See* https://www.sec.gov/Archives/edgar/data/1422892/000121390025044191/ea0241827-10q_singularity.htm.

9

Singularity does not dispute that it has breached the Settlement Agreement. *See* ECF No. 122. Nor does Singularity offer a legal or fact-based defense of its breach. In its submission to the Court on August 19, 2025, Singularity argued merely that Lead Plaintiffs should pursue a different remedy – one that it prefers to an entry of judgment. *Id.* Singularity argued that entry of a judgment is not expressly authorized under the Settlement Agreement and instead Lead Plaintiffs must move to enforce a provision of the parties' Term Sheet executed on May 29, 2025. *See* ECF No. 122-1, Term Sheet, at ¶ 15. Singularity contends, incorrectly, that the Term Sheet survives the execution of the Settlement Agreement and that it provides the sole remedy for its breach.

Singularity nonetheless also acknowledges that the parties' July 13, 2025 Settlement Agreement contains an incorporation provision, which states:

> This Stipulation and its exhibits constitute the entire agreement among Lead Plaintiffs and Singularity concerning the Settlement and this Stipulation and its exhibits. All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation, or its exhibits, other than those contained and memorialized in such documents.

SA at ¶ 53. Despite this unambiguous provision stating that the Settlement Agreement, which post-dates the Term Sheet, is the "entire agreement" between the parties concerning the settlement, and Singularity's express acknowledgment that "no other agreements" have been made other than the those in the Settlement Agreement, Singularity contends that Lead Plaintiffs may only pursue a remedy under the preceding Term Sheet and that Lead Plaintiffs are prohibited from seeking a legal remedy for breach of the Settlement Agreement. Singularity offers the Court no decisional law to support its legal position.

Singularity's argument is wrong. The Settlement Agreement supersedes the Term Sheet and is the only legally enforceable document governing the parties' agreement to settle this litigation.

The proper remedy for breach of the Settlement Agreement is not to revert to clauses of a prior agreement that no longer has legal effect. Lead Plaintiffs are entitled – and obligated as representatives of the Settlement Class – to pursue the proper legal remedy, which is a money judgment in the amount to which the Settlement Class is entitled under the now breached Settlement Agreement. *See Dunston*, 764 F. Supp. 3d at 55.

Lead Plaintiffs' motion is properly before this Court. The action is still pending and has not been dismissed. Lead Plaintiffs and Singularity agreed that "[a]ny action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court." SA ¶ 57. The parties also agreed that the laws of the State of New York would apply to disputes concerning the Settlement Agreement. *See* SA ¶ 56.

**B. The Posture of the Settlement Does Not Affect the Court's Ability to Enter a Judgment to Remedy Singularity's Breach of the Settlement Agreement.**

In its Docket Order, the Court instructed Lead Plaintiffs to address in this motion: (1) whether the settlement can be breached prior to this Court's approval of the proposed class action settlement; and (2) if so, how the Court can order a money judgment that gives full relief to the class without having approved the settlement. To respond to the Court's questions, we distinguish the Settlement Agreement, a document memorializing the parties' agreement to resolve the litigation, from the settlement of the litigation, which requires the Court's approval.

**a. The Settlement Agreement Can (and Has Been) Breached Prior to Court Final Approval of the Proposed Class Action Settlement.**

The Settlement Agreement is a binding agreement between Lead Plaintiffs and Singularity and has been since it was executed on June 13, 2025, before its consideration by the Court. The Settlement Agreement sets forth an array of obligations undertaken voluntarily by the respective parties that each must perform *before* the Court decides whether to grant preliminary and final

11

approval of the class action settlement. The parties' compliance with the Settlement Agreement is not dependent on whether the Court has granted final approval of the proposed settlement. On the contrary, final approval can happen only if the parties satisfy their pre-final approval obligations under the Settlement Agreement, including most significantly Singularity's obligation to fund the settlement.

For example, before preliminary approval, the Settlement Agreement obligated Lead Plaintiffs to file papers seeking preliminary approval of the settlement with fourteen days after the execution of the agreement, SA ¶ 3, and to seek appointment of a Claims Administrator. SA ¶ 26. Before final approval, the Settlement Agreement obligated Lead Plaintiffs to cause the Claims Administrator to administer a Court-approved notice program, SA ¶ 27, and to file a motion for final approval, SA ¶ 37, among other responsibilities.

Chief among Singularity's obligations to be performed before the Court considers whether to grant final approval of the settlement is to fund the settlement by transferring the Cash Settlement Amount and the Escrow Amount (totaling $6,250,000) to the Court-approved Escrow Agent "no later than fourteen (14) calendar days after Singularity's Counsel's receipt from Lead Counsel [of payment instructions]." SA ¶ 10.[6] As noted, and as acknowledged by Singularity's counsel, that deadline was August 14, 2025. Singularity's duty to transfer the Cash Settlement Amount and Escrow Amount has passed and Singularity has breached by failing to perform, which breach must be cured to protect the interests of the Settlement Class as they participate in the ongoing settlement process.

---

[6] Unlike most settling securities fraud class actions, this settlement is to be funded by the corporate defendant without a contribution from an insurer.

12

b. **The Court Can Order a Money Judgment That Gives Full Relief to the Settlement Class Without the Court Already Finally Approving the Settlement.**

Full relief for the Settlement Class requires a judgment in the amount of $8,525,000, which is the value of the bargain Lead Plaintiffs negotiated on behalf of the Settlement Class. As noted above, in addition to the Cash Amount and Escrow Amount, the Settlement Agreement requires Singularity to deliver the Settlement Shares (6,500,000 shares of Singularity stock) *after* the Court grants final approval of the settlement. SA ¶ 11 ("Within ten (10) business days **after**: (a) entry of an order granting final approval of the proposed settlement, and the Parties achieve compliance with Section 3(a)(10) of the Securities Act of 1933 with regard to the Settlement Shares; or (b) the date Singularity' Counsel's receipt from Lead Counsel with the information necessary to identify the Settlement Brokerage Account and all necessary information for transferring the Settlement Shares to the Settlement Brokerage Account, **whichever is later**, Singularity agrees to deliver the Settlement Shares to the Settlement Brokerage Account in accordance with the written instructions of Lead Counsel.") (emphasis added).

If Singularity had not breached the Settlement Agreement and the Court granted final approval to the settlement, the full value of the settlement to the Settlement Class would be at least $8,525,000 – the sum of the Cash Settlement Amount ($3,000,000) and the Settlement Shares (6,500,000 shares of Singularity stock). Assuming an average share price of $0.85, the value of the Settlement Shares would be $5,525,000 (6,500,000 shares multiplied by $0.85 cents per share). The Settlement Agreement reflects that the parties contemplated the value of the Settlement Shares for the Settlement Class would be $5,525,000 or more. *See* SA ¶ 13 (in the event a reverse split, the "Settlement Shares/Put Option shall not be less than $5,850,000 as of the Effective Date."). The parties agreed to a "put" option provision that would guarantee that Lead Plaintiffs would be

13

able to sell the Settlement Shares for a minimum average price of $0.85 per share. To protect that expectation, Singularity agreed to escrow $3,250,000 (the Escrow Amount) to support the $5,525,000 value of the Settlement Shares for the benefit of the Settlement Class.[7]

Pursuant to the Settlement Agreement, only if the Court grants final approval, would Singularity be obligated to issue the bargained for 6,500,000 shares. The Court can order a money judgment now in the amount of $8,525,000, which would give the Settlement Class full (but not the maximum possible) relief. Singularity's interests will be fully protected in the event the Court does not grant final approval of the settlement. The parties contemplated and included terms in the Settlement Agreement to address what will happen if the Court does not grant final approval of the settlement. If the Court does not grant final approval either Lead Plaintiffs or Singularity may exercise the right to terminate the Settlement Agreement. SA at ¶ 42. If either party terminates the Settlement Agreement, the funds held by the Escrow Agent, less any notice, administration costs, and taxes incurred, are to be returned by the Escrow Agent to the funding party (which in this case would be Singularity), and the parties revert to their respective positions in the litigation as of May 29, 2025. SA ¶ 41.

Thus, if the Court ultimately does not grant final approval, the Escrow Agent will return the settlement funds (net of expenses) to Singularity, pursuant to the terms of the Settlement Agreement. Or, alternatively, if the Court decides not to finally approve the settlement, it can vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b)(4), (5), or (6). What is

---

[7] Singularity's share price closed at $1.00 per share on August 21, 2025. At that share price, the Settlement Shares would be worth $6,500,000, and the total value of the settlement would be $9,500,000. If Singularity were to fail to deliver the Settlement Shares, or the shares cannot be sold at the minimum average price of $0.85 per share, the $3,250,000 Escrow Amount will be paid to the Settlement Class, guaranteeing a minimum total recovery for the Settlement Class of $6,250,000.

certain, however, is that if Singularity does not fund the settlement, there will be no finally approved settlement, payment for the costs of the notice plan will be disputed, and the parties and the Court will revert to active litigation.

### c.  The Court Alternatively May Fashion Appropriate Equitable Relief.

If the Court elects not to enter judgment in the amount of $8,525,000 to provide the Settlement Class with the consideration commensurate to the bargain Lead Plaintiffs negotiated in the Settlement Agreement, it may fashion alternative equitable remedial measures. For example, "[s]pecific performance may be ordered where no adequate monetary remedy is available and that relief is favored by the balance of equities, which may include the public interest." *NML Capital, Ltd. v Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012) (citations omitted). Once a court determines that the party to an agreement is in breach and that equitable relief is warranted, "the court ha[s] considerable latitude in fashioning the relief." *Id.* (citations omitted). "The performance required by a decree need not, for example, be identical with that promised in the contract." *Id.* "Where 'the most desirable solution' is not possible," a court "may affirm an order of specific performance so long as it achieves a 'fair result' under the 'totality of the circumstances.'" *Id.* citations omitted).

A judgment in the amount of $8,525,000 is the most appropriate relief to address Singularity's breach and to protect the interests of the Settlement Class. Alternatively, the Court can fashion equitable relief such as ordering Singularity to fund the escrow accounts with the Cash Settlement Amount and the Escrow Amount by a near date certain, plus interest from the date of the breach (August 14, 2025).

**C. The Settlement Class Already Has Been Injured by Singularity's Breach of the Settlement Agreement, and the Injury is Continuing and Compounding.**

The Settlement Class already has been injured by Singularity's breach of the Settlement Agreement. Had Singularity transferred the settlement funds to the Escrow Agent as was required under the Settlement Agreement, the settlement funds would be secured, invested, and earning interest. The Settlement Class is further injured because, as described above, the Court-approved notice plan informing Settlement Class members of the proposed settlement is underway. First, the Settlement Agreement provides for the Claims Administrator to be paid from the settlement funds. Lead Counsel, complying with their own obligations under the Settlement Agreement and with the Court's order preliminarily approving the settlement, ECF No. 120, and the Claims Administrator, have acted in good faith with the expectation that the Claims Administrator will be paid with the settlement funds. The source of funds and ability to pay the Claims Administrator is now at uncertain. Second, Settlement Class members are now in the process of reviewing information about the settlement, determining whether to participate, opt out, or object, and completing claim forms. Because of Singularity's breach of the Settlement Agreement, all the Settlement Class members' time and effort will be wasted, along with the significant time and expenses already incurred by the Claims Administrator, and mass confusion will ensue among Settlement Clas members.

Lead Plaintiffs respectfully request that the Court require Singularity to show cause why the Court should not enter judgment, as a matter of law on undisputed facts, against Singularity and in favor of Lead Plaintiffs (on behalf of the Settlement Class), in the amount of $8,525,000, plus interest.[8]

---

[8] Lead Plaintiffs (on behalf of the Settlement Class) are entitled to an award of both pre- and post-judgment interest on the money judgment. *See, e.g.*, *Morales v. Fine Design Masonry, Inc.*, 2024

16

Dated: August 22, 2025

**BERGER MONTAGUE PC**

/s/ *Michael Dell'Angelo*
Michael Dell'Angelo (*pro hac vice*)
Joel M. Sweet (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: mdellangelo@bergermontague.com
        jsweet@bergermontague.com

*Lead Counsel for Lead Plaintiffs*


**KIRBY McINERNEY LLP**
Ira M. Press
Sarah Flohr
250 Park Avenue, Suite 820
New York, NY 10177
Tel: (212) 371-6600
Email: ipress@kmllp.com
        sflohr@kmllp.com

*Local Counsel for Lead Plaintiffs*

---

WL 4120403, at *5 (E.D.N.Y. June 25, 2024), report and recommendation adopted, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024) (entering judgment for unpaid amount owed under settlement and awarding pre- and post-judgment interest). Pre-judgment interest should be determined using a rate of 9 percent, which is consistent with the rate under New York statute, N.Y. C.P.L.R. § 5004. Post-judgment interest should be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered, pursuant to 28 U.S.C. § 1961(a).

## CERTIFICATE OF SERVICE

I, Joel M. Sweet, hereby certify that a true and correct copy of the following documents were electronically filed and served. Notice of this filing will be sent by email to all parties via the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System:

1. Lead Plaintiffs' Motion for Defendant Singularity to Show Cause Why the Court Should Not Enter a Money Judgment or Alternative Remedy to Enforce Class Action Settlement Agreement;

2. Memorandum in Support;

3. Declaration of Joel M. Sweet;

4. [Proposed] Order to Show Cause.

Dated: August 22, 2025              **BERGER MONTAGUE PC**

*/s/ Joel M. Sweet*
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: jsweet@bergermontague.com

18