1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
CRIVELLARO, et al,                    :

                                           22-CV-7499(BMC)

        Plaintiffs,          :

                                           United States Courthouse
  -against-                  :         Brooklyn, New York

SINGULARITY FUTURE TECHNOLOGY
LTD., et al,                          :

                                           August 28, 2025
        Defendant.          :         2:30 p.m.
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORDER TO SHOW CAUSE
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:     BERGER MONTAGUE PC
                        1818 Market Street, Suite 3600
                        Philadelphia, PA 19103
                        BY:  MICHAEL DELL'ANGELO, ESQ.

                        KIRBY MCINERNEY
                        250 Park Avenue, Suite 820
                        New York, NY 10177
                        BY:  IRA M. PRESS, ESQ.

For Deft Singularity:   HUNTER TAUBMAN FISCHER LLC
                        255 University Drive
                        Coral Gables, FL 33134
                        BY:  JENNY JOHNSON-SARDELLA, ESQ.

For Deft Yang Jie:      BECKER NEW YORK P.C.
                        45 Broadway, 17th Floor
                        New York, NY 10006
                        BY:  JENNIFER L. KARNES, ESQ.
                             SAMANTHA A. LESSER, ESQ.

Court Reporter:         Andronikh M. Barna
                        225 Cadman Plaza East
                        Brooklyn, New York
                        (718) 613-2178

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

Proceedings                                    2

THE COURTROOM DEPUTY:  Good afternoon.

Civil cause for order to show cause.  22-CV-07499.
Crivellaro versus Singularity Future Technology Ltd., et al.

Please state your appearance for the record,
starting with the plaintiff.

MR DELL'ANGELO:  Good afternoon, Your Honor.

Michael Dell'Angelo from the law firm of
Berger Montague on behalf of the plaintiffs.

THE COURT:  Okay.

MR. PRESS:  Good afternoon, Your Honor.

Ira Press from the law firm of Kirby McInerney, also
on behalf of the plaintiffs.

THE COURT:  Okay.

MS. JOHNSON-SARDELLA:  Good afternoon, Your Honor.

Jenny Johnson-Sardella of the law firm Hunter
Taubman Fischer & Li for Defendant Singularity Future
Technology Ltd.

I also have beside me the CEO of the company,
Sherry Yang.

THE COURT:  Okay.

MS. KARNES:  Good afternoon, Your Honor.

Jennifer Karnes of Becker New York, P.C.  I'm here
with my co-counsel, Samantha Lesser, and we represent
Defendant Yang Jie.

I note that we are not a party to this order to show

Andronikh M. Barna, Official Court Reporter, RPR, CRR

cause.

THE COURT:  Okay.

Okay.  Let me ask Singularity first.

I got this letter from Huang saying I should lift the restriction on Singularity paying the money that's contained in the restraining notice.  So, I did that.  And there's an implication in your response that Huang is no longer a problem.

Am I right about all of that?

MS. JOHNSON-SARDELLA:  Yes, Your Honor.

As of the date of that letter, Huang does not represent a problem.  It's my understanding that Huang's counsel has also forwarded letters to the banks and so far one of the bank's restrictions have been lifted, but not as to all of the accounts.  But I can't represent or tell you how quickly that will happen, but so far one has lifted.

THE COURT:  Okay.

So is the only reason the money hasn't been paid into escrow because the banks haven't gotten their act together in lifting the restraint?

MS. JOHNSON-SARDELLA:  Correct, Your Honor.  My understanding from the company is that they have already initiated a transfer from where the money is coming from, which is in a bank in Djibouti, Africa, and they initiated right after the settlement was inked with Huang to start that

Proceedings                                4

process.

THE COURT:  Okay.  And is all the money coming from overseas, whether Africa or someplace else?

MS. JOHNSON-SARDELLA:  That is my understanding, Your Honor.

THE COURT:  Okay.

MS. JOHNSON-SARDELLA:  And the issue is, is that those banks overseas need first-party wires so it's coming into Singularity's account here in the States.

THE COURT:  When do you expect the money to hit the United States?

MS. JOHNSON-SARDELLA:  What I understand, Your Honor, is that it does take a little time.  There is 3 million, I believe, that should be coming in before the 20th of September.  That's the representation I've had and, Your Honor, if you want to ask the CEO as well.  There are restrictions on how much money leaves at a time and the company is kind of at the mercy of the central bank in Djibouti.  But again, they've started the process.

THE COURT:  Okay.  You understand your client is in breach of the settlement agreement, right?

MS. JOHNSON-SARDELLA:  Well, from our papers --

THE COURT:  It was supposed to be done, right?

MS. JOHNSON-SARDELLA:  Understood, Your Honor.  According to the settlement agreement.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

But what I am here to say is that the relief is not what the plaintiffs are asking for, as was noted in our response papers.

THE COURT:  Say that again?

MS. JOHNSON-SARDELLA:  The relief that the plaintiffs are asking for in their motion for the order to show cause I guess is where we differ, which was argued in our papers, in our response.

THE COURT:  Okay, but there is an acknowledged breach because this was supposed to happen.

MS. JOHNSON-SARDELLA:  It was supposed to happen, yes, on August 14th.

THE COURT:  Okay.

MS. JOHNSON-SARDELLA:  I believe was the date.

THE COURT:  Okay.  Let me say this to the plaintiffs:  I can't give you a judgment.

First of all, I don't know what you would do with it.  If the money is overseas, what are you going to execute on?  I mean, you can't take it over to Chase and say give me their money.  Chase isn't holding their money.  So, it's not practical to ask me for a judgment.

But even if it were practical, if Chase had all the money, I still wouldn't give you a judgment because I haven't approved the settlement.  So, that's not feasible.

The most you can get me to do is to order them to

Proceedings                                        6

put the money into the escrow where it belongs plus the interest that has accrued from them not doing it at the time they were supposed to.  That will be an injunctive order in the nature of specific performance.  It's the only remedy available because there are no United States assets that I know of.

And then if they don't do that, I will put this young lady here, or someone else from Singularity, into jail until they send the money over.

That's the remedy.  Right?  I mean, the company is ordered to do it.  If they don't do it, they're in contempt of court.  If they're in contempt of court, the officer is responsible for nonperformance, they suffer the sanctions personally.

Isn't that the remedy?

MR. DELL'ANGELO:  Understood, Your Honor.

From our perspective and in seeking this relief, first, it was unknown to us where the funds resided.  So, you know, we have access or we have some insight from the SEC filings, which we've noted and provided to the Court, which indicated there's about $15 million of unrestricted cash.  To my knowledge, they don't indicate that those funds were ever seized.  I'm not sure that we've heard, frankly, Your Honor, that all of the available funds are overseas.  It sounds like some of the funds are coming from --

Proceedings                                    7

THE COURT:  Well, Counsel just told me that.

MR. DELL'ANGELO:  No, I understand that Counsel said that funds are coming from Djibouti.

I -- and I apologize if I just didn't --

THE COURT:  What I'm asking her is:  Are there funds in the United States?

MS. JOHNSON-SARDELLA:  It is -- my understanding is that there aren't adequate funds to pay what needs to be paid into the escrow and that is why the funds are coming from Djibouti.  The company has, as I said, has initiated, as of Monday, 3 million to come here into an account that is -- the restrictions are being lifted, but they initiated that as soon as possible, on Monday, after entering into the settlement with Huang, which is --

THE COURT:  Why weren't they -- oh, I see.  Because Huang was holding things up.

MS. JOHNSON-SARDELLA:  Correct, Your Honor.

THE COURT:  But, you know, that also doesn't make sense to me.

Oh, maybe it does.  Huang had served the restraining notice on Singularity, and so Singularity was prohibited from transferring funds, even if the funds were in Africa.

MS. JOHNSON-SARDELLA:  That's my understanding of how those notices work, Your Honor.

THE COURT:  Okay.  I think this all hinges upon

Andronikh M. Barna, Official Court Reporter, RPR, CRR

Proceedings                                                    8

Singularity not presently having the funds in the United States.

How about on Monday you take a 30(b)(6) deposition of a prepared witness for Singularity that says under oath that there are insufficient funds in the United States to fund the escrow and describes the steps that are being taken to get the money out of Africa and into the escrow.

MR. DELL'ANGELO:  I'd be happy to do that, Your Honor.  We may have trouble getting a reporter just because I believe Monday is maybe a holiday.  But if we can find a reporter to do it on Monday, I'd be more than happy to do it.

THE COURT:  Well, I forgot about the holiday for some people.  Tuesday.  Let's say Tuesday.

MR. DELL'ANGELO:  Okay.

THE COURT:  And Singularity has the obligation to produce a witness -- maybe this young lady here, maybe somebody else -- who knows all the answers.  Okay?  Who knows how much money Singularity has in this country, if any, and can say we don't have enough to fund the escrow because we only have $6.75 and can say here is how the process works in Africa to get the money here and here is how long it will take.  Singularity must produce a witness who can say that.  Because if it doesn't, the witnesses it does produce is going to be the one that I focus my contempt order on.

Proceedings                                           9

MS. JOHNSON-SARDELLA:  Your Honor, may I just note that if we're able to produce someone on that short notice -- and I understand the Court's desire to press this -- that witness, unless they're an expert on Djibouti laws, there may still be some things that they might not be able to answer because I believe that they still are at the mercy of the central bank and what it decides at the moment.

THE COURT:  Well, you don't have to produce just an in-house Singularity person.  Someone is obviously advising you on the Djibouti process.  It might be an outside lawyer, it might be an outside accountant.  You can designate that person as a 30(b)(6) witness.  Get them to come forward in addition to an employee of Singularity who may not be as familiar with the process.  Whoever is giving you the advice on how to get the money, have that person come and explain how it's going to happen.

MS. JOHNSON-SARDELLA:  With that being said, Your Honor, I don't -- again, I don't know if Tuesday is going to be feasible to have maybe even multiple people to make sure that we can respond to everything that --

THE COURT:  You know, one reason I'm trying to do it quickly is because you are accruing interest every day you don't pay the money.

MS. JOHNSON-SARDELLA:  Understood.

And I believe that the parties, though, contemplated

Proceedings                                              10

that in paragraph 15 of the term sheet.  It's something that they understood and understood to be bound to.

THE COURT:  Yes, but you still don't want to lose that money.  I mean, I understand we can calculate the interest and you'll have to pay it at some point, but the sooner you get it paid the better.

If you want until Thursday because you've got to bring in an outside witness to be your 30(b)(6) witness in addition to whoever from the company is a 30(b)(6) witness, fine, you can have until Thursday.

MS. JOHNSON-SARDELLA:  Thank you, Your Honor.

THE COURT:  What else can I do for you?

MR. DELL'ANGELO:  Two things, Your Honor.

With respect to the two -- we can do Thursday, of course.  But with respect to the Tuesday and Thursday distinction or even doing this now, I would just note that the Court's order to show cause at Docket 142 does require the CEO or another Singularity officer with knowledge of Singularity's obligations under the settlement agreement to be present.  So I would think that if that hasn't happened with respect to all of the questions that the Court is suggesting happen, the 30(b)(6), it could certainly happen by Tuesday, but we can wait until Thursday.

I would like to ask the Court's indulgence on one thing with respect to the 30(b)(6) so we don't end up with a

Proceedings                                11

dispute when it does happen, whether that's Tuesday or Thursday.

So, in our premotion letter at Docket 121, in the context of our discussion regarding the possibility of seeking a restraining order, one thing that we did raise is that on June 23rd, 2025, Singularity filed a proxy statement that talked about a number of corporate actions it may take.  One of those actions that gives us grave concern is the company is seeking to move its incorporation to the British Virgin Islands.  And it says explicitly in that proxy that two of the things that will happen if the incorporation is moved to the British Virgin Islands, are, one, that it would not be subject to the jurisdiction of courts in the United States and, two, that it would be unlike -- that anybody holding a judgment would be unlikely to enforce it.  So I would simply ask, Your Honor, if we may, at the 30(b)(6), inquire about the status of that as well.

THE COURT:  Yes, sure.  Absolutely.

MR. DELL'ANGELO:  Thank you, Your Honor.

THE COURT:  I mean, I was a little surprised that in the order to show cause you presented me with there wasn't a restraining notice, a temporary restraining order prohibiting them from consummating that transaction until you got a better feel of what was going on.  But you didn't ask for that and they haven't had a chance to respond to that because you

Andronikh M. Barna, Official Court Reporter, RPR, CRR

Proceedings                                    12

didn't ask for that, so I'm not doing that.  But by all means, next Thursday when this deposition is taken, let's include that in the topics to be discussed.

Because I want to make it clear to Singularity:  If that transaction is going to denude Singularity of the ability to consummate the settlement, then I will issue whatever orders I can to stop that transaction from happening.  And again, Singularity should remember that anyone who acts in violation of this Court's orders on behalf of Singularity is personally exposed to sanctions if it violates -- if that person violates the orders of this Court.  Okay?  So nobody ought to think that they're going to slip out by going to BVI. We will find you.

MR. DELL'ANGELO:  Your Honor, may I raise one other point with respect to the one that you just made?

My understanding from speaking to Counsel, not -- Mr. Hunter, is that the C-suite of the company all reside or are citizens of China, and so I guess there is a concern that if the Court were to try to make somebody personally liable, they'd all be effectively beyond the reach.  So, we have someone here.  One thought is the Court could suggest or, you know, order that person to not leave the country until we have a resolution.

THE COURT:  That's too strong.  I can't do that.

I mean, the fact of the matter is, from the day this

Andronikh M. Barna, Official Court Reporter, RPR, CRR

Proceedings                                      13

case was filed I always thought you had a blood-out-of-a-stone problem.  And that's just the nature of the investment that your clients chose to make.  So, there's only so much I can do for you.  And you may have to go to China.  Good luck with that.

MR. DELL'ANGELO:  Understood, Your Honor.

THE COURT:  But I can't help with that.

MR. DELL'ANGELO:  Understood.

And just while we're together, I understand your perspective on the settlement agreement and the ability to enter a judgment now, but one thing I would note that I think maybe, you know, was sort of raised in the response and just to clarify, what Rule 23(e)(2) says is that final approval is necessary to make the settlement binding on the class members, but the settlement agreement has a number of steps that are conditions precedent to final approval, such as the transfer of the funds that we have at issue, hiring an administrator, issuing notice.  Right?  So the settlement agreement does not, in our view, have to be approved by the Court in order for things within the settlement agreement to take effect.

THE COURT:  I don't really see it that way.  Because what if, for example, I gave you the judgment you're looking for -- which again, I don't know what you would do with it at this stage -- and I gave you the judgment and I look at the settlement and I found, for example, this isn't a settlement

Andronikh M. Barna, Official Court Reporter, RPR, CRR

for the investors, this is a settlement for the attorneys representing the investor class and I'm not going to approve it for that reason.  Then what happens?  You got a judgment. You got a final judgment.

MR. DELL'ANGELO:  Well, I think there's a solution to that.  And it comes in two parts.

First of all, the settlement agreement explicitly provides that if the Court does not grant final approval, that the parties -- either party has the right to terminate the settlement and that we, the plaintiffs and the escrow agent, have an obligation to return the escrowed funds less the administration costs to $250,000.

And two, under Rule 60(4), (5), or (6), the Court can vacate the judgment.

THE COURT:  I know you said that, but I don't agree with you.

I mean, first of all, once the judgment is entered, all other deals are off.  That's a judgment.  It's a final judgment, the case is over, that's it.

Secondly, there's no such thing, in my view, as a provisional judgment; that is, a judgment that can be yanked back.  And I don't know what provision of Rule 60 would allow me to do that.  It's not a mistake, it's not an unforeseen circumstance.  None of the six criteria in Rule 60 would fit that situation.  So, once you get your judgment, I don't go

Proceedings                                    15

forward with a class action hearing, I don't do anything; it's over, and that's why I can't do it.

MR. DELL'ANGELO:  Understood.

We interpreted (6) of Rule 60 to be a broad provision, you know, within the Court's discretion.

THE COURT:  You know, it's broad, but I just don't see it as that broad.  Judgments are sacrosanct and they're not negotiating tools to get you to a better place.

MR. DELL'ANGELO:  Understood, Your Honor.

And I think part of the way, just so you understand our perspective, we also looked at it through the lens of Rule 23(b) in terms of how the Court is preliminary approved and as Rule 23 has evolved in the recent amendments.  Granted, preliminary approval requires a fairly surgent review and a high likelihood the final approval would be granted, so --

THE COURT:  Yes.  I mean, especially in a case like this, frankly, for the reason I said, that this was always a dicey settlement.  I'm not saying I have any problems with it; I haven't looked at it.  But I am going to look at it hard because the company is obviously so marginal that I just don't know what the investors are going to get out of this.

Again, I'm not disparaging the settlement at all, because I haven't looked at it, but I will look at it hard and that's why I don't want to jump to a judgment that obviates the needs to look at it hard, in my view.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

16

Okay.  Anything else we need to cover?

MS. JOHNSON-SARDELLA:  Your Honor, I just want to -- I don't know if it's appropriate right now or if it's something that I should just discuss with Counsel, but since this 30(b)(6) deposition is going to happen rather quickly, in order for that to happen I just want to make the note that whether or not it can be handled remotely.  For example, the CEO has flown in, I've flown in, I --

THE COURT:  I think we can do it remotely.

If there is a problem -- forget about a problem happening remotely.  The technology will work.

If there's a problem with the witnesses and the plaintiffs don't get the information to which they're entitled, it's not going to matter whether it was remote or in person, my dissatisfaction will be at the same level.

So yes, I think considering a company in Singularity's position, let's save the money and do it by Zoom, if possible.

MS. JOHNSON-SARDELLA:  Thank you, Your Honor.

MR. DELL'ANGELO:  Thank you, Your Honor.

THE COURT:  Thank you, all.  We are adjourned.

(Matter concluded.)

Andronikh M. Barna, Official Court Reporter, RPR, CRR
I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
/s/ Andronikh M. Barna  August 29, 2025