**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEN GAO, CONGLI HUO, RUIBIN WANG, LUXIAO XU, Individually and on behalf of all others similarly situated,<br><br><br><br>Plaintiffs,<br><br><br>v.<br><br><br><br>SINGULARITY FUTURE TECHNOLOGY, LTD. F/K/A SINO-GLOBAL SHIPPING AMERICA LTD., YANG JIE, LEI CAO, ZHIKANG HUANG, TUO PAN, XIAOHUAN HUANG, JING SHAN, TIELING LIU, JING WANG, LEI NIE, JOHN LEVY, THOR MINER, INC., and GOLDEN MAINLAND, INC.,<br><br><br><br>Defendants. | Case No.: 1:22-cv-07499-BMC<br><br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' MOTION**
**TO ENFORCE CLASS ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................................. 1

II.   RELEVANT BACKGROUND ........................................................................................ 2

III.  THE SETTLEMENT AGREEMENT ............................................................................ 7

IV.   ARGUMENT .................................................................................................................... 8

      A.    The Court Should Order Singularity to Obtain the
            Contested Funds, Transfer Them to the Escrow Agent,
            and Produce Corroborating Records. ..................................................................... 9

      B.    The Court Should Order Singularity to Pay Interest on the
            Contested Funds at the Rate It Agreed to Pay. ................................................... 13

      C.    The Court Should Enjoin Singularity From Taking Any
            Further Steps Toward Completing Its Merger With Its
            British Virgin Islands Subsidiary. ...................................................................... 13

      D.    The Court Should Require Singularity to File Weekly
            Reports Concerning its Progress in Securing the Contest
            Funds and Transferring Them to the Escrow Accounts. ..................................... 16

V.    CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                              Page(s)

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015) ........................................................................................ 15

*Brainwave Science, Inc. v. Arshee, Inc.*,
  2021 WL 6211630 (Dec. 14, 2021 E.D.N.Y) ............................................................ 15

*NML Capital, Ltd. v Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) .................................................................................... 8, 9

<u>Rules</u>

Fed.R.Civ.P.  23(a) and 23(b)(3) .................................................................................... 3

## I.    INTRODUCTION

More than a month has passed since Singularity—without advance notice or explanation—ignored the August 14 deadline to fund the settlement Escrow Accounts, as was required by the parties' preliminarily approved settlement agreement. Since August 14, Lead Plaintiffs filed a motion to cure the breach, the Court held a show cause hearing, and Singularity appeared for a Rule 30(b)(6) deposition to answer questions about the status of the settlement payments and its planned merger that may have the effect of divesting this Court with authority over the settlement. Lead Plaintiffs filed this motion because Singularity has failed to fund the settlement and refused to agree to reasonable conditions to assure its compliance with the clear, unambiguous terms of the settlement.

Singularity has refused to provide documents to corroborate its claim that a portion of the settlement funds are on the way to the escrow accounts, or even that the funds exist. Singularity's Chief Executive Officer, Jia Yang, has little or no personal involvement in remedying Singularity's breach of the settlement agreement. Ms. Yang's knowledge about Singularity's effort to fund the escrow accounts is limited to information she receives from a man in China who communicates with her primarily through the Chinese encrypted social media app WeChat.

Lead Plaintiffs do know the following: (1) Singularity breached the settlement agreement by failing to timely fund the settlement escrow accounts putting the preliminarily approved settlement is in jeopardy; (2) Singularity does not know when the first $3 million of the settlement funds (referred to in this brief as the "Contested Funds") will be transferred to the escrow accounts; and (3) as of the date of the deposition, Singularity still had not requested that its bank in Djibouti transfer the remaining $3.25 million of the Contested Funds.

The negotiated settlement is at risk of collapse. Lead Plaintiffs Ruibin Wang, Sen Gao, Luxiao Xu, and Congli Huo, respectfully submit this memorandum in support of their motion to enforce their settlement agreement by curing Singularity's breach of the settlement funding provisions of the settlement agreement. Lead Plaintiffs' requested relief is reasonable, appropriate, and would impose only a light burden on Singularity. Absent entry of an order compelling Singularity to fund the settlement escrow accounts and provide transparency concerning its efforts, the final approval hearing for the settlement—which is scheduled for December 17, 2025—may never occur, and the case will return to a litigation posture.

## II.    RELEVANT BACKGROUND

On June 2, 2025, Lead Plaintiffs informed the Court that Lead Plaintiffs and Singularity negotiated a class-wide settlement, subject to Court approval. ECF No. 108. On July 13, 2025, Lead Plaintiffs and Singularity executed a written settlement agreement ("Settlement Agreement"). *See* EFC No. 119-3.

The Settlement Agreement requires Singularity to transfer the Cash Settlement Amount ($3,000,000) and the Escrow Amount ($3,250,000) (as defined by Paragraph Nos. 1(e) and (s) of the Settlement Agreement, respectively) to the Escrow Agent, Citibank, N.A., "no later than fourteen (14) calendar days after Singularity's Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of the finds to the Escrow Account (which includes Court approval of the Escrow Agent) . . . ." SA ¶ 10.

The Escrow Agent is required to invest the escrowed funds "exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully insured by the Federal Deposit Insurance

2

Corporation; or (b) secured by instruments backed by the full faith and credit of the United States Government." SA ¶ 18. The Escrow Agent is further required to "reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates." *Id.*

The Settlement Agreement provides that, upon the Court's preliminary approval of the settlement, "Lead Counsel may pay up to $250,000 from the Settlement Fund, without further approval from Singularity or further order of the Court, all Escrow Agent Costs and Notice and Administration Costs actually incurred and paid or payable." SA ¶ 22. In the event the Court does not grant final approval of the settlement, the settlement funds held by the Escrow Agent, less any notice, administration costs, and taxes incurred, are to be returned to Singularity. SA ¶ 41.

On July 25, 205, Lead Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, with supporting declarations and exhibits. ECF No. 119. The Court granted Lead Plaintiffs' motion on July 30, 2025. ECF No. 120. In its Order, the Court: (a) approved the Settlement Agreement upon a preliminary finding that its terms are fair, reasonable adequate, and in the best interests of the settlement class; (b) confirmed that it will likely find that Lead Plaintiffs have satisfied the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) with respect to the proposed settlement class for purposes of settlement and judgment; and (c) approved in form and substance Lead Plaintiffs' proposed notice plan, among other things.

On July 31, 2025, Lead Plaintiffs provided Singularity the information required under the Settlement Agreement to start the fourteen-day clock for Singularity to fund the Escrow Accounts pursuant to Paragraph No. 10 of the Settlement Agreement. *See* Email from Joel M. Sweet to Mark D. Hunter and Jenny Sardella, dated July 31, 2025, ECF No. 123-3. Singularity understood its payment obligations, as reflected in an email dated August 2, 2025, in which Singularity's counsel

confirmed that he had received the payment information and that the "Settlement Agreement calls for the two wires to be sent within 14 calendar days. That would be Thursday, August 14, 2025." *See* Email from Mark D. Hunter to Joel M. Sweet, dated August 2, 2025, ECF No. 123-4.

In accordance with the Court-approved notice plan, on August 12, 2025, Simpluris, the Claims Administrator, initiated notice to the Settlement Class by establishing an interactive voice response system, which is a toll-free number with a pre-recorded phone message and the ability to connect callers to live agents to provide information about the settlement. On August 13, 2025, the Claims Administrator also launched a settlement website (https://singularitysecuritiessettlement .com/) to notify Settlement Class members of the proposed settlement. On the same day, the Claims Administrator mailed letters to approximately 3,650 securities brokers to inform them of the settlement so that they can inform their clients. Digital notice announcing the settlement, including online advertisements, began on August 15. Press releases were distributed on August 18, and print ads were published on or about August 25.

On August 14, 2025—the deadline for Singularity to transfer funds to the Escrow Agent— Lead Counsel contacted Singularity's counsel to confirm that the transfer of funds would be made timely and to ensure that Singularity had all necessary information. *See* Declaration of Joel M., Sweet in Support of Lead Plaintiffs' Motion to Enforce Class Action Settlement Agreement ("Sweet Decl."), Exhibit A, Email from Joel M. Sweet to Mark D. Hunter and Jenny Sardella, dated August 14, 2025. Singularity's counsel did not respond to Lead Counsel's outreach.

Without prior notice or a request for an extension of the funds transfer deadline, Singularity simply failed to transfer any funds. Only the next day, August 15th, did Singularity's counsel explain Singularity's failure to transfer the Contested Funds to the Escrow Agent. Singularity's explanation was not emergent but rather related to an already pending judgment against the

4

company. Singularity was aware as early as May 1, 2025 (Yang Tr. at 118; *see also* ECF No. 110 (knowledge as of June 25, 2025)) of the problem and its potential to interfere with Singularity's settlement funding obligations. Yet, on July 16, 2025, almost a month before the funding deadline, Singularity's counsel represented that Singularity intended to resolve the issue in a way that would not prevent this settlement from moving forward. *See* Email from Mark D. Hunter to Michael Dell'Angelo, dated July 16, 2025, ECF No. 123-6. On August 17, 2025, Singularity's counsel reiterated the explanation provided on August 15th, but did not provide a firm commitment or date by which Singularity would cure.

On August 22, 2023, Lead Plaintiffs filed a motion to show cause why the Court should not enter judgment in favor of Lead Plaintiffs and against Singularity as a remedy for Singularity's breach of the Settlement Agreement (ECF No. 123). The Court scheduled a show cause hearing for August 28, 2025 (ECF No. 124). At that hearing, the Court declined to enter judgment. Instead, the Court ordered Lead Plaintiffs to conduct a Rule 30(b)(6) deposition no later than September 4, 2025, at which "representatives for Singularity will testify to the status of the Contested Funds, the process by which they will be transferred to United States accounts, and Singularity's planned merger with its British Virgin Islands subsidiary." Minute Entry dated August 28, 2025.

In advance of the deposition, Lead Plaintiffs requested that Singularity produce documents concerning the subjects of the forthcoming deposition. *See* Sweet Decl., Exhibit B, Letter from Michael Dell'Angelo to Mark D. Hunter, dated August 29, 2025. Singularity rejected the request and refused to produce any documents. *See* Sweet Decl., Exhibit C, Letter from Jenny Johnson-Sardella to Michael Dell'Angelo, dated September 2, 2025.

On September 4, 2025, Lead Plaintiffs deposed Singularity.[1] Singularity's corporate representative was Jia Yang, its Chief Executive Officer since November 2024. Lead Plaintiffs provided a Mandarin interpreter from whom Ms. Yang requested assistance throughout the deposition.  Ms. Yang's testimony on behalf of Singularity revealed a striking level of indifference toward Singularity's failure to comply with the Settlement Agreement. Ms. Yang exhibited a surprising lack of knowledge given her title and job responsibilities.

Following the deposition, Lead Plaintiffs' counsel suggested to Singularity's counsel that the parties prepare a consent order for joint submission to the Court. The consent order would have provided relief similar to that requested in this motion, including: (1) mandating the steps Singularity claims it already is undertaking to obtain the Contested Funds and transfer them to the Escrow Accounts; (2) requiring Singularity to produce records corroborating those steps; (3) requiring Singularity to pay interest on the Contested Funds at a rate to which Singularity previously agreed; (4) enjoining Singularity from taking further steps toward a merger transaction or other action that might divest this Court of effective enforcement power; and (5) reporting to the Court on its compliance with the order. On September 16, 2025, Singularity rejected all these terms, except for the provision concerning the interest rate to be paid on the late payments.

Under these circumstances, absent a Court order directing Singularity to comply with the Settlement Agreement by funding the escrow accounts, and requiring transparency concerning those activities, the settlement is in jeopardy.[2]

---

[1] The full transcript of Singularity's deposition is provided at Sweet Decl., Exhibit D.

[2] Lead Plaintiffs learned today of another legal proceeding against Singularity that may affect this matter. In *Jing Shan v. Singularity Future Tech. Ltd.,* Index No. 655309/2025 (Sup. Ct. N.Y. Cty. Sept. 12, 2025), the Honorable Phaedra F. Perry-Bond entered an Order to Show Cause for an Order of Attachment, Temporary Restraining Order, and Expedited Discovery, against Singularity. The show cause hearing is scheduled for October 16, 2025. Order, NYSCEF No. 24. The case

6

## III.    THE SETTLEMENT AGREEMENT

Lead Plaintiffs and Singularity entered the written and fully executed Settlement Agreement. The Court preliminarily approved the settlement of the litigation in accordance with the terms of the Settlement Agreement. The Court-approved Claims Administrator launched a notice program to inform Settlement Class members of the terms of the settlement and their right to file a claim, opt out of the settlement, or object to the settlement.

Singularity admits that it has failed to perform a critical part of the settlement process—it has not funded the settlement escrow accounts as required by the Settlement Agreement. Singularity agreed to provide consideration for the releases it will receive in the settlement in three components. The **first** component is $3 million, referred to as the Cash Settlement Amount. SA ¶ 1(e). The **second** component is $3.25 million, referred to as the Escrow Amount, which was intended to act as minimum guarantee against the third component. SA ¶¶ 1(s), 15. The **third** component of consideration is 6.5 million shares of Singularity stock, referred to as the Settlement Shares. SA ¶¶ 1(uu), 11.

The Settlement Agreement directs the necessary sequencing for Singularity to provide these three components of consideration. Singularity agreed to transfer the Cash Settlement Amount and Escrow Amount after the execution of the Settlement Agreement and receipt of wire instructions. SA ¶ 10. It is typical in class action settlements for defendants to provide consideration to be held in escrow before the court considers whether to grant final approval of a settlement. It also is necessary, as defendants' consideration held in escrow typically is used to pay

---

relates to a judgment against Singularity obtained in Virgina for $82,586.51, plus interest and other costs. That court has restrained Singularity's assets and has "restrained, enjoined, and forbidden" Singularity from "entering into or consummating any merger, acquisition, or other transaction that will make it difficult to enforce a judgment" against Singularity. A copy of the Order is provided herewith. *See* Sweet Decl., Exhibit E.

the expenses of the program to notify settlement class members of the terms of the settlement and the process to submit a claim, opt-out, or object, even if the court does not grant final approval of the settlement, or in the event of termination of the settlement. In this case, the Court authorized $250,000 of the Cash Settlement Amount to be used to pay the expenses of the Claims Administrator. SA ¶ 22.[3]

## IV.   ARGUMENT

Singularity concedes it violated the Settlement Agreement by failing to timely fund the Escrow Accounts. Without prior notice or any indication that funds would be unavailable, Singularity simply ignored the August 14 deadline and failed to transfer the Contested Funds to the Escrow Agent as required under the Settlement Agreement.[4] Singularity's Chief Executive Officer appears to have scant knowledge of the facts surrounding Singularity's breach of the Settlement Agreement or its efforts to cure the breach and relies entirely on information from one man in Beijing who communicates with her via primarily via WeChat, a Chinese encrypted social media application. Under these circumstances, neither the Court nor Lead Plaintiffs should be confident that Singularity will comply with its settlement obligations. The relief Lead Plaintiffs request is not punitive. Rather, it is designed to assure that Singularity funds the escrow accounts as funds become available to it and that the shroud obscuring Singularity's purported efforts to obtain the Contested Funds from its bank in Djibouti is lifted.

The Court has authority to impose the relief requested in this motion as "[s]pecific performance may be ordered where no adequate monetary remedy is available and that relief is

---

[3] Further detail about the components and operation of the Settlement Agreement is provided at ECF No. 123, at pp. 4-7.

[4] The Settlement Agreement requires Singularity to provide the Settlement Shares after final approval of the settlement. SA ¶ 11. Because the deadline for Singularity to provide the Settlement Shares has not occurred, Singularity has not breached that provision of the Settlement Agreement.

favored by the balance of equities, which may include the public interest." *NML Capital, Ltd. v Republic of Argentina*, 699 F.3d 246, 261 (2d Cir. 2012) (citations omitted). Once a court determines that the party to an agreement is in breach and that equitable relief is warranted, "the court ha[s] considerable latitude in fashioning the relief." *Id.* (citations omitted). "The performance required by a decree need not, for example, be identical with that promised in the contract." *Id.* "Where 'the most desirable solution' is not possible," a court "may affirm an order of specific performance so long as it achieves a 'fair result' under the 'totality of the circumstances.'" *Id.* citations omitted).

### A. The Court Should Order Singularity to Obtain the Contested Funds, Transfer Them to the Escrow Agent, and Produce Corroborating Records.

Ms. Yang's deposition testimony on behalf of Singularity reveals a dysfunctional management with a blasé approach to fulfilling its legal obligations. To start, Ms. Yang, Singularity's Chief Executive Officer, has little knowledge and no authority over Singularity's financial affairs. The person handling Singularity's finances, including its communications with its financial institutions, is Jie Liang, Singularity's Financial Director. Mr. Liang is located in Beijing, China. Ms. Yang's knowledge about Singularity's communications with its bank in Djibouti, Silk Road Bank, is based solely on information she received from Mr. Liang. *See* Transcript of Deposition of Jian Yang as Singularity's Corporate Representative ("Yang Tr."), at 35-37.

Mr. Liang is the person at Singularity responsible for the timely payment of the Contested Funds, and the only person at Singularity with authority to direct the transfer of the funds. Yang Tr. at 52-53. Mr. Liang, who communicates with Silk Road Bank in Djibouti via email, is the only person at Singularity who receives statements from Silk Road Bank. Yang Tr. at 60. Those statements are stored only on Mr. Liang's laptop computer and not on a corporate server. Yang Tr.

at 60-61. Approximately quarterly, Mr. Liang forwards bank statements to Ms. Yang via her personal WeChat and a personal email account. Yang Tr. at 63-65.

Singularity did not proffer documentary evidence corroborating Ms. Yang's testimony that the Contested Funds are in the process of being transferred to Singularity's bank in the United States, or even that the funds exist at all. At the deposition, Ms. Yang testified that neither she nor Mr. Liang have documents concerning Singularity's purported request that Silk Road Bank transfer funds to Singularity's account in the United States. Yang Tr. at 37. Moreover, Ms. Yang appeared at the deposition with limited knowledge about Singularity's bank accounts in Djibouti and the United States. Yang Tr. at 98. She was unaware entirely whether Singularity has bank accounts or otherwise maintains assets in China notwithstanding that Singularity's SEC filings, which she signed, represent that Singularity maintains such bank accounts. Yang Tr. at 98.

Ms. Yang provided two reasons why Singularity did not timely transfer the Contested Funds. First, she testified that Silk Road Bank in Djibouti needed time to receive Singularity's request for the funds and then "get approved from the bank and it take[s] time." Yang Tr. at 58. Second, she claimed that Singularity's accounts had been frozen due to a judgment against Singularity obtained by another creditor, Mr. Houng. *Id.*

Singularity had known for months that it would face challenges funding the escrow accounts because of the restraints on its account at Bank of America in the United States. Singularity's breach of the Settlement Agreement was entirely foreseeable to Singularity. Yet, Ms. Yang testified that Singularity's account at Bank of America has been frozen since May 1, 2025— almost a month before the parties agreed to the Term Sheet setting forth the material terms of the

10

settlement. Yang Tr. at 118. At the time of the deposition, Singularity's account at Bank of America was still frozen. Yang Tr. at 58.[5]

To obtain funds from Silk Road Bank, according to Ms. Yang, Singularity must request the funds from Silk Road Bank via email. Singularity must then wait for the bank to process the request in accordance with Djibouti's foreign exchange rules. Yang Tr. at 113-15. Ms. Yang testified that Silk Road Bank has a policy by which it will only transfer funds to an account in the name of Singularity and that it will not transfer funds directly to the Escrow Accounts (which would bypass the restrained Bank of America account). Yang Tr. at 110.

Despite the fact that Singularity signed the Term Sheet on May 25, and signed the Settlement Agreement on July 13, and the Court's order preliminarily approving the settlement was entered on July 30, Ms. Yang waited until August 1 to inform Mr. Liang that Singularity's deadline to fund the settlement was August 14. Yang Tr. at 55. Ms. Yang had no idea when Mr. Liang actually started the process to transfer the Contested Funds from Silk Road Bank. And when Mr. Liang made the request, he limited his request to only $3 million—less than half of the amount required to be transferred to the Escrow Accounts. That is, Singularity entered into the Term Sheet and the Settlement Agreement and provided comments on Plaintiffs' Motion for Preliminary Approval knowing that it could not perform its obligations or was unlikely to be able to do so.

According to Ms. Yang, based on information from Mr. Liang, Silk Road Bank has agreed to transfer $3 million to Singularity's account in the United States. Yang Tr. at 129-30. However, Ms. Yang has not seen any documents corroborating her testimony that Singularity requested the transfer of $3 million or that Silk Road Bank approved the transfer; rather she has relied entirely

---

[5] Singularity settled its dispute with Mr. Houng on August 30, 2025, and made a $300,000 payment to Mr. Huang on September 2, 2025. Yang Tr. at 100. To satisfy its obligation to Mr. Huang, Singularity borrowed $300,000 from two different loan companies. *Id.* at 102-03.

11

on representations of Mr. Liang. Yang Tr. at 136. Singularity nevertheless expects the money to arrive in its Bank of America account by the end of September 2025. *Id.*

At the time of the deposition, in continuing breach, as of September 4, Singularity still had not even requested that Silk Road Bank transfer the remaining portion of the Contest Funds, which is $3.25 million. Yang Tr. at 111-12. At deposition, Singularity could not provide any information about when—or even whether—those funds will be transferred to the Escrow Accounts.

Given these circumstances, Lead Plaintiffs request that the Court impose on Singularity a transparent structure requiring it to fulfill its obligations under the Settlement Agreement.

First, Lead Plaintiffs request that the Court order Singularity immediately to request of Silk Road Bank that it transfer to Singularity's account Bank of America the full amount of the Contested Funds and to provide the Court with proof of compliance.

Second, Lead Plaintiffs request that the Court order that upon Singularity's receipt of any funds from any source deposited into any account controlled by Singularity, Singularity direct the transfer of such funds within 12 hours to the Escrow Accounts at Citibank until the full amount of the Contested Funds is deposited in the Escrow Accounts. This requirement is reasonable and will not adversely affect Singularity's operations in the United States because Singularity has no operations in the United States. Extending the requirement to Singularity's subsidiaries' accounts in the United States is reasonable because Ms. Yang testified that Singularity presently uses those accounts to pay salary and other obligations. Yang Tr. at 117.

Third, Lead Plaintiffs request that the Court order Singularity to file with the Court under seal and provide to Lead Plaintiffs: (a) bank statements establishing the existence of the Contested Funds; (b) documents establishing that Singularity has instructed Silk Road Bank to transfer an amount equal to the Contested Funds to Singularity's account at Bank of America, including the

wire transfer number (often referred to as UETR number); and (c) all communications with Silk Road Bank concerning Singularity's instructions to transfer the Contested Funds.

**B.    The Court Should Order Singularity to Pay Interest on the Contested Funds at the Rate It Agreed to Pay.**

The parties' Term Sheet preceding the Settlement Agreement included a provision for Singularity to pay interest on the settlement funds in the event of a late transfer to the Escrow Accounts. Singularity agreed to pay interest based on the following formula: Contested Funds in the amount of the Compounded Daily Secured Overnight Financing Rate ("SOFR"), plus 2 percent, from August 14, 2025, until the date of payment to the Escrow Agent. In the event the settlement payment is more than forty-five (45) calendar days late, the interest rate shall be SOFR plus 8 percent from the time the funding was due. ECF No. 122-1, paragraph 15.

Lead Plaintiffs request that the Court order Singularity to pay interest on the Contested Funds at the rate provided in the Term Sheet. Singularity already has represented to the Court that the interest rate provision in the Term Sheet should apply here. *See* Letter to the Court from Mark D. Hunter, dated August 19, 2025, ECF No. 122. Moreover, in an email dated September 16, 2026, Singularity rejected all elements of Lead Plaintiffs' proposal for a joint consent order, calling them "patently absurd", but agreed to pay this interest: "Singularity agrees to the interest provision as detailed in the Term Sheet, which the parties have already agreed shall apply in the event of untimely settlement escrow payments." *See* Sweet Decl., Exhibit F, Email from Mark D. Hunter to Joel M. Sweet, dated September 16, 2025.

**C.    The Court Should Enjoin Singularity From Taking Any Further Steps Toward Completing Its Merger With Its British Virgin Islands Subsidiary.**

Singularity has initiated a plan that, if effected, would enable it to evade its obligations under the Settlement Agreement and this Court's jurisdiction. The timing of this merger plan suspiciously aligns with Singularity's agreement to resolve this litigation and—combined with

13

Singularity's breach of the Settlement Agreement—suggests an ability, if not intention, to flee from justice. Lead Plaintiffs respectfully request that the Court preliminary enjoin Singularity from advancing its merger plan until it has satisfied all its obligation under the Settlement Agreement.

According to Ms. Yang, Singularity began the process of registering a subsidiary in the British Virgin Islands on May 6, 2025, and completed the process on May 29, 2025—the **same day** the parties executed the Term Sheet. Yang Tr. at 144-45.

On June 23, 2025, Singularity filed with the SEC a Preliminary Proxy Statement announcing its plan to merge itself into its British Virgin Islands subsidiary. According to the Proxy Statement, after the merger Singularity "will cease to exist as a separate legal entity." Singularity acknowledged in the Proxy Statement that after the merger "enforcement of civil liabilities against [Singularity's post-merger entity] may be more difficult." Singularity admitted that after the merger all its executive officers and a majority of its directors will reside outside of the United States and protected from service of process in the United States, and that judgments from courts in the United States "may also be difficult to enforce, both in and outside of the United States or the British Virgin Islands." *Id.*

Singularity's Board of Directors already has approved the merger via WeChat on July 24, 2025. Yang Tr. at 148-49. The merger will not be completed until a shareholder vote takes place, and according to Ms. Yang, that vote is not yet scheduled. *Id.* at 151.

Significantly, Ms. Yang testified that there is no reason why the merger cannot wait to happen until after the Contested Funds are paid and the 6.5 million shares are issued. Yang Tr. at 155-56. Accordingly, Lead Plaintiffs move the Court to enjoin Singularity's merger described in its Schedule 14A (Preliminary Proxy Statement) filed with the Securities and Exchange

14

Commission, or any other transaction that have the effect of divesting this Court of jurisdiction over Singularity and its assets, until further order of the Court.

To obtain a preliminary injunction, a plaintiff "must demonstrate: (1) 'a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor;' (2) a likelihood of 'irreparable injury in the absence of an injunction;' (3) that 'the balance of hardships tips in the plaintiff's favor;' and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Brainwave Science, Inc. v. Arshee, Inc.*, 2021 WL 6211630, at *3 (Dec. 14, 2021 E.D.N.Y) (citing *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)).

A preliminary injunction here to prevent Singularity from proceeding with its merger until this settlement is final is justified. Singularity's breach of the Settlement Agreement is not disputed, so there is no serious question of Lead Plaintiffs' likely success on the merits. Nor is there any question that Lead Plaintiff and the preliminarily certified Settlement Class will face irreparable harm in the absence of an injunction to delay the merger. As shown above, Singularity expressly stated in its Proxy Statement that the merger may allow Singularity, its officers, and a majority of its directors to evade civil liabilities, which includes enforcement of the Settlement Agreement here. If the merger takes place before Singularity satisfies its settlement obligations, the Settlement Class's opportunity to recover its losses from Singularity's violation federal securities laws will effectively be lost.

The balance of hardships between Lead Plaintiffs and Singularity weighs heavily in favor of a preliminary injunction. Ms. Yang testified explicitly that there is *no reason* why the merger cannot wait to happen until after the Contested Funds are paid and the 6.5 million shares are issued. Yang Tr. at 155-56 (italics added). Finally, the public interest will be served by preserving judicial

15

resources and this case being settled rather than litigated until judgment, and by maintaining this Court's jurisdiction over this matter until it is fully resolved.[6]

**D.      The Court Should Require Singularity to File Weekly Reports Concerning its Progress in Securing the Contest Funds and Transferring Them to the Escrow Accounts.**

Lead Plaintiffs respectfully request that the Court closely monitor Singularity by requiring Singularity to file weekly status reports concerning its compliance with the Settlement Agreement. Singularity's failure to inform Lead Plaintiffs in advance that it would not timely fund the escrow accounts, its refusal to provide corroborating documents concerning the existence of the Contested Funds or its efforts to obtain the funds from its bank in Djibouti, and a thin and vague corporate structure with a limited presence in the United States all justify the need for weekly reporting.

Ms. Yang lives in the Las Vegas, Nevada area and works out of her apartment or anywhere she travels with her computer. Yang Tr. at 21. Singularity has no physical office in the United States and maintains only a "virtual office" in New York where it receives mail—but has no space for sitting and working. *Id.* at 22. Other than individuals working from home offices, Singularity has no other physical presence in the United States. *Id.* at 22-23. Bank of America is Singularity's only bank in the United States. *Id.* at 80. The statements for Singularity's account for Bank of America are sent only to Sherry Feng, Singularity's Board Secretary, who resides somewhere in California. Ms. Feng is Singularity's only signatory for the Bank of America account. *Id.* at 81-82. Only on a quarterly basis does Ms. Feng provide the Bank of America statement to Ms. Yang via a personal WeChat account. *Id.* at 82-83. On the day of the deposition, the balance in Singularity's Bank of America account was approximately $74,000, although the account was frozen. *Id.* at 83.

---

[6] If the Court declines to enter an injunction, Lead Plaintiffs respectfully request that the Court order Singularity to notify the Court and Lead Plaintiffs no less than thirty (30) days before any event and action in furtherance of the merger so that Lead Plaintiffs have an opportunity to assess the activity and if appropriate move for an injunction.

16

As explained above, Ms. Yang—the company's Chief Executive Officer—had no personal knowledge of the communications between Mr. Liang and Silk Road Bank concerning efforts to have the Contested Funds transferred to the United States. Nor did she have full knowledge of Singularity's bank accounts. She admitted that she is not aware whether Singularity maintains bank accounts in China. She was unaware of a bank account in Australia disclosed in a Form 10-Q filed with the SEC. She learned from Mr. Liang that in approximately August 2025 HSBC in Hong Kong had closed a Singularity bank account. Yang Tr. at 84-86.[7] And Singularity ordinarily pays its regular expenses (salaries, etc.) from its Bank of America account or the bank accounts of its subsidiaries, namely New Energy and Gorgeous Trading. At the time of the deposition, those accounts also are frozen due to the Houng litigation. Yang Tr. at 118.

The Settlement Class already has been injured by Singularity's breach of the Settlement Agreement. Had Singularity transferred the Contested Funds to the Escrow Agent as was required under the Settlement Agreement, the Contested Funds would be secured, invested, and earning interest. The Settlement Class is further injured because, as described above, the Court-approved notice plan informing Settlement Class members of the proposed settlement is underway. First, the Settlement Agreement provides for the Claims Administrator to be paid from the settlement funds. Lead Counsel, complying with their own obligations under the Settlement Agreement and with the Court's order preliminarily approving the settlement (ECF No. 120), and the Claims Administrator

---

[7] Ms. Yang testified, without providing documentary support, that Singularity and its subsidiaries have a total of five bank accounts in the United States. Yang Tr. at 120. In addition to its own bank account at Bank of America (which at the time of the deposition remained frozen), Singularity's subsidiary New Energy has an account at Chase with a balance of approximately $9,000; subsidiary Gorgeous Trading has an account at Bank of America with a balance of approximately $300; subsidiary New Energy has an account at East West Bank with a balance of approximately $1,000; and subsidiary SG Shipping had an account at Bank of America with a balance of approximately $900 when the account was closed in approximately May 2025. Yang Tr. at 121-24.

17

have acted in good faith with the expectation that the Claims Administrator will be paid with the settlement funds. The source of funds and ability to pay the Claims Administrator is now at uncertain.

Second, Settlement Class members are now in the process of reviewing information about the settlement, determining whether to participate, opt out, or object, and completing claim forms. Because of Singularity's breach of the Settlement Agreement, all the Settlement Class members' time and effort will be wasted, along with the significant time and expenses already incurred by the Claims Administrator, and mass confusion will ensue among Settlement Class members.

## V.    CONCLUSION

Lead Plaintiffs respectfully request that the Court enter their proposed order to increase the likelihood that Singularity will comply with its obligations under the Settlement Agreement.

Dated: September 18, 2025

**BERGER MONTAGUE PC**

/s/ *Michael Dell'Angelo*
Michael Dell'Angelo (*pro hac vice*)
Joel M. Sweet (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: mdellangelo@bergermontague.com
   jsweet@bergermontague.com

*Lead Counsel for Lead Plaintiffs*

**KIRBY McINERNEY LLP**
Ira M. Press
Sarah Flohr
250 Park Avenue, Suite 820
New York, NY 10177
Tel: (212) 371-6600
Email: ipress@kmllp.com
   sflohr@kmllp.com

*Local Counsel for Lead Plaintiffs*

18

# <u>CERTIFICATE OF SERVICE</u>

I, Joel M. Sweet, hereby certify that a true and correct copy of the following documents were electronically filed and served. Notice of this filing will be sent by email to all parties via the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System:

1. Lead Plaintiffs' Motion to Enforce Class Action Settlement Agreement;

2. Memorandum in Support;

3. Declaration of Joel M. Sweet;

4. [Proposed] Order.


Dated: September 18, 2025                    **BERGER MONTAGUE PC**

*/s/ Joel M. Sweet*
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: jsweet@bergermontague.com